

## IN THE NORTHERN DISTRICT COURT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Terence Bruce Richards<br>      Plaintiff | )<br>) |
| | ) |
| Vs. | ) |
| | |
| United States of America | **08CV6810** |
| Department of Justice | **JUDGE COAR** |
| County of Lake | **MAG.JUDGE BROWN** |
| City of Waukegan | |
| Federal Defender Program | ) |
| HSBC Technology & Services USA Inc. | ) |
| Manual Barbosa | ) |
| James E. Stevens | ) |
| Daniel Kleinhubert | ) |
| Detective Szuchnicki | ) |
| Paul Flynn | ) |
| Susan Hansen | ) |
| James Harrington | ) |

**FILED**

Nov 26. 2008

NOV 2 6 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT[1]

Plaintiff, Terence Bruce Richards, by and through his own representation, hereby brings

this civil rights action, pursuant Title 42 U.S.C.A. §1983 and *Bivens vs. Six Unknown Named*

*Agents 403 U.S. 388 (1971)*, and declares as follows, and requesting a jury trial in this matter:

### PRELIMINARY STATEMENT

This is an action seeking redress for violations of rights guaranteed to plaintiff by 42

U.S.C. §1983 Plaintiff seeks mandatory injunctive relief and damages to redress defendant(s)

discriminatory practices.

**DOCKETED**

NOV 2 6 2008

---

[1] This case involves the Biblical times "scapegoat", where the individual would place his sins in a "pack", place the "pack" onto the back of a goat and then run the goat into the forest. In this case, Judge Barbosa, placed his, bankruptcy trustee James E. Stevens, and third party Donald James Harrington's sins onto the plaintiff, and then ran the plaintiff into prison. This case is a continuation of cases 07 CV 2656, and 07 CV 3643, where we left off, at that the plaintiff should have and could have provided selective perception; however, plaintiff would have, if it wasn't for the discriminatory practices, as described below.



## JURISDICTION

1.  Jurisdiction of the Northern District Court of Illinois – Eastern Division, is invoked pursuant

    to Title 28 U.S.C. §1331 and §1343(a)(3) and (4) to secure protection of and to redress

    deprivation of rights secured by 42 U.S.C. §1983. Plaintiff seeks declaratory relief pursuant

    to 28 U.S.C. §§2201 and 2202.

2.  The venue is proper, pursuant to Title 28 U.S.C. §1391(b).

## RELATION(S) BACK[2]

3.  This case relates back to 07 CV 1646, which was filed on March 23rd, 2007, for James E.

    Stevens and HSBC Technology & Services USA, Inc., which is pending as an appeal in the

---

[2] The Statute of Limitations for this action is governed by 735 ILCS 5/13-201 The "Discovery Rules" tolls the statute of limitations. The Illinois Supreme Court held in *Witherell vs. Wiemer* (1981) 85 Ill.2d 146, 156; 52 Ill.Dec. 6; 421 N.E.2d 869 and *Nolan Vs. Johns-Manville-Asbestos* (1981) 85 Ill.2d 161, 171; 52 Ill.Dec. 1; 421 N.E.2d 864 that the statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. In *Nolan* the Illinois Supreme Court stated: "We wish to emphasize that the rule they announced is not the same as a rule which states that a cause of action accrues when a person knows or should know of both the injury and the defendant's negligent conduct. Not only is such a standard beyond the comprehension of the ordinary lay person to recognize, but it assumes a conclusion which must properly await a legal determination. *United States Vs. Kubrick* (1979) 444 U.S. 111 In determining when a plaintiff knew or reasonably should have known that his injury was caused by a defendant's wrongful conduct, courts look to the nature of the injury itself. *Saunders Vs Klungboonkrong* 150 Ill.App.3d 56, 60; 103 Ill.Dec. 565, 568; 501 N.E.2d 882, 885(1986)

In the instant case, plaintiff Richards was placed in the apprehension of bodily assault and battery, for exercising his First Amendment Constitutional right to Freedom of Speech to protect his and creditor's property rights.

A plaintiff knows or should know that an injury was "wrongfully caused" when he attains "sufficient information concerning his [her] injury to put a reasonable person on inquiry to determine whether actionable conduct is involved. *Sanders* supra. 150 Ill.App.3d at 60; 130 Ill.Dec. at 568; 501 N.E.2d at 885. (citing *Knox College Vs. Celotex Corp.* 88 Ill.2d 407, 416; 58 Ill.Dec.725, 729-30; 430 N.E.2d 976, 980-81(1981). In light of the treatment, by the Federal Courts, in the various cases, pending for the past 18 months, it is more apparent than not, that actionable conduct is involved.

In some type of cases, the awareness of a physical problem carries with it, the awareness of a wrongful causation, and the running of the limitations period begins. In some cases, a person may have knowledge of a physical problem without the knowledge of any "wrongful cause". In such cases, the limitations period does not begin to run until a reasonable person would or should know of a wrongful cause. *Roper Vs. Markle* 59 Ill.App.3d 706, 711; 16 Ill.Dec. 827, 831 (1978).

The constitutional claims are governed by the personal injury statute of limitations 735 ILCS 5/13-202 *Williams Vs. Lampe* 399F.3d 867, 869-70 (7th Cir. 2005). The cause of action for violation of a constitutional right starts from when the individual knows or reasonably should know that his constitutional rights have been violated. Equitable tolling extends, that time, until the individual is fully apprised of all the facts to bring a claim.

United States Appellate Court. This action calls into new claims, which were not **able to be** discovered, under the "Discovery Rule", with due diligence, until the plaintiff, had sufficient facts establishing, that Judge Manual Barbosa had used Plaintiff Richards as an "scapegoat" to criminally abandon stolen property under Title 18 U.S.C.A. §153, in bankruptcy case 03 B 71403, and committing assault and battery, by running the plaintiff into the "forest" (prison).

4. This case relates back to 07 CV 1732, this case was filed on March 28th, 2007, for County of Lake and county prosecutor, Daniel Kleinhubert, which was dismissed under appellate case number 07 – 2289. This action calls into new claims, which were not able to be discovered, under the "Discovery Rule", with due diligence, until the plaintiff, had sufficient facts establishing that Judge Manual Barbosa had used Plaintiff Richards as an "scapegoat" to criminally abandon stolen property under Title 18 U.S.C.A. §153, in bankruptcy case 03 B 71403, and committing assault and battery, by running the plaintiff into the "forest" (prison).

5. This case relates back to 07 CV 1907, this case was filed on April 6th, 2007, for James E. Stevens. This action calls into new claims, which were not able to be discovered, under the "Discovery Rule", with due diligence, until the plaintiff, had sufficient facts establishing that Judge Manual Barbosa had used Plaintiff Richards as an "scapegoat" to criminally abandon stolen property under Title 18 U.S.C.A. §153, in bankruptcy case 03 B 71403, and committing assault and battery, by running the plaintiff into the "forest" (prison).

6. This case relates back to 07 CV 2656, this case was filed on May 10th, 2007, for City of Waukegan and Detective Szuchnicki. This action calls into new claims, which were not able to be discovered, under the "Discovery Rule", with due diligence, until the plaintiff, had sufficient facts establishing that Judge Manual Barbosa had used Plaintiff Richards as an "scapegoat" to criminally abandon stolen property under Title 18 U.S.C.A. §153, in

3

bankruptcy case 03 B 71403, and committing assault and battery, by running the plaintiff into the "forest" (prison).

## PARTIES

7.  Plaintiff RICHARDS is a resident of the State of Illinois and of the United States.

8.  UNITED STATES OF AMERICA is a defendant in this case.

9.  The DEPARTMENT OF JUSTICE is a federal governmental agency, formed under defendant United States of America, whose address is U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, D. C. 20530 – 0001.

10. The COUNTY OF LAKE is a duly incorporated municipal corporation and is employer and principal of the defendant KLEINHUBERT referred to in this complaint, whose address is 18 North County Street, Waukegan, Illinois 60085-4351. At all times material to this complaint, defendant KLEINHUBERT was acting under color of state law, ordinance, and/or regulation, statutes, custom, and usages of the COUNTY OF LAKE.

11. The CITY OF WAUKEGAN is a duly incorporated municipal corporation and is employer and principal of the defendant SZUCHNICKI referred to in this complaint, whose address is 100 North Martin Luther King Jr. Ave., Waukegan, Illinois 60085, the chief of police is William Biang. At all times material to this complaint, defendant SZUCHNICKI was acting under color of state law, ordinance, and or regulation, statutes, custom, and usages of the CITY OF WAUKEGAN.

12. The FEDERAL DEFENDER PROGRAM Inc. is a duly incorporated corporation and is employer and principal of the defendant FLYNN, which represents defendants in federal criminal cases, located at 55 East Monroe Street, Suite 2800, Chicago, Illinois, 60603. At all

4

times material to this complaint, defendant FLYNN was acting under color of federal law, by conspiring with defendant HANSEN, defendant STEVENS, defendant BARBOSA, and third party REINHARD who acts under color of federal law, ordinance, and/or regulation, statutes, custom, and usages of the UNITED STATES OF AMERICA.

13. Defendant, HSBC TECHNOLOGY & SERVICES (USA) INC., is a Delaware corporation, which has continuously, and does now employ more than fifteen (15) employees, and is engaged in an industry that affects commerce and continues to do business in Illinois.

14. Defendant BARBOSA, is a bankruptcy judge in the Northern District of Illinois – Western Division, located at 211 South Court Street, Rockford, Illinois 61101, whose primary duties is to preside over bankruptcy cases, in particular the bankruptcy case of Estate of Richards, case number 03 B 71403, who is being sued in his individual capacity, and acted in clear absence of his jurisdiction[3], after February 9th, 2005.

15. Defendant STEVENS, is a bankruptcy trustee in the Northern District Court of Illinois – Western Division, his place of business is at 6833 Stalter Drive, Rockford, Illinois 61107, his duties was to referee the bankruptcy case 03 B 71403, he is being sued in his individual capacity.

16. Defendant KLEINHUBERT sued herein in his individual and official capacity is a county prosecutor employed at all relevant times by the defendant COUNTY OF **LAKE. At all**

---

[3] In *Brady vs. Fisher* 80 U.S. (13 Wall.) 335, the Court made a distinction between acts "in excess of jurisdiction" (Criminal court judge convicts a plaintiff for nonexistent crime. Cf. *Turner Vs. Raynes* 611 F.2d 92, 95-97 (5th Cir. 1980)) and acts "in clear absence of all jurisdiction" (probate judge tries a criminal case), see *Brady vs. Fisher* supra. 80 U.S. (13. Wall) at 352. Immunity is lost to the judge only in latter class of jurisdictionally defective cases. *Harper Vs. Merkle* 638 F.2d 848 (1981) n. 16.

times relevant hereto, the defendant KLEINHUBERT was acting within the scope of his employment as a county prosecutor.[4]

17. Defendant SZUCHNICKI sued herein in his individual and official capacity is a detective employed at all relevant times by the defendant CITY OF WAUKEGAN,

At all times relevant times hereto, the defendant SZUCHNICKI was acting within the scope of his employment as a detective.

18. Defendant FLYNN sued herein in his individual and official capacity is a public defender employed at all relevant times by the defendant FEDERAL DEFENDER PROGRAM. At all relevant times hereto, the defendant FLYNN was acting within the scope of his employment as a public defender.

19. Defendant, HANSEN sued herein in her individual and official capacity is Special Agent employed at all relevant times by the defendant DEPARTMENT OF JUSTICE. At all relevant times hereto, the defendant HANSEN was acting within the scope of her employment as a Special Agent.

20. Defendant, HARRINGTON sued herein in his individual capacity, is the natural father to Donald James Harrington, his home address is 34186 North Redtop Road, Round Lake, Illinois 60073-5218, and his business address is 233 North Michigan, Suite 2333, Chicago, Illinois 60601, was acting under the color of federal law, ordinance, and/or regulation, statutes, custom, and usages of the UNITED STATES OF AMERICA.

---

[4] Defendant Kleinhubert, does not have prosecutorial immunity, when he is doing investigate, or administrative duties. In the present case, altering or amending an indictment, is an investigative duty. See 07 CV 1732, and appellate case 07-2289.

6

## **INTRODUCTION**

21. This case involves the biblical times definition of the word "scapegoat". The early

Christian(s) would place their sins into a "pack", and load the pack onto the back of a goat, to

run into the forest. Judge Manual Barbosa used plaintiff Richards, as the scapegoat, by

placing his, bankruptcy trustee James E. Stevens, and criminal Donald James Harrington's

sins, into a "pack", and placed the "pack" with the assistance of James E. Stevens, Susan

Hansen, and Paul Flynn onto the back of plaintiff RICHARDS. This pack included the theft

from Donald James Harrington, of plaintiff RICHARDS, under Illinois Penal Code statute

720 ILCS 5/16-1(a)(2)(A). Bankruptcy Judge Manual Barbosa and Bankruptcy Trustee

James E. Stevens embezzled property from plaintiff RICHARDS, under federal penal code

Title 18 U.S.C. §153. Bankruptcy Judge Manual Barbosa, then attempted to run plaintiff

Richards, into several mental institutions, only, with the psychiatrist, rebounding, bankruptcy

judge Manual Barbosa's maliciously and sadistically criminal actions. There never was, and

potentially never will be a need to confine someone in a mental institution, for a physical

ailment. (I say that with precautionary measurement, for plaintiff's mother suffered for years,

and then eventually died from Alzheimer's disease, at age 52, which is a physiological

condition, that led into a psychological condition). But, the ordinary garden variety

"endocrine disease" conditions don't need such confinement.

Bankruptcy Judge Manual Barbosa's first retaliatory attempt was on May 21st, 2005,

with the assistance of Special Agent Randy A. Ray, who attempted to incarcerate, plaintiff

RICHARDS, at H Douglas Singer Mental Health Center, located at 4402 North Main Street,

Rockford, Illinois, 61103. However, only after the judiciary hearing held on May 25th, 2005,

7

the State of Illinois judiciary official apologized to plaintiff RICHARDS, for the
inconvenience, for being placed here.

Bankruptcy Judge Manual Barbosa's second retaliatory attempt was when he attempted
to inflict a felony upon plaintiff RICHARDS, for driving on a suspended license. Defendant
BARBOSA, allegedly practiced law in the Elgin, Kane County, Illinois area, where he has a
bankruptcy courtroom in the Kane County Courthouse located at 100 South Third Street,
Geneva Illinois in Room 140. Plaintiff RICHARDS, at all times before June 2005,
maintained his license and insurance with James Cady Farmers Insurance group, since he
was fifteen years old. However, in June 2005, after being permanently deprived of all his
property, from the malicious, willful, arbitrary, and irrational actions, of the defendant's in
this action, Plaintiff RICHARDS, had his license revoked. He was driving from FedEx
Kinko's in the Kane County area, to his home in Woodstock, Illinois. When he was driving
down Randell Road, when a police officer, was following Plaintiff RICHARDS, who
happened to turn right, and immediately turn on his MARS lights, when plaintiff
RICHARDS, turned left, into a dead end street, to return to FedEx Kinkos, As soon as,
plaintiff RICHARDS, reentered the highway, the police officer, pulled plaintiff RICHARDS,
over for driving on a suspended license. The police officer informed plaintiff RICHARDS,
that he heard, plaintiff RICHARDS likes to sue bankruptcy judges and other public officials.
The officer pulled the plaintiff's automobile, over to the side of the road, and called for a taxi
to drive plaintiff RICHARDS home. Plaintiff RICHARDS was allowed to have his brother,
drive the automobile home the next day. The following day, which happened to be a
Monday, plaintiff RICHARDS got in the automobile, to drive it to the nearby dumpster to

empty out the trash. When, four squad cars, from the Woodstock Police Department drove by, hoping to arrest, plaintiff RICHARDS. However, no such action, ever took place.

Bankruptcy Judge Manual Barbosa's third retaliatory attempt was in September 2005, as an alleged settlement agreement, in the case *RICHARDS Vs. RAY* (N.D. Ill. Case number 05 CV _____ ), Plaintiff, spent only a few days under observation, with the psychiatrist to send plaintiff home, stating, that the plaintiff RICHARDS, was not in need of psychiatric assistance. This, retaliatory conduct, included, but not limited to, Magistrate Judge Jeffrey Cole, who becomes, important in the preliminary hearing, for case 06 CR 233, for he was a pivotal point in both instances.

On February 26th, 2006, after being deprived of his medications, due to the malicious, sadistic, and callous actions of the above captioned defendant(s), plaintiff's thyroxin level dropped, making him feel depressed. The defendant(s), upon hearing this, used this as an attempt to again incarcerate, plaintiff RICHARDS, at Madden Mental Health Hospital in Chicago, Illinois. When, he got to the hospital, he say two doctor's there, who diagnosed, plaintiff RICHARDS, with low thyroxin, prescribed him the necessary medication, and sent him home.

During the month of March 2006, defendant's seized another opportunity, to maliciously, willfully, arbitrarily, and irrationally, to attempt to incarcerate, Plaintiff Richards again, into an institution. This time, instead of the mental institutions, they opted for the prison institutions. They had their friend, Public Defender Paul Flynn, attempt to research, plaintiff's mental health records, so they could send him to the Federal Prison Mental Health Hospital in Rochester, Illinois. However, no such records exist, for any of the defendant(s) to attempt to place plaintiff RICHARDS, in any long term mental health center.

9

Plaintiff, Terence Bruce Richards applied his intelligence, skill and drive to everything he did as a computer programmer. For nineteen years he worked for HSBC Technology & Services (USA) Inc. as a hard working programmer. Till this one day, when this little prostitute, scoped out the plaintiff's home, and thought and believed that the plaintiff was bipolar, who went on manic shopping sprees. Unbeknownst, to the little prostitute, plaintiff is not or never has been bipolar, he suffers from depression under a general medical condition – hypothyroidism. However, he hired, an attorney, Christopher Lambardo, who ran to the prosecutor, Daniel Klienhubert, claiming that the plaintiff was "stalking" Donald James Harrington.

District Judge Joan Lefkow, in her June 25th, 2008, court order, informed plaintiff RICHARDS, that Bankruptcy Judge Manual Barbosa, and Bankruptcy Trustee James E. Stevens, believed that plaintiff Richards passed Donald James Harrington, $45,662.13 dollars, hoping that Donald James Harrington would pass, the monetary funds, back (See court order 07 CV 1646, dated June 25th, 2008) This was not the case, plaintiff Richards only reported the theft of the $6,800.00 on November 12th, 2002, $5,000.00 on January 2nd, 2003, and $4,800.00 on February 14th, 2003, for alleged attending Carthage College, a school he never attended or enrolled. Because, of this failed, prosecution, James E. Stevens, took the liberty to harm Plaintiff Richards, maliciously, willfully, arbitrarily, and irrationally, because, he believed that the plaintiff was bipolar. However, unbeknownst, to his ignorance, that was not the case. With ignorance, and misunderstanding, Bankruptcy Judge Manual Barbosa, and Bankruptcy Trustee James E. Stevens used the plaintiff as scapegoat, and maliciously, willfully, arbitrarily, and irrationally placed the blame upon the plaintiff, and then ran the

**10**

plaintiff into prison, without any effective assistance of counsel from Paul Flynn, and the

Public Defender's office. James Harrington, held the Plaintiff's reins, and then Special

Agent, Hansen, led the plaintiff into prison, claiming, we did this, because, of your mental

illness.

## FACTS

### *Background*

22. Plaintiff Terence Bruce Richards, repeats and realleges, statements 1 through 21. .

23. Plaintiff Terence Bruce Richards (hereinafter referred to as plaintiff RICHARDS), was

diagnosed with hypopituit`arisim, on December 2001, at his physician's office, Dr. Sophia

Garcia – Buder located at 2719 North Halsted Street, Chicago, Illinois, 60614, with an

associated mental health issue of the general category of mood disorders, originating from a

General Medical Condition – Hypothryroidism 293.83 (Mood Disorder Due to

Hypothyroidism), and not the specific category of 296.4x Bipolar I Disorder (Most Recent

Episode Manic).

