

IN THE NORTHERN DISTRICT COURT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Terence Bruce Richards<br>　　　Plaintiff | )<br>)<br>) |
| Vs. | ) Case Number 08 CV 6810<br>) |
| United States of America, Department of Justice, County of Lake, City of Waukegan, Federal Defender Program, HSBC Technology & Services (USA) Inc.; Manual Barbosa; James E. Stevens; Daniel Kleinhubert; Detective Szuchnicki; Paul Flynn; Susan Hansen and James Harrington<br>　　　Defendant(s) | )<br>) District Judge:<br>)　　David Coar<br>)<br>) Magistrate Judge:<br>)　　Geraldine Soat-Brown<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO LAKE COUNTY AND DANIEL KLEINHUBERT'S MOTION TO DISMISS, PURSUANT TO Fed. R. Civ. P. 12(b)(6)**

Now Comes, Terence Bruce Richards, and move this Honorable Court pursuant to Fed. Rules Civ. Proc. 12(b)(6), to deny CITY OF WAUKEGAN and DETECTIVE SZUCHNICKI, motion to dismiss, based upon certain affirmative defenses. In support, Plaintiff Terence Bruce Richards, submits the following Memorandum of Law:

**Res Judicata**

**Northern Illinois District Court Case 07 CV 1732**

One of the alleged dispositive issues in this instant action is whether the court order entered on June 4th, 2007 by District Judge Suzanne Conlon in case 07 CV 1732 (filed on March 23rd, 2007) and affirmed by the Seventh Circuit Court of Appeals in case 07 – 2289 is a final order on the merits under Illinois law, only a final order is res judicata

**FILED**

JAN 1 3 2009　TC

JAN 13, 2009
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

for a subsequent litigation. See *People Vs. Kidd* 398 Ill. 405; 75 N.E.2d 851 (1947); *Schmitt vs. Woods* 75 Ill.App.3d 498; 392 N.E.2d 55(1979).

When considering an affirmative defense of preclusion, a federal court must apply state law. Gash Associates Vs. Village of Rosemont 995 F.2d 726, 728 (7th Cir. 1993). The Illinois controlling law is Illinois Supreme Court Rule 273, that rule provides:

> Unless the order of dismissal or a statute of this State
> Otherwise specifies; an involuntary dismissal of an action,
> other than a dismissal for lack of jurisdiction, or for improper
> venue, or for failure to join an indispensible party, operates
> as an adjudication upon the merits.

Formerly, Ill. Rev. Stat. Ch. 110A ¶273 (1979)(emphasis added)

Under the first prong of Illinois Supreme Court Rule 273, a dismissal for lack of jurisdiction applies in the instant case. The District Court Judge Suzanne Conlon, screened the complaint under Title 28 U.S.C. §1915A, but dismissed the complaint before service under, Fed. R. Civ. Proc. 4. The Seventh Circuit affirmed the ruling under Title 28 U.S.C. §1915A, without the appearance of the defendant(s) Daniel Kleinhubert or his respondent superior County of Lake. In addition, the defendant(s) motion to dismiss under Fed. R. Civ. Proc 12(b)(6) is ambiguous as to whether the defendant(s) where notified of the pending lawsuit 07 CV 1732, leaving the issue open to the fact finder.

A dismissal for lack of jurisdiction, however, will not preclude a second suit between the same parties unless the same jurisdictional issue is decisive.

Plaintiff Terence Bruce Richards contends that the dismissal was not a final judgment, but rather was a dismissal for lack of jurisdiction. Citing *Luther Vs. Nelson* 341 F.Supp. 111 (N.D. Ill. 1970). Plaintiff Terence Bruce Richards, asserts this based on

the premise that the *Luker Vs. Nelson* 341 F.Supp. 111 (N.D. Ill. 1972) interpreted the State Court's dismissal for failure to provide notice under the former law 745 ILCS 10/8-102, currently, 745 ILCS 10/8-101(combined 745 ILCS 10/8-101 and 102) as a dismissal for lack of jurisdiction. *Luker* 341 F.Supp. at 115.

