IN THE NORTHERN DISTRICT COURT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Terence Bruce Richards<br>Plaintiff<br><br>Vs.<br><br>United States of America; Department of<br>Justice; County of Lake; City of Waukegan;<br>Federal Defender Program; HSBC<br>Technology & Services USA Inc.; Manual<br>Barbosa; James E. Stevens; Daniel<br>Kleinhubert; Detective Szuchnicki; Paul<br>Flynn; Susan Hansen; and James Harrington | 08cv6810<br><br>Case Number 08 CV 6810<br><br>District Judge<br>David H. Coar<br><br>Magistrate Judge<br>Geraldine Soat Brown |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S TERENCE BRUCE RICHARDS'S RESPONSE TO JAMES HARRINGTON'S MOTION TO DISMISS, PURSUANT TO FED. R. CIV. PROC. 12(b)(6)

I, Terence Bruce Richards, presents this Memorandum of Points and Authorities in support of his response to defendant James Harrington's MOTION TO DISMISS, pursuant to Fed. R. Civ. Proc. 12(b)(6). This case is similar to the Mathew Shepard case in the state of Wyoming in 1998.

> Mathew Wayne Shepard was a gay American student at the University of Wyoming who was tortured and subsequently murdered near Laramie. He was attacked on the night of October 6th – October 7th, 1998 and died at Poudre Valley Hospital in Fort Collins Colorado, on October 12th, 1998, from severe head injuries. His murder brought national as well as International attention to the issue of hate crime legislation at the state and federal levels.

> Russel Arthur Hendersen plead guilty to felony murder and kidnapping, allowing him to avoid the death penalty. Aaron James McKinney was convicted of felony murder and kidnapping. Henderson is currently serving two consecutive life sentences and McKinney is serving the same

but without the possibility of parole.

### The Attack
Shortly after midnight on October 7th, 1998, 21-year old Shepard met McKinney and Henderson in a bar. McKinney and Henderson offered Shepard a ride in their car. Subsequently, Shepard was robbed, pistol whipped, and tortured, tied to a fence in a remote, rural area, and left to die.

In the instant case, defendant James Harrington's son Donald James Harrington, purporting to to a gay individual, befriend, plaintiff, Terence Bruce Richards, purporting to be in love with plaintiff, Terence Bruce Richards, with no intentions, of the same. Plaintiff, Terence Bruce Richards, suffering from hypopituitarism, low growth hormone, was injecting exogenous Humatrope (growth hormone), which increased his levels of oxytocin, a hormone, which allows the individual to put trust into other individuals. The Northern Illinois Bankruptcy Court, Bankruptcy Judge Manual Barbosa, was purporting to assist, plaintiff, Terence Bruce Richards, to recover his stolen property, but turned the tables, when he discovered, that plaintiff, Terence Bruce Richards was gay (alleged bipolar individual). Bankruptcy Judge Manual Barbosa, then vicious attacked, plaintiff, Terence Bruce Richards, stripping him of his property, and bankruptcy discharge. He, then assisted, defendant Bankruptcy Trustee, James E. Stevens, Public Defender Paul Flynn, Federal Bureau of Investigations, Susan Hansen, in kidnapping, and torturing, Plaintiff Terence Bruce Richards. Defendant, James Harrington assisted, defendant Sepcial Agent Susan Hansen, in torturing, plaintiff, Terence Bruce Richards as follows:

## STATEMENT OF FACTS

On or about, April, 2002, plaintiff, Terence Bruce Richards, responded to Donald James Harrington's Modeling/Escort ad in the Gay Chicago magazine, whose office is located at 3115 North Broadway, Chicago, Illinois 60625, telephone number 773-327-7271. On the first meeting, with Donald James Harrington, we sat down and just made conversation. Discovering each other's backgrounds, educational levels, work experiences, so on and so forth. Donald James Harrington alleged to be a student attending Carthage College located in Kenosha Wisconsin, a school he never attended nor enrolled. Plaintiff, Terence Bruce Richards, was seeking medical assistance, for endocrine failures of hypopituitarism, hypogonadism, and hypopituitiarism, in which he was prescribed by Doctor Sophia Garcia Buder located at 2719 North Halsted Street, Chicago, Illinois 60614, the following medications: Synthroid 125 micrograms, 150 milligrams of Testosterone Enthanate, and .06 milligrams of Humatrope, (Synthetic Recombinant DNA) growth hormone injections. The Humatrope, increased the plaintiff's oxytocin levels, which was as described in Taber's Medical dictionary, as being used in females (which the plaintiff is not) reproduction. It is released in large amounts in after distension of the cervix, and vagina during labor, and after stimulating of the nipples, facilating birth, and breastfeeding, respectively. Recent studies have begun to investigate oxytocin's role in various behaviors, including social recognition, bonding, anxiety, trust, and maternal behaviors. This made plaintiff, Terence Bruce Richards, susceptible to the criminal actions, of defendant James Harrington's son, Donald James Harrington.

The second encounter, was in the summer of 2002, when, Donald James Harrington and plaintiff, Terence Bruce Richards, met to attend a movie, located Gurnee Mills, located at 6170

Grand Avenue, Gurnee Illinois 60031. After, this second encounter, Donald James Harrington and plaintiff, Terence Bruce Richards did not see each other, until October 22nd, 2002, at which time, Donald James Harrington and plaintiff, Terence Bruce Richards, met at the Dominick's parking lot, located in McHenry, Illinois. Plaintiff, Terence Bruce Richards, drove his 2003, Oldsmobile Alero, with Donald James Harrington following in his 2002, Chrysler PT Cruiser, through the town of Bull Valley, to 2408 Aspen Drive, Woodstock, Illinois 60098 (plaintiff home). At which time, plaintiff, Terence Bruce Richards, went inside to change cloths, to go to the Sugar Shack, strip joint in Lake Geneva, Wisconsin. While, he was changing his cloths, third party, Donald James Harrington, searched, plaintiff, Terence Bruce Richards, home, looking into various cabinets, drawers, and filing cabinets. We arrived at the Sugar Schack, were upon third party, Donald James Harrington, interrogated, plaintiff, Terence Bruce Richards, about his retirement account, and, how, much money, could be extracted from the account, to assist Donald James Harrington, in attending Carthage College, a school he never attended nor enrolled. This ritual, went on day after day, in successive days, during the month of October, and November 2002, on some occasions, after returning, to the town of Mc Henry, Donald James Harrington, and plaintiff, Terence Bruce Richards, would sit in one of the two vehicles, discussing the possibility of lending Donald James Harrington money for various needs he possessed. Plaintiff, Terence Bruce Richards, while on the medication Humatrope, and the unconditional stimulus of AIDS, and the unconditional response death, coupled with the conditional stimulus of Donald James Harrington having homosexual encounters, with strange men, who could be infected with the AIDS virus, and not caring, whether Donald James Harrington lived or died, because, the fulfilled their side of the bargain, Donald James

Harrington received payment for services rendered, and the AIDS virus, is only an occupational hazard.

Donald James Harrington, and plaintiff, Terence Bruce Richards, went to Circuit City, on or about November 10th, 2002, whereupon Donald James Harrington saw a automobile stereo system, with a special flip down front, and special LED front face, which cost, $1,000.00 dollars, and the normal radios, at the time, cost about $200-$400.00 dollars. Donald James Harrington informed, plaintiff, Terence Bruce Richards, that Donald James Harrington's birthday will be on November 15th, 2002, at which time he would be turning 23. He also, informed, plaintiff, Terence Bruce Richards, that he father, may be attending a gay bar, with Donald James Harrington and plaintiff, Terence Bruce Richards. Plaintiff, Terence Bruce Richards, was concerned, that Donald James Harrington, may not be living at his parents home, at 901 Corona Street, Round Lake Beach, Illinois, at he was purporting, so the day, that plaintiff, Terence Bruce Richards, purchased this automobile stereo, that Donald James Harrington, was in love with, third party, Donald James Harrington, informed plaintiff, Terence Bruce Richards, to meet him at his parents house, while Donald James Harrington, was sitting in his automobile, on the driveway, when plantiff, Terence Bruce Richards arrived. Both Plaintiff, Terence Bruce Richards, and Donald James Harrington, went into the home, whereupon, his mother asked her son, Donald James Harrington, if he would like some homemade chocolate chip cookies, she just got done baking, that he likes, her cooking, when he comes home on Balicious. This triggered, plaintiff, Terence Bruce Richards, to request, Donald James Harrington, as to his living here at this location, suspecting something is not correct about Donald James Harrington's assertions. Donald James Harrington's response, was that his mother was nutty and delusional.