24. In September 2002, plaintiff Richards met Donald James Harrington, through the Gay

Chicago Magazine. Donald James Harrington was running an escort/ modeling ad, in the

personals section of the magazine. Plaintiff Richards, was informed that the third party

Donald James Harrington was living at 901 Corona Street, Waukegan, Illinois 60085,

Plaintiff Richards learned, that was not the correct town for 901 Corona Street, that 901

Corona Street was located in Round Lake Beach, by the Gurnee Police Department, however.

plaintiff Richards was also informed by Donald James Harrington that Donald James

Harrington was attending Carthage College in Kenosha Wisconsin, and he was driving a new

2002 PT Cruiser.

25. Plaintiff RICHARDS, was continuing his medical services, with Dr. Sophia Garcia – Buder, and was referred to her, through his family physician Doctor Barrett located at Howard Brown Medical Services located at 4025 North Sheridan Road, Chicago, Illinois, 60613. Plaintiff RICHARDS, was in view of individuals who were suffering from the epidemic of the AIDS virus, since Howard Brown is a gay family practice. The AIDS virus was the unconditional stimulus, and fear of death was the unconditional response. Donald James Harrington, prostituting himself was the conditional stimulus. Therefore, the plaintiff associated, Donald James Harrington prostituting himself, having multiple contacts, with strangers, who would care less if he lived or died, placed a fear of death into the plaintiff, complicated with being a hormone drug, Humatrope, Recombinant Growth Hormone, which the plaintiff alleges increased his oxytocin (neurohypophysis hormone) levels.

26. On or about, October 23rd, 2002, plaintiff RICHARDS, lent $2,000.00 to a third party by the name of Donald James Harrington, at his prior residence (2408 Aspen Drive, Woodstock, Illinois 60098). The third party upon his representations was going to be using the money to pay his hospital bill for his new son, Triston. Plaintiff RICHARDS borrowed this money from his Harris Bank Unsecured Banking loan account (Acct #029-0008-100238438).

27. On or about, November 1st, 2002, plaintiff RICHARDS, lent $750.00 to third party Donald James Harrington, in the Dominick's parking lot located in McHenry, Illinois. The third party, after one and half hours of coercing, threatening, and intimidating, Plaintiff Richards to lend him this money, so he can pay for his new born child's basic psychological factors (food, clothing, and shelter), after going to the Sugar Shack (strip joint in Lake Geneva, Wisconsin).

12

28. On or about, November 5th, 2002, plaintiff RICHARDS lent third party Harrington, $715.00, so third party Harrington could pay his wife's ob/ gyn doctor bill. This transaction occurred at the strip joint, in Lake Geneva, Wisconsin.

29. On or about, November 2nd, 2002, plaintiff RICHARDS, harassed at his home, located at 2480 Aspen Drive, Woodstock, Illinois 60098 by third party Donald James Harrington for $3,000, for the purpose of repairing his 1993 Delta 98 automobile. This harassment went on for several hours, until the plaintiff conceded.

30. On or about November 12th, 2002, plaintiff RICHARDS lent third party Harrington, $5,000.00, for fall tuition at Carthage College, Kenosha Wisconsin. This transaction once again occurred at the Plaintiff's home located at 2408 Aspen Drive, Woodstock, Illinois, 60098. Plaintiff RICHARDS had third party Harrington sign a promissory note, and this money was borrowed from his Harris Unsecured Banking loan account (Acct #029-0008-100238438).

31. On November 15th, 2002, Plaintiff RICHARDS was harassed and threatened again, in the Dominick's parking lot, at 2:00a.m. by third party Donald James Harrington, to lend third party Harrington $750.00 for various needs. This time, after a police officer, pulled up behind the automobile, to investigate, why there has been a car, with two individuals, sitting in the car for the last two hours, the third party pulled a sheath knife, and was twirling the knife, in his hands.

32. On or about, November 18th, 2002, plaintiff RICHARDS was coerced by third party Harrington to switch the visiting sites, from McHenry and Woodstock, Illinois, ever since the first visit by the McHenry Police Officer, on November 15th, 2002. Plaintiff Richards was

cajoled to take out a Harris Bank Unsecured loan, for $1,500.00 to make repairs to a Delta 98 automobile.

33. On or about, November 23rd, 2002, plaintiff RICHARDS was forced to cash in his life insurance policy, that he possessed since he was born, a 41 year old policy, this occurred at 901 Corona Street, Round Lake Beach, Illinois, at the third party's parent's home. The cash value of this insurance policy was $2,300.00, and this money was allegedly was supposed to be used for Christmas shopping for his immediate and extended family.

34. On or about, November 29th, 2002, the plaintiff, informs third party Harrington that the cash lending has to stop. That the plaintiff needs his money for his own needs, and would like to start getting paid back for some of this money that was lent to third party Harrington. The plaintiff borrowed third party, Harrington, another $300.00, and that would have to be the limit.

35. On December 13th, 2002, Plaintiff RICHARDS, against his will lent the third party Harrington another $750.00 for the purpose of getting through the Christmas season, and that third party Harrington will have to get out and look employment.

36. On or about, December 27th, 2002, Plaintiff RICHARDS was under the impression, that, he would be taking a ski trip to Colorado, with third party Harrington, but at the last minute, the third party Harrington, pulled the bait and switch, and forced the plaintiff, to lend the third party Harrington $900.00 from his paycheck, so third party Harrington may take a trip to with his father and his father's boyfriend.

37. On or about, January 2nd, 2003, Plaintiff RICHARDS borrows third party Harrington $6,800.00 from his 401(k) loan (loan number 12). This money was lent to pay for third party Harrington's spring semester tuition at Carthage College, Kenosha Wisconsin, a school, the

**14**

plaintiff discovers from the Gurnee Police Department, at a later date, that third party
Harrington never attended or enrolled.

38. On or about January 9th, 2003, third party Harrington forced the plaintiff RICHARDS to pay
$1,000.00 for alleged damages to third parties brand new 2003 PT Cruiser, (which third party
Harrington was allegedly conning another individual to obtain this vehicle, this vehicle was
never owned by third party Harrington, which the plaintiff was under the assumption). This
transaction occurred in Gurnee, Illinois, ever since the Mc Henry Police Department started
additional surveillance of the Dominick's parking lot at night.

39. On or about, January 10th, 2003, the plaintiff lent third party Harrington another $750.00 for
miscellaneous expenses from his paycheck from Household International (Household
Finance).

40. On or about, January 17th, 18th, 23rd, 24th, and February 7th, 2003, the petitioner borrowed
money from several payday loan places including Short Term loan, Universal Cash Express,
and U.S. Cash Express, and American Cash-N-Go, for the purpose of repairing a universal
place for both him and third party Harrington to reside at, this place would have been closer
to the Plaintiff's employer Household International located in Prospect Heights, Illinois. The
Plaintiff was unaware of third party Harrington having a wife or a child. Until, this point that
the money, lent back in October and November was used to pay for his child's expenses.

41. On or about, February 14th, 2003, the plaintiff, lent $4,800.00 to third party Harrington to pay
for his Summer Semester Tuition, a school he never attended or enrolled.

42. On or about, March 1st, 2003, plaintiff RICHARDS went to Consumer Credit Counseling
Services, seeking advice about a debt reduction repayment plan. At this time, the plaintiff's

counselor Peggy Sarbaugh and Virginia Peschke thought the debt was at a magnitude, that

they advised the plaintiff he should seek advise from a bankruptcy attorney.

43. On or about, March 14th, 2003, plaintiff RICHARDS files bankruptcy in the Northern Illinois

District Court – Western Division, located at, 211 South Court Street, Rockford, Illinois

61101, under case number 03-71403, after consulting with three attorneys.

44. On or about, April 11th, 2003, Department of Justice – Trustee's Office sends the petitioner a

letter stating that they believe that the plaintiff may have sufficient income to file under a

Chapter 13 bankruptcy plan. Their office requested additional information.

45. On or about, April 12th, 2003, plaintiff request a 401(k) hardship withdrawal to purchase a

mobile home to free up his income to debt a ratio, to proceed under a Chapter 13 bankruptcy

plan.

46. On or about, April 21st, 2003, plaintiff RICHARDS attends his "Meeting of the Creditor's

(pursuant to Title 11 U.S.C. §341(a) at which time he meets defendant, James E. Stevens a

private bankruptcy trustee.

47. On or about, April 23rd, 2003, plaintiff RICHARDS receives his application for the 401(k)

hardship withdrawal.

48. On or about, April 23rd, 2003, the Department of Justice – Trustee's Office replied back to

the petitioner informing him that he should continue under a Chapter 7.

49. On or about, April 25th, 2003, plaintiff RICHARDS receives his 401(k) hardship withdrawal

check in the amount of $45,662.13 dollars for the purpose to purchase a mobile home to free

up his income to debt ratio to repay his creditors in a Chapter 13 bankruptcy plan.

50. On or about, April 29th, 2003, plaintiff RICHARDS, in conjunction with Harris Bank branch

manager Thomas Stronner was depositing the check into a savings account when third party

Harrington interfered with the petitioner's prospective contractual agreement by phone harassment. Plaintiff RICHARDS entrusted the check $45,662.13 dollars to Harrington whose intentions were to permanently deprive the plaintiff of his funds.

51. On or about, May 6th, 2003, third party's father informs plaintiff RICHARDS that his son may have stolen the funds from Plaintiff RICHARDS.

52. During the time period of May 6th through May 9th, 2003, third party Harrington removes the remaining $29,000.00 dollars from the bank with the intent to impede the plaintiff from recovering the funds.

53. On May 7th, 2003, plaintiff RICHARDS went to the restaurant, the Olive Garden, located at 5590 Northridge Drive, Gurnee Illinois 60031, to meet third party Donald James Harrington's father, James Harrington, to see if we could influence, his son to return the funds, back to plaintiff, Terence Bruce Richards.

54. Plaintiff Richards, on May 9th, 2003, sat down with third party, Donald James Harrington to discuss the return of the checks, with no avail. Donald James Harrington, requested that the third party, Donald James Harrington, requested the plaintiff to follow back to his house, where he attempted to accuse the plaintiff of trespassing.

55. On or about, May 10th, 2003, after determining that the funds were stolen, plaintiff Richards files a police report with the Gurnee Police Department, in conjunction with third parties father. The police report was based on the hearsay intentions of third party, Donald James Harrington using the funds for tuition at Carthage College, a school he never attended or enrolled, and not based on personal knowledge that the funds were going to be used to purchase a mobile home to repay his creditors.[5]

---

[5] The arrest warrant, based on a set of facts for stolen funds that would be placed in In Rem Jurisdiction, under the Barton's doctrine, in adversary hearing 03A7083.

56. On or about, May 21st, 2003, plaintiff RICHARDS files a motion to recover the stolen
property from third party, Harrington in the Northern Illinois Bankruptcy Court – Western
Division, to be heard by Bankruptcy Judge Manual Barbosa.

57. On or about, May 28th, 2003, plaintiff's motion to recover the stolen property is heard by
Bankruptcy Judge Manual Barbosa, plaintiff informs the bankruptcy trustee about the stolen
property.

58. On or about, June 10th, 2003, third party, James E. Stevens files a motion to rescind the "No
Asset Report".

59. On or about, June 11th, 2003, Bankruptcy Trustee, James E. Stevens moves to rescind the No
Asset Report – the hearing was held on July 9th, 2003 at 9:30a.m.

60. On or about, June 12th, 2003, third party James E. Stevens files an adversary complaint
(03A7063) to recover the stolen property under Title 11 Section 548 for the amount of
$36,000.00 dollars.

### *False light #1*

61. On or about, July 28th, 2003, Lake County State's Attorney's office arrest third party Donald
James Harrington on the theft of the $45,662.13, the arrest was based on third party's hearsay
intentions of using the money for tuition at Carthage College, a school he never attended or
enrolled, not based on personal knowledge the funds were going to be used to purchase a
mobile home to free up his income to debt ratio to repay his creditors.

> Ct. 1 in that the said defendant, through a series of acts which are
> part of the same comprehensive transaction, knowingly
> obtained by deception, control over property of Terence
> Richards, being money, having a total value in excess of
> $300.00, intending to deprive Terence Richards permanently
> of use of the property in that defendant told Terence Richards that
> he needed money for payment of tuition, fees, and books at Carthage
> College, when in fact the defendant was not a student at, nor been

accepted as a student at Carthage College. [Information and warrant 03 CF2708]

62. On or about July 29th, 2003, defendant STEVENS files adversary hearing 07- 07083 against

Donald James Harrington for the stolen monetary equivalences. The summons is issued on

July 30th, 2003, with an answer due on August 29th, 2003, and the status hearing is held on

September 8th, 2003 at 9:30a.m. at the Federal Building, 211 South Court Street, Rm. 115,

Rockford, Illinois 61101.

63. On or about, September 8th, 2003, Status hearing was continued until September 29th, 2003,

at 10:00a.m.at the Federal Building.

64. On or about, August, 25th, 2003, defendant KLEINHUBERT sets the preliminary hearing for

September 3rd, 2003, in the Lake County Courthouse.

65. On or about, September 3rd, 2003, defendant, Lake County State's Attorney's office indicts

third party, Donald James Harrington on the theft of the $45,662.13 dollars, the indictment

was based on third party, Donald James Harrington hearsay intentions of using the money for

tuition at Carthage College, a school he never attended or enrolled, and not based on personal

knowledge that the funds were going to be used to purchase a mobile home to free up his

income to debt ratio to repay his creditors.[6]

> Count 1. That the grand jurors chosen, selected, and sworn, in and
> for the County of Lake, in the State of Illinois, having been duly
> recalled, in the name and by the authority of the People of the State
> of Illinois, upon their oaths present that DONALD HARRINGTON
> DOB 11/15/79, hereinafter called the defendant, between April 29th, 2003
> and March 10th, 2003, in the County of Lake and State of Illinois, committed the
> offense of THEFT, in that the said defendant through
> a series of acts which are part of the same comprehensive transaction,
> knowingly obtained by deception, control over property of Terence Richards,
> being money, in excess of $10,000.00 but not in excess of
> $100,000.00, intending to deprive Terence Richards permanently of
> the use of the property, in that the defendant told Terence that he needed

---

[6] See Petition for Leave to file Motion to Vacate in the Northern District Court, pursuant Fed. R.
Civ. P. 60(b)(3) and 60(b)(4), filed in the Appellate court, under case number 07-2289.

money for payment of tuition, fees, and books at Carthage College, when
in fact the defendant was not a student at, nor been accepted as a student
at Carthage College, in violation of 720 ILCS 5/16-1(a)(2)(A); contrary
to the form of the Statutes in such case made and provided, and against
the peace and dignity of the People of the State of Illinois.

66. On or about, September 8th, 2003, Status hearing was continued until September 29th, 2003,

at 10:00a.m.at the Federal Building in Rockford, Illinois.

67. On or about, September 29th, 2003, Status hearing is continued until October 20th, 2003, at

10:00a.m., in the Federal Building in Rockford, Illinois.

68. On or about, October, 1st, 2003, Notice of Motion, and Motion for Sanctions against Donald

James Harrington, filed by defendant STEVENS, to be heard on October 22, 2003 at

10:00a.m. at the Federal Building in Rockford, Illinois.

69. On or about, October 20th, 2003, SHOW CAUSE hearing to be held on November 17, 2003,

at 10:00a.m. at the Federal Building, in Rockford Illinois.

70. On or about, October 22nd, 2003, Order granting Motion for sanctions.

71. October, 23rd, 2003, Alias Summons Issued on Donald Harrington Date Issued 10/23/2003,

Answer Due 11/24/2003. Status hearing to be held on 11/3/2003 at 10:00a.m. in the Federal

Building in Rockford, Illinois.

72. On or about, October 23rd, 2003, plaintiff RICHARDS after discovering the mistakes in the

indictment, faxed actual knowledge of the crime victim's Act 725 ILCS 120/4 to the Lake

County prosecutor, with the "Right to communicate to the prosecutor" highlighted in bold

letters.

73. On or about, October 28th, 2003, plaintiff RICHARDS, appears, in the criminal court room

201, in the Lake County Courthouse, with his private attorney Jack W. Rosen, pursuant to the

same Crime Victim's Act 725 ILCS 120/4, the date was set for a Pre-Trial hearing, where

20

they set the date for a jury trial, the jury trial, was originally set for November 17th, 2003.

plaintiff RICHARDS attempts to communicate with the county prosecutor, defendant

KLEINHUBERT, who informs the plaintiff with a pre-textual statement, that he cannot have

ex-parte communication with the victim.[7] Defendant KLEINHUBERT, was sitting at the

attorney's table nearest to the entrance door to courtroom 201, (first person on the left, of

three people), when plaintiff RICHARDS, made this ministerial request.

74. On or about, November 3rd, 2003, Bankruptcy Judge Manual Barbosa enters a second

judgment against, third party Donald James Harrington, for the funds (cash, including the

$6,800, which was stolen on November 12th, 2002, $5,000, which was stolen on January 2nd,

2002, and $4,800 which was stolen on February 14th, 2003, based on the set of facts, that the

third party, Harrington was being prosecuted for in the Lake County criminal hearing).

75. On or about, November 28th, 2003, the bankruptcy trustee, James E. Stevens, files a Citation

discover Assets, at the Northern Illinois Bankruptcy Court, located at 211 South Court Street,

Rockford, Illinois, 61101, against, third party Donald James Harrington to find out what

assets are still remaining. Proceedings, after that, the bankruptcy trustee, James E. Stevens,

attempted to discover what money was in third party's bank account.

76. On or about, December 5th, 2003, in the Lake County courthouse, in room 201, the third

party's attorney, Christopher Lambardo, moves to withdraw, as the attorney on record.

Plaintiff Richards, speaks to his private attorney, Jack W. Rosen, as to the possibility of

them, speaking to defendant, KLEINHUBERT. Plaintiff RICHARDS, attorney, Jack W.

Rosen informs, plaintiff RICHARDS, that he does not need him, to speak to the prosecutor,

that the plaintiff, should proceed to speaking to him, on his own accord. Plaintiff,

---

[7] Plaintiff Richards, made a mistral request on October 23rd, 2003, for the second request to
follow up on October 28th, 2003, see 70 B.R. 356. The statement made by Defendant Kleinhubert
was pre-textual, to cover up his discriminatory intent.

21

RICHARDS, attempts to talk to defendant KLEINHUBERT, while he was filling out some

forms, standing next to the witness stand, using the railing as a table to do his writing.

77. On or about, December 29th, 2003, defendant STEVENS moves Defendant BARBOSA to

enter an order for Rule To Show Cause for the following:

> It is ordered based on a Rule to Show Cause as follows:
>
> (a) 1992 BMW 535i auto and title
>
> (b) 2 years of bank statements from National City Bank
> for all accounts of Donald Harrington
>
> (c) 2 cell phones
>
> (d) Tires and rims held at Waukegan Tire
>
> (e) Carpeting from mobile home
>
> (f) Stereo from wife's auto

78. On or about, January 7th, 2004, Plaintiff RICHARDS terminates his contract with Jack W.

Rosen, in attempt to communicate, with Lake County prosecutor, defendant

KLEINHUBERT.

79. On or about, January 9th, 2004, the Lake County Judge, James Booras, moves to quash, the

warrant, set for a missed court date on December 5th, 2003, by Donald James Harrington. The

Lake County prosecutor, Defendant KLEINHUBERT maliciously, willfully, arbitrarily, and

irrationally acted in deliberate indifference, by imputing a conscientious false and misleading

statement, that statement being 'the prosecutor cannot have ex-parte communication with the

victim'.

80. On or about, January 22nd, 2004, defendant KLEINHUBERT enters into a plea agreement for

a reduced charge with no restitution for the victim.