The Seventh Circuit Court of Appeals has indicated that *Luker* was correct and that a dismissal under §8-101 (formerly §8-102) is only jurisdictional in nature and not a final judgment under Illinois Supreme Court Rule 273.

### Statute of Limitations

The second dispositive issue in this case is the affirmative defense of Statute of Limitations. Though the length of a limitations period applicable in a §1983 claim is borrowed from a state law, federal courts use federal common law to determine when a period should begin to run, when the plaintiff knows or has reason to know of the injury giving rise to the cause of action. *Wilson Vs. Geisen* 956 F.2d 738, 740 (7th Cir. 1992). Civil Rights actions, therefore, accrue when the plaintiff knows or should have known of the constitutional violation. Id. For federal claims, the discovery rule is a supplemental accrual related doctrine not a tolling doctrine. Cathedral *of Joy Vs. Village of Hazel Crest* 72 F.3d 713 (7th Cir. 1994). *Cada Vs. Baxter Healthcare Corp.* 920 F.2d 446, 450-57. (7th Cir. 1990).

Borrowing a statute of limitations period does not cause federal limitations law in this area wholly to replicate state limitations law, while the length of a period is determined by reference to state law, when a period begins remains a distinct federal

issue. *Cada* at 450-51 (7th Cir. 1990). Whether a federal cause of action has accrued is a question of fact. *Cathedral of Joy* 22 F.3d at 219; *Cada* 920 F.2d at 453.

The accrual process can be tolled under a hostile discriminatory condition. For example, in *National Railway Passenger Corp. Vs. Morgan* 536 U.S. 101; 122 S.Ct 2061; 153 L.Ed.2d 106 with respect to a hostile environment claims, the Supreme Court believe that Morgan demonstrates "[A] hostile work environment claim is comprised of a series of separate acts that collectively constitute one "unlawful employment practice" *Morgan* 122 S.Ct. at 2074. Consequently, "provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purpose of discriminating liability". *Id*.

In the present case, Plaintiff Richards, has and continues to be subjected to a hostile discriminatory environment. Plaintiff, Terence Richards, was robbed of his property, by third party Donald James Harrington, his employment by HSBC Technology & Services (USA) Inc.; discriminated against by James E. Stevens, Daniel Kleinhubert, in their failure to help the plaintiff recover his stolen property. He has been subjected to the hostile environment of prison environment from April 3rd, 2006 through July 23rd, 2008. (which falls within the past two years). Currently, the hostile environment, involves the fact that plaintiff Richards, lived in a middle level income social class, and now is subjected to a poverty-low level income class, the environment, that he now resides at is a hostile environment. Because, plaintiff Richards, such like Hildelbrandt alleges in *Morgan* several acts as part of her hostile work environment claim that arose after the alleged claim date of July 10th, 1997, she can reach beyond the limitations period to bring forth evidence of facts prior to that time that contributed to the hostile environment. In

this case, plaintiff Richards should be able to bring forward the willful failure of defendant Daniel Kleinhubert in performing his duties, in enforcing the state law, and placing plaintiff Terence Bruce Richards in false light before criminal Bankruptcy Judge Manual Barbosa, (plaintiff Richards based this on the fact that there is $42,427 dollars in adversary case 03 A 7083 and $36,000 dollars in adversary case 03 A 7063, while there where claims in the claims register amounting to approximately $62,000.00 dollars, for creditors, who were denied their claims), who based his decisions on the mere conclusion of the criminal case 03 CF 2708, in Lake County Courthouse, that was held against criminal petty thief Donald James Harrington. (as described the Complaint). Without a hostile environment act within the limitations period, the courts cannot consider the hostile acts that occurred outside the limitations period. *Morgan.*

The United States Supreme Court has held that consideration of the entire scope of a hostile environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to the hostile environment takes place within the statutory time period. In the instant case, plaintiff Terence Bruce Richards has been subjected to the hostile prison environment that is within the statutory time period, as described in the 97 page complaint, and continues to be subjected to a hostile act, in that Judge Manual Barbosa knows plaintiff Richards is entitled to back pay from the Social Security Administration, in the amount close to $45,000.00 and was threatened of being sanctioned in case 08 – 2759, to pay for costs in the Northern Illinois District Court (which the plaintiff after receiving his Loyola University deposits, on October 3rd, 2008, went to the clerk's office to pay for the past litigation, without hesitation). Meanwhile, plaintiff Terence Bruce Richards does not

have a pot to piss in [slang], and has no money to pay for the basic needs of food, and not eaten for some time know.