This brought, plaintiff, Terence Bruce Richards, into looking into the possibility, that Donald James Harrington lived at another address, which plaintiff was able to decipher, based on the pieces of information, that Donald James Harrington provided. Which was the address of 19 North Jackson Street, Waukgan, Illinois 60085. Upon questioning, Donald James Harrington, about this address, he informed, plaintiff, Terence Bruce Richards, to meet him at the Denny's Restaurant, located in Gurnee, Illinois 60031 address, whereupon, Donald James Harrington, informed plaintiff, Terence Bruce Richards, that he, Donald James Harrington, was living with a friend by the name of Kevin. Meanwhile, he, plaintiff, Terence Bruce Richards, started, to question, one of the strippers, at the Sugar Schack, because, Donald James Harrington, was pretending to be in love with her. All three of us, Donald James Harrington, plaintiff, Terence Bruce Richards, and this stripper, which in hindsight, was attempting to have a one night stand with, met at the all night diner, in Lake Geneva, Wisconsin. She informed, plaintiff, Terence Bruce Richards, that, Donald James Harrington, is not all that he pretends to be.

Donald James Harrington, on about, February, 2003, requested, plaintiff, Terence Bruce Richards, to met him at the IsKalis American Floor Show, 4437 Old Grand Avenue, Gurnee, Illinios 60031, whereupon, Donald James Harrington, meets, with a salesperson, he was working with, in selecting carpeting for a mobile home. Plaintiff, Terence Bruce Richards, third party, Donald James Harrington, the sales person, went to the mobile home, to take measurements, and the sales person informed Donald James Harrington, that the baby would like the room, he would be placed in. Unbeknownst, to, plaintiff, Terence Bruce Richards, plaintiff, Terence Bruce Richards, attempted to investigate, what baby? Plaintiff, Terence Bruce Richards, was under the impression, that he would be moving into the mobile home with

Donald James Harrington. During, the month of February, and March, 2003, plaintiff, Terence Bruce Richards, and Donald James Harrington, made arrangements in preparing the mobile home for living quarters. On or about, March 14th, 2003, plaintiff, Terence Bruce Richards, was forced into filing bankruptcy. During, the preliminary segment, of Plaintiff, Terence Bruce Richards, bankruptcy proceedings, plaintiff, Terence Bruce Richards, prepared to withdraw, a hardship withdrawal from his 401(k) account at his employer, Household International. Plaintiff, Terence Bruce Richards, received the $45,662.13 dollar check on April 29th, 2003, and was going to deposit the check into a savings account at Harris Bank – Woodstock located at 101 South Benton Street #100, Woodstock, Illinois 60098. Plaintiff, Terence Bruce Richards, was there for an hour and half, speaking to his friends, the branch manager Thomas Stronner, while Donald James Harrington kept calling plaintiff, Terence Bruce Richards on the phone, harassing him to place the funds, into his account at National City bank. Plaintiff, Terence Bruce Richards, friend Thomas Stronner, branch manager at Harris Bank Woodstock, whom, plaintiff, Terence Bruce Richards, one day, would not sign a loan from the bank, until the fix their paperwork, because the loan contract, stated upon repaying the loan for $2,000.00 dollars, the bank would pay, plaintiff, Terence Bruce Richards $2,000,000.00 dollars for taking out the loan, the loan documents were incorrect, and none caught their error, on their end, until, it was presented to plaintiff, Terence Bruce Richards, who had to come back the next day, to sign the correct papers, and receive his funds.