81. As a direct and proximate result of one or more of the aforesaid acts or omissions of the defendant KLEINHUBERT, Plaintiff RICHARDS was caused to suffer damages.

82. On or about, January 22nd, 2004, defendant KLEINHUBERT was on duty at all times relevant to this complaint and was a duly appointed Assistant State's Attorney for the defendant COUNTY OF LAKE via the State's Attorney's Office. defendant KLEINHUBERT engaged in the conduct complained of, on said date, in the course and scope of employment and while on duty. This action is brought with regard to the individual capacity of the defendant KLEINHUBERT.

Equal Protection

83. The actions of the defendant KLEINHUBERT of generating a false statement to Plaintiff RICHARDS, (that prosecutor's cannot have ex-parte communication with the victim), demonstrates that defendant KLEINHUBERT failed in his duty to enforce the laws equally and fairly towards the Plaintiff RICHARDS, therefore violating the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

84. With respect to the Equal Protection claim, Plaintiff RICHARDS was a "Class of One" in that regard Plaintiff RICHARDS was treated with ill will and/ or discriminated against with no rational basis. Plaintiff RICHARDS was intentionally treated differently due to his sexual orientation with a physical impairment. Defendant KLEINHUBERT acted with discriminatory intent by treating plaintiff RICHARDS differently and trying to cause further injury to plaintiff RICHARDS by generating false statements against the plaintiff RICHARDS. Further, plaintiff RICHARDS was similarly situated to other individuals to

**23**

defendant KLEINHUBERT, third party Donald James Harrington's probation was never

revoked, after he violated every condition in the probation agreement.

SPECIFIC ALLEGATIONS REGARDING EQUAL PROTECTION CLASS OF ONE
(ALTERNATIVE PLEADING) (CITY OF WAUKEGAN)

85. Defendant KLEINHUBERT has prosecuted over 20 individuals prior to plaintiff's case.

86. On or about 20 occasions prior to October 23rd, 2003, defendant KLEINHUBERT never

made false statements to other victim's.

87. On or about 20 occasions prior to October 23rd, 2003 defendant KLEINHUBERT has not

partaken in, or contributed to, the falsification of false statements to victims.

88. On at least 20 occasions prior to October 23rd, 2003, wherein the defendant KLEINHUBERT

has had occasion to communicate to victims, he always spoke to them, who were similarly

situated to plaintiff RICHARDS, under those circumstances.

89. On October 23rd, 2003, there was no reasonable reason for the defendant

KLEINHUBERT to make false statements that prosecutor(s) cannot have ex-parte

communication with the victim, plaintiff RICHARDS.

MONELL ALLEGATIONS
(COUNTY OF LAKE)

90. It is the custom, practice, and/or policy of prosecutors and/or their supervisors/agents and/or

employees of the COUNTY OF LAKE to perform the following acts and/or omissions:

(a) Fail to communicate with victims of crimes.

(b) Engage in acts of unreasonable violations of Crime Victim's Act of Illinois
Statutes;

**24**

(c) Fail to properly discipline prosecutor(s) from said State's Attorney's Office who have committed act(s) of unreasonable violations of the Crime Victim's Act of Illinois Statutes;

(d) Fail to properly investigate a complaint of unreasonable violations of the Illinois Crime Victim's Act perpetrated by a COUNTY OF LAKE prosecutor(s) upon another;

(e) Fail to take proper remedial action against a COUNTY OF LAKE prosecutor's once it is determined that an act of unreasonable violations of the crime victim's act has been committed by said prosecutor upon another;

(f) Allow misconduct to occur in various types and severity such that prosecutor(s) believe that they can engage in unreasonable violations of the crime victim's act without repercussions and/or significant repercussions;

(g) Fail to provide adequate sanctions/ discipline to prosecutors who commit unreasonable violations of the Crime Victim's Act such that a permissive atmosphere exists among prosecutors wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in such behavior;

(h) Fail to take proper remedial measures to prevent and/or correct prosecutors who fails to make investigations and/or internal investigations,

(i) Fail to properly investigate prosecutors who commit acts of unreasonable violations of the Illinois Crime Victim's Act such that a permissive atmosphere exists among prosecutor(s) wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

(j) Fail to provide proper training to prevent prosecutors from committing acts of violations of Illinois Crime Victim's Act and violating the rules, policies, and procedures of the COUNTY OF LAKE State's Attorney's Office.

91. This practice and/or custom, as alleged above, has gone unchecked and been allowed to exists in the COUNTY OF LAKE for a significant period of time, so much so, that prosecutor(s) for the COUNTY OF LAKE recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers of the COUNTY OF LAKE State's Attorney's Office in order to permit said conduct to re-occur.

*False light #2*

92. On or about, January 26th, 2004, Defendant STEVENS receives and reviews a letter from

    plaintiff RICHARDS, asking to terminate the court proceedings, because, he was getting

    pressure from work, that the proceedings have gone on too long, and that plaintiff

    RICHARDS, having to attend all the court proceedings in Rockford, Illinois is taking to

    much time away from the corporations time and money.

93. On or about, February 10th, 2004, defendant STEVENS replies back plaintiff RICHARDS,

    denying his request.

94. On or about, February 9th, 2004, the bankruptcy court entered the following order:

> Defendant Harrington shall appear before this court on 2/3/2004
> at 10:00a.m. & produce at that time all documents relating to his
> loan with American Title Loan Co. of Kenosha Wisconsin and
> repossession of the 1992 BMW & 2 years of bank records
> from National City Bank or written denial of such request
> from that financial institution.

95. On or about March 8th, 2004, the third party, Donald James Harrington fails to appear in

    court. The proceedings are continued until March 15th, 2004.

96. On or about, March 9th, 2004, plaintiff Richards, depressed and deprived of all reasonable

    alternatives, composes a false letter, that he did not send to the bankruptcy trustee, but left in

    plain view on his desk at work. The bankruptcy trustee, receives a copy of this letter, alleging

    his financial knowledge, from working at HSBC Technology & Services (USA) Inc. There

    was no element of intent in the letter. However, the last line of the letter, stated, that both

    Donald James Harrington, and himself, should be prosecuted, leaving the element of intent

    open for a jury to decide.

97. On or about, March 11th, 2004, defendant STEVENS has a phone conference with the United States trustee, regarding 727 issues.

98. On or about, March 12th, 2004, there was a meeting at defendant STEVENS office, plaintiff Richards, is contacted by his supervisor, Robert Barry to come in on Monday, March 15th, 2004, to sit down with Vice President of Human Resources, Michael Woodward.

99. On or about, March 15th, 2004, in the Bankruptcy Court in Rockford, Illinois, third party Donald James Harrington, shows up, and afterwards, Plaintiff Richards reports to his employer, and meet with Michal Woodward, with human resources, who deprives, plaintiff RICHARDS, of his constitutional right, of Due process, by acting in reckless disregard for the truth, by treating the "letter" as material fact, and not as suspicion. Failing to consider all the elements of fraud, including the element of intent. Plaintiff RICHARDS is terminated from his employment, based on this false letter.

100. On or about, March 15th, 2004, through March 30th, 2004, Plaintiff RICHARDS withdraws the remaining balance from his 401(k) funds, minus outstanding loans and taxes, totaling $23,000.00

101. On or about, March 20th, 2004, Donald Harrington went to Jack-son Auto Sales and sees an 1973 Chevy Nova that he liked

102. During this time period, plaintiff RICHARDS gets numerous phone calls from Donald James Harrington, will I forgive him for the theft, and would I be interested in going partners with him in getting a 1973 Chevy Nova. [8]

103. On April 2nd, 2004, plaintiff RICHARDS went to Jack-son Auto sales with the cash balance of $13,512.50 Plaintiff RICHARDS, was going to buy the car, because, plaintiff's

---

[8] Plaintiff Richards is getting set up for another deception, so third party Harrington, can shift the blame from him, to plaintiff RICHARDS.

27

father owned one, and that was the first car, plaintiff RICHARDS, used to learn how to drive, when he was fifteen years old.

104. Third party Donald James Harrington, talked Plaintiff RICHARDS out of taking the car home that night,

105. Plaintiff RICHARDS went back on April 3rd, 2004, to terminate the deal, there were mechanical problems, the tires were oversized for the vehicle, and with the plaintiff, being overweight, the tires rubbed.

106. The sales manager and sales person informed plaintiff RICHARDS, they will not terminate the deal, without first, being paid $2,000.00, and issuing the check in both Donald James Harrington and the Plaintiff RICHARDS name.

107. Third party Donald James Harrington, and plaintiff RICHARDS, cash that check, and plaintiff RICHARDS, places the money in the glove box, and gets away from third party Donald James Harrington. Third party Donald James Harrington cons, plaintiff RICHARDS, into meeting for third party Donald James Harrington can steal, the money from the glove box, and buys a 1966 Chevy Impala.

108. On or about, April 18th, 2004, Bankruptcy Trustee, James E. Stevens request the court to issue a bench warrant for third patty Donald James Harrington's contempt on the Court, the court holds the decision until April 29th, 2004. The warrant was never issued.

109. On or about, April 28th, 2004, third party Donald James Harrington, was ordered to deliver to Defendant STEVENS by 5/19/2004, the following items:

      1.) Car Stereo

      2.) Documents Re: Sale of 1992 BMW & carpeting

      3.) 2 years of defendant(s) bank statements

**28**

Cause continued to 6/2/2004 @ 10:00 for status, Bench warrant
Previously issued is stayed until 6/2/2004

110.    Before, plaintiff RICHARDS, arrest, there was no evidence to suggest that Mr. Richards

had committed any criminal acts or acted in any inappropriate manner, so defendant

SZUCHNICKI fabricated evidence by placing the plaintiff inside the Courtroom 201 of the

Lake County Courthouse to support his arrest and continue his prosecution.

111.    On or about, May 2nd, 2004, Bankruptcy Trustee James E. Stevens receives the stolen

BMW, that the third party Donald James Harrington informs the bankruptcy court, was

confiscated by American Title Loan Co of Kenosha Wisconsin.

112.    On or about, May 3rd, 2004, third party Donald James Harrington contacts plaintiff

RICHARDS, with the intent to provoke him, with criminal charges, Plaintiff RICHARDS

was hoping, he was calling to settle, and pay what he owed, Plaintiff RICHARDS

> On 5/30/04 at 10:50a.m. Donald J. Harrington called the Waukegan
> Police Department front desk to make this police report. Donald stated
> That recently he has received several phone calls from Terence B. Richards at
> home and on his cell phone. Donald stated that he has
> made police reports against Terence before in the past for harassment
> (see reports 03-47676 and 03-38382) and has told Terence not to
> call him any more, but Terence is in love with him and tries to win
> his love by buying him materialistic things. Donald stated that when
> he tells Terence to leave him alone or stop calling Terence goes to
> the police to make a report against Donald for theft.
> Donald stated that when he tells Terence to leave him alone
> or stop calling Terence goes to the police to make a report
> against Donald for theft. Donald stated that if one police department
> refuses to take a police report Terence will go to another police
> report department tell them that the crime happened in their town
> or jurisdiction. Donald stated that Terence has invited him to gay
> bars in Chicago and always ask Donald if he wants to have sex
> with him. While Donald was on the phone with me. Terence was
> calling him on his phone. I hung up the phone with Donald and ended
> the conversation with him. I provided him with the report number and
> told him now follow up on this report.
> I called Terence at (815) 403-6528 but did get an answer on the
> phone At or about 1:00a.m. I received a phone call from Terence

29

at the front desk. I told Terence not to call Donald on the phone anymore.
Terence denied calling Donald and stated Donald has been harassing
him. I told Terence that a report was made against him and I told him
to stop calling. Donald or he will be arrested. I ended the conversation
with Terence. Terence told me that Donald was upset because Terence
had made a police report against him. Donald advised me that he
wished to pursue this report.

113.    On or about, May 3rd, 2004, the third party contacts the Waukegan Police Department to

file alleged phone harassment charges against the Plaintiff.

114.    During the time period of May 3rd, 2004, and May 18th, 2004, the third party, Donald

James Harrington contacts the Plaintiff requesting the plaintiff to contact him for a twofold

purpose:

        a.) To extort another $3,000.00 from the Plaintiff

        b.) To have the plaintiff falsely arrested

115.    On or about, May 3rd, 2004 at 10:36p.m., third party Donald James Harrington contacts,

Plaintiff RICHARDS:

Hey what's up? It's 10:30. Um, I was thinking of going to Chicago
You said you were busy with your jet ski or what ever. And, I was just
Calling to say you know, you want to go out to Chicago and check it out.
They have Bingo on Monday and Tuesday. So, that is what I was thinking
about doing. I was just calling to let you know. Alright, bye.

116.    On or about, May 5rd, 2004 at 10:36p.m., third party Donald James Harrington contacts,

Plaintiff RICHARDS:

Hey what's up? It's 10:30. Um, I was thinking of going to Chicago
You said you were busy with your jet ski or what ever. And, I was just
Calling to say you know, you want to go out to Chicago and check it out.
They have Bingo on Monday and Tuesday. So, that is what I was thinking
about doing. I was just calling to let you know. Alright, bye.

117.    On or about, May 5th, 2004, at 10:21a.m. Third party Donald James Harrington contacts,

Plaintiff RICHARDS:

30

Hey man, I'm still in Rockford, Alright, Bye

118.   On or about, May 8th, 2004, at 5:34p.m., third party Donald James Harrington contacts,

Plaintiff RICHARDS:

Hey give me a call. Alright Bye.

119.   On or about, May 11th, 2004 at 2:52p.m., third party Donald James Harrington contacts,

Plaintiff RICHARDS:

So, what's up Terry, so you're not talking to me anymore? I haven't
heard from you at all today. You usually text message me, saying good
morning, I haven't heard from you at all today. So, just want to know
what's up. Alright. Bye.

120.   On or about, May 11th, 2004 at 3:55p.m., third party Donald James Harrington contacts,

Plaintiff RICHARDS:

So, what's up? You tell me to call you today. I called you today. I
thought we were going to get together, go out and do something. I
thought we would hang out for awhile, and you don't even call
somebody bak. I have been calling you all morning. So, ah, you
can't blame this one on me. Alright, talk to you later, Bye.

121.   On or about, May 12th, 2004 at 11:49a.m. third party, Donald James Harrington contacts,

Plaintiff RICHARDS:

Hey, uh, Terry, when you get this message, um, it's me, Don, just
call me. Alright. It's about 11:45 Talk to you later, bye.

122.   On or about, May13th, 2004 at 3:48p.m., third party Donald James Harrington contacts,

Plaintiff RICHARDS:

Hey, when you get this message, it's huh, it's almost 4:00p.m. I don't
know what your doing. Maybe, you'll like to go out tonight. I'm not going
to blow you off. So, if you want to call me, you can. The only reason, I
did that yesterday. Is to show you what it is like. To get blown off. So,
uh, just call me.

123.    On or about, May 13th, 2004 at 4:10p.m., third party Donald James Harrington contacts,

Plaintiff RICHARDS:

> So, what's the reason for hanging up on me today? I would
> like to hear this one. I was just wondering why your not talking
> to me, and just hanging up on me, and sh___. Maybe, you can
> explain that to me. I would like to know what the hell is going
> on with you. You're not talking to anybody, you're not talking
> to me. When you get this message, if you would like you can
> text message me or call me back, what ever you would like to do.
> Talk to you later. Bye.

124.    On or about, May 13th, 2004, at 11:35p.m. third party Donald James Harrington contacts,

Plaintiff RICHARDS:

> Hey, call me when you get this message.

125.    On or about, May 17th, 2004, at 4:12p.m., third party Donald James Harrington contacts

Plaintiff RICHARDS:

> Hey call me back, bye.

126.    On or about, May 18th, 2004, at 1:05a.m., third party Donald James Harrington contacts

Plaintiff RICHARDS:

> Hey, Terry it's me Don. Um, it's 1:05, and my phone got shut off.
> I don't know if you're getting my text messages, I don't know if your
> getting any kind of message. Um, But huh, I'll call you back. Alright,
> talk to you later. Bye.

127.    On or about, May 18th, 2004, defendant SZUCHNICKI reads a police report from third

party Donald James Harrington, defendant SZUCHNICKI informs the third party Donald

James Harrington to stop contacting the plaintiff RICHARDS, otherwise there is no probable

cause for an arrest.

128.     On or about, May 25th, 2004, the third party contacts the plaintiff RICHARDS, by

harassment, he continues the phone calls until the Plaintiff picks up the phone, tired of the

harassment, agrees to meet third party Donald James Harrington.

129.     On or about, May 26th, 2004, Plaintiff RICHARDS, working with Crime Stoppers, and

the Gurnee Police Department agrees to meet third party Harrington at the Denney's in

Gurnee, Illinois. The third party, Harrington arrested on an outstanding warrant, for missing a

court date, on May 17th, 2004, on a different theft charge case.

130.     On or about, May 27th, 2004, the third party's wife goes to the Waukegan Police

Department, to inform the detective that her husband was arrested in the process of meeting

the Plaintiff. Acting out of actual malice of ill-will for the purpose of retaliation, and not for

the purpose of promoting justice, to inflict a charge upon the Plaintiff, in return.

131.     On or about, May 21st, 2004, Plaintiff RICHARDS is contacted by the Gurnee Police

Department, Officer Morris, who arrested third party Harrington, for the theft of the

$45,662.13. The Gurnee Police Officer, Officer Morris ran out to the Plaintiff's automobile

during the arrest, to retrieve the Plaintiff's cell phone, which contained the 18 messages, that

third party Donald James Harrington left on Plaintiff's cell phone. The messages which

ended on May 18th, 2004, the same day the defendant read the police report, and informed the

third party to stop contacting the plaintiff.

132.     After the arrest, Plaintiff RICHARDS was transferred from the Gurnee Police Station to

the Waukegan Police Station, by a Waukegan Police Officer. Plaintiff RICHARDS had to

post bail of $500.00. Plaintiff, RICHARDS, had medical problems, which prevented him

from staying overnight, to go to bond court to play the messages for the bond court judge, so

the plaintiff, can display that there was no probable cause for the Plaintiff's arrest.

33

133. On or about, June 2nd, 2004, Defendant SZUCHNICKI, aided by third parties wife to obtain a temporary order of protection, remanding the third party Donald James Harrington from the Lake County Jail, for the purpose to testify. The temporary Order of Protection was issued.

134. On or about, June 3rd, 2004, Plaintiff RICHARDS, at the courthouse noticed that there was an outstanding Order of Protection, and went to the warrants desk, at the Lake County Sheriff's office, to retrieve a copy of the Order of Protection, and to save the Sheriff's from having to serve the Plaintiff at the Plaintiff's place of residence.

135. On or about, June 4th, 2004, Plaintiff RICHARDS, while at the Lake County Courthouse, located at 20 No. County Street, Waukegan Illinois, 60085, attended a motion hearing, for a small claims court claim. After, the hearing, Plaintiff went to the second floor, of the courthouse, to go to his automobile, in the attached building, through the overpass tunnel, when a third person stop him to ask him (plaintiff), what time it was, when the plaintiff turned around, the protected person, Lourdes Harrington, Donald James Harrington's wife, approached stating "Don't you know that there is an order of protection, preventing you from being near me or my husband. Plaintiff RICHARDS, exited through the nearest exit, which was only two feet away, without saying any word to Lourdes Harrington. Went outside to walk to his car outside the building.

136. At 2:00p.m., on June 4th, 2004, the third party, Donald James Harrington and Lourdes Harrington went to the Waukegan Police Department, to file a police report. The victim's statement stated "that the plaintiff RICHARDS was in the courthouse hallway, and not in the courtroom, with animosity, and for the purpose to provide probable cause, with animosity, redrafted the victim's statement's placing the Plaintiff inside the courtroom.