Thus, "[t]o prevail on a hostile environment claim, the plaintiff must show that the hostile environment was both subjectively and objectively hostile. See Harris Vs. Forklift Systems Inc. 510 U.S. 17.

The requirement of subjectively is intended to ensure that the plaintiff did actually feel harassed, because "if the victim does not subjectively regard the environment as abusive, the conduct has not actually altered the victim, and there is accordingly no discriminatory violation. Mc Kenzie 92 F.3d at 479. (Citing Harris 510 U.S. at 20-22; 114 S.Ct. 367). In the present case, being sent to prison, because he has a medical condition, in which everyone took as a mental illness, is harassment and discrimination.

An objectively hostile environment is one that a reasonable person would find hostile or abusive. See City of Chicago 164 F.3d 354, 361 (7th Cir. 1998). In the present case, everyone in society, knows that prison life is a hostile environment, Plaintiff Richards, was knocked out cold, and unconscious, when he was housed at Olge County Jail, pending trial, in the Rockford, Illinois territory.

In determining, whether a plaintiff has met the is standard, a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct, it's severity, whether it is physically threatening, or humiliating, or a mere offensive utterance. In the present case, the plaintiff having to suffer at the willful and malicious hands of others, and having to live a life of a pauper, encompasses the totality of the circumstances.

## Immunity

The third dispositive issue in the case, for defendant(s) Lake County and defendant Daniel Kleinhubert, is whether, Defendant Daniel Kleinhubert had prosecutorial immunity, for his discriminatory, abusive, and callous conduct, in failing to communicate with the plaintiff, Terence Bruce Richards, in determining the facts, in the case 03 CF 2708, which was held against third party, Donald James Harrington, for the theft of the $45,662.13 dollars, which was stolen on April 29th, 2003.-

Prosecutorial conduct which traditionally has been treated as immune is often described as "quasi-judicial" as opposed to investigatory activities normally performed by laymen such as police officers. Judge Ely's exposition of the distinction in *Robichaud Vs. Roman* 851 F.2d 553 (9th Cir. 1965) properly focuses on the character of the defendant's conduct, rather than his motivation.

The plaintiff would like to distinguish between qualified immunity and absolute immunity. Absolute immunity is strictly limited to those officials whose "special functions or constitutional status requires complete protection from suit. *Harlow Vs. Fitzgerald* 457 U.S. at 807, 102 S.Ct. at 2732. And, is the exception rather than the norm. Qualified immunity, in contrast represents the norm, especially for executive officials. *Id.*

Qualified immunity provides a governmental official performing a discretionary function with an entitlement to immunity from liability upon a showing that the challenged conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Id at 818; 102 S.Ct. at 2738 See *Mitchell Vs. Forsyth* – U.S. --, --; 105 S.Ct. 2806, 2800; 86 L.Ed.2d 411 (1985).

The applicability of qualified immunity will turn "primarily on objective factors – that is, the objective reasonableness of an official's conduct, as measured by reference to clearly established law". *Harlow* 457 U.S. at 818; 102 S.Ct. at 2758. Qualified immunity effectuates a balance between the competing values of discouraging abuse of citizen's rights through a damages remedy and of preserving the vigorous and independent exercise of official authority as the Supreme Court observed in Harlow's

> By defining the limits of qualified immunity essentially in objective terms, we provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and Compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But, where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences". Pierson Vs. Ray 386 U.S. 547, 554; (1967)