On or about, May 6th, 2003, plaintiff, Terence Bruce Richards, went to the home of Donald James Harrington, parents, to request, the whereabouts, about Donald James Harrington, apparently, the weekend before, he had a disagreement with his wife, and moved

out of the home at 19 North Jackson Street, Waukegan, Illinois, 60085, and at the time, was living with his parents at 901 Corona Street, Round Lake Beach, Illinios 60074. His father, requested from Terence Bruce Richards, what is the disposition, about $45,662.13 dollars, that the found on a bank receipt, in their son's pants pocket. Plaintiff, Terence Bruce Richards, informed them, that Donald James Harrington, was purporting to be a law student attending Carthage College in Kenosha Wisconsin, and plaintiff, Terence Bruce Richards, was attempting to determine, whether the money he borrowed third party Donald James Harrington on November ___, 2002, January 2nd, 2003, and February 14th, 2003, was legitimate. Plaintiff, Terence Bruce Richards, took out the $45,662.13 dollars to purchase himself a mobile home, to live in, when he was in the process of losing his home at 2408 Aspen Drive, Woodstock, Illinios 60098. Due to the ambiguity, from their son's deceptive practices, there was a break down in communicatioin, between the parents, and plaintiff, Terence Bruce Richards. His father, getting angry at his son, impulsively, drove his father need, to go to the Waukegan Police Department, with plaintiff, Terence Bruce Richards, to report his son's criminal actions. Plaintiff, Terence Bruce Richards, wanted to investigate the situation, and find out personal knowledge, from Donald James Harrington, as to the truth of the matter. Plaintiff, Terence Bruce Richards, refused to file the police report that night. The Waukegan Police Department would have been the wrong jurisdiction to file the police report, the theft occurred in Gurnee Illinois. I agreed, with James Harrington, to meet him, the next day, at 7:00 p.m. at their home, to sit down and communicate with their son, Donald James Harrington, upon, the plaintiff's arrival, going into the home, with his father, at the same time, after, James Harrington, finished work, and working out the Bailey's Health Club, went into the home, to sit down with Donald James

Harrington. After, Terence Bruce Richards, appearance, become apparent, to Donald James Harrington, he went out to his 2002 PT Cruiser, sat in the car for fifteen minutes, before leaving the scene. Plaintiff, Terence Bruce Richards, agreed to met with his father, the next day, at the Olive Garden located at 5590 Northridge Drive, Gurnee, Illinois 60031, while we attempted to sit down with Donald James Harrington at the restaurant, to see if we could work the issues out. Donald James Harrington, meanwhile, refused to come to the restaurant, and removed the remaining $29,000.00 dollars from the bank. James Harrington informed, plaintiff, Terence Bruce Richards, that he, James Harrington did not sleep, at all the night before. James Harrington, plaintiff, Terence Bruce Richards, and third party Eric, went to the Waukegan Police Department, to fill out a police complaint. Plaintiff, Terence Bruce Richards, refused again to fill out a police complaint, and left the premises. By, Friday, May 9th, 2003, Plaintiff, Terence Bruce Richards, was able to sit down and discuss the return of the property with Donald James Harrington, however, Donald James Harrington, led, plaintiff, Terence Bruce Richards, to the home at 19 North Jackson Street, Waukegan, Illinois 60085, whereupon, Donald James Harrington, and his wife, Lourdes Harrington, went into the home to contact the police department, that plaintiff, Terence Bruce Richards was trespassing. Before, the police arrived, plaintiff, Terence Bruce Richards, left the scene, to met with the police officers at their police station located at Waukegan Police Department. The next day, plaintiff, Terence Bruce Richards, met with Office Morris of the Gurnee Police Department, and once, again, before signing the police report, with Donald James Harrington's parents, at 901 Corona Street. Both, plaintiff Terence Bruce Richards, and James Harrington filled out witness statements against Donald James Harrington. Donald James Harrington was arrested on July 28th, 2003, and