**34**

137. The Plaintiff, while at the Courthouse, On June 8th, 2004, for the purpose of holding a trial, for case number 04 SC 1903, against Jack-son Auto sales, went downstairs to the courthouse filing room, when third party Donald James Harrington, noticed the Plaintiff inside the courtroom, filing room, and went to the security's office to report the incident. The courthouse security investigated and found that the plaintiff was there on official courthouse business. Meanwhile, they contacted defendant SZUCHNICKI to arrest the Plaintiff.

138. The same day, plaintiff was transferred to the Waukegan Police Department by an unidentified, third person, Waukegan Police officer, to be booked on violating an Order of Protection. Plaintiff RICHARDS, was transferred to the bond court, by Detective SZUCHNICKI who made the following statement "the party is now over"

139. On or about June 23rd, 2004, Plaintiff RICHARDS went to the plenary hearing on the Order of Protection, and the plaintiff played the 18 messages for the court, demonstrating that there was no probable cause to issue a two year "Order of Protection" The court found lack of credible evidence to issue a two year "Order of Protection". Defendant SZUCHNICKI failed to investigate the truth.

140. As a direct and proximate result of one or more of the aforesaid acts or omissions of the defendant SZUCHNICKI, Plaintiff RICHARDS was caused to suffer damages.

141. On or about, June 8th, 2004, defendant SZUCHNICKI was on duty at all times relevant to this complaint and was a duly appointed police officer for the defendant CITY OF WAUKEGAN via the Waukegan Police Department, defendant SZUCHNICKI engaged in the conduct complained of, on said date, in the course and scope of employment and while on duty. This action is brought with regard to the individual capacity of the defendant SZUCHNICKI.

35

Equal Protection

142.    The actions of the defendant SZUCHNICKI, in engaging in the above referenced cover-

up, which led to the generation of false documentation and criminal charges to be lodged

against plaintiff RICHARDS, demonstrates that defendant SZUCHNICKI failed in his duty

to enforce the laws equally and fairly towards the plaintiff RICHARDS, therefore violating

the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

143.    With respect to the Equal Protection claim, plaintiff RICHARDS was a "Class of One" in

that regard plaintiff RICHARDS was treated with ill will and/ or discriminated against with

no rational basis. Plaintiff RICHARDS was intentionally treated differently as a result of the

fact, that Lourdes Harrington and Donald James Harrington are and/or were friends of the

defendant SZUCHNICKI, who arrested the plaintiff, due to his sexual orientation with a

physical impairment. Defendant SZUCHNICKI acted with discriminatory intent by treating

plaintiff RICHARDS differently and trying to cause further injury to plaintiff RICHARDS by

generating false evidence against the plaintiff RICHARDS. Further, plaintiff RICHARDS

was similarly situated to other individuals, defendant SZUCHNICKI, arrested who were not

homosexuals with a physical impairment.

SPECIFIC ALLEGATIONS REGARDING EQUAL PROTECTION CLASS OF ONE
(ALTERNATIVE PLEADING) (CITY OF WAUKEGAN)

144.    Defendant SZUCHNICKI has arrested over 20 individuals prior to the arrest of the

Plaintiff.

145.    On or about 20 occasions prior to June 8th 2004 the defendant SZUCHNICKI has not

falsified police reports.

36

146.    On or about 20 occasions prior to June 8th, 2004 defendant SZUCHNICKI has not

partaken in, or contributed to, the falsification of police reports.

147.    Defendant SZUCHNICKI has been trained, prior to June 8th, 2004, that upon the signing

of a criminal complaint, there is a strong likelihood that a criminal action will commence

against the party against whom the allegations are submitted in the criminal complaint.

148.    Defendant SZUCHNICKI, on at least 20 occasions prior to and/or after June 8th, 2004,

has arrested individuals and has not falsified information contained within a police report

with regard to the arrest.

149.    Defendant SZUCHNICKI, on at least 20 occasions prior to and/or after June 8th, 2008,

has signed criminal complaints and has not falsified information contained within said

charging instruments.

150.    On June 8th, 2004, there was no reasonable reason for the defendant SZUCHNKCI to

falsify a police report and/or criminal complaint with respect to Plaintiff.

MONELL ALLEGATIONS
(CITY OF WAUKEGAN)

151.    It is the custom, practice, and/or policy of public officers and/or their supervisors/agents

and/or employees of the CITY OF WAUKEGAN to perform the following acts and/or

omissions:

    (a) Generate false documentation to obtain a warrant for an individual's arrest;

    (b) Generate false documentation to cover-up for the misconduct of fellow police
        officers;

    (c) Engage in acts of unreasonable seizure of individuals;

    (d) Fail to properly discipline officers from said police department who have
        committed act(s) of unreasonable seizure of individuals;

37

(e) Fail to properly investigate a complaint of unreasonable seizure of individuals perpetrated by a CITY OF WAUKEGAN police officer upon another;

(f) Fail to take proper remedial action against a CITY OF WAUKEGAN police officer once it is determined that an act of unreasonable seizure of individuals has been committed by said officer upon another;

(g) Allow misconduct to occur in various types and severity such that police officers believe that they can engage in unreasonable seizure of individuals without repercussions and/or significant repercussions;

(h) Fail to provide adequate sanctions/ discipline to officers who commit unreasonable seizure of individuals such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in such behavior;

(i) Fail to provide adequate sanctions/ discipline to officers who falsify police reports, investigations, and/ or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them not to be disciplined or significantly disciplined for engaging in illegal behavior; *inter alia* unreasonable seizure of individuals;

(j) Fail to take proper remedial measures to prevent and/or correct officers who falsify police reports; investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them not to be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia* unreasonable seizure of individuals;

(k) Fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations, and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules/ policies, and/or procedures of the CITY OF WAUKEGAN police department;

(l) Fail to properly investigate officers who commit acts of unreasonable seizure of property such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

(m) Fail to take proper remedial action with officers who commit acts of unreasonable seizure of property such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

38

(n) Fail to provide proper training to prevent officers from committing acts of unreasonable seizure of propery and violating the rules, policies, and procedures of the CITY OF WAUKEGAN police department.

152. This practice and/or custom, as alleged above, has gone unchecked and been allowed to exists in the CITY OF WAUKEGAN for a significant period of time, so much so, that police officers for the CITY OF WAUKEGAN recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers of the CITY OF WAUKEGAN police department in order to permit said conduct to re-occur.

### *False light #3*

153. On or about, June 17th, 2004, defendant HSBC TECHNOLOGY & SERVICES (USA) Inc., defendant STEVENS, and third party Donald and Lourdes Harrington, have a 'meeting of the minds' to do an overt act, of interfering with the Plaintiff's prospective contractual agreement. The meeting consisted, of defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. altering their Comprehensive Crime Policy to include the statement 'or third party", and claim, that the June 21st, 2004, policy, which was altered, the same day, the defendant's asked for an extension of time to file an answer or otherwise plead, and Defendant STEVENS role was to file an adversary hearing, to make the perception of the truth or falsity. (See Restatement of Torts: Section 602).

154. Defendant, HSBC TECHNOLOGY & SERVICES (USA) Inc., in the case 0400001489, in the Cook County Courthouse, was granted an extension of time, until July 31st, 2004, to answer or otherwise plead.

155. On or about, July 14th, 2004, bankruptcy trustee, James E. Stevens issues an complaint, to revoke the Plaintiff's bankruptcy discharge. The bankruptcy trustee never informed the

plaintiff, that he was revoking the discharge, because of the alleged criminal charges, causing

him to believe that the plaintiff was using the courts for the furtherance of relationship, rather

than legitimately attempting to recover the stolen property. The adversary hearing case

number was 07 A 7077.

156.    On or about, July 31st, 2004, defendant HSBC TECHNOLOGY & SERVICES (USA)

Inc. stated in to the plaintiff RICHARDS, and in open court, that they have qualified

immunity, due to the Comprehensive Crime Policy, this was false and misleading, because,

they altered the policy, just to impede, plaintiff RICHARDS, from recovering, his

employment.

157.    On or about, July 28th, 2004, there was a status hearing in the bankruptcy court, in the

federal court building, in Rockford, Illinois. 61101.

158.    On or about, September 11th, 2004, Plaintiff RICHARDS forwards his answer to the Title

11 Section 727 complaint.

159.    On or about, September, 13th, 2004, plaintiff, RICHARDS, attends a status hearing for

case 07 A 7077, he asks, defendant STEVENS, what is the status, before, the appearance

before defendant BARBOSA, plaintiff RICHARDS, informs defendant STEVENS, that he

plans to file an adversary hearing against Donald James Harrington, for the emotional

distress, defendant STEVENS threatens plaintiff RICHARDS, that he better not, if he knows,

what is good for him. Defendant, STEVENS, asks to hold off the hearing date, until

sometime in January. The hearing date is set for January 25th, 2005.

160.    On or about, October 3rd, 2004, Plaintiff RICHARDS, request to make a final amended

complaint. He is granted an extension of time until October 30th, 2004, and a status hearing

**40**

on November 18th, 2004. Depending on the pleading, there may be a mediation hearing

instead.

161.    On or about, October 18th, 2004, the bankruptcy trustee, James E. STEVENS, after

having private communication with the private bankruptcy trustee, abandons the creditor(s)

and the plaintiff's stolen property, for adversary hearing 07 A 7063 under Title 11 U.S.C.

§554, and no hearing or by the operation of the law, for adversary hearing 07 A 7083, where

the stolen property resided in In Rem jurisdiction, under the Barton's doctrine. Defendant

STEVENS alleged purpose to abandon stolen property is under the auspice, that it was to

burdensome, to keep going after someone, who was not co-operating with courts. Their true

intentions, was to abandon stolen property with the intent to permanently deprive the owner's

of their property, and give third party Donald James Harrington, a windfall of property, from

the creditor's who have a fiduciary relationship, with bankruptcy trustee, James E. Stevens.

> Plaintiff RICHARDS, attempts to talk to Defendant STEVENS,
> after the court hearing, Defendant STEVENS malicious and callous
> response, was I don't work for you, you're not my employer, I
> represent the creditors. How could and should, the plaintiff
> RICHARDS, communicate, with Defendant STEVENS in this
> type of personality attitude. (It's like to talking to a rock).

162.    Plaintiff RICHARDS attempts to speak to Mr. Jones, attorney in Woodstock, Illinois,

located at 138 Cass Street, Woodstock Illinois 60098, phone number (815) 344 – 8220, Mr.

Jones informs, Plaintiff RICHARDS, get out of my office, your case is crazy, before, I throw

you out, on the seat of your pants. Hoping to use, Mr. Jones as a mediator, between Plaintiff

RICHARDS, and defendant STEVENS.

163. On or about, November 19rd, 2004, defendant HSBC Technology & Services (USA) Inc. mediates, the case, and they offer to settle, but the offering did not have a prospective advantage. Plaintiff takes time to deliberate, his decision.

164. On or about, January 7th, 2005, Plaintiff, RICHARDS, settles, with defendant, HSBC TECHNOLOGY & SERVICES (USA) Inc. under duress.

165. As a direct and proximate result of one or more of the aforesaid acts or omissions of the defendant HSBC TECHNOLOGY & SERVICES (USA) Inc., Plaintiff RICHARDS was caused to suffer damages.

Conspiracy - 2004

Defendant HSBC TECNOLOGY & SERVICES (USA) Inc. conspired to cause damage to cause damage to plaintiff RICHARDS in the following manner:

   a.) Agreeing to wrongfully interfere with the Plaintiff's prospective contractual agreement, by falsely alter a Comprehensive Crime Policy, and then hold the Adversary hearing 04A7077, to show determine the truth or falsity of the alleged March 9th, 2004 letter, which did not contain any element of intent.

   b.) Agreeing not to report each other after wrongfully interfering with the Plaintiff's prospective contractual agreement.

166. In connection with the above conspiracy, defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. and defendant STEVENS specifically engaged in communication between June 17th, 2004 and February 9th, 2005, whereby defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. and defendant STEVENS agreed to facilitate, engage in and support the activity which occurred in connection with the allegations immediately above. As

**42**

a result of this conspiracy, defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. and

defendant STEVENS by and through their conduct, proximately caused plaintiff to, *inter*

*alia*, suffer bodily injury, incur financial loss, and suffer emotionally.

Equal Protection

167.    The actions of the defendant HSBC TECHNOLOGY & SERVICES (USA) Inc., in

engaging in the above referenced cover-up of the plaintiff's employment, which led to the

generation of false documentation (the Comprehensive Crime Policy) and the interfering

with the plaintiff's prospective contractual agreement, demonstrate that the defendant HSBC

TECHNOLOGY & SERVICES (USA) Inc. and defendant STEVENS failed in their duty to

enforce the laws equally and fairly towards the plaintiff RICHARDS, therefore violating the

Equal Protection component of the Due Process Clause of the Fifth Amendment of the

United States Constitution.

168.    In regards to an Equal Protection Claim, plaintiff RICHARDS was a "Class of One": in

that regard, plaintiff RICHARDS was treated with ill will and/or discriminated against with

no rational basis. Plaintiff RICHARDS was intentionally treated differently as a result of his

sexual orientation with a physical ailment, and having a potential claim against defendant

HSBC TECHNOLOGY & SERVICES (USA) Inc.  acted with discriminatory intent by

treating plaintiff RICHARDS differently and trying to cause further injury to plaintiff

RICHARDS by generating false statements (that the HSBC Comprehensive Crime Policy

was in effect on the Plaintiff's termination date). Further, plaintiff RICHARDS, was

similarly situated to other individuals involved in incidents with defendant HSBC

TECHNOLOGY & SERVICES (USA) Inc. that were not victim's of misconduct with

defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. and/or potential claimants

43

against this corporation for discrimination on the basis of sexual orientation – homosexual –
and have deprived plaintiff the enjoyment of all benefits, privileges, terms, and conditions of
his employment relationship in violation of 42 U.S.C. §1983.

### *Placing the Blame – Packing the "Pack"*

169.    On or about, January 25th, 2005, Plaintiff's RICHARDS evidentiary hearing was held to
revoke the plaintiff's bankruptcy discharge, Defendant STEVENS never raised the issue
(giving the plaintiff proper notice or hearing) that he believed that the plaintiff was using the
courts for the furtherance of his relationship with someone who stole his money, rather than
legitimately attempting to recover the stolen property. During the closing statements, the
bankruptcy trustee did mention, that the plaintiff was arrested on several charges, and on
those basis, he is facing enough legal issues.

>               January 25th, 2005 Court Transcripts

>               THE COURT: That there's a - -

>               MR. STEVENS: No intent factor like there would be

>                               in a criminal case when you are proving fraud.

>               THE COURT: You are saying there would be no elements of

>                               intent required?

>               MR. STEVENS: Correct.

January 25th, 2005 transcripts pg. 27

170.    On February 9th, 2005, the bankruptcy court (having private communication with the
bankruptcy trustee) revokes the plaintiff's bankruptcy discharge (without giving him notice
or a hearing) because he acted outside the scope of his authority, because, they believed,

**44**

based on the alleged criminal charges, that the plaintiff was using the courts for the furtherance of his relationship, rather than legitimately attempting to recover the stolen property.

> Section 727(d) does not require direct evidence of intent, but rather an inference of fraudulent intent can also be drawn from the course of contact or all surrounding circumstances. Its from In Re; Yanikous 996 F.2d 866, 905 (7th Cir. 1993).

February 9th, 2005 transcripts pg. 3

171. On or about May 3rd, 2005, plaintiff RICHARDS, with due diligence files a federal lawsuit in the Northern Illinois District Court of Illinois – Eastern Division, case number 05 CV 2632, to vindicate his civil rights claims, however, Plaintiff RICHARDS, was unable to determine all the elements of the claim.

172. Defendant BARBOSA conduct, imputed that plaintiff RICHARDS, was the bankruptcy fraud, despite the fact that the majority of the money that was stolen by third party, Donald James Harrington, was the plaintiff's property.

173. Following the false light, that plaintiff RICHARDS, was placed in, defendant BARBOSA embarked on a course of discriminatory and harassing conduct on the basis of Plaintiff's sexual orientation with a physical ailment.

174. At all relevant times, defendant BARBOSA subjected plaintiff RICHARDS to disparate terms and conditions, as compared to third party, Donald James Harrington, who was similarly situated to him (more so, since he was the one who stole plaintiff RICHARDS property), as exemplified by the fact, defendant BARBOSA and defendant STEVENS embezzled $78,427.24 from plaintiff RICHARDS, and his creditors to third party, Donald James Harrington in violation of Federal Criminal Statute Title 18 U.S.C. §153, and then

revoked, plaintiff RICHARDS bankruptcy discharge knowingly and fraudulently. By claiming that there was no element of "intent".

175.  After, defendant BARBOSA, and defendant STEVENS stripped Plaintiff RICHARDS of his bankruptcy discharge, Plaintiff RICHARDS, attempted to do a motion in the bankruptcy court, under Bankruptcy Rule 9024 (Fed. R. Civ. P. 60)., and appeal the case to the Northern District Court – Western Division under case number 05-50073, and to report the misconduct of defendant BARBOSA, to the Judicial counsel. [9]

176.  In response to plaintiff's misconduct complaint, Chief Justice Easterbrook, implied, that is just the way Bankruptcy Judge Manual Barbosa is.

177.  Defendant BARBOSA's decision to deprive plaintiff RICHARDS of his property, and bankruptcy discharge is manifested as a pretext for the sexual orientation discrimination with a physical ailment.

178.  Unlike the treatment of plaintiff RICHARDS, others similarly situated to plaintiff RICHARDS (like third party Donald James Harrington, was allowed to steal property from other individuals without any threats of punishment), while plaintiff RICHARDS was harassed with being committed to institutions.

179.  In addition to the disparate treatment, defendant BARBOSA and defendant STEVENS further constantly berated plaintiff, including forcing plaintiff RICHARDS, into mental and prison institutions, in order to demean him.

180.  As a result of defendant BARBOSA's demeaning conduct, plaintiff made a complaint, on or about, July 3rd, 2007, and July 2nd, 2008, to Chief Justice Easterbrook, regarding defendant BARBOSA's conduct, stating that plaintiff RICHARDS believed defendant BARBOSA's

---

[9] Due to fraudulent concealment of the true facts, Plaintiff RICHARDS was precluded from raising the right defense to the malicious, willful, arbitrary, irrational, and callous actions of Defendant BARBOSA, and Defendant STEVENS.

was harassing him, and committing crimes against plaintiff RICHARDS, and placed plaintiff

RICHARDS in apprehension of bodily harm.

181. In response to plaintiff's complaints regarding defendant BARBOSA's conduct, third

party Chief Justice Easterbrook failed to conduct an investigation or discipline defendant

BARBOSA in any form.

182. Rather than effectuate any ameliorative measures to plaintiff's complaints, third party

Chief Justice Easterbrook simply informed plaintiff RICHARDS that the plaintiff is nutty

and delusional. See *Lee Vs. Clinton* 302 F.3d 773

183. Contrary to third party Chief Justice Easterbrook explanation, that the plaintiff is nutty

and delusional, defendant BARBOSA never treated anyone else (like third party Donald

James Harrington) in a similar fashion as he treated plaintiff RICHARDS.

184. In additional to defendant BARBOSA's assaultive behavior against plaintiff

RICHARDS, he encouraged, for the past few years, for other State and Federal Judges to

harass and demean plaintiff RICHARDS, and deprive him of any Due Process of the law, or

any other Constitutional rights.

185. Defendant BARBOSA's treatment of plaintiff RICHARDS, is further evidence as sexual

orientation with a physical ailment animus, as defendant BARBOSA constantly told Plaintiff

RICHARDS, that he has no standing, or any constitutional rights, and that plaintiff

RICHARDS is nutty and delusional.

186. Plaintiff RICHARDS was also treated in a disparate treatment, in that besides, having his

money stolen, he was instructed to repay the creditor's, money that was stolen by third party

Donald James Harrington.