457 U.S. at 819; 102 S.Ct. at 2738 (footnotes omitted).

In the wake of *Imbler*, several lower courts have employed a functional analysis in determining whether particular conduct is absolutely immune. These decisions generally distinguish between a prosecutor's "advocatory" functions, which are closely related to the judicial process and thus are absolutely immune, and his "investigative" or "administrative" functions, which have a more attenuated connection with the judicial process and are, therefore only qualifiedly immune. E.g. *Gray Vs. Bell* 712 F.2d 490 (D.C. Cir. 1983), cert denied, -- U.S. --; 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984); *McSurely Vs. McClellan* 697 F.2d 309 (D.C. Cir. 1982); *Marrero Vs. City of Hialeah* 625 F.2d 499 (5th Cir. 1980), cert denied *Rashkind Vs. Marrero* 450 U.S. 913; 101 S.Ct. 1353,

67 L.Ed.2d 337 (1981); *Forsyth Vs. Kleindienst* 599 F.2d 1203 (3rd Cir. 1979), on remand 551 F.Supp. 1247 (E.D. Pa. 1982), aff'd 729 F.2d 267 (3rd Cir. 1984) aff'd in part and rev'd in part sub nom. *Mitchell Vs. Forsyth*, -- U.S. --, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Briggs Vs. Goodwin* 569 F.2d 10 (D.C. Cir. 1977) cert. denied 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978); *Hampton Vs. City of Chicago* 484 F.2d 602 (7th cir. 1973) cert denied 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974) *Robichaud Vs. Ronan* 351 F.2d 533 (9th Cir. 1965); *J.D. Pflaumer Inc. Vs. United States Department of Justice* 450 F.Supp. 1125 (E.D. Pa. 1973).

The overriding inquiry in determining whether a particular act is advocatory or investigative focuses on how closely the act is associated with the initiation or conduct of a formal criminal prosecution. *Gray* 712 F.2d 490 Although there is no litmus test that will unequivocally resolve this question, a review of the pertinent case law yields three distinct factors that are particularly useful in determining whether a particular course of prosecutorial conduct can be properly categorized as advocatory and thus absolutely immune: (1) whether the challenged conduct occurred prior or subsequent to the filing of formal criminal charges *against the person seeking redress* [emphasis added] See *Marrero* 625 F.2d at 508; *Briggs* 559 F.2d at 19-20; (2) whether there existed safeguards that could deter or mitigate prosecutorial abuse and thus reduce the need for a civil action to redress the violation of constitutional rights Butz 438 U.S. 478, 98 S.Ct. 2894, and (3) whether the challenged conduct more closely resembled traditional police conduct than prosecutorial conduct *Marrero* 625 F.2d at 508; *Hampton* 424 F.2d at 609; *Robichaud* 351 F.2d at 536.

Stage of Proceedings

The first inquiry in assessing whether particular prosecutorial conduct is absolutely immune focuses on whether the conduct occurred prior or subsequent to the fling of the criminal charges *against the individual seeking redress in the civil rights action.* In the instant action, Plaintiff Richards is the individual who is bringing this instant civil rights action, but was not the individual who was charged with stealing $45,662.13 dollars from the plaintiff, one cannot steal their own funds.

The Supreme Court in *Imbler*, for example, granted prosecutors absolute immunity for initiating the prosecution and for conducting the state's case largely because of the need to preserve the effective functioning of the trial process. See. 424 U.S. at 424-26, 430-31, 96 S.Ct. at 992-93. This focus, on the harm to the judicial process clearly implies that the importance of the challenged conduct to the effective performance of the prosecutor's advocacy function in the criminal prosecution determines, to a great extent, whether there is sufficient need to cloak the challenged conduct with absolute immunity. As the Fifth Circuit Court of Appeals has observed:

> [w]hen a prosecutor acts outside his quasi-judicial role, he is not making decisions comparable to those of a judge or grand juror. Thus, subjecting him to liability for such decisions will not interfere to the same degree with the effective functioning of the criminal judicial system. Only discretion that is quasi-judicial in nature requires absolute insulation from suit because only such discretion is so crucial to the effectiveness of truth-finding process to outweigh the countervailing policy that government officials should be subject to suit for violations of civil rights.