indicted on September 3rd, 2003. Meanwhile, plaintiff, Terence Bruce Richards, had communication with James Harrington, informing him, that he was concerned about, James Harrington going into prison, plaintiff, Terence Bruce Richards, could not act maliciously and sadistically, with the intent to inflict harm upon another individual. But, he hired, his friend Jack W. Rosen, to coach him through the process. Meanwhile, plaintiff, Terence Bruce Richards, attempted to correct the police report with defendant Daniel Klienhubert, who would not have communication with plaintiff, Terence Bruce Richards. Plaintiff, Terence Bruce Richards, had ambiguous information from Donald James Harrington, was attempting to sort out the who time period, he was in contact with Donald James Harrington. On or about, March, 2006, plaintiff, Terence Bruce Richards, was exercising his First Amendment Constitutional rights, whereupon, without any personal knowledge James Harrington had one phone call, on or about, March 30th, 2006 (between FBI agent Hansen and James Harrington) wherein Special Agent Hansen requested any information Harrington could provide to arrest plaintiff Terence Bruce Richards, without probable cause or any reasonable grounds that a crime had been committed, Harrington provided a phone number Richards called James Harrington from (Defendant's Motion to Dismiss ¶ 2) James Harrington has never met defendant Hansen (Defendant's Motion to Dismiss ¶ 2).

**LEGAL ANALYSIS**

<u>Generally</u>

The Civil Rights act (42 U.S.C. §1983) gives right of action against person, who, under color of state law, custom, or usage, subjects another to deprivation of any rights, privileges, or immunities secured by federal constitution has several purposes.

1) It overrides certain kinds of state laws

2) It provides remedy where state law is inadequate

3) It provides federal remedy where state remedy, though adequate in theory, Is not available in practice.

*Monroe Vs. Pape* 365 U.S. 167

In the instant action, plaintiff, Terence Bruce Richards, is bringing *Biven's* Claim (analogues to a Title 42 U.S.C. §983 claim) against several federal officials for the hate crime actions involving plaintiff, Terence Bruce Richards. Defendant James Harrington, is one of the actors who conspired with special agent Susan Hansen to deprive plaintiff, Terence Bruce of his constitutional rights, (See Defendant's Motion to Dismiss ¶ 1(a), (b), (c), (d), (e), (f)), under the state law of Hate crime (See Defendant's Motion to Dismiss ¶1(g)). Section 1983 basically seeks to (1) deter state action from using badge of their authority to deprive individuals of their federally guaranteed rights and (2) provide related relief. *Richardson Vs. McKnight* 521 U.S. 399. 42 U.S.C. §1983 was partly aimed at constitutional deprivations through abuse and nonuse of authority by state officials. *Miller Vs. Carson* 563 F.2d 757.

The United States Supreme Court found an implied damages remedy for violation of Constitutional rights by federal agents through the use of *Biven's* type action. In *Biven's vs. Six Unknown Agents of the Federal Bureau of Narcotics* 403 U.S. 388 (1971). This is analogous to a Title 42 U.S.C. §1983 action against state actors, under color of state law.

### Elements

Two elements are necessary for recovery under a *Biven's* action (Title 42 U.S.C. §1983). Plaintiff, Terence Bruce Richards must prove that defendant(s) has deprived him of rights secured by "Constitution and Laws" of the United States, and that defendant(s) deprived him of those constitutional rights "under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, this second element requires that plaintiff, Terence Bruce Richards show that defendant(s) acted "under color of law" *Adickes Vs. S.H. Kress & Co.* 398 U.S. 144. As defendant James Harrington stated in paragraphs 1(a), (b), (c), (d), (e), and (f), that the complaint alleges that defendant James Harrington deprived plaintiff, Terence Bruce Richards, of rights secured by the United States Constitution, under the Illinois Hate Crime statute (paragraph 1(g)), with a federal actor Federal Bureau of Investigations special agent Susan Hansen, while she was acting in her official capacity as a law enforcement official (Defendant's Motion to Dismiss ¶ 6).