187. Given the lack of any remedial efforts to Plaintiff's complaints of mistreatment, and discrimination, Plaintiff still kept trying to explain, the situation to ignorance, and that defendant BARBOSA has a double standard for plaintiff RICHARDS compared to third party Donald James Harrington. (Plaintiff RICHARDS has done appeals for other individuals, in various circuits, in which the appeal was reversed, he currently has an appeal pending in the Seventh Circuit, for another individual).

188. Despite defendant's malicious discrimination of plaintiff RICHARDS, defendant BARBOSA, keeps telling plaintiff RICHARDS, the he should be a mind reader of defendant STEVENS, and been able to predict, defendant STEVENS misdeeds.

189. The aforementioned acts and omissions of defendant BARBOSA, and defendant STEVENS constitute unlawful discrimination against plaintiff RICHARDS, because of his sexual orientation with a physical ailment. In violation of the Equal Protection component of the Due Process Clause of the United States Constitution.

190. As a direct and proximate result of the above alleged willful and reckless acts or omissions of defendant BARBOSA and defendant STEVENS, Plaintiff suffered damages including but not limited to, lost bankruptcy discharge, stolen $16,000.00 dollars in bankruptcy adversary hearing 07 A 7063 and 07 A 7083, being falsely imprisoned in institutions, and assault and battery.

191. On or about, December 23rd, 2005, District Judge Reinhard, affirms the bankruptcy appeal, as follows:

> Appellant argues the bankruptcy court lacked jurisdiction but his argument is difficult to follow. He discusses accusations he was stalking a third party but stalking was not at issue in the trustee's action to revoke discharge. Revocation of discharge is clearly within jurisdiction of the bankruptcy court. 11 U.S.C. §727(d); 28 U.S.C. §157(a), (b)(2).

**48**

### *Packing the Goat (Plaintiff Richards)*

192.    On or about, February 25th, 2006, Plaintiff RICHARDS, suffering from low thyroxin

levels (T3 and T4 and Free T4 blood levels), alleges to be suicidal, he informs, the public

officials, who attempts to run the plaintiff into the Madden Mental Health Center located at

1200 South 1st Ave, Maywood, Illinois 60153. Two of the doctor's examine, Plaintiff

RICHARDS, and informs plaintiff RICHARDS, that his problem is related to a general

medical condition, and releases plaintiff from the hospital, the same day.

193.    During, the month of March 2006, plaintiff RICHARDS exercises his First Amendment

Constitutional rights, to represent himself, and his creditor's who were knowingly and

fraudulently deprived of their property rights, by defendant STEVENS violating Federal

Criminal statute Title 18 U.S.C. §153, by transferring the remaining property rights of case

03 A 7063 and 03 A 7083, from the bankruptcy estate to third party, Donald James

Harrington. Plaintiff RICHARDS lacked any means to carry out any of the threats, the

plaintiff RICHARDS, was not an armed or dangerous criminal.[10]

194.    On or about, March 30th, 2006, plaintiff RICHARDS, was accosted by a Federal Bureau

of Investigations Special Agent, at the Duckin Donuts, on Chicago Street, Chicago, Illinois,

after he was tipped off, by defendant HARRINGTON, who acted maliciously, willfully,

arbitrarily, and irrationally, placing his son's sin's of theft of the Plaintiff's property, onto the

plaintiff RICHARDS, without provocation and justification, failing to investigate the truth of

---

[10] The equation for confinement is $C > PH$, where C is the cost of confinement to the individual confined, p is the probability of harm, and H is the harm. Probability of harm is determined by the ability to carry out the harm. Plaintiff Richards, had no means to carry out the harm.

the matter. Maliciously and sadistically with the intent to inflict harm, holds the plaintiff, on the phone deceptively, concealing his true intentions, to willfully incarcerate, plaintiff RICHARDS.

195. As a direct and proximate result of one or more of the aforesaid acts or omissions of defendant HARRINGTON, plaintiff was caused to suffer damages.

196. Upon information and belief, defendant HARRINGTON interacted with plaintiff RICHARDS.

197. On or about, April 3rd, 2006, plaintiff RICHARDS is arrested, and brought to MCC Chicago, Metropolitan Correctional Center, 71 West Van Buren Street Chicago, Illinois 60605, until May 3rd, 2006, During which time, he attended his preliminary hearing at Northern Illinois District Court – Eastern Division, under case number 06 CR 233, whereupon, On May 2nd, 2008, defendant HANSEN, maliciously and sadistically with the intent to inflict harm failed to interrogate plaintiff RICHARDS (failing to investigate the truth) informs the plaintiff that he will enjoy being transferred to Olge County Jail, whereupon he can get his psychotropic drugs, which the plaintiff was not under the influence of any psychotropic drugs.

198. As a direct and proximate result of one or more of the aforesaid acts or omissions of defendant HANSEN, plaintiff was caused to suffer damages.

199. On or about, May 2nd, 2006, defendant HANSEN was on duty at all times relevant to this complaint and were duly appointed Special Agents for the defendant DEPARTMENT OF JUSTICE Federal Bureau of Investigations defendant HANSEN engaged in the conduct complained of, on said date, in the course and scope of employment and while on duty. This action is being brought with regard to the individual capacity of defendant HANSEN.

50

200.   Upon information and belief, defendant HANSEN, on May 2nd, 2006 interacted with plaintiff RICHARDS.

201.   During the time period, between April 3rd, 2006, and February 15th, 2007, plaintiff RICHARDS is held at Olge County Jail, awaiting assistance from defendant FLYNN. During which time, defendant FLYNN's only concern is what psychiatric papers, may be found, to support their malicious, willful, arbitrary, and irrational decision making, that the plaintiff RICHARDS is bipolar. Defendant FLYNN threatens, plaintiff RICHARDS that he will be sent to Rochester, Minnesota Federal Medical Center, for twenty years, for psychiatric assistance. That plaintiff RICHARDS was stalking, third party Donald James Harrington. During this time, defendant FLYNN was unable to find any psychiatric papers, because, none never existed.

202.   On February 15th, 2007, defendant FLYNN, prejudicially, failing to investigate the truth, announces to the court, that plaintiff RICHARDS, was intimidating the defendant STEVENS and defendant KLIENHUBERT, so he may continue his relationship, with someone who stole money from the plaintiff. Maliciously and sadistically with the intent to inflict harm, defendant FLYNN, files a Notice of Appeal, knowing, that no appeal will ever be filed, to preclude, the plaintiff from filing any other papers, to advance his cause.

203.   As a direct and proximate result of one or more of the aforesaid acts or omissions of defendant FLYNN, plaintiff RICHARDS was caused to suffer damages.

204.   On February 15th, 2007, defendant FLYNN, was on duty at all times relevant to this complaint and were duly appointed public defender for his agent defendant FEDERAL DEFENDER PROGRAM, defendant FLYNN engaged in the conduct complained of, on said

**51**

date, in the course and scope of employment and while on duty. This action is being brought

with regard to the individual capacity of the defendant FLYNN.

205.    Upon information and belief, defendant FLYNN, on February 15th, 2007 interacted with

Plaintiff.

Conspiracy 2006 - 2007

206.    Two or more of the following individuals, defendant HANSEN, defendant FLYNN,

defendant STEVENS, defendant BARBOSA, and defendant HARRINGTON conspired to

cause damage to plaintiff RICHARDS in the following manner:

> a.) Agreeing to wrongfully incarcerate Plaintiff RICHARDS,
>      knowing, that they will be placing Plaintiff RICHARDS in
>      the apprehension of bodily harm, in violation the Federal
>      Statute Title 18 U.S.C. §875(c), and Federal Rules of
>      Criminal Procedure.
>
> b.) Agreeing not to report each other after wrongfully
>      incarcerating Plaintiff RICHARDS in violation of the
>      conscience of society, that is grossly conscience shocking

207.    In connection with the above conspiracy, defendant HANSEN, defendant FLYNN,

defendant STEVENS, defendant BARBOSA, and defendant HARRINGTON specifically

engaged in communication between February 27th, 2006 through February 14th, 2007,

whereby defendant HANSEN, defendant FLYNN, defendant STEVENS, defendant

BARBOSA, and defendant HARRINGTON agreed to facilitate, engage in and support the

activity which occurred in connection with the allegations immediately above. As a result of

this conspiracy, Defendant HANSEN, defendant FLYNN, defendant STEVENS, defendant

BARBOSA, and defendant HARRINGTON by and through their conduct, proximately

caused plaintiff to, *inter alia*, suffer bodily injury, incur financial loss, and suffer emotionally.

Equal Protection

208.    The actions of the defendant HANSEN and defendant FLYNN, and defendant HARRINGTON, in engaging in the above referenced cover-up (defendant BARBOSA and defendant STEVENS), which led to the generation of false documentation (defendant's positioning paper) and criminal charges (N. D. Ill. Case No. 06CR233 for allegedly violating Title 18 U.S.C. §875(c)) to be lodged against plaintiff RICHARDS, demonstrates that defendant HANSON, defendant FLYNN, defendant STEVENS, defendant BARBOSA, and defendant HARRINGTON failed in their duty to enforce the laws equally and fairly towards plaintiff RICHARDS, therefore violating the Equal Protection Component of the Due Process Clause of the Fifth Amendment to the United States Constitution.

209.    In regards to an Equal Protection Claim, plaintiff RICHARDS was a "Class of One": in that regard, plaintiff RICHARDS was treated with ill will and/or discriminated against with no rational basis. Plaintiff RICHARDS was intentionally treated differently as a result of his sexual orientation with a physical ailment, and having a potential claim and witnessing Bankruptcy Judge Manual Barbosa and Bankruptcy Trustee James E. Stevens embezzle property of the Bankruptcy Estate of Richards (case number 03 B 71403 (Adversary hearing 03A7063 $36,000 and Adversary hearing 03 A 7083 $42,427.00, while there was $62,699.00 dollars worth of claims in the claims register). defendant HANSON, defendant FLYNN, defendant Stevens, defendant BARBOSA, and defendant HARRINGTON acted with discriminatory intent by treating plaintiff RICHARDS differently and trying to cause further injury to plaintiff RICHARDS by generating false statements (in the plaintiff's

53

criminal case 06CR233, by imputing that the plaintiff was intimidating the alleged victim's,

so he can continue his relationship with someone, who stole money from the plaintiff).

Further, plaintiff RICHARDS was similarly situated to other individuals involved in

incidents with defendant STEVENS and defendant BARBOSA that were not victim's of

judicial misconduct with defendant STEVENS and defendant BARBOSA and/or potential

claimants against these two individuals.


SPECIFIC ALLEGATIONS REGARDING EQUAL PROTECTION CLASS OF ONE
(ALTERNATIVE PLEADING)(Defendant FLYNN)

210.    Defendant FLYNN has represented over 20 individuals prior to the representation of

Plaintiff RICHARDS.

211.    On at least 20 occasions prior to February 14th, 2007, the defendant FLYNN has not

falsified criminal court documents.

212.    On at least 20 occasions prior to February 14th, 2007, defendant FLYNN has not partaken

in or contributed to the falsification of criminal proceeding documents.

213.    On at least 20 occasions prior to February 14th, 2007, defendant FLYNN has had

occasion to represent individuals in criminal court proceedings, never placed anyone into the

apprehension of bodily harm/ disproportionate punishment without justification, for

exercising their First Amendment Constitutional rights.

214.    Defendant FLYNN has been educated in law, prior to February 14th, 2007, that upon the

representation of an individual in a criminal case, there is a strong likelihood that a criminal

action will continue against the party whom the allegations are submitted in the criminal

complaint.


**54**

215.   Defendant FLYNN on at least 20 occasions prior to and/or after February 14th, 2007, has represented individuals and has and has not falsified information contained within a court document with regard to his representation.

216.   Defendant FLYNN, on at least 20 occasions prior to and/or after February 14th, 2007, has represented individuals and has misrepresented anyone else in a criminal court proceeding.

217.   On February 14th, 2007, there was no reasonable reason for defendant FLYNN to arrest Plaintiff RICHARDS for exercising his constitutional rights.

SPECIFIC ALLEGATIONS REGARDING EQUAL PROTECTION CLASS OF ONE (ALTERNATIVE PLEADING)(Defendant HANSEN)

218.   Defendant HANSEN has arrested over 20 individuals prior to the arrest of the Plaintiff RICHARDS.

219.   On at least 20 occasions prior to April 3rd, 2006, defendant HANSEN has not partaken in or contributed to the falsification of criminal proceedings.

220.   On at least 20 occasions prior to April 3rd, 2006, defendant HANSEN has had occasion to place individuals into custody and/or under arrest, never placed anyone into the apprehension of bodily harm/ disproportionate punishment without justification, for exercising their First Amendment Constitutional rights.

221.   Defendant HANSEN has been trained, prior to April 3rd, 2006, that upon the signing of a criminal complaint, there is a strong likelihood that a criminal action will commence against the party whom the allegations are submitted in the criminal complaint.

222.   Defendant HANSEN on at least 20 occasions prior to and/or after April 3rd, 2006, has arrested individuals and has not arrested anyone for exercising their First Amendment Constitutional rights.

**55**

223.    Defendant HANSEN, on at least 20 occasions prior to and/or after April 3rd, 2006, has

signed criminal complaints and has not signed one for an individual for exercising their

constitutional rights.

224.    On April 3rd, 2006, there was no reasonable reason for Defendant HANSEN to arrest

plaintiff RICHARDS for exercising his constitutional rights.


MONELL ALLEGATIONS
(DEPARTMENT OF JUSTICE)

225.    It is the custom, practice, and/or policy of public officers and/or their supervisors/agents

and/or employees of the DEPARTMENT OF JUSTICE to perform the following acts and/or

omissions:

   (a) Fail to communicate with victims of crimes.

   (b) Engage in acts of unreasonable seizure of individual(s) who are exercising their
       First Amendment Constitutional rights to protect their property rights.

   (c) Fail to properly discipline Special Agents from said Federal Bureau of
       Investigations who have committed act(s) of unreasonable seizure of individuals
       who are exercising their First Amendment Constitutional rights who are
       attempting to protect their property rights.

   (d) Fail to properly investigate a complaint of unreasonable seizure of individuals
       perpetrated by a DEPARTMENT OF JUSTICE special agent upon another;

   (e) Fail to take proper remedial action against a DEPARTMENT OF JUSTICE
       special agent once it is determined that an act of unreasonable seizure of
       individuals has been committed by said special agent upon another;

   (f) Allow misconduct to occur in various types and severity such that special agents
       believe that they can engage in unreasonable seizure of individuals without
       repercussions and/or significant repercussions;

   (g) Fail to provide adequate sanctions/ discipline to Special Agents who commit
       unreasonable seizure of individuals such that a permissive atmosphere exists

56

among special agents wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in such behavior;

(h) Fail to provide adequate sanctions/ discipline to special agents who falsify police reports, investigations, and/ or internal investigations, causing said special agents to believe that they can manufacture evidence which will cause them not to be disciplined or significantly disciplined for engaging in illegal behavior; *inter alia* unreasonable seizure of individuals who are exercising their First Amendment Constitutional rights.

(i) Fail to take proper remedial measures to prevent and/or correct special agents who fails to make investigations and/or internal investigations, causing said special agent(s) to believe that they can manufacture false statement(s) which will cause them not to be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia* unreasonable seizure of individuals who are exercising their First Amendment Constitutional rights.

(j) Fail to take proper remedial measures to prevent and/or correct special agents who make false statements to victims, investigations, and/or internal investigations, causing said special agents to believe that they can manufacture false statements which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules/ policies, and/or procedures of the DEPARTMENT OF JUSTICE Federal Bureau of Investigations'

(k) Fail to properly investigate special agents who commit acts of unreasonable seizure of individuals such that a permissive atmosphere exists among special agents wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

(l) Fail to take proper remedial action with prosecutors who commit acts of unreasonable seizure of individuals such that a permissive atmosphere exists among special agents wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

(m) Fail to provide proper training to prevent special agents from committing unreasonable seizure of individuals and violating the rules, policies, and procedures of the Department of Justice -- Federal Bureau of Investigations.

226. This practice and/or custom, as alleged above, has gone unchecked and been allowed to

exists in the DEPARTMENT OF JUSTICE for a significant period of time, so much so, that

special agents for the DEPARTMENT OF JUSTICE recognize that they will not be punished

for committing said acts and that, in fact, said acts are either permitted or quietly consented

to by superior officers of the DEPARTMENT OF JUSTICE Federal Bureau of Investigations department in order to permit said conduct to re-occur.

227. A code of silence exists between officers of the defendant DEPARTMENT OF JUSTICE. This code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct). This code of silence contributes to the generation of secrets, in the department, regarding special agent's misconduct.

### The Forest (prison)

228. On or about, February 15th, 2007, plaintiff RICHARDS is maliciously, willfully, arbitrarily, and irrationally sentenced to 30 months imprisonment, with 3 years of supervised release, with special conditions upon the supervised release. The most particular one of all is the requirement, that plaintiff RICHARDS, is not drive without a valid license and/or valid automobile insurance. (This stems from the attempt of Defendant BARBOSA, in attempting to incarcerate, plaintiff RICHARDS, back in July 19th, 2005, in retaliation for having civil case 05 CV 2632 filed against him). Plaintiff RICHARDS, since he was fifteen years old, always maintained his auto and home owners insurance in good standing, with the same insurance agent James Cady of the Farmer's Insurance Group, located at 525, Suite 100, West Higgins Road, Hoffman Estates, Illinois 60195, phone number (847) 490 – 1200.

229. On or about, April 3rd, 2007, Plaintiff RICHARDS files a motion in the United States Bankruptcy court, for bankruptcy judge Manual Barbosa to hear, in deliberate disregard for the truth, plaintiff RICHARDS, wanted to explain, that the stolen property is sitting In Rem Jurisdiction in the bankruptcy court, (Plaintiff RICHARDS, learns later about the Barton's doctrine.

**58**

230. The Plaintiff files several modular lawsuits (07 CV 1528; 07 CV 1646; 07 CV 1732; 07 CV 1907; 07 CV 2656; 07 CV 3275; and 07 CV 3643); Defendant BARBOSA willfully, maliciously, arbitrarily, and irrationally interferes with these lawsuits.

231. On or about, April 20th, 2007, Plaintiff RICHARDS, after being transferred by special airlines CONAIR, is detained while being held for transfer at Oklahoma Transfer City, whereupon, is housed with a mixture of individuals going to different levels of incarceration. He is bunked together, with an individual going to a United States Penitentiary, while he is going to a low. His roommate learns upon his arrival, that plaintiff RICHARDS is a homosexual, and therefore, takes measures to inflict bodily harm upon plaintiff's face, by causing two black eyes. Pictures are available in Ashland, Kentucky, and his prison id.

232. On or about, May 2nd, 2007, Dr. Green of the Federal Bureau of Prison's psychology department, examines, plaintiff RICHARDS, and determines, that the plaintiff is not in need of any psychiatric assistance, while he is located at Ashland Federal Correctional Institution.

233. On or about, July 20th, 2007, plaintiff RICHARDS attorney, Brian Threlkeld filed a motion for extension of time, to file Defendant-Appellant's brief.

234. On or about, August 20th, 2007, plaintiff RICHARDS attorney, Brain Threlkheld filed a motion for extension of time, to file Defendant-Appellant's brief.

235. On or about, August 31st, 2007, plaintiff RICHARDS attorney, Brian Threlkheld filed a motion to withdraw as defendant-appellant's appointed counsel on appeal and to suspend briefing.

236. On or about, September 21st, 2008, District judge Mathew F. Kennelly, dismisses case 07 CV 1907, on the grounds, that plaintiff RICHARDS has not obtained the "Leave of the Bankruptcy Court to Sue the Bankruptcy Trustee".

237.    On or about, January 8th, 2008, plaintiff RICHARDS is sexually assaulted, by another

inmate, located at Ashland Federal Correction Institution the incident is reported to the

Lieutenants' office.