*Marrero* 625 F.2d at 508 (district attorney who advised police concerning an illegal search, and who participated in the search, was entitled only to qualified

immunity). The Court of Appeals for the District of Columbia has expressed a similar view:

> By the plain import of the Court's remarks, absolute immunity under Imbler extends only so far as necessary to protect a prosecutor's decision with respect to the initiation and conduct of particular cases. Imbler does not, in our reading, immunize prosecutors for any and all measures they may undertake in the course of wide-ranging law enforcement investigations or general fact-finding expeditions.

*Briggs* 569 F.2d at 19-20 (prosecutor's alleged perjury before judge in investigate Grand jury proceeding was entitled only to qualified immunity because his testimony was unrelated to 'advocacy issues such as whether to initiate a prosecution or how to conduct a prosecution once begun).

## Contemporaneous Safeguards

The second factor bearing on the question of immunity is whether there existed contemporaneous safeguards that could deter or mitigate the prosecutorial abuse and thus "reduce the need for private damages actions as a means of controlling unconstitutional conduct". Butz 438 U.S. at 512, 98 S.Ct. at 2913. The Supreme Court in *Butz* made clear that the existence of safeguards built into the trial process – such as the adversarial nature of the judicial proceedings, the potential for cross-examination and rebuttal, and the existence of an impartial fact finder – is one of the main grounds supporting the grant of absolute immunity to prosecutors in conducting the state's case. *Id* at 512-16, 98 S.Ct. at 2913-15. These safeguards perform the dual function of restraining and mitigating prosecutorial abuse. *Marrero* 625 F.2d at 509. In the present case, plaintiff Terence Bruce Richards, did not have any safeguards to protect his constitutional rights. He could not

appeal, the decision of the prosecutor Daniel Kleinhubert. He did not have the ability to have a rebuttal, cross examination. He was defenseless when it came to any type of safeguards, in protecting his constitutional rights.

## Traditional Police Functions

A final factor is whether the challenged conduct is typically performed by police officers. As noted earlier, the Supreme Court has adopted a functional rather than a status approach in determining whether a government official is absolutely immune for particular conduct. Prosecutors are entitled to absolute immunity only for functions that are closely connected with the judicial process. i.e. advocatory functions. On the other hand, police officers have never been accord absolutely immunity for their discretionary acts. *Pierson Vs. Ray* 386 U.S. 547, 555; 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). A conclusion that a particular act is traditionally performed by the police indicates, therefore, that that act is not sufficiently connected with the judicial process to warrant absolute immunity, even though it may be performed by a prosecutor. As the Supreme Court stated in *Butz*, in discussing the need to strictly limit the scope of absolute immunity, "[I]t makes little sense to hold that a governmental agent is liable for warrantless and force entry into a citizen's house in pursuit of evidence, but that an official of higher rank who actually orders such a burglary is immune simply because of his greater authority". 438 U.S. at 505-06. The Fifth Circuit, similarly observed in *Marrero* that "[w]hen a prosecutor makes an investigate decision, such as whether to conduct a search and seizure, he is making a decision essentially comparable to that of a policeman" and is "no reason why prosecutor's deserve greater protection [than

policeman] for the same kind of decisions...." 625 F.2d at 508. In the present case, Defendant Daniel Kleinhubert in amending a police report, is acting in the role of a police officer, which should only qualify him for a qualified immunity, and not an absolute immunity.

### Summarily

The majority of the cases cited, interpreted the "functional test" for prosecutor immunity goes beyond what was contemplated by *Imbler* and the subsequent cases which created the functional test. The majority would give absolute immunity under section 1983 when a prosecutor acts in an "advocatory" capacity but only qualified immunity when a prosecutor acts in "investigate" capacity. Limiting the liability of a prosecutor acting in an investigate capacity will cause prosecutors to cooperate less with the police or victims, as in the present case, and will force the police and victims to obtain independent counsel, like the plaintiff attempted to do in the present, case when he hired Jack W. Rosen to represent his needs in the criminal case 03 CF 2708, or to act without the advice of those knowledgeable in the law.

*[signature]*