42 U.S.C. §1983 imposes liability for violations of rights protected by the Federal Constitution, not for violations of duties of care arising out of tort law; remedy for the latter type of injury must be sought in state court under traditional tort-law principles. *Baker vs. Mc Cullan* 443 U.S. 137

## Purpose

Purpose of the Civil Rights statute (42 U.S.C. §1983, and it's federal counterpart *Biven's* action) authorizing actions at law, suit in equity, or other proper proceedings, for redress of deprivations under color of state law, of rights secured by federal constitution and federal laws, is to interpose federal courts between states and people, by guardians of people's federal rights, and thus to protect people from unconstitutional actions under color of state law, whether that action be executive, legislative, or judicial, in carrying out this purpose, Congress, has expressly authorizing suit in equity as one of the means of redress, and plainly authorized federal courts to issue injunctions in 1983 actions. *Mitchum Vs. Foster* 407 U.S. 225 (1973).

Title 42 U.S.C. §1983 which authorizes redress for violations of constitutional and statutory rights, is not itself a source of substantive rights, but rather a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes. *Baker Vs. Mc Cullan* 443 U.S. 137.

## Conspiracy

Under Title 42 U.S.C. §1983 conspiracy can furnish the conceptual spring for imputing liability from one to another. A conspiracy may also be used to furnish the requisite state action. . . yet it remains necessary to prove an actual deprivation of a constitutional right, a conspiracy to deprive is insufficient. . . Here, in the instant case, as defendant James Harrington mentioned in his Motion to Dismiss on ¶ 1(c) Richards alleges that Harrington together with other defendants Hansen, Flynn, Stevens, Barbosa, and District Judge Reinhard, denied Richards of his liberty from being treated with cruel and unusual disproportionate punishment which

was outside the federal sentencing guidelines without an opportunity for a notice and hearing (fair trial). See Complaint PP 318. In the instant case, contacting federal Special Agent Susan Hansen to assist in plaintiff's arrest, without knowing whether plaintiff, Terence Bruce Richards may have been exercising his First Amendment Constitutional right to Freedom of Speech and Expression, without having any personal knowledge is an actual deprivation of a Constitutional right, secured by the United States Constitution. Specifically, no specific intent to deprive a person of federal right is necessary to create liability under Title 42 U.S.C. §1983, which gives right of action against person who under color of state law, custom, usage, subjects another to deprivation of any rights, privileges, or immunities secured by federal constitution. *Monroe Vs. Pape* 365 U.S. 167.

### Conspiracy Generally

A civil conspiracy is a combination of two or more persons by concerted action to accomplish some criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means, to the injury of another. *Davenport Vs. North Carolina Dept. of Transportation* 3 F.3d 89 (4th Cir. 1993) (citing North Carolina law). In the instant case, defendant James Harrington, states in Motion to Dismiss ¶ 2, James Harrington has never met any of the above named defendants Flynn, Stevens, or Barbosa. With the exception of one phone call, on or about, March 30th, 2006(between FBI agent Hansen and James Harrington) wherein Hansen requested any information Harrington could provide to aid the FBI in locating Richards, and wherein Harrington provided a phone number Richards called Harrington from, Harrington has never met defendant Hansen. In addition, defendant, James Harrington states in Motion to Dismiss in ¶ 1(g) Richards alleges that Harrington, together with

other defendant(s) Hansen, Flynn, Stevens, and Barbosa committed an act of Hate Crime. See Complaint PP 347. To do the unlawful act of placing plaintiff, Terence Bruce Richards in the apprehension of bodily harm, whereupon bodily harm occurred.