238.    On or about, January 9th, 2008, Congress passed H. R. 660 the "Court Security

Improvement Act of 2007", and President Bush signed the measure into law as Public Law

110-177, 121 Stat. 2534. to deter the false filing of liens and encumbrances against federal

officials.

239.    Plaintiff RICHARDS, was warned in his criminal case, that the law pertained allegedly

pertained to him. See 875(c), 3559(a)(4), 3583(b)(2) This was done to witness tamper with

the plaintiff under Title 18 U.S.C. §1513(b), for the purpose of retaliation, and intimidate, the

Plaintiff, RICHARDS.

### Assault and Battery

240.    On or about, February 15th, 2007, plaintiff RICHARDS was wrongfully sentenced to a

cruel and unusual disproportionate punishment, which was outside the Federal Sentencing

Guidelines, placing plaintiff RICHARDS in apprehension of bodily harm, and upon bodily

harm has resulted, due to the misconduct actions of defendant HANSEN, defendant FLYNN,

defendant STEVENS, defendant BARBOSA, and defendant HARRINGTON.

241.    On or about, January 8th, 2008, Plaintiff RICHARDS, from the wrongfully cruel and

unusual disproportionate punishment, which was outside the Federal Sentencing Guidelines,

placed plaintiff RICHARDS in the apprehension of bodily harm, in which a sexual assault

resulted, due to the misconduct actions of defendant HANSEN, defendant FLYNN,

defendant STEVENS, defendant BARBOSA, and defendant HARRINGTON.

60

242.    The actions of defendant HANSEN, defendant FLYNN, defendant STEVENS, defendant

BARBOSA, and defendant HARRINGTON, placed plaintiff RICHARDS in the

apprehension of bodily harm, and upon offensive physical contacts occurred, undertaken

willfully, and wantonly, proximately causing plaintiff RICHARDS injuries.

243.    As a result of the beatings of plaintiff RICHARDS by being placed in the apprehension

of bodily harm, plaintiff RICHARDS sustained bodily injuries. During this period of time

between February 15th, 2007 and July 23rd, 2008, Plaintiff RICHARDS had legitimate fears

that his life was in danger.

244.    On or about July 23rd, 2008 Plaintiff RICHARDS was released from this unlawful

conduct of apprehension of bodily harm.

**Escape from the forest (prison)**

245.    On or about, January 23rd, 2008, the Seventh Circuit Court of Appeals interferes with

plaintiff, RICHARDS appeal in several cases, including 07 CV 1907, by claiming, that

Plaintiff RICHARDS has not paid the appellate court docketing fees. Plaintiff RICHARDS,

sends the appeal to the United States Supreme Court, but the Writ of Certiorari was never

filed in the court.

246.    On or about, May 8th, 2008, Plaintiff Richards is transferred from Ashland Federal

Correctional Center, located at St. Route 716 Ashland, Ky. 41105 to Salvation Army

Halfway house, located at 105 South Ashland Ave, Chicago, Illinois 60607.

247.    On or about, June 25th, 2008, District Judge Joan Lefkow, in case 07 CV 1646, informs

plaintiff RICHARDS, that the bankruptcy judge and bankruptcy trustee, believes that the

plaintiff RICHARDS transferred the $45,662.13 dollars, hoping that third party, Harrington

will pass the money back to the plaintiff, with the intent to impede the bankruptcy trustee, STEVENS from repaying the creditors[11].

248. From July 15th, 2008 through October 15th, 2008 under sentencing court order, dated February 15th, 2007, plaintiff RICHARDS, was to attend to a mental health evaluation, in which the plaintiff RICHARDS, met with third party Dennis Deflousse, who informs, plaintiff RICHARDS, information plaintiff RICHARDS already knew, that the plaintiff RICHARDS, is not manic-depressive, but that his depression stems from a General Medical Condition – Hypothyroidism.

249. On or about, July 22nd, 2008, plaintiff RICHARDS meets with defendant HANSEN, who informs, plaintiff RICHARDS, that he was locked up due to plaintiff's mental illness of BIPOLAR (that was the only reason for locking up Plaintiff RICHARDS).

250. On or about, July 23rd, 2008, plaintiff RICHARDS is released from the Salvation Army.

251. On or about, July 25th, 2008, Plaintiff RICHARDS, under case number 08 CV 4038, was informed by District Judge Kennelly, that there is interference with case 07 CV 1907. Defendant BARBOSA, through conspiracy with District Judge Mathew F. Kennelly, interferes with the plaintiff RICHARDS'S adequate, effective, and meaningful access to the courts.

252. On or about, August 9th, 2008, Magistrate Judge P. Michael Mahoney files an order for Status hearing, bankruptcy appeal case 08 CV 50148, to determine whether, plaintiff RICHARDS, is telling the truth, about, the fact, that he made a general reference, rather than a specific reference (general reference to the theft of the $4,800, 55,000 and $6,800, rather

---

[11] This is when Plaintiff RICHARDS, discovers the injuries inflicted by Defendant Manual Barbosa, are attributable to the wrongful false light by Defendant Kleinhubert, Defendant Szuchnicki, and Defendant HSBC Technology & Services (USA) Inc.

than the specific reference to the theft of the $45,662.13 dollars (by the jurisdiction statement

Title 28 U.S.C. §1331, and not Title 28 U.S.C. §1334{bankruptcy jurisdiction})

253.    On or about, November 13th, 2008, defendant BARBOSA instructs, public defender

defendant FLYNN, to have his attorney in the Illinois State case, to release the plaintiff's

social security checks, but to use the Pitney Bowes mailing date of October 1st, 2008 (this

was to test, whether, plaintiff RICHARDS was going to intimidate, defendant FLYNN to

turn over the social security checks, like allegedly, plaintiff RICHARDS, was intimidating

third party Donald James Harrington, in terms of the stolen property.

### COUNT I - TITLE 42 U.S.C. §1983 - FOURTHEENTH AMENDMENT
### EQUAL PROTECTION CLAUSE CLAIM[12]

254.    Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to

254 of this Complaint at Law as and for paragraphs 255 of this Count I.

255.    The actions of defendant KLIENHUBERT violated the Equal Protection Clause of the

United States Constitution, by denying plaintiff RICHARDS equal application of the Illinois

theft statute 720 ILCS 5/16-1(a)(2)(A), based on "Class of One" classification.

256.    The aforementioned actions of defendant KLIENHUBERT were the direct and proximate

cause of the constitutional violations as set forth above.

257.    As a result of the defendant's unconstitutional conduct, plaintiff RICHARDS suffered

pain and injury, including damaged reputation, financial loss, and emotional distress.

---

[12] See case 07 CV 1732, in the N.D. Ill., even though, Plaintiff Richards, knew, on January 20th, 2004, that defendant Kleinhubert, would not talk to Plaintiff Richards, he did not know about the discriminatory intent, until February 15th, 2007, at Plaintiff's sentencing hearing for case 06 CR 233. The claim, that prosecutor's cannot have ex parte communication with the victim, was on a pretext.

WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter judgment in his favor and against defendant KLEINHUBERT awarding compensatory damages and punitive damages, as well as any other relief this court deems just and appropriate under the circumstances.

## COUNT II - TITLE 42 U.S.C. §1983 - FOURTHEENTH AMENDMENT DUE PROCESS CLAUSE CLAIM

258.    Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to 258 of this Complaint at Law as and for paragraphs 259 of this Count II.

259.    Defendant KLEINHUBERT maliciously and willfully violated, plaintiff RICHARDS's constitutional rights, specifically the due process clause of the Fourteenth Amendment of the United States Constitution, by denying plaintiff RICHARDS of his liberty from the excessive force asserted by defendant HANSEN, defendant FLYNN, defendant STEVENS, defendant BARBOSA as stated above.

260.    The aforementioned actions of said defendant KLEINHUBERT were the direct and proximate cause of the constitutional violations set forth above.

261.    As a result of the defendant's unconstitutional conduct, Plaintiff RICHARDS suffered pain and injury, including damaged reputation, financial loss, and emotional distress.


WHEREFORE, Plaintiff RICHARDS, respectively request that the court enter judgment in his favor and against defendant KLEINHUBERT awarding compensatory damages and punitive damages, as well as any other relief this court deems just and appropriate under the circumstances.

## COUNT III - TITLE 42 U.S.C. §1983 - FOURTHEENTH AMENDMENT EQUAL PROTECTION CLAUSE CLAIM[13]

262. Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to 262 of this Complaint at Law as and for paragraphs 263 of this Count III.

263. The actions of defendant SZUCHNICKI violated the Equal Protection clause of the United States Constitution, by denying plaintiff RICHARDS equal application of the Illinois bodily harm statute 720 ILCS 5/12-30(a)(1)(i), based on "Class of One" classification.

264. The aforementioned actions of defendant SZUCHNICKI were the direct and proximate cause of the constitutional violations as set forth above.

265. As a result of the defendant's unconstitutional conduct, plaintiff RICHARDS suffered pain and injury, including damaged reputation, financial loss, and emotional distress.

WHEREFORE, Plaintiff RICHARDS, respectively request that the court enter judgment in his favor and against defendant KLEINHUBERT awarding compensatory damages and punitive damages, as well as any other relief this court deems just and appropriate under the circumstances.

## COUNT IV – TITLE 42 U.S.C. §1983 – FOURTEENTH AMENDMENT DUE PROCESS CLAUSE CLAIM

266. Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to 266 of this Complaint at Law as and for paragraphs 267 of this Count IV.

---

[13] See case 07 CV 2656, in the N.D. Ill., even though, Plaintiff Richards, knew, on May 10th, 2004, that defendant Szuchnicki, would not talk to Plaintiff Richards, he did not know about the discriminatory intent, until February 15th, 2007, at Plaintiff's sentencing hearing for case 06 CR 233. The claim that the party is now over, was on pre-text to the discrimination.

65

267. Defendant SZUCHNICKI, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of employment, deprived plaintiff of his constitutional rights.

268. In the manner described more fully above, defendant SZUCHNICKI deliberately withheld exculpatory evidence, as well as fabricated false reports and other evidence, thereby misleading and misdirecting the criminal prosecution of plaintiff. Absent of this misconduct, the prosecution of plaintiff could not and would not have been pursued.

269. The misconduct described in this count was objectively unreasonable and was undertaken with malice, willfulness, and reckless indifference to the rights of others.

270. As a result of the defendants' unconstitutional conduct, plaintiff has suffered pain and injury, including damaged reputation, financial loss, and emotional distress.

WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter judgment in his favor and against defendant SZUCHNICKI awarding compensatory damages and punitive damages, as well as any other relief this court deems just and appropriate under the circumstances.

## COUNT V – CONTRACT – DURESS – STATE CLAIM[14]

271.    Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to

271 of this Complaint at Law as and for paragraphs 272 of this Count V.

272.    On or about, January 7th, 2005, defendant HSBC TECHNOLOGY & SERVICES (USA)

Inc. placed the plaintiff RICHARDS under duress, when they left plaintiff RICHARDS with

no other option then to sign the settlement agreement, which contained the following

statements:

> the company will have no obligation to make the Second
> Settlement Payment if the Employee (or any agent of the
> Employee): (1) files any, or makes any attempt to reopen
> any claims, lawsuits, charges, grievances or cause of action
> of any kind against the Company (or any Company Releasee)
> that he is releasing by this agreement
>
> [pg. 2; ¶5 of the January 7th, 2005 settlement agreement]

273.    As a direct and proximate result of the above alleged willful and deliberate acts or

omissions of defendant HSBC TECHNOLOGY & SERVICES (USA) Inc., plaintiff has

suffered damages, including but not limited to, lost and foregone wages, physical and

emotional harm.


WHEREFORE, Plaintiff RICHARDS, prays for judgment against defendant HSBC

TECHNOLOGY & SERVICES (USA) Inc., and respectively requests that this Court:

A.  Grant permanent injunction restraining defendant HSBC TECHNOLOGY & SERVICES

(USA) Inc., its officers, successors, assigns, and all persons in active concert or

---

[14] The Statute of Limitations is tolled under the principle of Equitable Estoppel, the settlement agreement, acted as a medium to prevent the plaintiff from bringing his case within the time period of the statute of limitations. Also, the settlement agreement should have a prospective effect. The Statute of Limitations is governed by 735 ILCS 13/206, which is ten years, because this was a written contract. Otherwise, the statute of limitations in this type of claim is five years.

participation with them, from engaging in any employment practice which unlawfully

discriminates on the basis of sexual orientation;

B.  Order defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. to make whole

plaintiff RICHARDS by providing the affirmative relief necessary to eradicate the effects

of Defendant's unlawful practices;

C.  Order defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. to pay lost, foregone,

and future wages to plaintiff RICHARDS,

D.  Grant plaintiff RICHARDS actual, consequential, compensatory, punitive and any other

damages that the Court may deem appropriate against defendant HSBC TECHNOLOGY

& SERVICES (USA) Inc.

E.  Grant plaintiff RICHARDS such further relief as the court deems necessary and proper in

the public interest.

**COUNT VI – TITLE 42 U.S.C. §1983 - CONSPIRACY CLAIM**

274.  Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs ___ of

this Complaint at Law as and for paragraphs ____ of this Count VI.

275.  The aforementioned actions of the defendant HSBC TECHNOLOGY & SERVICES

(USA) Inc. and defendant STEVENS were the direct and proximate cause of the violations of

the United States Constitution, *inter alia* the Fifth Amendment.


WHEREFORE, Plaintiff RICHARDS, prays for judgment against defendant HSBC

TECHNOLOGY & SERVICES (USA) Inc., and respectively requests that this Court:

A.  Grant permanent injunction restraining defendant HSBC TECHNOLOGY & SERVICES

(USA) Inc., its officers, successors, assigns, and all persons in active concert or

participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of sexual orientation;

B.  Order defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. to make whole plaintiff RICHARDS by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

C.  Order defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. to pay lost, foregone, and future wages to plaintiff RICHARDS,

D.  Grant plaintiff RICHARDS actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against defendant HSBC TECHNOLOGY & SERVICES (USA) Inc.

E.  Grant plaintiff RICHARDS such further relief as the court deems necessary and proper in the public interest.

## COUNT VII – TITLE 42 U.S.C. §1983 – FOURTEENTH AMENDMENT DUE PROCESS CLAUSE CLAIM

276.   Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to 276 of this Complaint at Law as and for paragraphs 277 of this Count IV.

277.   Defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. and defendant STEVENS, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of employment, deprived plaintiff RICHARDS of his constitutional rights, specifically the Due Process Clause of the Fifth Amendment of the United States Constitution.

278.   Defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. and defendant STEVENS denied plaintiff Richards of his liberty to contract without an opportunity for a notice and

hearing (fair trial). With a proper notice and hearing, Plaintiff RICHARDS could have challenged the element of intent.

279. The misconduct described in this count was objectively unreasonable and was undertaken with malice, willfulness, and deliberate indifference to the rights of others.

280. The aforementioned actions of said defendant HSBC TECHNOLOGY & SERVICES (USA) Inc were the direct and proximate cause of the constitutional violations set forth above.

281. As a result of the defendant's unconstitutional conduct, plaintiff RICHARDS suffered pain and injury, including damaged reputation, financial loss, and emotional distress.

WHEREFORE, Plaintiff RICHARDS, respectively request that the court enter judgment in his favor and against defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. awarding compensatory damages and punitive damages, as well as any other relief this court deems just and appropriate under the circumstances.

### COUNT VIII – CONSPIRACY – STATE CLAIM

282. Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to 282 of this Complaint at Law as and for paragraphs 283 of this Count VII.

283. Defendant, HSBC TECHNOLOGY & SERVICES (USA), Inc. and defendant STEVENS had a 'meeting of the minds' to do the overt act of interfering with the plaintiff's prospective contractual agreement, and defaming him before defendant BARBOSA, who then used the plaintiff as a scapegoat, by placing the blame upon plaintiff Richards, then running him into prison (forest).

70

WHEREFORE, Plaintiff RICHARDS, prays for judgment against defendant HSBC
TECHNOLOGY & SERVICES (USA) Inc., and respectively requests that this Court:

A.  Grant permanent injunction restraining defendant HSBC TECHNOLOGY & SERVICES
(USA) Inc., its officers, successors, assigns, and all persons in active concert or
participation with them, from engaging in any employment practice which unlawfully
discriminates on the basis of sexual orientation;

B.  Order defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. to make whole
plaintiff RICHARDS by providing the affirmative relief necessary to eradicate the effects
of Defendant's unlawful practices;

C.  Order defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. to pay lost, foregone,
and future wages to plaintiff RICHARDS,

D.  Grant plaintiff RICHARDS actual, consequential, compensatory, punitive and any other
damages that the Court may deem appropriate against defendant HSBC TECHNOLOGY
& SERVICES (USA) Inc.

E.  Grant plaintiff RICHARDS such further relief as the court deems necessary and proper in
the public interest.


## COUNT IX – WILLFUL AND WANTON MISCONDUCT - STATE

284.    Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to
284 of this Complaint at Law as and for paragraphs 285 of this Count VIII.

285.    Defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. acting through its agents
and employees are guilty of the following acts or omissions:

(a) Willfully acted with actual malice of ill-will for the purpose of retaliation, and not for the purpose of a legitimate business purpose, because they believed Defendant STEVENS, third party Donald James Harrington, and third party Lourdes Harrington, that the plaintiff was stalking third party, Donald James Harrington.

WHEREFORE, Plaintiff RICHARDS, prays for judgment against Defendant HSBC TECHNOLOGY & SERVICES (USA) Inc., and respectively requests that this Court:

A. Grant permanent injunction restraining defendant HSBC TECHNOLOGY & SERVICES (USA) Inc., its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of sexual orientation;

B. Order defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. to make whole plaintiff RICHARDS by providing the affirmative relief necessary to eradicate the effects of defendant's unlawful practices;

C. Order defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. to pay lost, foregone, and future wages to plaintiff RICHARDS,

D. Grant plaintiff RICHARDS actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against defendant HSBC TECHNOLOGY & SERVICES (USA) Inc.

E. Grant plaintiff RICHARDS such further relief as the court deems necessary and proper in the public interest.

**COUNT X – FRAUDULENT MISREPRESENTATION – STATE**

286.    Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to

286 of this Complaint at Law as and for paragraphs 287 of this Count IX.

287.    Defendant, HSBC TECHNOLOGY & SERVICES (USA) Inc. made said statement (see ¶

156 supra.) for the purpose to deceive plaintiff RICHARDS, knowing such statements to be

false, with the intent to interfere with the plaintiff's prospective contractual agreement.

288.    Plaintiff RICHARDS was prevented from continuing his prospective contractual

agreement with HSBC Technology & Services USA, Inc.

289.    As a direct and approximate result of the above alleged willful and deliberate acts or

omissions of defendant HSBC TECHNOLOGY & SERVICES (USA) INC., plaintiff

RICHARDS has suffered damages including, but not limited to, lost and foregone wages and

benefits.

WHEREFORE, Plaintiff RICHARDS, prays for judgment against defendant HSBC

TECHNOLOGY & SERVICES (USA) INC., and respectively requests that this Court:

   A.  Declare the conduct of defendant HSBC TECHNOLOGY & SERVICES (USA) INC.

to violate the rights guaranteed to plaintiff under appropriate Federal law.;

   B.  Grant a permanent injunction restraining defendant HSBC TECHNOLOGY &

SERVICES (USA) INC., its officers, successors, assigns, and all persons in active

concert or participation with them, from engaging in any employment practice which

is unlawfully discriminates on the basis of sexual orientation;

   C.  Order defendant HSBC TECHNOLOGY & SERVICES (USA) INC. to make whole

plaintiff RICHARDS by providing the affirmative relief necessary to eradicate the

effects of defendant's unlawful practices.

D. Order defendant HSBC TECHNOLOGY & SERVICES (USA) INC. to pay lost, foregone, and future wages to plaintiff RICHARDS.

E. Grant plaintiff RICHARDS actual, consequential, compensatory, punitive and any other damages that the court may deem appropriate against defendant HSBC TECHNOLOGY & SERVICES (USA) INC.