### Conspiracy Elements

A civil conspiracy requires an object to be accomplished, meeting of the minds on the object or course of action, on or more overt acts, and damages, as the proximate result, thereof. As stated in ¶2 of Defendant's Motion to Dismiss, defendant James Harrington had a meeting of the minds with FBI special agent, Susan Hansen, specifically, "with the exception of one phone call, on or about March 30th, 2006 (between FBI agent Hansen and James Harrington), wherein Hansen requested any information Harrington could provide to aid the FBI in locating Richards, and wherein Harrington provided a phone number Richards called Harrington from, Harrington has never met defendant Hansen, and ¶ 6 Moreover, Richards, claims against Harrington are bared[sic] since the allegations Richards makes against Harrington all stem from Harrington's cooperation with FBI Agent Hansen, during her phone call, on or about 30 March, 2006, while she was acting in her official capacity as a Law Enforcement Official, and while Harrington was co-operating with Law Enforcment, which was his legal and civic obligation to do. The overt act, was the deprivation of the constitutional rights of plaintiff, Terence Richards, ¶ 1(c), Richards alleges that Harrington, together with other defendant(s) Hansen, Flynn, Stevens, Barbosa, and District Judge Reinhard, denied Richards of his liberty from being treated with cruel and unusual disproportionate punishment which was outside the federal sentencing guidelines without an opportunity for a notice or hearing (fair trial) See Complaint PP 318.

### Overt Act

Since damages must be shown in a civil action, based on a conspiracy, no cause of action can exists in the absence of an overt act, tortuous, or unlawful act committed in the furtherance of the conspiracy. In the case at bar, the overt act, was placing, plaintiff, Terence Bruce Richards, in the apprehension of bodily harm, and whereupon bodily harm occurred.

### Damages

The gist of a civil conspiracy is not the unlawful agreement, but the damages resulting from the agreement or its execution. The cause of action is not created by the conspiracy, but by the wrongful acts, done. The damages in the instant case, was the beatings, battering, abuse, and sexual assault, that plaintiff, Terence Bruce Richards, sustained for exercising his constitutional rights.

### Persons Liable

A civil conspiracy requires the combination of at least two persons, tort liability arising from the conspiracy presupposes that the coconspirator is legally capable of committing a tort, in the he or she owes a duty recognized by law to the plaintiff, and is potentially subject to liability for breach of that that duty. In the present case, Defendant James Harrington, may have legal and civic obligation to co-operate with the police, but as stated below in the qualified immunity section (see infra.), he also has a legal obligation, to act with some credible and reliable information, when there is no arrest warrant pending for the plaintiff's arrest.

### Nature and Extent of Liability

A civil conspiracy claim operates to extend beyond the active wrongdoer, liability in tort extends to actors who have merely assisted, encouraged, or planned the wrongdoer's acts. Each act done in pursuance of the conspiracy by one or several conspirators is, in contemplation of law, an act for which each is jointly and severally liable. In James Harrington's Motion to Dismiss, ¶ 5, James Harrington states "Richards claims against Harrington lack credibility in that they fail to state any activity, action, or deed that Harrington actually committed or participated in that in any way were directed at or against Richards at any time whatsoever".

The joint and several liability of a conspirator applies to damages accruing prior to his or her joining the conspiracy as well as damages thereafter, resulting – regardless of whether he or she took a prominent or an inconspicuous part in the execution of the conspiracy. Examining, James Harrington's last ¶ 7, fails, as he claims. "Finally, each and every one of Richards claims are barred because they are all missing one or more required elements of a claim".

### Qualified Immunity

In the case cited as *Butler Vs. Goldblatt Bros. Inc.* 589 F.2d 323 (7th Cir. 1978), law enforcement officers may not avoid liability under Title 42 U.S.C. §1983 for false arrest where they had no firsthand knowledge of any facts to support belief that arrestee's threatened security officer, but acted solely on information from informant with which they had no prior experience. Butler Vs. Goldblatt Bros. Inc. 589 F.2d 323 (7th Cir. 1978). In the case at bar, James Harrington claims in his motion to dismiss, in ¶ 3 James Harrington has never corresponded

with, talked with, met, or in any other way had any contact with the above named defendants of any kind or at any time (other than the above referenced single phone call with Hansen). James Harrington further has no personal knowledge of the case against Richards, its outcome, or the parties, events, activities, legal proceedings, or the motives and the efforts of any person involved. James Harrington continues, into ¶ 4 James Harrington further has only limited knowledge of Plaintiff Richards through Plaintiff Richards relationship with Harrington's son. Harrington has no personal knowledge of Plaintiff Richards's personal affairs, business, legal affairs, or any other activities, information, or dealings or any sort or type.

*[signature]*