F. Grant plaintiff RICHARDS such further relief as the court deems necessary and proper in the public interest.

## COUNT XI – INTERFERENCE WITH A PROSPECTIVE CONTRACTUAL AGREMENT – STATE CLAIM

290. Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to 290 of this Complaint at Law as and for paragraphs 291 of this Count X.

291. Plaintiff RICHARDS had an expectation of continuing his prospective contractual agreement, with defendant HSBC TECHNOLOGY & SERVICES (USA) INC.

292. Defendant, HSBC TECHNOLOGY & SERVICES (USA) INC. and defendant STEVENS had knowledge of that expectancy.

293. Defendant HSBC TECHNOLOGY & SERVICES (USA) INC. and defendant STEVENS prevented the plaintiff from continuing that prospective contractual agreement.

294. As a direct and approximate result of the above alleged willful and deliberate acts or omissions of defendant HSBC TECHNOLOGY & SERVICES (USA) INC., plaintiff RICHARDS has suffered damages including, but not limited to, lost and foregone wages and benefits.

WHEREFORE, Plaintiff RICHARDS, prays for judgment against defendant HSBC TECHNOLOGY & SERVICES (USA) INC., and respectively requests that this Court:

74

A.  Declare the conduct of defendant HSBC TECHNOLOGY & SERVICES (USA) INC. to violate the rights guaranteed to plaintiff under appropriate Federal law.;

B.  Grant a permanent injunction restraining defendant HSBC TECHNOLOGY & SERVICES (USA) INC., its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which is unlawfully discriminates on the basis of sexual orientation;

C.  Order defendant HSBC TECHNOLOGY & SERVICES (USA) INC., to make whole Plaintiff RICHARDS by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices.

D.  Order defendant HSBC TECHNOLOGY & SERVICES (USA) INC. to pay lost, foregone, and future wages to Plaintiff RICHARDS.

E.  Grant plaintiff RICHARDS actual, consequential, compensatory, punitive and any other damages that the court may deem appropriate against Defendant HSBC TECHNOLOGY & SERVICES (USA) INC.

F.  Grant plaintiff RICHARDS such further relief as the Court deems necessary and proper in the public interest.


### COUNT XXII – TITLE 42 U.S.C. §1983 – FIRST AMENDMENT FREEDOM OF SPEECH AND EXPRESSION

295.    Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to 295 of this Complaint at Law as and for paragraphs 296 of this Count IV.

296.    Defendant KLIENHUBERT, defendant SZUCHNICKI, and defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. and defendant STEVENS, while acting

individually, jointly, and in conspiracy, as well as under color of law and within the scope of

employment, violated the United States Constitution, specifically the Freedom of Speech and

Expression clause of the First Amendment.

297.    Defendant KLEINHUBERT, defendant SZUCHNICKI, and defendant HSBC

TECHNOLOGY & SERVICES (USA) Inc. and defendant STEVENS placed plaintiff

RICHARDS in a false light, before bankruptcy judge, Manual Barbosa, someone who the

plaintiff, had a special relationship with, bankruptcy judge Manual Barbosa was presiding

over plaintiff RICHARDS bankruptcy case 03 B 71403.

298.    The misconduct described in this count was objectively unreasonable and was undertaken

with malice, willfulness, and deliberate indifference to the rights of others.

299.    The aforementioned actions of said defendant KLEINHUBERT, defendant

SZUCHNICKI, defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. and defendant

STEVENS were the direct and proximate cause of the constitutional violations set forth

above.

300.    As a result of the defendant's unconstitutional conduct, plaintiff RICHARDS suffered

pain and injury, including damaged reputation, financial loss, and emotional distress.


WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter judgment in

his favor and against defendant KLEINHUBERT, defendant SZUCHNICKI, defendant

HSBC TECHNOLOGY & SERVICES (USA) Inc. awarding compensatory damages and

punitive damages, as well as any other relief this court deems just and appropriate under the

circumstances.

### COUNT XIII – DEFAMATION – STATE CLAIM

301.    Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to
        301 of this Complaint at Law as and for paragraphs 302 of this Count XI.

302.    Defendant KLEINHUBERT, defendant SZUCHNICKI, defendant HSBC
        TECHNOLOGY & SERVICES (USA) Inc. and defendant STEVENS implied that the
        plaintiff RICHARDS was a "stalker".

303.    The conduct made by the defendant KLEINHUBERT, defendant SZUCHNICKI, and
        defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. and defendant STEVENS was
        false and made with the intent of harming the plaintiff's name and reputation.

304.    The conduct made by defendant KLEINHUBERT, defendant SZUCHNICKI, and
        defendant HSBC TECHNOLOGY & SERVICES (USA) Inc. and defendant STEVENS
        further imputed to the plaintiff RICHARDS a criminal act, and therefore, defamatory per se.

305.    Defendant KLEINHUBERT, defendant SZUCHNICKI, and defendant HSBC        .
        TECHNOLOGY & SERVICES (USA) Inc.; and defendant STEVENS had a duty not to
        publish false statements concerning the Plaintiff.

306.    As a result of defendant KLEINHUBERT, defendant SZUCHNICKI, and defendant
        HSBC TECHNOLOGY & SERVICES (USA) Inc. and defendant STEVENS actions,
        plaintiff RICHARDS has been injured emotionally and by his name and reputation.

307.    As a direct and proximate result of defendant's wrongful and unlawful actions, plaintiff
        RICHARDS has been injured to his name and reputation.


        WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter judgment in
        his favor and against defendant KLEINHUBERT, defendant SZUCHNICKI, and defendant

HSBC TECHNOLOGY & SERVICES (USA) Inc. awarding compensatory damages and punitive damages, as well as any other relief this court deems just and appropriate under the circumstances.

### COUNT XIV- FALSE LIGHT – STATE CLAIM

308.    Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to 308 of this Complaint at Law as and for paragraphs 309 of this Count XII.

309.    Defendant KLEINHUBERT, defendant SZUCHNICKI, and defendant HSBC TECHNOLOGY & SERVICES (USA) Inc., and defendant STEVENS maliciously, willfully, arbitrarily, and irrationally placed Plaintiff Richards in a false light before defendant BARBOSA, who the plaintiff RICHARDS, had a special relationship, by imputing a false and misleading conduct, which was, that the plaintiff Richards, was stalking, third party Donald James Harrington, which was highly offensive, and highly objectionable.

WHEREFORE, Plaintiff RICHARDS, respectively request that the court enter judgment in his favor and against defendant KLEINHUBERT, defendant SZUCHNICKI, and defendant HSBC TECHNOLOGY & SERVICES (USA) Inc., awarding compensatory damages and punitive damages, as well as any other relief this Court deems just and appropriate under the circumstances.

### COUNT XV – BIVEN'S CLAIM - CONSPIRACY

310. Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to 310 of this Complaint at Law as and for paragraphs 311 of this Count XIII.

311. As described more fully in the preceding paragraphs, defendant HANSEN, defendant FLYNN, defendant STEVENS, defendant BARBOSA, and defendant HARRINGTON, acting in concert with known and unknown co-conspirators, reached an understanding to deprive plaintiff RICHARDS of his Constitutional Rights. plaintiff RICHARDS was deprived of his constitutional rights in the manner described in the preceding paragraphs, *inter alia* the Fifth Amendment

312. In furtherance of the conspiracy, the defendant(s) committed overt acts and were otherwise willful participants in joint activity with federal actors under color of law.

313. The misconduct in described in this count was undertaken with malice, willfulness, and deliberate indifference to the rights of others.

314. The aforementioned actions of said defendant HANSEN, defendant FLYNN, defendant STEVENS, and defendant BARBOSA, and defendant HARRINGTON were the direct and proximate cause of the constitutional violations set forth above. .

315. As a result of the defendant's unconstitutional conduct, plaintiff RICHARDS suffered pain and injury, including damaged reputation, financial loss, and emotional distress.

WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a judgment in his favor of the Plaintiff, and against defendant FLYNN and defendant HARRINGTON, awarding compensatory damages and punitive damages, as well as any other relief this Court deems just and appropriate under the circumstances.

79

WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a declaratory

judgment in his favor and against defendant HANSEN, defendant STEVENS, and defendant

BARBOSA, declaring the unlawful malicious and sadistic actions of said defendant(s).

### COUNT XVI - BIVEN'S CLAIM - DUE PROCESS CLAUSE CLAIM

316.    Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to

316 of this Complaint at Law as and for paragraphs 317 of this Count XIV.

317.    Defendant HANSEN, defendant FLYNN, defendant STEVENS, and defendant

BARBOSA, and defendant HARRINGTON, while acting individually, jointly, and in

conspiracy, as well as under color of law and within the scope of employment, deprived

plaintiff RICHARDS of his constitutional rights, specifically the Due Process Clause of the

Fifth Amendment of the United States Constitution.

318.    Defendant HANSEN, defendant FLYNN, defendant STEVENS, and defendant

BARBOSA, and defendant HARRINGTON along with third party District Judge

REINHARD denied plaintiff Richards of his liberty from being treated with cruel and

unusual disproportionate punishment which was outside the federal sentencing guidelines

without an opportunity for a notice and hearing (fair trial). With a proper notice and hearing,

plaintiff RICHARDS would never been subjected to excessive force.

319.    The misconduct described in this count was objectively unreasonable and was undertaken

with malice, willfulness, and deliberate indifference to the rights of others.

320.   . The aforementioned actions of said defendant HANSEN, defendant FLYNN, defendant

STEVENS, and defendant BARBOSA, and defendant HARRINGTON were the direct and

proximate cause of the constitutional violations set forth above.

321.   As a result of the defendant's unconstitutional conduct, plaintiff RICHARDS suffered

pain and injury, including damaged reputation, financial loss, and emotional distress.

WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a judgment in

his favor of the Plaintiff, and against defendant FLYNN and defendant HARRINGTON,

awarding compensatory damages and punitive damages, as well as any other relief this Court

deems just and appropriate under the circumstances.

WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a declaratory

judgment in his favor and against defendant HANSEN, defendant STEVENS, and defendant

BARBOSA, declaring the unlawful malicious and sadistic actions of said defendant(s).


### COUNT XVII - BIVEN'S CLAIM - DUE PROCESS CLAUSE CLAIM

322.   Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to

322 of this Complaint at Law as and for paragraphs 323 of this Count XV.

323.   Defendant HANSEN, defendant FLYNN, defendant STEVENS, and defendant

BARBOSA, and defendant HARRINGTON, while acting individually, jointly, and in

conspiracy, as well as under color of law and within the scope of employment, deprived

plaintiff RICHARDS of his constitutional rights, specifically the Due Process Clause of the

Fifth Amendment of the United States Constitution.

324.   Defendant HANSEN, defendant FLYNN, defendant STEVENS, and defendant

BARBOSA, and defendant HARRINGTON, along with the third party District Judge

REINHARD denied plaintiff RICHARDS of his substantive right of bodily integrity, of

being beaten and battered by his cell mate based on the plaintiff sexual orientation, there was

**81**

no provocation and the plaintiff did not show any affection to this inmate, his source of information, was based on the plaintiff playing card games with another openly gay inmate going to a Texas federal institution. The plaintiff was eating his morning cereal, when the beating took place.

325. The misconduct described in this count was objectively unreasonable and was undertaken with malice, willfulness, and deliberate indifference to the rights of others.

326. The aforementioned actions of said defendant HANSEN, defendant FLYNN, defendant STEVENS, and defendant BARBOSA, and defendant HARRINGTON were the direct and proximate cause of the constitutional violations set forth above.

327. As a result of the defendant's unconstitutional conduct, plaintiff RICHARDS suffered pain and injury, including damaged reputation, financial loss, and emotional distress.

WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a judgment in his favor of the Plaintiff, and against defendant FLYNN and defendant HARRINGTON, awarding compensatory damages and punitive damages, as well as any other relief this Court deems just and appropriate under the circumstances.

WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a declaratory judgment in his favor and against defendant HANSEN, defendant STEVENS, and defendant BARBOSA, declaring the unlawful malicious and sadistic actions of said defendant(s).

## COUNT XVIII - BIVEN'S CLAIM – EQUAL PROTECTION CLASS ONE

328.   Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to
       328 of this Complaint at Law as and for paragraphs 329 of this Count XVI.

329.   Defendant HANSEN, defendant FLYNN, defendant STEVENS, and defendant
       BARBOSA, and defendant HARRINGTON, while acting individually, jointly, and in
       conspiracy, as well as under color of law and within the scope of employment, deprived
       plaintiff RICHARDS of his constitutional rights, specifically the Equal Protection component
       of the Due Process Clause of the Fifth Amendment of the United States Constitution, based
       on the "Class of One".

330.   The aforementioned actions of said defendant HANSEN, defendant FLYNN, defendant
       STEVENS, and defendant BARBOSA, and defendant HARRINGTON were the direct and
       proximate cause of the constitutional violations set forth above.

331.   As a result of the Defendant's unconstitutional conduct, plaintiff RICHARDS suffered
       pain and injury, including damaged reputation, financial loss, and emotional distress.


WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a judgment in

his favor of the Plaintiff, and against defendant FLYNN and defendant HARRINGTON,

awarding compensatory damages and punitive damages, as well as any other relief this Court

deems just and appropriate under the circumstances.

WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a declaratory

judgment in his favor and against defendant HANSEN, defendant STEVENS, and defendant

BARBOSA, declaring the unlawful malicious and sadistic actions of said defendant(s).


**83** ·

## COUNT XIX – BIVEN'S CLAIM - FAILURE TO INTERVENE

332. Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to
332 of this Complaint at Law as and for paragraphs 333 of this Count XVII.

333. One or more of defendant HANSEN, defendant FLYNN, defendant STEVENS,
defendant BARBOSA, or defendant HARRINGTON had a reasonable opportunity, had they
been so inclined, to prevent another defendant from violating plaintiff's rights in the manner
described herein, but they failed to do so.

334. The misconduct described in this count was objectively unreasonable and was undertaken
with malice, willfulness, and deliberate indifference to the rights of others.

335. The aforementioned actions of the defendant HANSEN, defendant FLYNN, defendant
STEVENS, defendant BARBOSA, and defendant HARRINGTON were the direct and
proximate cause of the constitutional violations set forth above.

336. As a result of the defendant's unconstitutional conduct, plaintiff RICHARDS suffered
pain and injury, including damaged reputation, financial loss, and emotional distress.


WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a judgment in
his favor of the Plaintiff, and against defendant FLYNN and defendant HARRINGTON,
awarding compensatory damages and punitive damages, as well as any other relief this Court
deems just and appropriate under the circumstances.

WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a declaratory
judgment in his favor and against defendant HANSEN, defendant STEVENS, and defendant
BARBOSA, declaring the unlawful malicious and sadistic actions of said defendan(s)t.

**84**

## COUNT XX – BIVEN'S CLAIM - EXCESSIVE FORCE

337.    Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to
337 of this Complaint at Law as and for paragraphs 338 of this Count XVIII

338.    The actions, and/or the failure to intervene in the actions, of the defendant HANSEN,
defendant FLYNN, defendant STEVENS, defendant BARBOSA, and defendant
HARRINGTON amounted to an excessive use of force onto plaintiff RICHARDS. This
conduct violates the Fifth Amendment of the United States Constitution.

339.    The aforementioned actions of the defendant HANSEN, defendant FLYNN, defendant
STEVENS, defendant BARBOSA, and defendant HARRINGTON were the direct and
proximate cause of the constitutional violations set forth above.

340.    As a result of the defendant's unconstitutional conduct, plaintiff RICHARDS suffered
pain and injury, including damaged reputation, financial loss, and emotional distress.


WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a judgment in
his favor of the Plaintiff, and against defendant FLYNN and defendant HARRINGTON,
awarding compensatory damages and punitive damages, as well as any other relief this Court
deems just and appropriate under the circumstances.

WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a declaratory
judgment in his favor and against defendant HANSEN, defendant STEVENS, and defendant
BARBOSA, declaring the unlawful malicious and sadistic actions of said defendant(s).

## COUNT XXI - BIVEN'S CLAIM - CRUEL AND UNUSUAL CLAIM

341. Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to 341\of this Complaint at Law as and for paragraphs 342 of this Count XIX.

342. Defendant HANSEN, defendant FLYNN, defendant STEVENS, defendant BARBOSA, and defendant HARRINGTON in concert with third party District Judge REINHARD inflicted cruel and unusual disproportionate punishment upon plaintiff RICHARDS, which was outside the federal sentencing guidelines, specifically, plaintiff RICHARDS was beaten, battered, and sexually assaulted, without any due process of the law.

343. The actions of defendant HANSEN, defendant FLYNN, defendant STEVENS, defendant BARBOSA, and defendant HARRINGTON violated the Cruel and Unusual clause of the Eighth Amendment of the United States Constitution.

344. The aforementioned actions of the defendant HANSEN, defendant FLYNN, defendant STEVENS, defendant BARBOSA, and defendant HARRINGTON were the direct and proximate cause of the constitutional violations set forth above.

345. As a result of the defendant's unconstitutional conduct, plaintiff RICHARDS suffered pain and injury, including damaged reputation, financial loss, and emotional distress.

WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a judgment in his favor of the Plaintiff, and against defendant FLYNN and defendant HARRINGTON, awarding compensatory damages and punitive damages, as well as any other relief this Court deems just and appropriate under the circumstances.

**86**

WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a declaratory judgment in his favor and against defendant HANSEN, defendant STEVENS, and defendant BARBOSA, declaring the unlawful malicious and sadistic actions of said defendant(s).

### COUNT XXII – HATE CRIME – STATE LAW

346.    Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to 346 of this Complaint at Law as and for paragraphs 347 of this Count XX.

347.    Defendant HANSEN, defendant FLYNN, defendant STEVENS, defendant BARBOSA, and defendant HARRINGTON intentionally committed an act of Hate Crime in violation of Illinois law 720 ILCS 5/12-7.1, by reason of perceived sexual orientation of the plaintiff RICHARDS by doing the enumerated offense of 720 ILCS 5/25-1 (Conspiracy) Mob Action without consent, and without justification.

348.    The conduct of defendant HANSEN, defendant FLYNN, defendant STEVENS, defendant BARBOSA, and defendant HARRINGTON was in violation of Illinois law 720 ILCS 5/12-7.1.

349.    The aforementioned actions of the defendant HANSEN, defendant FLYNN, defendant Stevens, defendant BARBOSA, and defendant HARRINGTON, were the direct and proximate cause of the violations set forth above.

WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a judgment in his favor of the Plaintiff, and against defendant FLYNN and defendant HARRINGTON, awarding compensatory damages and punitive damages, as well as any other relief this Court deems just and appropriate under the circumstances.

**87**

WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a declaratory

judgment in his favor and against defendant HANSEN, defendant STEVENS, and defendant

BARBOSA, declaring the unlawful malicious and sadistic actions of said defendant(s).

## COUNT XXIII - CONSPIRACY CLAIM (MOB ACTION) - STATE LAW

350.    Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to

350 of this Complaint at Law as and for paragraphs 351 of this Count XXI.

351.    The aforementioned actions were the direct and proximate cause of the violations of the

Constitution of State of Illinois and Illinois law 720 ILCS 5/25-1

352.    The aforementioned actions of said defendant HANSEN, defendant FLYNN, defendant

STEVENS, and defendant BARBOSA, and defendant HARRINGTON were the direct and

proximate cause of the violations set forth above.


WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a judgment in

his favor of the Plaintiff, and against defendant FLYNN and defendant HARRINGTON,

awarding compensatory damages and punitive damages, as well as any other relief this Court

deems just and appropriate under the circumstances.

WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a declaratory

judgment in his favor and against defendant HANSEN, defendant STEVENS, and defendant

BARBOSA, declaring the unlawful malicious and sadistic actions of said defendant(s).

## COUNT XXIV – ASSAULT AND BATTERY- STATE LAW

353.    Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to

353 of this Complaint at Law as and for paragraphs 354 of this Count XXII.

354.    As described above more fully in the preceding paragraphs, plaintiff RICHARDS was

placed in apprehension of being beaten as a result of the actions taken by defendant

HANSEN, defendant FLYNN, defendant STEVENS, defendant BARBOSA, and defendant

HARRINGTON without justification or provocation.

355.    The actions of defendant HANSEN, defendant FLYNN, defendant STEVENS, and

defendant BARBOSA, and defendant HARRINGTON constituted and resulted in an

offensive physical contact undertaken willfully, maliciously, arbitrarily, and irrationally

proximately causing plaintiff RICHARDS injuries.

356.    The misconduct described in this count was undertaken with malice, willfulness, and

deliberate indifference to the rights of others.

357.    The aforementioned actions of said defendant HANSEN, defendant FLYNN, defendant

STEVENS, and defendant BARBOSA, and defendant HARRINGTON were the direct and

proximate cause of the constitutional violations set forth above.


WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a judgment in

his favor of the Plaintiff, and against defendant FLYNN and defendant HARRINGTON,

awarding compensatory damages and punitive damages, as well as any other relief this Court

deems just and appropriate under the circumstances.

WHEREFORE, Plaintiff RICHARDS, respectively request that the Court enter a declaratory judgment in his favor and against defendant HANSEN, defendant STEVENS, and defendant BARBOSA, declaring the unlawful malicious and sadistic actions of said defendant(s).

### COUNT XXVI – COUNTY OF LAKE - Monell

358.    Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to 361 of this Complaint at Law as and for paragraphs 362 of this Count XXV.

359.    As a direct and proximate result of the aforementioned acts or omissions by defendant COUNTY OF LAKE there existed a custom, practice, policy, and/ or pattern, either implicit or explicit, of the COUNTY OF LAKE in which officers were not held accountable for their wrongful and/ or illegal acts.

360.    Said custom, practice, policy, and/ or pattern of the COUNTY OF LAKE encouraged, endorsed, created willful ignorance of, or otherwise promoted said wrongful acts of the defendant KLEINHUBERT.

361.    As a direct and proximate result of said custom, practice, policy, and/or pattern, either implicit or explicit, of the COUNTY OF LAKE, Plaintiff RICHARDS was injured in a personal and pecuniary manner.

WHEREFORE, Plaintiff RICHARDS demands compensatory damages against the COUNTY OF LAKE, costs and attorney's fees. Plaintiff RICHARDS also demands whatever additional relief this court deems equitable and just.

### COUNT XXVII – CITY OF WAUKEGAN - Monell

**90**

362.   Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to
       365 of this Complaint at Law as and for paragraphs 366 of this Count XXVI.

363.   As a direct and proximate result of the aforementioned acts or omissions by defendant
       CITY OF WAUKEGAN there existed a custom, practice, policy, and/ or pattern, either
       implicit or explicit, of the CITY OF WAUKEGAN in which officers were not held
       accountable for their wrongful and/ or illegal acts.

364.   Said custom, practice, policy, and/ or pattern of the CITY OF WAUKEGAN encouraged,
       endorsed, created willful ignorance of, or otherwise promoted said wrongful acts of the
       defendant SZUCHNICKI.

365.   As a direct and proximate result of said custom, practice, policy, and/or pattern, either
       implicit or explicit, of the CITY OF WAUKEGAN, Plaintiff RICHARDS was injured in a
       personal and pecuniary manner.


       WHEREFORE, Plaintiff RICHARDS demands compensatory damages against the CITY OF
WAUKEGAN, costs and attorney's fees. Plaintiff RICHARDS also demands whatever
additional relief this court deems equitable and just.


## COUNT XXVIII - STATE LAW CLAIM: IDEMNIFICATION
## AGAINST DEPARTMENT OF JUSTICE

366.   Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to
       369 of this Complaint at Law as and for paragraphs 370 of this Count XXVII.


91

367.   Illinois law provides that public entities are directed to pay any tort damages for compensatory damages for which employees are liable within the scope of their employment activities.

368.   Defendant DEPARTMENT OF JUSTICE is the employer of the defendant HANSEN alleged above.

369.   Defendant HANSEN, as alleged above, committed the acts under color of law and in the scope of employment of the DEPARTMENT OF JUSTICE.

WHEREFORE, should defendant HANSEN be found liable for any of the alleged counts in this cause, Plaintiff RICHARDS demands that, pursuant to 735 ILCS 10/9-102, the DEPARTMENT OF JUSTICE pay plaintiff RICHARDS any judgment obtained against the defendant HANSEN as a result of this complaint.

## COUNT XXIX - STATE LAW CLAIM: IDEMNIFICATION AGAINST COUNTY OF LAKE

370.   Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to 373 of this Complaint at Law as and for paragraphs 374 of this Count XXVIII.

371.   Illinois law provides that public entities are directed to pay any tort damages for compensatory damages for which employees are liable within the scope of their employment activities.

372.   Defendant COUNTY OF LAKE is the employer of the defendant KLEINHUBERT alleged above.

373.   Defendant KLEINHUBERT, as alleged above, committed the acts under color of law and in the scope of employment of the COUNTY OF LAKE.

WHEREFORE, should defendant KLEINHUBERT be found liable for any of the alleged counts in this cause, plaintiff RICHARDS demands that, pursuant to 735 ILCS 10/9-102, the COUNTY OF LAKE pay plaintiff RICHARDS any judgment obtained against the defendant KLEINHUBERT as a result of this complaint.

## COUNT XXX- STATE LAW CLAIM: IDEMNIFICATION AGAINST CITY OF WAUKEGAN

374.   Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs ___ of this Complaint at Law as and for paragraphs ____ of this Count XXIX.

375.   Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

376.   Defendant CITY OF WAUKEGAN is the employer of the defendant SZUCHNICKI alleged above.

377.   Defendant SZUCHNICKI, as alleged above, committed the acts under color of law and in the scope of employment of the CITY OF WAUKEGAN.

WHEREFORE, should defendant SZUCHNICKI be found liable for any of the alleged counts in this cause, plaintiff RICHARDS demands that, pursuant to 735 ILCS 10/9-102, the CITY OF WAUKEGAN pay plaintiff RICHARDS any judgment obtained against the defendant SZUCHNICKI as a result of this complaint.

## COUNT XXXI - STATE LAW CLAIM: RESPONDANT SUPERIOR
## AGAINST DEPARTMENT OF JUSTICE

378.    Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to

381 of this Complaint at Law as and for paragraphs 382 of this Count XXX.

379.    In committing the acts alleged in the preceding paragraphs, defendant HANSEN was a

member of, and an agent of, the Federal Bureau of Investigations acting at all relevant times

within the scope of her employment.

380.    Defendant DEPARTMENT OF JUSTICE is liable as principal for all torts committed by

its agent.

WHEREFORE, Plaintiff RICHARDS, respectively requests that the Court enter judgment in

his favor and against defendant DEPARTMENT OF JUSTICE, in an amount equal to any

award against defendant HANSEN, as well as any other relief this **Court deems just and**

appropriate under the circumstances.

## COUNT XXXII - STATE LAW CLAIM: RESPONDANT SUPERIOR
## AGAINST FEDERAL DEFENDER PROGRAM

381.    Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to

384 of this Complaint at Law as and for paragraphs 385 of this Count XXXI.

382.    In committing the acts alleged in the preceding paragraphs, defendant FLYNN was a

member of, and an agent of, the Public Defender's Office acting at all relevant times within

the scope of his employment.

383.    Defendant FEDERAL DEFENDER PROGRAM Inc is liable as principal for all torts

committed by its agent.

**94**

WHEREFORE, Plaintiff RICHARDS, respectively requests that the court enter judgment in his favor and against defendant FEDERAL DEFENDER PROGRAM Inc. in an amount equal to any award against defendant FLYNN, as well as any other relief this court deems just and appropriate under the circumstances.

## COUNT XXXIII - STATE LAW CLAIM: RESPONDANT SUPERIOR AGAINST COUNTY OF LAKE

384.    Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to 387 of this Complaint at Law as and for paragraphs 388 of this Count XXXII.

385.    In committing the acts alleged in the preceding paragraphs, defendant KLEINHUBERT was a member of, and an agent of, the Lake County State's Attorney's Office acting at all relevant times within the scope of his employment.

386.    Defendant COUNTY OF LAKE is liable as principal for all torts committed by its agent. WHEREFORE, Plaintiff RICHARDS, respectively requests that the court enter judgment in his favor and against defendant COUNTY OF LAKE, in an amount equal to any award against defendant KLEINHUBERT, as well as any other relief this Court deems just and appropriate under the circumstances.

## COUNT XXXIV - STATE LAW CLAIM: RESPONDANT SUPERIOR AGAINST CITY OF WAUKEGAN

387.    Plaintiff RICHARDS realleges, restates, and incorporates by reference, paragraphs 1 to 390 of this Complaint at Law as and for paragraphs 391 of this Count XXXIII.

388. In committing the acts alleged in the preceding paragraphs, defendant SZUCHNICKI was a member of, and an agent of, the Waukegan Police Department acting at all relevant times within the scope of his employment.

389. Defendant CITY OF WAUKEGAN is liable as principal for all torts committed by its agent.

WHEREFORE, Plaintiff RICHARDS, respectively requests that the court enter judgment in his favor and against defendant CITY OF WAUKEGAN, in an amount equal to any award against defendant SZUCHNICKI, as well as any other relief this court deems just and appropriate under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rules of Civil Procedure 38(b) on all issues so triable.

Respectively submitted,

Terence Bruce Richards
P. O. Box 3030
Chicago, Illinois 60690-3030

"OFFICIAL SEAL"
Marissa Hostal
Notary Public, State of Illinois
Cook County
My Commission Expires May 5, 2012



## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (the "Agreement") is entered into between: (1) HSBC Finance Corporation ("HSBC"), HSBC Technology & Services USA, Inc. ("HTS"), Michael Woodward, and Robert Barry (HSBC, HTS, Woodward, and Barry will be collectively referred to hereinafter as the "Company"), and (2) Terence Richards (the "Employee") (the Company and the Employee will be collectively referred to hereinafter as the "Parties").

WHEREAS, the Employee was formerly employed by HTS;

WHEREAS, the Employee filed various complaints against the Company in the Circuit Court of Cook County (Case No. 04M3001489) (which is currently pending), the United States District Court for the Northern District of Illinois, Eastern Division (Case No. 04C5122) (which has been dismissed), the United States District Court for the Northern District of Illinois, Western Division (Case No. 04C50290) (which has been dismissed), and the United States Equal Employment Opportunity Commission (Charge No. 210-2005-00098) (with respect to which the Employee has received a "Right to Sue" Letter) (collectively referred to hereinafter as the "Complaints");

WHEREAS, the Parties seek to fully and finally settle the Complaints and all existing claims, whether or not now known, arising out of Employee's employment and the termination of that employment on the terms set forth herein;

NOW THEREFORE, the Parties mutually understand and agree as follows:

1.      Within five business days after the later of (1) the Company's receipt of this Agreement executed by the Employee and the expiration of the eight-day period within which the Employee may revoke his acceptance of this Agreement pursuant to Paragraph 13 below (provided the Employee has not effected such revocation), and (2) the Company's receipt of a court order dismissing Case No. 04M3001489 with prejudice with each Party to bear his or its own costs and attorneys fees, the Company will tender to the Employee one check made payable to the employee in the gross amount of twelve thousand one hundred twenty-five dollars ($12,125.00), less normal deductions for state, federal and other applicable taxes (the "First Settlement Payment"), for which the Company will issue the Employee a Form W-2. The Company agrees to tender the aforementioned check to the Employee at the Company's counsel's office on a mutually-agreeable date within the aforementioned "five business days," but since the Employee does not have a current address or telephone number, it will be the Employee's obligation to make a good faith effort to arrange such mutually-agreeable date with the Company's counsel.

2.      The Employee acknowledges that the consideration set forth herein exceeds that to which the Employee would be entitled upon termination of employment under the normal operation of HTS's benefit plans, policies and/or practices.

3.      For valuable consideration from the Company, receipt of which is hereby acknowledged, the Employee waives, releases and forever discharges the Company and its current and former parents, subsidiaries, divisions, affiliates, shareholders, officers, directors, attorneys, agents, employees (including, but not limited to, Michael Woodward and Robert Barry), successors, and assigns (collectively referred to as the "Company Releasees") from any

CH01DOCS\1229.3                                    1

and all rights, causes of action, claims or demands, whether express or implied, known or unknown, which the Employee has or may have against the Company and/or the Company Releasees, including, but not limited to, any rights, causes of action, claims or demands contained in the Complaints and/or relating to or arising out of the following:

(a)     all claims for discrimination or retaliation under Title VII of the Civil Rights Act of 1964, as amended, the Reconstruction Act of 1866, the Americans With Disabilities Act, the Family and Medical Leave Act, the Age Discrimination in Employment Act, the U.S. Bankruptcy Code, or the Employee Retirement Income Security Act (ERISA) (or any other federal, state, or local law relating to employment, discrimination, or retaliation);

(b)     all claims for wages, compensation, vacation pay, sick pay, compensatory time, commissions, or benefits under ERISA, the Federal Equal Pay Act, or the Fair Labor Standards Act (or any other federal, state, or local wage and hour law);

(c)     all claims under the U.S. Constitution or the Illinois Constitution; and

(d)     all claims arising under the common law of any state which relate to or arise out of the Employee's employment or termination of employment including, but not limited to, claims relating to employment contracts, intentional interference with contracts, wrongful discharge, retaliatory discharge, retaliation, intentional or negligent infliction of emotional distress, defamation, wrongful termination of benefits, and wrongful denial of wages and/or commissions.

4.     The Employee represents and warrants that, other than the Complaints, he has filed no claims, lawsuits, charges, grievances or causes of action of any kind against the Company (or any Company Releasee), and that, to the best of his knowledge, he possesses no claims other than those asserted in the Complaints (all of which he is releasing by this Agreement). The Employee further agrees that this Agreement shall constitute a complete defense against any claim that the Employee is releasing pursuant to this Agreement, and further covenants not to file or cause to be filed any such claim.

5.     On a mutually-agreeable date between July 15-31, 2005, the Company agrees to tender to the Employee at the Company's counsel's office one check made payable to the Employee in the gross amount of twelve thousand one hundred twenty-five dollars ($12,125.00), less normal deductions for state, federal and other applicable taxes (the "Second Settlement Payment"), for which the Company will issue the Employee a Form W-2. Since the Employee does not have a current address or telephone number, it will be the Employee's obligation to make a good faith effort to arrange such mutually-agreeable date with the Company's counsel. Notwithstanding the foregoing, the Company will have no obligation to make the Second Settlement Payment if the Employee (or any agent of the Employee): (1) files any, or makes any attempt to reopen any, claims, lawsuits, charges, grievances or causes of action of any kind against the Company (or any Company Releasee) that he is releasing by this Agreement; and/or (2) breaches any other term of this Agreement. In the event that the Company is relieved of its obligation to make the Second Settlement Payment under these circumstances, all other rights and obligations of the parties will remain in full force and effect (including, but not limited to, the Employee's waiver and release of all claims contained in Paragraph 3 above).

6.     The Employee understands that this Agreement does not constitute a waiver of any rights or claims that may arise after the date on which the Employee executes this Agreement.

7.     The Employee agrees not to apply for employment, or seek reinstatement, with the Company (or any Company Releasee), and further agrees that the Company (and Company Releasees) has no obligation to hire or rehire the Employee at any time in the future.   The Employee forever releases, waives, and relinquishes any right or claim to be hired by, or to reinstatement with, the Company (or any Company Releasee).  The Employee agrees that this Agreement is a lawful and non-discriminatory basis upon which the Company (or any Company Releasee) may refuse to hire or rehire the Employee.

8.     The Employee represents and warrants that he has not communicated any aspect of the terms or substance of the negotiations leading up to this Agreement (the "Settlement Negotiations") to anyone other than his attorneys.  The Employee agrees that he will keep the terms and substance of the Settlement Negotiations and this Agreement confidential, and that he will not disclose such information to anyone outside of his immediate family, his attorneys, and/or his financial advisor, except as may be required by law.  If the Employee advises anyone in his immediate family, his attorneys, and/or his financial advisor about the Settlement Negotiations or this Agreement, he agrees to advise that person of the confidentiality of the Settlement Negotiations and this Agreement and to instruct that person not to disclose the terms, conditions, or substance of them to anyone.  If the Employee is asked about the Settlement Negotiations, this Agreement, or the resolution of the Complaints, he agrees to limit his response to the following statement only: "The matter has been settled and that is all that I can say about it."

9.     The Parties agree that nothing contained in this Agreement is to be construed as an admission of liability, fault, or improper or unlawful action on the part of either of the Parties.

10.     Should any provision of this Agreement be held to be illegal, void or unenforceable, such provision shall be of no force and effect.  However, the illegality or unenforceability of any such provision shall have no effect upon, and shall not impair the enforceability of, any other provision of this Agreement.

11.     This Agreement contains the complete understanding between the Parties, and no other promises or agreements shall be binding unless signed by both an authorized representative of the Company and the Employee.  In signing this Agreement, the Parties are not relying on any fact, statement or assumption not set forth in this Agreement.

12.     The Employee acknowledges that the Company has advised the Employee to consult with an attorney prior to signing this Agreement.

13.     The Employee acknowledges that he has been given at least twenty-two (22) days to consider this Agreement and in fact may accept the Agreement by executing the Agreement on or before January 31, 2005.  The Employee shall have eight (8) days from the date that the Employee executes the Agreement to revoke the Employee's acceptance of the Agreement by delivering written notice of revocation within the eight (8) day period to the following Company contact:

Bryan Cave LLP
Attn: William J. Wortel
161 N. Clark Street
Suite 4800
Chicago, Illinois 60601
(312) 602-5050 (facsimile)

If the Employee does not revoke acceptance, this Agreement will become effective and irrevocable by the Employee on the ninth day after the Employee has executed it.

14.     The Employee agrees with the Company that the exclusive method for resolving all claims or disputes relating in any way to this Agreement (including, but not limited to, its validity, interpretation, application, or effect, or any alleged violations of the Agreement), and all claims which the Employee, by this Agreement, purports to release (if ever the Employee were to challenge the validity of this Agreement and attempt to assert any such claim, including, but not limited to, any claim under any federal statute, state statute, local ordinance, or common law) shall be by final and binding arbitration in Chicago, Illinois pursuant to the American Arbitration Association's National Rules for the Resolution of Employment Disputes (the "AAA Rules") in effect at the time the arbitration proceeding is initiated, and any court with jurisdiction may enter judgment upon the award entered by the arbitrator(s). (The Company has recommended that the Employee review the AAA Rules and discuss them with legal counsel prior to signing this Agreement.)

15.     By signing below, the Employee indicates that he: (a) has carefully read and understands the terms of this Agreement; (b) is entering into the Agreement knowingly, voluntarily and of his own free will; (c) understands its terms and significance and intends to abide by its provisions without exception; and (d) has the mental capacity and mental ability to understand what he is doing, and to do so knowingly and voluntarily.

_Terence Bruce Richard_
TERENCE RICHARDS

The undersigned hereby certifies that Terence Richards appeared before me on ___ / - 7 - 2005 (date) and voluntarily signed this document and verified that all of the representations, warranties, and other statements made by him, or to which he agreed, are true.

"OFFICIAL SEAL"
Julia M. Rembles
Notary Public, State of Illinois
My Commission Exp. 07/16/2005

Notary Public: _____

My Commission Expires: _7-16-2005_

HSBC FINANCE CORPORATION

BY: _____

ITS: _____C I O_____

DATE: ____1 / 25 / 05_____

HSBC TECHNOLOGY & SERVICES USA, INC.

BY: _____

ITS: ____VP-HR_____

DATE: ___1/24/05_____

MICHAEL WOODWARD

_____

DATE: 1/24/05

ROBERT BARRY

_____

DATE: 1/25/05