**IN THE NORTHERN DISTRICT COURT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Terence Bruce Richards<br>　　　　Plaintiff<br><br>Vs.<br><br>United States of America Et. Al. | ) Case Number 08 CV 6810<br>)<br>) **District Judge Coar**<br>) **Magistrate Judge Soat Brown**<br>) |

**FILED**
FEB 2 3 2009 T.C
Feb 23 2009
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# MEMORANDUM OF POINTS AND AUTHORITIES
## RESPONSE TO HSBC TECHNOLOGY & SERVICES (USA) Inc's
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND TO
## BAR FURTHER LAWSUITS AGAINST HSBC WITHOUT PRIOR LEAVE OF COURT

### Richards I, II, and III Complaints

Plaintiff Terence Bruce Richards (hereinafter known as Plaintiff Richards), had his

prospective contractual agreement, with defendant HSBC Technology & Services (USA) Inc

(hereinafter known as "HSBC"), interfered with by fraudulent misrepresentation and

defamation to Marge Hickman of the Policy Department of HSBC, by Vice President of Human

Resources, Woodward, at the time of March 15th, 2004, when he believed that plaintiff,

Richards had engaged in fraudulent and dishonest conduct, based strictly on hearsay evidence

(no personal knowledge) from Barry, who passed along his suspicions based on a March 9th,

2004 (undated) letter(See Exhibit "B" of defendant's Motion to Dismiss [Doc. 76-3; page 12-

13]), a March 11th e-mail, and his conversation with Mr. Barry. (see Exhibit "B" of defendant's

Motion to Dismiss [Doc. 76-3; page 10-11]). The knowledge element of the purported fraud was

based on the March 9th, 2004 letter, and the element of intent, came from the suspicions of

Barry. Barry, found the March 9th, 2004, letter in plain view, under the plain view doctrine,

when he was suspicious of plaintiff Richards's, absence from work, on a continuous basis, to

attend the bankruptcy court proceedings, in Rockford, Illinois from the time period, from March

14th, 2003, up to and including his termination from his employment, on March 15th, 2004, due to the fact, that third party, Harrington was not co-operating with the courts. His extensive co-operation with the bankruptcy court was interfering with his employment, from not being able to attend to his hours of employment, creating a conflict of interest. Under the "plain view doctrine", Barry had an improper, purpose to be in plaintiff, Richards, cubicle, he was not in the cubicle for, a legitimate business purpose, he was in the cubicle, because, he believed, that plaintiff, Richards, was out having a sexual encounter, with Harrington, instead of being at work. Even, *arguendo*, plaintiff, Richards, was out making passionate love to someone, who stole, plaintiff, Richards's property, which in fact he was not, he would have had a legitimate – defense (irresistible impulse).

Plaintiff, Richards, suffers from a hypopituitarism condition, which causes, low growth hormone, plaintiff, Richards, was taking external subcutaneous injections of a medication, called "Humatrope". "Humatrope" is a trademark for a brand of human synthetic growth hormone produced with recombinant deoxyribonucleic acid techniques. It is a polypeptide hormone with 191 amino acids in the same sequence as somatotropin, the human growth hormone produced by the pituitary gland, it is also a secretagogue, and a secretagogue is a substance, which causes another substance to be secreted. Growth hormone secretagogues (GHSs) increase the activity of hypothalamic arcuate nucleus neurons (an aggregation of neurons in the mediobasal hypothalamus, an adjacent to the third ventricle and the median eminence. The arcuate nucleus includes several important populations of neurons, including neuroendocrine neurons (mainly in the ventrolateral part of the nucleus)) thought to be involved in controlling the release of the growth hormone (GH) from the pituitary gland, The

GHS receptor is also found in hypothalamic regions not associated with the release of GH, suggesting that GHSs may influence other hypothalamic systems. A study done by Huffington Center on Aging, Baylor College of Medicine, Houston, Texas, USA utilized double-labeling immunocytochemical techniques to examine the hypothalamic actions of a novel non-peptide GHS, GHS-25. In common with other GHSs, GHS-25 induced significant amounts of Fos immunoreactivity in the arcuate nucleus of conscious male rats. However, unlike other GHSs, GHS-25 also induced Fos immunoreactivity in the supraoptic nucleus. Double labeling revealed that approx. 66% of the supraoptic nucleus cells that were Fos positive after the administration of GHS-25 were also immunioreactive for oxytocin. Thus, in addition to its actions on the GH axis, GHS-25 may influence the release of neurohypophyseal hormone, oxytocin.

Other studies, recently released, since March 15th, 2004, plaintiff's termination date, have begun to investigate oxytocin's role in various behaviors, including social recognition, bonding, anxiety, trust, and maternal behaviors. In a press release, date July 25th, 2008, from *The Journal of Neuroscience*, scientist at the Swedish medical university Karolinska Institutet and the Welcome Trust Functional Imaging Laboratory in London show that oxytocin has a more targeted effect than simply producing a general feeling of well being. The study concluded that oxytocin can reduce anxiety and increase the chances of social contact for people with certain types of psychiatric disorder (mood disorder, such as plaintiff, Terence Bruce Richards, has from a general medical condition, hypothyroidism). Robert Ring, a neuroscientist and oxytocin researcher at Wyeth Pharmaceuticals, was quoted, at December, 2005 Society for Neuroscience conference that "These results suggest that the development of oxytocin-like drugs may offer a novel way to treat anxiety disorders in humans". The studies he

was referring to was a study performed by Meyer-Lindenberg and others reported in the

*Neuroscience* that when young men snorted oxytocin, brain scans showed that fear centers

became less responsive to threatening faces, Also, the journal *Nature* published a research

article in 2005, that when subjects played a game that hinged on trust, those who snorted

oxytocin were more likely to trust other players. Other warnings, are spurring other warnings.

Some researchers note that it may have a potential as a date rape drug, since oxytocin is

involved in both trust and sexual arousal. Researchers are reporting the potential for abuse

with confidence tricks. *Boston Globe* January 12th, 2006.

### Richards *IV* and Current Complaint

After filing, his first complaint on May 7th, 2004, in the 3rd Municipal Court of Cook

County, 2121 Euclid Ave, Rolling Meadows, Illinois 60008, under case number 04M3001489

[Defendant's Exhibit A], defendant HSBC, acting through their attorney agents, Bryan Cave LLP,

161 North Clark Street, Suite 4300, Chicago, Illinois 60601, responded to the complaint, with a

Motion for an Extension of time, on June 17st, 2004, which the Honorable Judge Ryan, granted

an extension, until July 31st, 2004, to respond or otherwise plead, with a hearing date, on that

date. However, defendant, HSBC, acting through their attorney(s) Wortel (ARDC #6238388),

and Polland, instructed, HSBC to alter, their Comprehensive Crime Policy, issued by HSBC

Holdings Plc, HSBC Insurance Brokers Limited, to include the following insuring clause.

> Loss resulting directly from dishonest, fraudulent, or malicious acts
> Committed by an Employee acting alone or in collusion with others
> to obtain an improper financial gain for themselves or a third party
> or to cause a loss to the assured.  [Ex. E; pg. 6; clause 1; ¶1]

This altercation, provided, the defendant(s) with a qualified immunity, because, the

policy, if it is violated, will become, null and void, providing no other comprehensive crime

policy protection to the corporation(s). In addition, on June 17th, 2004, defendant HSBC, acting

through their agents and employees, had a meeting of the minds [conspiracy], with defendant

Stevens, bankruptcy trustee, to hold, an adversary hearing (04 A 7077) in the Northern Illinois

Bankruptcy Court – Western Division, 211 South Court Street, Rockford, Illinois, 61101, to

determine the truth or falsity of the alleged, March 9th, 2004, letter, that was found under the

"plain view doctrine" on plaintiff's desk, when employee, plaintiff's ex-manager, had no

legitimate purpose, to be in plaintiff's cubicle, except, to determine, why, the plaintiff, was on a

continuous absence from work. This was analogous to the model, under Restatement of Torts,

Second, section 602 (Rumors and suspicions). However, they purported, to the plaintiff, that

the employment termination, and the court hearing, was based strictly upon the contents of

the offending March 9th, 2004, letter. The defendant(s), kept, their invidious discrimination that

they believed that, plaintiff, Richards, was a homosexual "stalker". The defendant, HSBC, and

defendant, Stevens, believed, that plaintiff, Richards, passed Harrington, the property,

associated with the bankruptcy case 03-71403, [See 07 CV 1646 Northern Illinois District Court,

June 25th, 2008 court order][Exhibit attached to response], and that he was using the courts, for

the furtherance of his relationship, see plaintiff's criminal case 06 CR 233, positioning paper,

that was filed by defendant Flynn [See 06 CR 233; Northern Illinois District Court, February 14th,

2006].

## Federal Rules of Civil Procedure 41(b)

The Federal Rules of Civil Procedure – Rule 41(b), in particular, provides that the district court in

its order for dismissal, that otherwise specifies, a dismissal for failure a failure to comply with

the rules or an order of a court, other than a dismissal for lack of jurisdiction, for improper

venue, or for failure to join a party, operates as an adjudication upon the merits. *Fed. R. Civ.*

*Proc.* 41(b). On, July 26th, 2007, Honorable District Judge Joan H. Lefkow, dismissed, *Richards IV* complaint, against defendant HSBC for failure of plaintiff to pay the statutory filing fee as directed. However, as described, further, Honorable District Judge Joan H. Lefkow, reconsidered her standing, and found, that it appeared that this lawsuit *Richards IV* was improperly dismissed for non-payment. She further explained, that plaintiff, Richards, gave the court timely notice – in fact, four notices – which he wished to apply the payment that was posted to Northern Illinois District Court case 07 CV 1732 to case 07 CV 1646. See Northern Illinois District Court case number 07 CV 1646; June 25th, 2008. [Ex. A] The situation is that plaintiff, Richards, initiated *Richards IV* complaint, against HSBC on March 23rd, 2007. In that particular case, plaintiff claimed (1) Lake County prosecutor Daniel Kleinhubert violated the plaintiff's constitutional rights by negotiating a plea agreement with third party Harrington without conferring with plaintiff and without regard for plaintiff's rights as a crime victim; (2) bankruptcy trustee Stevens "negligently" and "fraudulently" misrepresented, based on hearsay, that the plaintiff had engaged in bankruptcy fraud; and (3) HSBC wrongfully terminated the plaintiff as an employee on March 15th, 2004, based on Steven's allegedly false report of bankruptcy fraud.

Because, plaintiff, Richards indicated that he had $4,900.00 in a savings account at the time he commenced this action, the court denied plaintiff's application for leave to proceed *in forma pauperis* on March 29th, 2007, and directed him to pay the full $350.00 filing fee.

On May 16th, 2007, the Clerk of the Court received a $350.00 payment in the plaintiff's name. Jack W. Rosen who made the payment for the plaintiff inadvertently provided an incorrect case number 07 CV 1632. Because the plaintiff was not a party to Case No. 07 CV

1632, the Clerk applied the payment to Case No. 07 CV 1732, the plaintiff's pending case with the associated case number that most closely matched 07 CV 1632. On May 22nd, 2007, May 30th, 2007, June 4th, 2007, and June 5th, 2007, plaintiff Richards, while incarcerated in segregated isolation (for failure to provide a urine sample in prison), filed documents attesting that he had paid the filing fee but that it had been applied to the wrong case. Plaintiff, Richards, specifically requested that the payment be docketed in this case (07 CV 1646) and not in case 07 CV 1732. See Northern Illinois District Court case number 07 CV 1646.

On June 25th, 2008, [Ex. A] Honorable District Judge Joan H. Lefkow entered the following minute entry.

> The Court's Order of May 30th, 2008 [59], is modified as follows: This court dismissed this action on July 26, 2007, and the U.S. Court of Appeals for the Seventh Circuit dismissed the appeal on February 19th, 2008; however, the plaintiff continued to file motions and documents for filing in this action. The Court therefore orders the Clerk not to accept any further motions or other documents for filing in this case other than a Notice of Appeal. The court denies the motion to vacate [58] for the reasons set out below. The court denies plaintiff's motion for leave to proceed in forma pauperis [57] as moot.

There was no clear indication, whether this was dismissed with or without prejudice. However, on October 3rd, 2008, plaintiff, Richards, attempted to pay, for this outstanding case, along with his other cases, he filed in the past. The Clerk's office has a policy not to accept payments on "Closed" or "in forma pauperis" cases, after the fact. Plaintiff, Richards, was able to influence, the District Court Clerk to accept payment on cases 07 CV 2656 and 07 – 1429 (for example).

On, January 25th, 2009 plaintiff Richards, filed a motion for "Leave to Pay on a Closed Case", [Ex. B] to pay the district court statutory filing fee. Honorable District Judge Joan Lefkow,

ruled on the motion, stating that is the clerk's policy not to accept, payments on closed cases, and granted, plaintiff's motion to pay on the closed case. [Ex. B] Plaintiff, Richards, received his Social Security Administration benefits check, in the amount of $38,000.00 dollars on January 26th, 2009, and applied payment to all the cases, that he has filed in the Northern Illinois District Court, and the Seventh Circuit Court of Appeals, on January 29th, 2009 [Ex. C].

On the face of the Fed. R. Civ. Proc. 41(b), it is apparent that the rule is solely a defendant's remedy. *Societe Internationale Pour Participations Industrielles Et. Commeriales S.A. Vs. Rogers.* 357 U.S. 197 (1958). The Federal Rule 41(b) allows, the District Court to dismiss an action involuntarily on the defendant's motion, as HSBC. is attempted to do in the instant action, based on the failure to pay the statutory filing fee, in *Richards IV* suit. Plaintiff, Richards, contends that this would be in error that Plaintiff, Richards, humbly attempted to pay the filing fees, in all his cases, on October 3rd, 2008, but it was the policy of the clerk's not to accept payment on closed cases.

Federal Rule 41(b) lumps together three quite different grounds for involuntary dismissal (1) dismissal at the close of the plaintiff's evidence for failure to show a right to relief is on the merits. (2) Dismissal for want of prosecution is a penalty for dilatoriness (3) dismissal for failure to comply with "these rules" or with any order of the court is an amorphous ground that, if read literally, would allow dismissal for the most trivial noncompliance with the federal rules or court orders. In the instant, action, the defendant HSBC speaks of the (2) cause, want of prosecution, but they are alluding to the (3) cause failure to comply with the court's rules, in not making payments on the statutory filing fees.

In evaluating whether an involuntary dismissal under Rule 41(b) is appropriate in this instant action, District Judge David Coar, as other federal courts have already blurred the distinction between the second and third grounds, treating the noncompliance with court orders as a failure to prosecute. Unless, District Judge David Coar otherwise specifies in its orders, an involuntary dismissal under Rule 41(b) ordinarily operates as an adjudication on the merits. As a result, the order operates with prejudice to the dismissed party and prevents it from bringing a new action. *In Re: Schimmels* 127 F.3d 875 (9th Cir. 1997). A very impressive number of federal courts throughout the nation have warned, quite apparently, that "dismissal with prejudice is a drastic sanction to be applied only in extreme situations. In the present case, to keep sanctioning, plaintiff, Richards, would be improper, as he humbly attempted to make payments, including the $500.00 dollar sanction, in got in appellate case 08 – 2759. {Ex. C] Plaintiff, Terence Bruce Richards, is not for certain, but he believes, that he may have been violating the conditions of his supervised release, by forwarding legal mail and phone calls, to defendant Stevens, strictly for legal purposes. Upon receiving his social security administration check, he sent to the bankruptcy court, a motion to reopen and to turn over property, to pay the creditors. An adversarial issue, which could and should have been brought by defendant Stevens, on April 3[rd], 2004, the bankruptcy court, dismissed both motions, for want of prosecution. Defendant, James E. Stevens was in attendance. Plaintiff, Richards, contacted defendant, Stevens, by phone seeking for him to reconsider his positioning, to no avail. Plaintiff, Richards, contacted the creditors, like American Express, the largest creditors, in the estate, to see if they want to create a sub-committee, they declined. Plaintiff, Richards, to moot, the bankruptcy court proceedings, initiated in 2003, sent to the creditors, who filed claims, 40% of

the requested balance. [Ex. D] Depending, on the decision of the appellate court, in case 08-4193, will determine, the remaining outcome of the bankruptcy proceedings, the creditors, are in the dark, as to whether, bankruptcy case 03-71403, was discharged or dismissed.

## Economic Duress

A covenant of good faith and fair dealing is implied in every contract. *Capital Options Investments Vs. Goldberg Bros.* 958 F.2d 186, 189 (7th Cir. 1992). Contractual discretion must be exercised reasonably and not arbitrarily and capriciously. *Id.* At 189. The term "good faith" refers to the "an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of the drafting. *Kham Vs. Nates Shoes No. 2 Vs. First Bank of Whiting* 908 F.2d 1351, 1357 (7th Cir. 1990). Plaintiff, Richards, believed he was entering into a good faith contract, with his ex-employer HSBC, who decided to stab him in the "back" twice. Once, upon his firing, on March 15th, 2004, and once on January 7th, 2005, when he signed the offending contract under pressure, because, he was up to his last amended complaint, and still was unable to create the correct "cause of action", and he consulted, with attorney's, but, did not have the funds, to hire an attorney, to represent his interest. Defendant, HSBC's attorney's Wortel and Polland, knew this, and, after, consulting with my financial supporters, the "Well of Living Waters" church, group, who assisted, the plaintiff, financially to, keep the plaintiff, out of the elements, deprived, plaintiff Richards "beret of the quality of mind essential to the making of the contract". *Resolution Trust Corp. Vs. Ruggiero* 977 F.2d 309, 313 (7th Cir. 1992), this element is necessary, to establish "Duress" in the state of Illinois.

Duress, where one side acts in bad faith, to gain an unfair advantage over the other, is the most likely contract killing doctrine. To avoid a contract on the basis of economic duress,

economic duress is present when (1) a wrongful act (2) induces a party to form a contract by depriving him of the exercise of free will. 988 F.Supp. 487 (N.D. Ill. 1996). In other words, economic duress is present where one is induced by a wrongful act of another to make a contract under circumstances which deprive him of the exercise of free will, and a contract executed under duress is *voidable* [emphasis added]... to establish duress, one must demonstrate that the threat has left the individual "beret of the quality of mind essential to the making of a contract" *Resolution Trust Corp. Vs. Ruggiero* 977 F.2d 309, 313 (7th Cir. 1972). Defendant HSBC, knew, that the plaintiff, was suffering from a difficult bargaining position, that he was unable to amend his complaint in *Richards I*, and was in financial ruins. [They provided directions to the Pacific Gardens home shelter]. However, duress, is not shown by the fact that one was subjected to mere annoyance, vexation, personal embarrassment, a difficult bargaining position or the pressure of financial circumstances, there must have been some imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weaknesses of another, as HSBC did to plaintiff, Richards. In cases where agreements have been invalidated because of duress, "the conduct of the party obtaining the advantage must be shown to be tainted with some degree of fraud or wrongdoing. In the present case, HSBC, modified their Comprehensive Crime Policy[See Exhibit E], on June 17[th], 2004, the same day, HSBC, filed their motion for an extension of time to answer or otherwise plead. This can be further demonstrated by, the straightforwardness of their affidavits in their Exhibit of the Motion to Dismiss [dkt # 76-3, pg 7-11], and HSBC, fraudulently conspired with criminal James E. Stevens.

## Collateral Estoppel

The Settlement agreement settling, *Richards I, II,* and *III* lawsuits, and the subsequent,

January 8th, 2005 judgment entered in the Third Municipal Circuit Court of Cook County, will

have two kinds of preclusive effect. Res Judicata precludes the same claim or cause of action

from being asserted in subsequent litigation between the parties. While collateral estoppel

precludes relitigation of those issues which were adjudicated in the earlier judgment when

raised in a different cause of action between the parties. *Gannon Vs. Daley* 531 F.Supp. 287

(1981) quoting *Lawlor Vs. National Screen Service Corp.* 349 U.S. 322 (1955). The operational

difference between res judicata and collateral estoppel is settled. Under the doctrine of res

judicata a judgment, when rendered on the merits, is an absolute bar to a subsequent action

between the same parties or those in privity with them upon the same claim or demand,

whereas under collateral estoppel doctrine such a judgment constitutes an estoppel as to the

issues that were necessarily litigated and determined even though the claim or demand on the

subsequent action is different. *Smith Vs. United States* 403 F.2d 448 (1968). Under general

principles, an issue is not foreclosed by collateral estoppel unless it has been actually litigated

*Grip-pak Inc. Vs. Illinois Tool Works Inc.* 494 F.2d 466 (7th Cir. 1982). As in *United States Vs. Int'l*

*Bldg Co.* 345 U.S. 502(1953), *Richards IV* and present complaints are not barred by collateral

estoppel, as the same reason in the Supreme Court case, the judgment was not based on the

merits, but on some collateral consideration, as the signing of the settlement agreement, under

economic duress, as described *Infra*.

> Consistent with this principle and the recognition that because consent judgments
> which are not the product of full adversarial litigation may be less reliable than other
> judgments, the modern trend is not to apply collateral estoppels to consent judgments
> and to only preclude relitigation of issues the parties have expressly agreed not to
> relitigate. See e.g. Restatement of Judgments ¶ 27 comment c (1981); 1B J. Moore &

T. Courier Moore's Federal Practice ¶0.444(3)(1988); 18 C. Wright & A. Miller E.P Cooper Federal Practice & Procedure 4443 (1981)

Also, as the United States Supreme Court stated in *Int'l Building Co. Supra.*

"A judgment entered with the consent of the parties may involve a determination of questions of fact and law by the court. But, unless a showing is made that that was the case, the judgment has no greater dignity, so far as collateral estoppel is concerned, than any judgment entered only as compromise of the parties.

Defendant HSBC and plaintiff, Richards never actually litigated the issues, both parties, entered the settlement agreement by consent, and prevented any issues to be addressed by the court, depriving the Third Municipal Court of Cook County of any determination of questions of fact or law. The Supreme Court, in *Lawlor*, held that the fact that a subsequent suit involves essentially the same course of wrongful conduct as a prior suit does not indicate that both suits are on the same cause of action.

That both suits involved "essentially the same course of wrongful conduct" is not decisive, such a course of conduct – for example, an abatable nuisance – may frequently give rise to more than a single cause of action, and so it is here. The conduct presently complained of was all subsequent to the 1943 judgment. In addition, there are new antitrust violations alleged here, deliberately such deliveries and the sales, among others not present in the former action. Whether, the 1943 judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exists and which could not have been sued upon in the previous case.

Plaintiff, Richards, could have filed an amendment, to incorporate, the issues, presented in the instant case, if the issue was not fraudulently concealed from plaintiff, Richards, Moreover, a rule requiring amendments would be difficult for courts and plaintiff's to apply and could disrupt or needlessly complicate the first suit. The Seventh Circuit Court of Appeals follows the approach suggested by professors Wright, Miller, and Cooper and draws the line at the date of the filing of the first suit. *Green II Vs. Illinois Dept. of Transportation* 609 F. Supp. 1021 (D. C. Ill. 1983). In *Richards IV* and current complaint, the conduct complained, was a continuous conduct

that extended over the filing date of May 7th, 2004, which lead to the unlawful conduct, of

placing, plaintiff, Richards in economic duress.

### Title 42 U.S.C. §1983 (Actor)

The Supreme Court has outlined two distinct tests to determine whether a private entity

is acting under "color of state law", the "delegation" test, and the "joint action" test. See *West*

*Vs. Atkins* 487 U.S. 42 (1988); *National Collegiate Athletic Ass'n Vs. Tarkanian* 488 U.S. 179

(1988). The "joint action" test holds that a private defendant, such as defendant HSBC, acts

"under color of [] law", when he or she is a willful participant in joint actions with the

government or its agents. See *Adickes Vs. S.H. Kress & Co.* 398 U.S. 144 (1970); *Malak Vs.*

*Associated Physicians Inc.* 784 F.2d 277 (7th Cir. 1986). To act "under color of law" does not

require that the accused be an officer of the government, it is enough that he is a willful

participant in joint activity with an individual who acts, "under color of the law", or its agents.

*United States Vs. Price* 383 U.S. 787 (1966).

In the second cause of action, that is being alleged in *Richards IV* and current complaint,

plaintiff Richards, alleges that defendant HSBC acted in a joint action with a court officer,

bankruptcy trustee, Stevens in furthering the continuing discriminatory conduct, that is

outlined in Restatement of Torts (Second) in terminating, plaintiff, Richards employment.

Defendant Stevens is a court appointed court officer, under Title 28 U.S.C. §959, which is in part

III of Title 28, explicitly references trustees, Specifically, §959 provides *inter alia*, that

"[t]rustees, receivers, or managers of any property, including debtors in possession, may be

sued, without leave of the court appointing them, with respect to any of their acts or

transactions in carrying on business connected with such property". *Title 42 U.S.C. §959*

importantly, §959 falls within Chapter 57 entitled "General provisions, applicable to Court

Officers and Employees". Thus, the Title of the Chapter implies that trustees are conventional court officers. Stevens, a private attorney, was a Chapter 7 "panel bankruptcy trustee" called into service by the United States Trustee's Office. See Title 28 U.S.C. §586(a)(1)

> Title 28 U.S.C. §586
> (a) Each United States Trustee, within the region for which such United States Trustee is appointed, shall –
>> (1) Establish, maintain, and supervise a panel of private trustees that are eligible and available to serve as trustees in cases under Chapter 7 of Title 11.

Also see 28 C.F.R. §58.1

> (a) Each U.S. Trustee is authorized with the approval of Director Executive Office for United States Trustees (the "Director") to increase or decrease the total membership of the panel in addition, each U.S. Trustee with the approval of the Director, is authorized to institute a system of rotation of membership or the like to achieve diversity of experience, geographical distribution or other characteristics among the persons of the panel.

In the instant case, defendant Stevens is a "panel bankruptcy trustee", qualified under 28 C.F.R. §58.3 for the Northern District Court of Illinois – Western Division, located in Rockford, Illinois. See http://www.usdoj.gov/ust/r11/rockford_panel_trustees_ch7.htm Defendant, Stevens is compensated for his services. In addition to a $60.00 fee paid to the trustee by the government for every bankruptcy case he closes, a panel trustee's compensation in a given case is based upon a percentage of the value of the assets liquidated and disbursed to the estate's creditors. See *Title 11 U.S.C. §330 Compensation of Officers*. In addition to his duties, as a panel trustee, he retains his private bankruptcy practice. *United States Vs. Lowell* 256 F.3d 463. For this reason, a panel bankruptcy trustee is in a far different position than are *direct* [emphasis added], full time, government employees. *Id*. In the instant case, defendant Stevens is an indirect, full time, government court officer.

# EXHIBIT "A"

Order Form (01/2005)     Case 1:07-cv-01646     Document 60     Filed 06/25/2008     Page 1 of 4



## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | JOAN H. LEFKOW | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 07 C 1646 | DATE | JUN 25 2008 |
| CASE TITLE | Terence Bruce Richards (#22168-424) v. HSBC Technology & Services USA, Inc., et al. | | |

**DOCKET ENTRY TEXT:**

The court's Minute Order of May 30, 2008 [59], is modified as follows: This court dismissed this action on July 26, 2007, and the U.S. Court of Appeals for the Seventh Circuit dismissed the appeal on February 19, 2008; however, the plaintiff continued to file motions and documents in this action. The court therefore orders the Clerk not to accept any further motions or other documents for filing in this case other than a Notice of Appeal. The court denies the motion to vacate [58] for the reasons set out below. The court denies plaintiff's motion for leave to proceed in forma pauperis [57] as moot.

■ [For further details see text below.]                                          Docketing to mail notices.

## STATEMENT

On February 14, 2008, the plaintiff's appeal from this court's order entered July 30, 2007 [Docket No. 31] was dismissed for failure to pay the filing fee [No. 54]. The Mandate returned to this court on February 29, 2008 [No. 55]. On May 22, 2008, the plaintiff moved to vacate the court's order of July 30, 2007. The motion was denied on May 30, 2008, along with a direction to the Clerk not accept any further motions or other documents for filing in this case [No. 59]. The reasons for that order are as follows:

The plaintiff, a federal prisoner, brought this *pro se* civil action pursuant to 42 U.S.C. § 1983. By Minute Order of July 26, 2007, the court summarily dismissed this case for failure of the plaintiff to pay the statutory filing fee as directed. The court also denied the plaintiff's multiple motions for reconsideration. *See* Minute Entry of September 10, 2007. Because the court finds that the plaintiff did attempt to pay the filing fee in this case, the court has revisited the complaint. However, having reviewed the complaint and the plaintiff's litigation history, the court concludes that the case must remain closed, as the plaintiff has no viable federal claim.

The facts giving rise to this action are as follows: The plaintiff squandered a great deal of money on an acquaintance (Harrington). Not content with the plaintiff's generosity, Harrington stole money from the plaintiff; he was prosecuted for felony theft in Lake County after the plaintiff filed a police report. Harrington and the prosecutor (Daniel Kleinhubert) negotiated a plea agreement wherein Harrington was (a) convicted of only a

(CONTINUED)

2008 JUN 26  AM 9:24

FILED-EM

                                                                                        mjm

## STATEMENT (continued)

misdemeanor rather than a felony and (b) excused from making restitution to the plaintiff, thus depriving the plaintiff of thousands of dollars. Kleinhubert did not consult with the plaintiff before entering into the plea agreement.

As a result of the above sequence of events, the plaintiff was forced to file bankruptcy. Although the plaintiff's debts were originally discharged, the bankruptcy trustee, James Stevens, subsequently learned about a large 401(k) disbursement check that the plaintiff had either passed to Harrington (as the trustee evidently believed) or that Harrington had stolen from the plaintiff (as the plaintiff contends). Suspecting that the plaintiff had engaged in bankruptcy fraud, Stevens moved to reopen the bankruptcy case. The plaintiff was highly dissatisfied with the ultimate disposition of the bankruptcy proceedings. All of these events transpired in 2003, according to the complaint.

The plaintiff himself was prosecuted in 2006 for sending threatening letters to Kleinhubert and Stevens (respectively, the Lake County State's Attorney assigned to the Harrington case and the bankruptcy trustee). *See United States of America* v. *Richards*, Case No. 06 CR 0233 (N.D. Ill.). The U.S. Court of Appeals for the Seventh Circuit affirmed the plaintiff's conviction on February 26, 2008.

The plaintiff has filed some twenty-three lawsuits in this district since 2004. Most or all of the lawsuits contest some aspect of three core legal proceedings: the manner in which the criminal prosecution of Harrington was handled, the bankruptcy proceedings, and the plaintiff's criminal prosecution. All of the plaintiff's lawsuits to date have been dismissed as time-barred, for non-payment of the filing fee, on procedural grounds, or on the merits. The plaintiff has now "struck out" pursuant to 28 U.S.C. § 1915(g).

The plaintiff initiated the instant action on March 23, 2007. In this case, the plaintiff claims that: (1) Lake County prosecutor Daniel Kleinhubert violated the plaintiff's constitutional rights by negotiating a plea agreement with Harrington without conferring with the plaintiff and without regard for the plaintiff's rights as a crime victim; (2) bankruptcy trustee James Stevens "negligently" and "fraudulently" misrepresented, based on hearsay, that the plaintiff had engaged in bankruptcy fraud; and (3) HSBC Technology and Services wrongfully terminated the plaintiff as an employee on March 15, 2004, based on Stevens's allegedly false report of bankruptcy fraud.

Because the plaintiff indicated that he had $4,900.00 in a savings account at the time he commenced this action, the court denied the plaintiff's application for leave to proceed *in forma pauperis* on March 29, 2007, and directed him to pay the full $350.00 filing fee.

On May 16, 2007, the Clerk of Court received a $350.00 payment in the plaintiff's name. The attorney who made the payment for the plaintiff inadvertently provided an incorrect case number, 07 C 1632. Because the plaintiff was not a party to Case No. 07 C 1632, the Clerk applied the payment to Case No. 07 C 1732, the plaintiff's pending case with the associated case number that most closely matched 07 C 1632.

**(CONTINUED)**

On May 22, 2007, May 30, 2007, June 4, 2007, and June 5, 2007, the plaintiff filed documents attesting that he had paid the filing fee but that it had been applied to the wrong case. The plaintiff specifically requested that the payment be docketed in this case, and not in Case No. 07 C 1732.

On June 5, 2007, Judge Conlon of this court dismissed *Richards* v. *County of Lake*, Case No. 07 C 1732, on initial review pursuant to 28 U.S.C. 1915A(b)(1). As noted *supra*, this case (07 C 1646) was dismissed by Minute Order of July 26, 2007, for failure of the plaintiff to pay the statutory filing fee as directed.

In light of the above background and history, it would appear that this lawsuit was improperly dismissed for non-payment. The plaintiff gave the court timely notice—in fact, four notices—that he wished to apply the payment to this case. Nevertheless, having now reviewed the complaint, the court remains satisfied that dismissal is warranted on the merits, notwithstanding the payment of the filing fee.

Under 28 U.S.C. § 1915(a), the court is required to conduct a prompt threshold review of the complaint in any civil action in which a prisoner seeks redress from a governmental entity or officer. The court must dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(b)(1). Dismissal is required irrespective of the payment of the filing fee, or any portion of the filing fee. *Id.* § 1915(e)(2).

Any cause of action against Lake County and prosecutor Daniel Kleinhubert is barred by the statute of limitations and *res judicata*. In Case No. 07 C 1732, Judge Conlon found that the same basic claims were time-barred. *See* Minute Order of June 5, 2007. The U.S. Court of Appeals for the Seventh Circuit affirmed that decision on February 6, 2008. The plaintiff may not relitigate the matter.

Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *See, e.g., San Remo Hotel, L.P.* v. *City and County of San Francisco, Cal.*, 545 U.S. 323, 336 (2005); *Cole* v. *Board of Trustees of University of Illinois*, 497 F.3d 770, 772 (7th Cir. 2007). *Res judicata* applies when (1) there has been a final judgment on the merits in an earlier action, (2) there is an identity of parties or privies in the two suits, and (3) there is an identity of the causes of action in the two suits. *Ross* v. *Bd. of Educ. of Twp. High Sch., Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007). The court cannot entertain another lawsuit against Kleinhubert involving the same basic issues already decided by another judge.

The doctrine of *res judicata* likewise precludes another suit against bankruptcy trustee James E. Stevens. The plaintiff has filed at least eight lawsuits in this district naming Mr. Stevens as a defendant. *See Richards* v. *Stevens*, Case No. 05 C 1096 (N.D. Ill.), *Richards v. Barbosa*, Case No. 05 C 2632 (N.D. Ill.); the case at bar; *Richards v. United States of America*, Case No. 07 C 1907 (N.D. Ill.); *Richards* v. *Stevens*, Case No. 07 C 3643 (N.D. Ill.); *Richards* v. *Stevens*, Case No. 05 C 50073 (N.D. Ill.); *Richards* v. *Stevens*, Case No. 07 C 50088 (N.D. Ill.); and *Richards* v. *Stevens*, Case No. 07 C 50183 (N.D. Ill.). In Case No. 07 C 1907, Judge Kennelly of this **(CONTINUED)**

## STATEMENT (continued)

court dismissed the plaintiff's claims against Stevens by Minute Entry of September 13, 2007; the Court of Appeals dismissed the plaintiff's ensuing appeal. Judge Zagel of this district dismissed Case No. 07 C 3643, a mandamus action, on December 18, 2007. Judge Reinhard of the Western Division of this district affirmed the decision of the bankruptcy court in Case No. 05 C 50073. The plaintiff cannot continue to collaterally attack the actions and decisions of the bankruptcy trustee.

Finally, the court discerns no basis for federal jurisdiction with regard to the plaintiff's claim against his former employer, HSBC Technology & Services, Inc. The plaintiff sues HSBC for purportedly "willful and wanton misconduct," "fraudulent misrepresentation," "interference with a prospective contractual agreement," and negligence. (Complaint, pp. 10-11.) The court questions whether the plaintiff's wrongful discharge claim against his employer is properly joined with claims challenging a third party's criminal prosecution and the actions of a bankruptcy trustee. *See* Fed. R. Civ. P. 18(a) and 20(a); *George* v. *Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In any event, the plaintiff has not articulated a cognizable federal claim against HSBC.

To be liable under the Civil Rights Act, an individual must have both acted under color of state law and violated a constitutional right. *Burrell* v. *City of Mattoon*, 378 F.3d 642, 647 (7th Cir. 2004). Here, the plaintiff is suing a private employer, raising claims that sound in tort law. The wrongful discharge claim does not involve either state action or a constitutional right. Thus, the plaintiff has no cognizable cause of action against HSBC under 42 U.S.C. § 1983.

The court cannot conceive of any alternative basis for federal jurisdiction. The plaintiff's wrongful discharge claim does not appear to implicate any other federal statute, the United States is not a party to that claim, and there is no diversity of citizenship between the parties. If the plaintiff believes that he has grounds to sue under Title VII (which cannot be inferred from the complaint), he must press a charge of discrimination and obtain a "right to sue" letter from the Equal Employment Opportunity Commission before bringing suit in federal court. Any cause of action for negligence or fraud, for breach of contract, or any other tort must be brought in state court.

For all of the foregoing reasons, the case remains closed. Dismissal for non-payment of the filing fee was not justified; however, the plaintiff's claims remain subject to dismissal under 28 U.S.C. § 1915A. Any appeal from this ruling would be frivolous. Any such appeal, then, would entail the plaintiff's obligation to pay a filing fee of $455.00. *See Evans* v. *Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998) ("Because [plaintiff-appellant] has previously filed at least three actions which were dismissed as frivolous, malicious, or for failure to state a claim, we deny his request to proceed in forma pauperis on appeal. [He] has 14 days to pay the full . . . filing fee or his appeal will be dismissed for failure to pay the filing fee."); *see also Richards* v. *Kleinhubert*, 263 Fed. Appx. 493, 495 (7th Cir. Feb. 6, 2008) ("Should Richards attempt to file any further civil litigation in any federal court without prepaying all required fees, or meeting the imminent-danger standard of § 1915(g), we will enter an order under *Support Sys. Int'l, Inc.* v. *Mack*, 45 F.3d 185 (7th Cir. 1995), precluding him from filing further civil suits whether or not he pays in advance.").

# EXHIBIT "B"

Order Form (01/2005)



## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | JOAN H. LEFKOW | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 1646 | **DATE** | **JAN 2 8 2009** |
| **CASE TITLE** | Terence Bruce Richards v. HSBC Technology & Services USA, Inc., et al. | | |

**DOCKET ENTRY TEXT:**

The plaintiff's motion for leave to pay on closed case [#76] is granted. The Clerk refused the plaintiff's payment apparently because it is policy not to take payment of the filing fee in closed cases. However, in its Order of December 12, 2008 (App. No. 08-2759), the U.S. Court of Appeals for the Seventh Circuit specifically directed the plaintiff to pay all outstanding fees relating to this and any other of his cases. Accordingly, the Clerk is directed to accept payment of the filing fee from the plaintiff.

*Joan H. Lefkow*

Docketing to mail notices.

mjm

## IN THE NORTHERN ILLINOIS DISTRICT COURT
### EASTERN DIVISION

Terence Bruce Richards          )
      Plaintiff – Appellant     )
                      )

Vs.                             )   Case Number 07 CV 1646
                      )

United States of America        )   District Judge
Department of Justice           )       Joan H. Lefkow
James E. Stevens                )
HSBC Technology & Services (USA) Inc.  )
    Defendant(s) – Appellees   )

## MOTION FOR
## 'LEAVE TO PAY ON CLOSED CASE'

1. Plaintiff, Terence Bruce Richards filed this instant case on May 30th, 2007

2. On or about March 29th, 2007, District Judge Joan H. Lefkow denied, plaintiff's motion for leave to file in forma pauperis. Giving, plaintiff Terence Bruce Richards 30 days to file the filing fee, or the court will enter a judgment dismissing the case. [Dkt # 4]

3. On or about, April 4th, 2007, May 10th, 2007, plaintiff Terence Bruce Richards filed a motion for reconsideration, but the motion was denied, on May 1st, 2007. Mau 23rd, 2007 [Dkt #6, Dkt #10]

4. On May 22nd, 2007, May 30th, 2007, June 4th, 2007 Plaintiff, Terence Bruce Richards informed the court, that a check, that was sent to pay for this case was inadvertently applied to 07 C 1732 instead of 07 C 1646. [Dkt # 14, Dkt # 16, Dkt # 6]

5. Plaintiff, thereafter, attempted to appeal this decision, since he was incarcerated at Ashland Federal Correctional Center, in Ashland Kentucky.

6. On or about, June 25th, 2008, the District Court Judge Joan H. Lefkow entered the

following court order:

> The Court's Minute order of May 30[th], 2008 is modified as follows:
> This court dismissed this action on July 26[th], 2007, and the U.S. Court
> of Appeals for the Seventh Circuit dismissed the appeal on February 19[th],
> 2008, however, the plaintiff continued to file motions and documents in
> this action. The court therefore, orders the Clerk not to accept any further
> motions or other documents for filing in this case other than a Notice of
> Appeal. The court denies the motion to vacate, for the reasons set out
> below. The Court denies plaintiff's motion for leave to proceed in forma
> pauperis as moot.

7. The plaintiff, Terence Bruce Richards appealed this decision, on the applicability

issue of Title 28 U.S.C. §1915A. under the Seventh Circuit Court of Appeals case

number 08 – 2759.

8. The Seventh Circuit Court of Appeals case was docketed on July 15th, 2008, and

paid the docketing fee as requested and required under law, on July 22nd, 2008.

9. Plaintiff, Terence Bruce Richards filed his brief on July 30th, 20088.

10. Plaintiff, then proceed to file another case, with similar facts, against the same

party, to widen the perceptual context, to include other individuals and expand the

number of claims, and the widen the area of damages.

11. On, or about October 3rd, 2008, Plaintiff, Terence Bruce Richards, attempted to

pay the filing fee, on case 07 CV 1646, but Liri [Unknown last name], intake

clerk, refused to take plaintiff's money. But, Plaintiff, Terence Bruce Richards did

pay on other cases including the criminal appeal 07 – 1429; district court case 07

CV 2656.

12. Plaintiff, Terence Bruce Richards, had Bankruptcy Judge Manual Barbosa served

a copy of the complaint, in civil case 08CV6810, which he was served on

December 9th, 2008, and in retaliation, the Seventh Circuit Court of Appeals

entered the following court order.

> We order Richards to show cause within 14 days why he
> should not be sanctioned for pursuing this frivolous appeal.
> See Fed. R. Civ. P. 38. If he does not respond by the deadline
> or does not pay any sanction the court might assess, along with
> all fees outstanding in this circuit from his other lawsuits, he will
> be barred from filing papers in any court within this circuit. See In.
> Re: City of Chicago, 500 F.3d 582, 585/586 (7th Cir. 2007) Mack
> 45 F.3d 185, John L. Coffey, Circuit Court Judge; Joel M. Flaum,
> Circuit Judge; and Michael S. Kanne, Circuit Judge

13. Plaintiff, Terence Bruce Richards is wiling to pay the filing fee in this case.

**THEREFORE,** Plaintiff, Terence Bruce Richards, respectively request, that he be

granted 'Leave to Pay on Case -07 CV 1646'.

Terence Bruce Richards
1402 Carol Court, Apt. # 1B
Palatine, Illinois 60074

## PROOF OF SERVICE

I, Terence Bruce Richards, swear under oath and affirmation, that I have not served any other party in the instant case, as there are no other parties in the instant case to serve.

Terence Bruce Richards
1402 Carol Court, Apt. # 1B
Palatine, Illinois 60074

# EXHIBIT "C"

IN THE NORTHERN DISTRICT COURT OF ILLINOIS
EASTERN DIVISION

Terence Bruce Richards                         )
             Plaintiff                  )
                                     )  Case Number 08 CV 6810

Vs.                                  )
                                     ) District Judge: David Coar

United States of America               )
Department of Justice – Trustee's Office    ) Magistrate Judge: Soat Brown
James E. Stevens                     )
HSBC Technology & Services (USA) Inc.     )
           Defendant(s)          )

## AFFIDAVIT

I, Terence Bruce Richards, swear under oath and affirmation, that I have paid all

outstanding court fees and alleged imposed sanctions, in the Northern District Court of Illinois

and the Seventh Circuit Court of Appeals. I have paid on the following cases as follows:

04 CV 5122 – $250.00 – See attached check
04 CV 50290 – $250.00 – See attached check
05 CV 2632 – $250.00 – See attached check
05 CV 2634 – $250.00 – See attached check
05 CV 2923 – $250.00 – See attached check
05 CV 3312 – $250.00 – See attached check
05 CV 3457 – $250.00 – See attached check
07 CV 50183 - $350.00 – See attached check
07 CV 50088 - $350.00 – See attached check
07 CV 1528 - $350.00 – See attached check
07 CV 1646 - $350.00 – See attached check
07 CV 4879 - $350.00 – See attached check
07 – 1420 - $455.00 – See attached check
07 – 1482 - $455.00 – See attached check
07 – 2546 - $455.00 – See attached check
07 – 2547 - $455.00 – See attached check
07 – 2558 - $455.00 – See attached check
07 – 2559 - $455.00 – See attached check
07 – 2798 - $455.00 = See attached check
07 – 2880 - $455.00 – See attached check

07 – 2893 - $466.00  - See attached check
07 – 2954 - $455.00 – See attached check
07 – 3360 - $455.00 -- See attached check
07 – 3558 - $455.00  - See attached check
08 – 1311 - $455.00 – See attached check


     In addition, I have paid the imposed sanction of $500.00 dollars in appellate case 08 –

2759, on 2/ 20/ 2009, see attached docket sheet, docket number 14.




**Terence Bruce Richards**
**1402 Carol Court Apt. #1B**
**Palatine, Illinois 60074**


"OFFICIAL SEAL"
Denise Peel
Notary-Public, State of Illinois
Cook County
My Commission Expires May 23, 2011

**UNITED STATES POSTAL SERVICE®**

**CUSTOMER'S RECEIPT**

SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION

**NOT NEGOTIABLE**

Pay to: CLERK UNITED STATES DISTRICT

Address: 04 CV 5122

KEEP THIS RECEIPT FOR YOUR RECORDS

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608112896 | 2009-01-27 | 606041 | $250.00 | 0006 |

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015826
Cashier ID: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE B RICHARDS

PLRA CIVIL FILING FEE
For: TERENCE B RICHARDS
Case/Party: D-ILN-1-04-CV-005122-001
Amount:        $60.00
PLRA CIVIL FILING FEE
For: TERENCE B RICHARDS
Case/Party: D-ILN-1-04-CV-005122-001
Amount:        $190.00

MONEY ORDER
Check/Money Order Num: 16608112896
Amt Tendered: $250.00

Total Due:        $250.00
Total Tendered:   $250.00
Change Amt:       $0.00

04CV5122

Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged. A $45 fee will
be charged for a returned check

---

**UNITED STATES POSTAL SERVICE®**

**CUSTOMER'S RECEIPT**

SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION

**NOT NEGOTIABLE**

Pay to: CLERK UNITED STATES DISTRICT COURT

Address: 04 CV 50290

KEEP THIS RECEIPT FOR YOUR RECORDS

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608112907 | 2009-01-27 | 606041 | $250.00 | 0006 |

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015833
Cashier ID: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS

PLRA CIVIL FILING FEE
For: TERENCE RICHARDS
Case/Party: D-ILN-1-04-CV-050290-001
Amount:        $190.00
PLRA CIVIL FILING FEE
For: TERENCE RICHARDS
Case/Party: D-ILN-1-04-CV-050290-001
Amount:        $60.00

MONEY ORDER
Check/Money Order Num: 16608112907
Amt Tendered: $250.00

Total Due:        $250.00
Total Tendered:   $250.00
Change Amt:       $0.00

04CV50290

Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged. A $45 fee will
be charged for a returned check

## UNITED STATES POSTAL SERVICE ®

# CUSTOMER'S RECEIPT



| SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION | Pay to | CLERK UNITED STATES DISTRICT COURT | | KEEP THIS RECEIPT FOR YOUR RECORDS |
| --- | --- | --- | --- | --- |
| NOT NEGOTIABLE | Address | 07 CV 50A83 2632 | | |

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
| --- | --- | --- | --- | --- |
| 16608112918 | 2009-01-27 | 606041 | $250.00 | 0008 |

Only when bank clears the check, money order, or verifies credit of funds is the fee or debt officially paid or discharged. A $45 fee will be charged for a returned check

05CV2632

Total Due: $250.00
Total Tendered: $250.00
Change Amt: $0.00

MONEY ORDER
Check/Money Order Num: 16608112918
Amt Tendered: $250.00
Amount:

PLRA CIVIL FILING FEE
For: TERENCE RICHARDS
Case/Party: D-ILN-1-05-CV-002632-001
Amount: $60.00

PLRA CIVIL FILING FEE
For: TERENCE RICHARDS
Case/Party: D-ILN-1-05-CV-002632-001
Amount: $190.00

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015836
Cashier ID: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS

---

## UNITED STATES POSTAL SERVICE ®

# CUSTOMER'S RECEIPT

| SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION | Pay to | TERENCE BRUCE RICHARDS | | KEEP THIS RECEIPT FOR YOUR RECORDS |
| --- | --- | --- | --- | --- |
| NOT NEGOTIABLE | Address | 05 CV 2634 | | |

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
| --- | --- | --- | --- | --- |
| 16608112920 | 2009-01-27 | 606041 | $250.00 | 0008 |

Only when bank clears the check, money order, or verifies credit of funds is the fee or debt officially paid or discharged. A $45 fee will be charged for a returned check

05CV2634

Total Due: $250.00
Total Tendered: $250.00
Change Amt: $0.00

MONEY ORDER
Check/Money Order Num: 16608112920
Amt Tendered: $250.00
Amount:

PLRA CIVIL FILING FEE
For: TERENCE RICHARDS
Case/Party: D-ILN-1-05-CV-002634-001
Amount: $60.00

PLRA CIVIL FILING FEE
For: TERENCE RICHARDS
Case/Party: D-ILN-1-05-CV-002634-001
Amount: $190.00

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015829
Cashier: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS

**UNITED STATES POSTAL SERVICE ®**

**CUSTOMER'S RECEIPT**

SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION

**NOT NEGOTIABLE**

Pay to: TERENCE BRUCE RICHARDS

Address: 05CV2923

KEEP THIS RECEIPT FOR YOUR RECORDS

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608112931 | 2009-01-27 | 606041 | $250.00 | 0006 |

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015834
Cashier ID: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS
PLRA CIVIL FILING FEE
For: TERENCE RICHARDS
Case/Party: D-ILN-1-05-CV-002923-001
Amount: $190.00
PLRA CIVIL FILING FEE
For: TERENCE RICHARDS
Case/Party: D-ILN-1-05-CV-002923-001
Amount: $60.00

MONEY ORDER
Check/Money Order Num: 16608112931
Amt Tendered: $250.00

Total Due: $250.00
Total Tendered: $250.00
Change Amt: $0.00

05CV2923

Only when bank clears the check, money order, or verifies credit of funds is the fee or debt officially paid or discharged. A $45 fee will be charged for a returned check

---

**UNITED STATES POSTAL SERVICE ®**

**CUSTOMER'S RECEIPT**

SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION

**NOT NEGOTIABLE**

Pay to: TERENCE BRUCE RICHARDS

Address: 05CV3312

KEEP THIS RECEIPT FOR YOUR RECORDS

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608112942 | 2009-01-27 | 606041 | $250.00 | 0006 |

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015831
Cashier ID: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS
PLRA CIVIL FILING FEE
For: TERENCE RICHARDS
Case/Party: D-ILN-1-05-CV-003312-001
Amount: $190.00
PLRA CIVIL FILING FEE
For: TERENCE RICHARDS
Case/Party: D-ILN-1-05-CV-003312-001
Amount: $60.00

MONEY ORDER
Check/Money Order Num: 16608112942
Amt Tendered: $250.00

Total Due: $250.00
Total Tendered: $250.00
Change Amt: $0.00

05CV3312

Only when bank clears the check, money order, or verifies credit of funds is the fee or debt officially paid or discharged. A $45 fee will be charged for a returned check

**UNITED STATES POSTAL SERVICE ®**

## CUSTOMER'S RECEIPT

SEE BACK OF THIS RECEIPT
FOR IMPORTANT CLAIM
INFORMATION

**NOT NEGOTIABLE**

Pay to: CLEAR UNITED STATES DISTRICT COURT
Address: 05 CN3457

KEEP THIS
RECEIPT FOR
YOUR RECORDS

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608112953 | 2009-01-27 | 606041 | $250.00 | 0008 |

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015838
Cashier ID: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS

PLRA CIVIL FILING FEE
For: TERENCE RICHARDS
Case/Party: D-ILN-1-05-CV-003457-001
Amount: $190.00

PLRA CIVIL FILING FEE
For: TERENCE RICHARDS
Case/Party: D-ILN-1-05-CV-003457-001
Amount: $60.00

MONEY ORDER
Check/Money Order Num: 16608112953
Amt Tendered: $250.00

Total Due: $250.00
Total Tendered: $250.00
Change Amt: $0.00

05CV3457

Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged. A $45 fee will
be charged for a returned check

---

**UNITED STATES POSTAL SERVICE ®**

## CUSTOMER'S RECEIPT

SEE BACK OF THIS RECEIPT
FOR IMPORTANT CLAIM
INFORMATION

**NOT NEGOTIABLE**

Pay to: CLERK UNITED STATES DISTRICT COURT
Address: 07 CN 50183

KEEP THIS
RECEIPT FOR
YOUR RECORDS

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608112964 | 2009-01-27 | 606041 | $350.00 | 0008 |

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015840
Cashier ID: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS

CIVIL FILING FEE
For: TERENCE RICHARDS
Amount: $350.00

MONEY ORDER
Check/Money Order Num: 16608112964
Amt Tendered: $350.00

Total Due: $350.00
Total Tendered: $350.00
Change Amt: $0.00

07CV50183

Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged. A $45 fee will
be charged for a returned check

**UNITED STATES POSTAL SERVICE ®**

**CUSTOMER'S RECEIPT**

| SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION **NOT NEGOTIABLE** | Pay to | CLERK   UNITED STATES   DISTRICT COURT | KEEP THIS RECEIPT FOR YOUR RECORDS |
|---|---|---|---|
| | Address | 07 CV 5088 | |

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608112975 | 2009-01-27 | 606041 | $350.00 | 0008 |

```
Court Name: Northern District of Illinois
Division: 1
Receipt Number: 462401S847
Cashier ID: tcarva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS

CIVIL FILING FEE
 For: TERENCE RICHARDS
 Amount:         $350.00

MONEY ORDER
 Check/Money Order Num: 16608112975
 Amt Tendered:  $350.00

Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00

07CV5088
```

Only when bank clears the check, money order, or verifies credit of funds is the fee or debt officially paid or discharged. A $45 fee will be charged for a returned check

---

**UNITED STATES POSTAL SERVICE ®**

**CUSTOMER'S RECEIPT**

| SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION **NOT NEGOTIABLE** | Pay to | CLERK   UNITED STATES   DISTRICT COURT | KEEP THIS RECEIPT FOR YOUR RECORDS |
|---|---|---|---|
| | Address | 07 CV 1528 | |

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608112986 | 2009-01-27 | 606041 | $350.00 | 0008 |

```
Court Name: Northern District of Illinois
Division: 1
Receipt Number: 462401S847
Cashier ID: tcarva
Transaction Date: 01/27/2009
Payer Name: TERENCE B RICHARDS

PLRA CIVIL FILING FEE
 For: TERENCE B RICHARDS
 Case/Party: D-ILN-1-07-CV-001528-001
 Amount:         $350.00

MONEY ORDER
 Check/Money Order Num: 16608112986
 Amt Tendered:  $350.00

Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00

07CV1528
```

Only when bank clears the check, money order, or verifies credit of funds is the fee or debt officially paid or discharged. A $45 fee will be charged for a returned check

**CUSTOMER'S RECEIPT**

**UNITED STATES POSTAL SERVICE ®**

SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION

**NOT NEGOTIABLE**

Pay to: CLERK of THE UNITED STATES DISTRICT COURT

Address: 07 CV 1646

KEEP THIS RECEIPT FOR YOUR RECORDS

Serial Number: 16608112997

| Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|
| 2009-01-27 | 606041 | $350.00 | 0009 |

07CV1646

Only when bank clears the check, money order, or verifies credit of funds is the fee or debt officially paid or discharged. A $45 fee will be charged for a returned check

Total Due:              $350.00
Total Tendered:   $350.00
Change Amt:          $0.00

MONEY ORDER
Check/Money Order Num: 16608112997
Amt Tendered: $350.00

CIVIL FILING FEE
For: TERENCE B RICHARDS
Amount:        $350.00

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624016026
Cashier ID: tcsrva
Transaction Date: 01/29/2009
Payer Name: TERENCE B RICHARDS

---

**CUSTOMER'S RECEIPT**

**UNITED STATES POSTAL SERVICE ®**

SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION

**NOT NEGOTIABLE**

Pay to: CLERK UNITED STATES DISTRICT COURT

Address: 07CV4879

KEEP THIS RECEIPT FOR YOUR RECORDS

Serial Number: 16608113008

| Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|
| 2009-01-27 | 606041 | $350.00 | 0008 |

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015845
Cashier ID: tcsrva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS

CIVIL FILING FEE
For: TERENCE RICHARDS
Amount:        $350.00

MONEY ORDER
Check/Money Order Num: 16608113008
Amt Tendered: $350.00

Total Due:              $350.00
Total Tendered:   $350.00
Change Amt:          $0.00

07CV4879

Only when bank clears the check, money order, or verifies credit of funds is the fee or debt officially paid or discharged. A $45 fee will be charged for a returned check

**UNITED STATES POSTAL SERVICE ®**

RECEIPT

SEE BACK OF THIS RECEIPT
FOR IMPORTANT CLAIM
INFORMATION

**NOT NEGOTIABLE**

Pay to CLERK UNITED STATES DISTRICT COURT

Address 07 CN3643

KEEP THIS
RECEIPT FOR
YOUR RECORDS

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608113021 | 2009-01-27 | 606041 | $350.00 | 0008 |

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015844
Cashier ID: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS

CIVIL FILING FEE
For: TERENCE RICHARDS
Amount: $350.00

MONEY ORDER
Check/Money Order Num: 16608113021
Amt Tendered: $350.00

Total Due: $350.00
Total Tendered: $350.00
Change Amt: $0.00

07CV3643

Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged. A $45 fee will
be charged for a returned check

---

**UNITED STATES POSTAL SERVICE ®**

RECEIPT

SEE BACK OF THIS RECEIPT
FOR IMPORTANT CLAIM
INFORMATION

**NOT NEGOTIABLE**

Pay to CLERK UNITED STATES DISTRICT COURT

Address 08CN4037

KEEP THIS
RECEIPT FOR
YOUR RECORDS

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608113010 | 2009-01-27 | 606041 | $350.00 | 0008 |

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015846
Cashier ID: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS

CIVIL FILING FEE
For: TERENCE RICHARDS
Amount: $350.00

MONEY ORDER
Check/Money Order Num: 16608113010
Amt Tendered: $350.00

Total Due: $350.00
Total Tendered: $350.00
Change Amt: $0.00

08CV4037

Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged. A $45 fee will
be charged for a returned check

**UNITED STATES POSTAL SERVICE ®**

**CUSTOMER'S RECEIPT**

SEE BACK OF THIS RECEIPT
FOR IMPORTANT CLAIM
INFORMATION

**NOT NEGOTIABLE**

Pay to  CLERK UNITED STATES DISTRICT COURT
Address  07 - 1420

KEEP THIS
RECEIPT FOR
YOUR RECORDS

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608113032 | 2009-01-27 | 606041 | $455.00 | 0008 |

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015849
Cashier ID: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE B RICHARDS

NOTICE OF APPEAL/DOCKETING FEE
For: TERENCE B RICHARDS
Amount:          $455.00

MONEY ORDER
Check/Money Order Num: 16608113032
Amt Tendered: $455.00

Total Due:         $455.00
Total Tendered:    $455.00
Change Amt:        $0.00

06DR233
07A1420

Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged. A $45 fee will
be charged for a returned check

---

**UNITED STATES POSTAL SERVICE ®**

**CUSTOMER'S RECEIPT**

SEE BACK OF THIS RECEIPT
FOR IMPORTANT CLAIM
INFORMATION

**NOT NEGOTIABLE**

Pay to  CLERK UNITED STATES DISTRICT COURT
Address  07 - 1422

KEEP THIS
RECEIPT FOR
YOUR RECORDS

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608113043 | 2009-01-27 | 606041 | $455.00 | 0008 |

Court Name: Northern District of ...
Division: 1
Receipt Number: 4624015850
Cashier ID: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS

NOTICE OF APPEAL/DOCKETING FEE
For: TERENCE RICHARDS
Amount:          $455.00

MONEY ORDER
Check/Money Order Num: 16608113043
Amt Tendered: $455.00

Total Due:         $455.00
Total Tendered:    $455.00
Change Amt:        $0.00

06DR233
07A1482

Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged. A $45 fee will
be charged for a returned check

**UNITED STATES POSTAL SERVICE ®**

## CUSTOMER'S RECEIPT

SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION

**NOT NEGOTIABLE**

Pay to: CLEAR UNITED STATES DISTRICT COURT
Address: 07-2546

KEEP THIS RECEIPT FOR YOUR RECORDS

Serial Number: 16608113054

| Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|
| 2009-01-27 | 606041 | $455.00 | 0008 |

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015874
Cashier ID: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS

NOTICE OF APPEAL/DOCKETING FEE
For: TERENCE RICHARDS
Amount:      $455.00

MONEY ORDER
Check/Money Order Num: 16608113054
Amt Tendered: $455.00

Total Due:      $455.00
Total Tendered: $455.00
Change Amt:      $0.00

07CV50062
07A2546

Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged.  A $45 fee will
be charged for a returned check

---

**UNITED STATES POSTAL SERVICE ®**

## CUSTOMER'S RECEIPT

SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION

**NOT NEGOTIABLE**

Pay to: CLEAR UNITED STATES DISTRICT COURT
Address: 07-2547

KEEP THIS RECEIPT FOR YOUR RECORDS

Serial Number: 16608113065

| Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|
| 2009-01-27 | 606041 | $455.00 | 0008 |

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015863
Cashier ID: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS

NOTICE OF APPEAL/DOCKETING FEE
For: TERENCE RICHARDS
Amount:      $455.00

MONEY ORDER
Check/Money Order Num: 16608113065
Amt Tendered: $455.00

Total Due:      $455.00
Total Tendered: $455.00
Change Amt:      $0.00

07CV50068B
07A2547

Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged.  A $45 fee will
be charged for a returned check

**UNITED STATES POSTAL SERVICE ®**

**CUSTOMER'S RECEIPT**

SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION

**NOT NEGOTIABLE**

Pay to CLERK UNITED STATES DISTRICT COURT

Address 07 2558

KEEP THIS RECEIPT FOR YOUR RECORDS

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608113076 | 2009-01-27 | 606041 | $455.00 | 0008 |

Only when bank clears the check, money order, or verifies credit of funds is the fee or debt officially paid or discharged. A $45 fee will be charged for a returned check

07CV1528
07A2558

Total Due:          $455.00
Total Tendered: $455.00
Change Amt:      $0.00

MONEY ORDER
Check/Money Order Num: 16608113076
Amt Tendered: $455.00

NOTICE OF APPEAL/DOCKETING FEE
For: TERENCE RICHARDS
Amount:          $455.00

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015864
Cashier ID: tcarva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS

---

**UNITED STATES POSTAL SERVICE ®**

**CUSTOMER'S RECEIPT**

SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION

**NOT NEGOTIABLE**

Pay to CLERK UNITED STATES DISTRICT COURT

Address 07 2559

KEEP THIS RECEIPT FOR YOUR RECORDS

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608113087 | 2009-01-27 | 606041 | $455.00 | 0008 |

Transaction ...1/27/2009
Payer Name: TERENCE RICHARDS

NOTICE OF APPEAL/DOCKETING FEE
For: TERENCE RICHARDS
Amount:          $455.00

MONEY ORDER
Check/Money Order Num: 16608113087
Amt Tendered: $455.00

Total Due:          $455.00
Total Tendered: $455.00
Change Amt:      $0.00

07CV1846
07A2559

Only when bank clears the check, money order, or verifies credit of funds is the fee or debt officially paid or discharged. A $45 fee will be charged for a returned check

**UNITED STATES POSTAL SERVICE®**

**CUSTOMER'S RECEIPT**

SEE BACK OF THIS RECEIPT
FOR IMPORTANT CLAIM
INFORMATION

**NOT NEGOTIABLE**

KEEP THIS
RECEIPT FOR
YOUR RECORDS

Pay to: CLERK UNITED STATES DISTRICT COURT
Address: 07 2798

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608113098 | 2009-01-27 | 606041 | $455.00 | 0008 |

Court Name: Northern
Division: 1
Receipt Number: 4624C
Cashier ID: tcerva
Transaction Date: 01/
Payer Name: TERENCE F

NOTICE OF APPEAL/DOCKETING FEE
For: TERENCE RICHARDS
Amount:          $455.00

MONEY ORDER
Check/Money Order Num: 16608113098
Amt Tendered: $455.00

Total Due:          $455.00
Total Tendered: $455.00
Change Amt:           $0.00

07CV1528
07A2798

Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged.  A $45 fee will
be charged for a returned check

---

**UNITED STATES POSTAL SERVICE®**

**CUSTOMER'S RECEIPT**

SEE BACK OF THIS RECEIPT
FOR IMPORTANT CLAIM
INFORMATION

**NOT NEGOTIABLE**

KEEP THIS
RECEIPT FOR
YOUR RECORDS

Pay to: CLERK UNITED STATES DISTRICT COURT
Address: 07 2880

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608113100 | 2009-01-27 | 606041 | $455.00 | 0008 |

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015877
Cashier ID: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS

NOTICE OF APPEAL/DOCKETING FEE
For: TERENCE RICHARDS
Amount:          $455.00

MONEY ORDER
Check/Money Order Num: 16608113100
Amt Tendered: $455.00

Total Due:          $455.00
Total Tendered: $455.00
Change Amt:           $0.00

07CV050062
07A2880

Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged.  A $45 fee will
be charged for a returned check

**UNITED STATES POSTAL SERVICE®**

## CUSTOMER'S RECEIPT

| | | |
|---|---|---|
| SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION | Pay to: CLERK UNITED STATES DISTRICT COURT | KEEP THIS RECEIPT FOR YOUR RECORDS |
| NOT NEGOTIABLE | Address: 07 2893 | |

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608113111 | 2009-01-27 | 606041 | $455.00 | 0008 |

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015869
Cashier ID: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS

NOTICE OF APPEAL/DOCKETING FEE
For: TERENCE RICHARDS
Amount: $455.00

MONEY ORDER
Check/Money Order Num: 16608113111
Amt Tendered: $455.00

Total Due: $455.00
Total Tendered: $455.00
Change Amt: $0.00

07CV1646
07A2893

Only when bank clears the check, money order, or verifies credit of funds is the fee or debt officially paid or discharged. A $45 fee will be charged for a returned check

---

**UNITED STATES POSTAL SERVICE®**

## CUSTOMER'S RECEIPT

| | | |
|---|---|---|
| SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION | Pay to: CLERK UNITED STATES DISTRICT COURT | KEEP THIS RECEIPT FOR YOUR RECORDS |
| NOT NEGOTIABLE | Address: 07 2954 | |

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608113122 | 2009-01-27 | 606041 | $455.00 | 0008 |

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015873
Cashier ID: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE B RICHARDS

NOTICE OF APPEAL/DOCKETING FEE
For: TERENCE B RICHARDS
Amount: $455.00

MONEY ORDER
Check/Money Order Num: 16608113122
Amt Tendered: $455.00

Total Due: $455.00
Total Tendered: $455.00
Change Amt: $0.00

07CV2275
07A2934

Only when bank clears the check, money order, or verifies credit of funds is the fee or debt officially paid or discharged. A $45 fee will be charged for a returned check

**UNITED STATES POSTAL SERVICE ®**

**CUSTOMER'S RECEIPT**

| SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION | Pay to | CLERK UNITED STATES DISTRICT COURT | KEEP THIS RECEIPT FOR YOUR RECORDS |
|---|---|---|---|
| NOT NEGOTIABLE | Address | CT 3360 | |

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608113144 | 2009-01-27 | 606041 | $455.00 | 0005 |

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015871
Cashier ID: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS

NOTICE OF APPEAL/DOCKETING FEE
For: TERENCE RICHARDS
Amount: $455.00

MONEY ORDER
Check/Money Order Num: 16608113144
Amt Tendered: $455.00

Total Due: $455.00
Total Tendered: $455.00
Change Amt: $0.00

07CV1907
07A3360

Only when bank clears the check, money order, or verifies credit of funds is the fee or debt officially paid or discharged. A $45 fee will be charged for a returned check

---

**UNITED STATES POSTAL SERVICE ®**

**CUSTOMER'S RECEIPT**

| SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION | Pay to | CLERK UNITED STATES DISTRICT COURT | KEEP THIS RECEIPT FOR YOUR RECORDS |
|---|---|---|---|
| NOT NEGOTIABLE | Address | CT 3558 | |

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16608113155 | 2009-01-27 | 606041 | $455.00 | 0008 |

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 4624015861
Cashier ID: tcerva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS

NOTICE OF APPEAL/DOCKETING FEE
For: TERENCE RICHARDS
Amount: $455.00

MONEY ORDER
Check/Money Order Num: 16608113155
Amt Tendered: $455.00

Total Due: $455.00
Total Tendered: $455.00
Change Amt: $0.00

07CV2656
07A3558

Only when bank clears the check, money order, or verifies credit of funds is the fee or debt officially paid or discharged. A $45 fee will be charged for a returned check

**UNITED STATES POSTAL SERVICE ®**

**RECEIPT**

| | | | |
|---|---|---|---|
| SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION | Pay to | CLERK UNITED STATES DISTRICT COURT | KEEP THIS RECEIPT FOR YOUR RECORDS |
| **NOT NEGOTIABLE** | Address | 08 1311 | |

| Serial Number | | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|---|
| 16608113166 | | 2009-01-27 | 606041 | $455.00 | 0098 |

Court Name: Northern District of Illinois
Division: 1
Receipt Number: 462401687B
Cashier ID: tserva
Transaction Date: 01/27/2009
Payer Name: TERENCE RICHARDS

NOTICE OF APPEAL/DOCKETING FEE
For: TERENCE RICHARDS
Amount:        $455.00

MONEY ORDER
Check/Money Order Num: 16608113166
Amt Tendered: $455.00

Total Due:       $455.00
Total Tendered:  $455.00
Change Amt:      $0.00

07CV2656
08A1311

Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged. A $45 fee will
be charged for a returned check

**General Docket**
**Seventh Circuit Court of Appeals**

| | |
|---|---|
| **Court of Appeals Docket #:** 08-2759 | **Docketed:** 07/15/2008 |
| **Nature of Suit:** 2555 Prison Condition | **Termed:** 12/12/2008 |
| Terence Richards v. IISBC Tech & Services, et al | |
| **Appeal From:** Northern District of Illinois, Eastern Division | |
| **Fee Status:** PLRA fee paid | |

**Case Type Information:**
   **1)** prisoner
   **2)** federal
   **3)** civilRights

**Originating Court Information:**
   **District:** 0752-1 : 1:07-cv-01646
   **Court Reporter:** Brooke Wilson
   **Trial Judge:** Joan Humphrey Lefkow, District Court Judge
   **Date Filed:** 03/23/2007

| | |
|---|---|
| **Date Order/Judgment:** | **Date NOA Filed:** |
| 06/25/2008 | 07/14/2008 |

**Prior Cases:**
   None

**Current Cases:**
   None

Case: 1:08-cv-06810 Document #: 97 Filed: 02/23/09 Page 45 of 101 PageID #:773
https://ecf.ca7.circ7.dcn/cmect/servlet/DktRpt?caseNum=08-2759&da...

TERENCE B. RICHARDS
       Plaintiff - Appellant

v.

HSBC TECH & SERVICES USA,
INCORPORATED
       Defendant - Appellee

JAMES E. STEVENS
       Defendant - Appellee

UNITED STATES OF AMERICA
       Defendant - Appellee

DEPARTMENT OF JUSTICE - TRUSTEE'S
OFFICE
       Defendant - Appellee

Terence B. Richards
[NTC Pro Se]
C/O Alan Richards
Apt. 1B
1402 Carol Court
Palatine, IL 60074

TERENCE B. RICHARDS,
   Plaintiff - Appellant

v.

HSBC TECH & SERVICES USA, INCORPORATED, et al.,
   Defendants - Appellees

| 07/15/2008 | 1 | Federal prisoner's civil rights case docketed. IT IS ORDERED that this appeal is subject to the Prison Litigation Reform Act. Proceedings are SUSPENDED pending notification by the district court that any necessary fee has been assessed, and if assessed, paid. PLRA Fee due. Docketing Statement due for Appellant Terence B. Richards by 07/21/2008. Transcript information sheet due by 07/29/2008. Record on Appeal from Northern District of Illinois, Eastern Division due by 08/05/2008. [6043506-3] [08-2759] |
|---|---|---|
| 07/15/2008 | 2 | Pursuant to 28 U.S.C. § 1915(g), appellant may not proceed in forma pauperis. Accordingly, IT IS ORDERED that the pro se appellant pay the required $455 fees to the clerk of the district court or this appeal will be dismissed pursuant to Circuit Rule 3(b). Proceedings are SUSPENDED pending resolution of appellant's fee status on appeal. Fee or IFP forms/memorandum due on 07/29/2008. [6043511] [08-2759] |
| 07/15/2008 | 3 | This is notification that there are no appellees or attorneys to be served in this appeal. This appeal will be submitted without the filing of a brief by the appellee(s). [6043516][6043516-1] [08-2759] |
| 07/22/2008 | 4 | FILED NOTICE FROM THE DISTRICT COURT THAT THE $455.00 APPELLATE FEE WAS RECEIVED. [08-2759] |
| 07/22/2008 | 5 | Docketing statement filed by Appellant Terence B. Richards. [6044793] [6044793-1] [08-2759] |
| 07/24/2008 | 6 | ORDER: This court received notice from the District Court that the appellant paid the required docketing fee. Briefing will proceed as follows: Appellant's brief due on or before 08/25/2008 for Terence B. Richards. [6045069] [08-2759] |
| 07/30/2008 | 7 | 15 copies Appellant's brief filed by Appellant Terence B. Richards. [6046368] [6046368-1] Disk not required. [08-2759] |
| 08/04/2008 | | Original record on appeal filed. Contents of record : 1 vol. pleadings; [6046992-1] [08-2759] |
| 12/12/2008 | 8 | Filed Nonprecedential Disposition PER CURIAM. AFFIRMED. We order Richards to show cause within 14 days why he should not be sanctioned for pursuing this frivolous appeal. See FED. R. APP. P. 38. If he does not respond by the deadline or does not pay any sanction the court might assess, along with all fees outstanding in this circuit from his other lawsuits, he will be barred from filing papers in any court within the circuit. See In re: City of Chi., 500 F.3d 582, 585-86 (7th Cir. 2007); Mack, 45 F.3d 185. John L. Coffey, Circuit Judge; Joel M. Flaum, Circuit Judge and Michael S. Kanne, Circuit Judge. [08-2759] |
| 12/12/2008 | 9 | ORDER: Final judgment filed per nonprecedential disposition. With costs: yes. [6079035-3] [08-2759] |
| 12/15/2008 | 10 | Filed Response by Terence B. Richards to December 12, 2008 court order. Dist. to panel and S/A. [6079025-2] [6079025-3]. [6080003] [6080003-2] [08-2759]--[Edited 12/16/2008 by EF] |
| 01/05/2009 | 11 | Mandate issued.. Record to be returned later 1 vol. pleadings; [08-2759] |

| 01/05/2009 | | FOR COURT USE ONLY: Certified copy of 12/12/2008 Final Order with Mandate sent to the District Court Clerk. [6083786-2] [08-2759] |
| 01/09/2009 | 12 | Original record returned to the District Court. Entire record returned consisting of 1 vol. pleadings. [08-2759] |
| 02/11/2009 | 13 | ORDER: Appellant Terence Bruce Richards is sanctioned $500 for filing a frivolous appeal. Within fourteen days of the date of this order, the appellant must tender a check payable to the clerk of this court for the full amount of the sanction. If the appellant fails to pay the sanction by the due date, this court will enter an order directing the clerks of all federal courts in this circuit to return unfiled any papers submitted either directly or indirectly by or on behalf of the appellant unless and until he pays in full the sanction that has been imposed against him. See In re: City of Chi., 500 F.3d 582, 585-86 (7th Cir. 2007); Support Sys. Int'l, Inc. v. Mack, 45 F.3d 185, 186 (7th Cir. 1995) (per curiam). In accordance with our decision in Mack, exceptions to this filing bar are made for criminal cases and for applications for writs of habeas corpus. See Mack, 45 F.3d at 186-87. ; Sent Certified Mail with return receipt requested. Receipt Number: 70081140000194334665. RMR [6096546] [08-2759] |
| 02/20/2009 | 14 | Received payment of $ 500.00 by Appellant Terence B. Richards Party Terence B. Richards. [6099868] [08-2759] |

# EXHIBIT "D"

FORM B10 (Official Form 10) (9/97)

RICHARIL0458

| UNITED STATES BANKRUPTCY COURT - NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION | PROOF OF CLAIM Chapter 7 |
|---|---|

| In re TERENCE RICHARDS AKA: TERENCE BRUCE RICHARDS | 03-B-71403-MB SSN: ***-**-0642 |
|---|---|

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. sec 503..

Name of Creditor
**American Express Travel Related**

Name and Address Where Notices Should Be Sent
American Express Travel Related
Services Co. Inc.
c/o BECKET & LEE LLP
Attorneys for Claimant
P.O. BOX 3001
Malvern, PA 19355-0701
Telephone (610) 644-7800

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check box if you have never received any notices from the bankruptcy court in this case.
☒ Check box if this address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

ACCOUNT NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR
***********2007

Check here ☐ replaces
if this claim ☐ amends a previously filed claim, dated: _____

1. Basis For Claim
☐ Goods Sold
☐ Services Performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other (Describe briefly) CREDIT CARD DEBT

☐ Retiree benefits as defined in 11 USC sec 1114(a)
☐ Wage, salaries and compensation (Fill out below)
Your social security number _____
Unpaid compensation for services performed
from _____ to _____
       (date)        (date)

2. DATE DEBT WAS INCURRED: Various Transaction Dates

3. IF COURT JUDGMENT, DATE OBTAINED: None

4. TOTAL AMOUNT OF CLAIM AT TIME CASE FILED: $ 37632.41
☐ If all or part of your claim is secured or entitled to priority, also complete item 5 or 6 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. SECURED CLAIM.
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description if Collateral:
☐ Real Estate  ☐ Motor Vehicle  ☐ Other (Describe)

Value of Collateral: $ _____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

6. UNSECURED PRIORITY CLAIM.
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $ _____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4200),* earned within 90 days before filing of the bankruptcy petition or cessation of the the debtor's business whichever is earlier--11 USC 507 (a)(3)
☐ Contributions to an employee benefit plan 11 USC 507(a)(4)
☐ Up to $1,9504 of deposits towards purchase, lease or rental of property or services for personal, family, or household use--11 USC 507 (a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child--11 USC 507 (a)(7).
☐ Taxes or penalties owed to governmental units--11 USC 507 (a)(8).
☐ Other--Specify applicable paragraph of 11 USC 507 (a) _____
* Amounts are subject to adjustment on 4/11/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

7. CREDITS AND SETOFFS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

8. SUPPORTING DOCUMENTS: Itemized monthly statements of account were mailed to the debtor pre petition; claimant maintains copies of said statements on microfilm or image processing and reproduction of same absent a dispute as to the balance would be unduly time consuming and burdensome; nevertheless, where an interrupted party so requests, claimant will search its records to provide copies of said month accounts statements. To request further documentation please call Becket & Lee LLP at 1-800-963-8030 and ask to speak to the Claims Servicing Supervisor. Claim may include contractual interest and/or late charges.

9. DATE STAMPED COPY: To receive an acknowledgement of the filing of your claim, enclose a stamped, self addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**FILED**
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

**APR 05 2004**

KENNETH S. GARDNER, CLERK
BY_____
DEPUTY CLERK

| DATE 03/11/04 | Sign and print name and title (if any) of creditor or person authorized to file this claim (attach copy of power of attorney, if any) |
|---|---|
| | Barbara K. Hamilton, Sarah S. Pugh, Rhonda K. Rosenblum, Becket and Lee LLP, Attorneys/Agent for Creditor |

Penalty for Presenting Fraudulent Claim: Fine up to $500,000 or imprisonment for up to 5 years or both. 18 USC Sec. 152

Ref.: 03/14/03



Keep this receipt as a record of your purchase.

FOR YOUR PROTECTION SAVE THIS COPY

**CASHIER'S CHECK**

Customer Copy

**8137312393**

02/20/2009

Illinois

Remitter **TERENCE B. RICHARDS**

Pay To The
Order Of   **AMERICAN EXPRESS TRAVEL**

$ *********15,052.96 ***

Drawer: **JPMORGAN CHASE BANK, N.A.**

**NON NEGOTIABLE**

TERMS

KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION.
PLEASE CONTACT CHASE TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THIS ITEM.

**FedEx Express US Airbill**

FedEx Tracking Number: **8664 0810 3617**

Sender's Copy

**1 From**

Date: **2/20/2009**

Sender's Name: **TERENCE BRUCE RICHARDS** Phone ( )

Company:

Address: **721 WEST BELMONT AVE**

City: **CHICAGO** State: **IL** ZIP: **60657**

**2 Your Internal Billing Reference** OPTIONAL

**3 To**

Recipient's Name: Phone ( )

Company: **AMERICAN EXPRESS — C/O BECKETT & LEE LLP**

Recipient's Address: **16 GENERAL WAREN BLVD**

City: **MALVERN** State: **PA** ZIP: **19355-0701**

**520**

---

FedEx Kinko's Office and Print Center

55 E MONROE ST
CHICAGO, IL 60603

Location: CHIKN
Device ID: CHIKN-POS1
Employee: 1792722
Transaction: 6903200S271

STANDARD OVERNIGHT
86640810367 T
0.10 lb (S)                    22.98

Shipment subtotal:             22.98

Total Due:                     22.98

Cash:                          23.00

Change Due:                     0.02

h = Weight entered manually
S = Weight read from scale
T = Taxable item



## Detailed Results

Printable Version     Help

Enter tracking number

| Detailed Results | Notifications |

### Tracking no.: 866408103617

E-mail notifications

## Delivered

Initiated    Picked up    In transit    Delivered

**Delivered**
Signed for by: A.ANTELL

**Shipment Dates**

Ship date ⑦  Feb 20, 2009
Delivery date ⑦  Feb 23, 2009 11:24 AM

**Destination**

Signature Proof of Delivery ⑦

### Shipment Facts                                                 Help

| Service type | Standard Envelope | Delivered to | Receptionist/Front Desk |
| Weight | 0.5 lbs/0.2 kg | | |

### Shipment Travel History                                        Help

Select time zone:  Select                    Select time format: 12H | 24H

All shipment travel activity is displayed in local time for the location

| Date/Time | Activity | Location | Details |
|---|---|---|---|
| Feb 23, 2009 11:24 AM | Delivered | | |
| Feb 23, 2009 7:52 AM | On FedEx vehicle for delivery | WEST CHESTER, PA | |
| Feb 23, 2009 7:18 AM | At local FedEx facility | WEST CHESTER, PA | |
| Feb 22, 2009 4:34 PM | Departed FedEx location | MEMPHIS, TN | |
| Feb 21, 2009 11:14 AM | Arrived at FedEx location | MEMPHIS, TN | |
| Feb 20, 2009 10:28 PM | Left FedEx origin facility | CHICAGO, IL | |
| Feb 20, 2009 1:57 PM | Picked up | CHICAGO, IL | Tendered at FedEx Kinko's location |

The new FedEx Tracking is here

Register for a chance to win big!

The wait is over

FedEx Tracking: Learn about the new features.

View demo »

Global Home | FedEx Mobile | Service Info | About FedEx | Investor Relations | Careers | fedex.com Terms of Use | Privacy Policy | Site Map |
This site is protected by copyright and trademark laws under US and international law. All rights reserved.© 1995- 2009 FedEx

4090

## United States Bankruptcy Court

Northern District of IL

| In re (Name of Debtor) | Social Security No | Case Number | Chapter |
|---|---|---|---|
| TERENCE B RICHARDS | 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 | 0371403 | 7 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" of payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Name of Creditor**
Chase Manhattan Bank USA, N.A.

Name and Address Where Notices Should be Sent

Chase Manhattan Bank USA, N.A.
C/O  Chase BankCard Services, Inc.
P.O. BOX  52176
PHOENIX, AZ 85072-2176

Telephone No:
800-327-2282

[] Check box if you are aware anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

[] Check box if you have never received any notices from the bankruptcy court in this case.

[X] Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR
5179455250027356

Check here if this claim: [ ] amends  a previously filed claim, dated:
[ ] replaces

**1. BASIS FOR CLAIM**
[ ] Goods sold
[ ] Services performed
[ ] Money loaned
[ ] Personal injury/wrongful death
[ ] Taxes
[X] Other (Describe briefly)  Credit Card Charges

[ ] Retiree benefits in 11 U.S.C. 1114(a)
[ ] Wages, salaries and compensations (Fill out below)
Your social security number _____
Unpaid compensation for services performed from
_____ to _____
(date)        (date)

**2. DATE DEBT WAS INCURRED:**
Various Pre-Petition Dates

**3. IF COURT JUDGEMENT, DATE OBTAINED:**

**4. CLASSIFICATION OF CLAIM:** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

[ ] SECURED CLAIM
Attach evidence of perfection of security interest
Brief Description of Collateral
[ ] Real Estate  [ ] Motor Vehicle  [ ] Other (describe briefly)

Amount of arrearage and other charges included in secured claim above,
if any $ _____

[X] UNSECURED NONPRIORITY CLAIM  $6,434.29
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

[ ] UNSECURED PRIORITY CLAIM
Specify the portion of the claim.

[ ] Wages, salaries, or commisions (up to $4000), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier ___ 11 U.S.C. 507(a)(3)

[ ] Contributions to an employee benefit plan ___ 11 U.S.C. 507(a)(4)

[ ] Up to $1,800 of deposits toward purchases, lease, or rental of property or services for personal, family, or household use ___ 11 U.S.C. 507(a)(6)

[ ] Alimony, maintenance, or support owed to a spouse, former spouse, or child ___ 11 U.S.C. 507(a)(6)

[ ] Taxes or penalties of governmental units ___ 11 U.S.C. 507(a)(2), (a)(7)

[ ] Other - Specify applicable paragraph of 11 U.S.C. 507(a)(2),(a)(5)
*Amounts are subject to adjustment on 4/1/96 and every 3 years thereafter with respect to cases commenced on or after the date of adjusment

**5. TOTAL AMOUNT OF CLAIM AT THE TIME CASE FILED:**

| $6,434.29 | - 0 - | - 0 - | $6,434.29 |
|---|---|---|---|
| (Unsecured) | (Secured) | (Priority) | (Total) |

[ ] Check this box if claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**6. CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

**7. SUPPORTING DOCUMENTS:** _Attach copies of supporting documents_ such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. TIME-STAMPED COPY:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date: 3/25/04 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) |
|---|---|

VICKI ARGUELLO, BANKRUPTCY SUPPORT SUPERVISOR

FILED
MAR 3 0 2004
KENNETH S. GARDNER, CLERK
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
DEPUTY CLERK

5179455260027356



**CHASE**

*Recovery*
*1 866 335 4158*

Keep this receipt as a record of your purchase.

FOR YOUR PROTECTION SAVE THIS COPY
**CASHIER'S CHECK**

**Customer Copy**

**8137312391**

02/20/2009

**Illinois**

**Remitter** TERENCE B. RICHARDS

$ **********2,573.72 ***

**Pay To The
Order Of** CHASE MANHATTEN BANK U.S.A

Drawer: **JPMORGAN CHASE BANK, N.A.**
**NON NEGOTIABLE**

**TERMS**
**KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION.**
**PLEASE CONTACT CHASE TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THIS ITEM.**

| **United States Bankruptcy Court** NORTHERN     District of ILLINOIS | **PROOF OF CLAIM** ROCKFORD | 4090 |
|---|---|---|

| In re (Name of Debtor) **TERENCE B RICHARDS** | Case Number **0371403B** |
|---|---|

Note: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. 503.

| Name of Creditor *(The person or other entity to whom the debtor owes money or property)* National City Bank | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
|---|---|---|
| Name and Address Where Notices Should be Sent USE ONLY    National City Bank    PO Box 500 K-A16-2J    Portage MI 49081 | ☐ Check box if you have never received any notices from the bankruptcy court in this case. X Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT |
| is   Telephone No. 1-800-755-8350 | | CHAPTER OF BANKRUPTCY CODE UNDER WHICH CASE PROCEEDING: 7A |

| ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR: 4311966014506701 dated: | ☐ replaces Check here if this claim ☐ amends | a previously filed claim, |
|---|---|---|

1. **BASIS FOR CLAIM**
   ☐ Goods Sold
   ☐ Services Performed
   X Money loaned
   ☐ Personal injury/wrongful death
   ☐ Taxes
   ☐ Other

   ☐ Retiree benefits as defined in 11 U.S.C. 1114(a)
   ☐ Wages, salaries, and compensations (Fill out below)
   Your social security number _____
   Unpaid compensations for services performed
   from _____ to _____
      (date)     (date)

2. **DATE DEBT WAS INCURRED**
   3-14-2003

3. **IF COURT JUDGMENT, DATE OBTAINED:**

4. **CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

| ☐ SECURED CLAIM $   Attach evidence of perfection of security interest. Brief Description of Collateral: ☐ Real Estate ☐ Motor Vehicle ☐ Other (Describe briefly)   Amount of arrearage and other charges at time case filed included in secured Claim above, if any $   X UNSECURED NONPRIORITY CLAIM $ 8278.06 A claim is unsecured if there is no collateral or lien on property of the Debtor securing the claim or to the extent that the value of such property is less than the amount of the claim. | ☐ UNSECURED PRIORITY CLAIM $ Specify the priority of the claim. ☐ Wages, salaries, or commissions (up to $2000), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. 507(a) (3) ☐ Contributions to an employee benefit plan - U.S.C. 507 (a)(4) ☐ Up to $900 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use -U.S.C. 507 (a)(6) ☐ Taxes or penalties of governmental units -11 U.S.C. 507(a)(7) ☐ Other - 11 U.S.C. 507(a)(2), (a)(5), (a)(8) - (Circle applicable) |
|---|---|

5. TOTAL AMOUNT OF CLAIM AT TIME CASE FILED: $ 8278.06 (Unsecured)   $ (Secured)   $ (Priority)   $ 8278.06 (Total)

☐ Check this box if claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

6. **CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

7. **SUPPORTING DOCUMENTS:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8. **TIME-STAMPED COPY:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE FOR COURT USE ONLY

| Date 3/25/04 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) *Deb Bresnahan* Deb Bresnahan, Bankruptcy Specialist |
|---|---|



Penalty for presenting fraudulent claim: Fine of up to $500,0000 or imprisonment for up to 5 years, or both. 18 U.S.C. 152 and 3571

FILED MAR 31 2004 KENNETH S. GARDNER, CLERK UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF ILLINOIS BY____ DEPUTY CLERK



Keep this receipt as a record of your purchase.

FOR YOUR PROTECTION SAVE THIS COPY
**CASHIER'S CHECK**

**Customer Copy**

**8137312390**

02/20/2009

Illinois

Remitter  TERENCE B. RICHARDS

$ **********2,110.42 ***

Pay To The
Order Of   NATIONAL CITY BANK

Drawer:  JPMORGAN CHASE BANK, N.A.
**NON NEGOTIABLE**

TERMS
KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION.
PLEASE CONTACT CHASE TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THIS ITEM.

**FedEx** US Airbill

Express

Sender's Copy

FedEx Tracking Number: 8681 4539 9191

**1 From** Please print and press hard.

Date 2/20/2009

Sender's FedEx Account Number — SENDER'S FEDEX ACCOUNT NUMBER ONLY

Sender's Name: TERENCE RICHARDS    Phone: 773 678 3176

Company:

Address: 721 WEST BELMONT AVL

City: CHICAGO    State: IL    ZIP: 60657

**2 Your Internal Billing Reference** OPTIONAL

**3 To**

Recipient's Name:    Phone: 773 678 3176

Company: NATIONAL CITY PAYMENTS

Recipient's Address: 5101 INTERCHANGE WAY

Address:

City: LOUISVILLE    State: KY    ZIP: 40229

**4a Express Package Service** *Packages up to 150 lbs.*

- [ ] FedEx Priority Overnight
- [x] FedEx Standard Overnight
- [ ] FedEx First Overnight
- [ ] FedEx 2Day
- [ ] FedEx Express Saver

**4b Express Freight Service** *Packages over 150 lbs.*

- [ ] FedEx 1Day Freight
- [ ] FedEx 2Day Freight
- [ ] FedEx 3Day Freight

**5 Packaging**

- [x] FedEx Envelope
- [ ] FedEx Pak
- [ ] FedEx Box
- [ ] FedEx Tube
- [ ] Other

**6 Special Handling**

- [ ] SATURDAY Delivery
- [ ] HOLD Weekday at FedEx Location
- [ ] HOLD Saturday at FedEx Location

Does this shipment contain dangerous goods?

- [x] No
- [ ] Yes (Shipper's Declaration)
- [ ] Yes (As per attached Shipper's Declaration)
- [ ] Dry Ice
- [ ] Cargo Aircraft Only

**7 Payment** Bill to:

- [ ] Sender
- [ ] Recipient
- [ ] Third Party
- [ ] Credit Card
- [x] Cash/Check

Date: 143

Total Packages:    Total Weight:    Total Declared Value: $            .00

**8 Residential Delivery Signature Options**

- [ ] No Signature Required
- [ ] Direct Signature
- [ ] Indirect Signature

520

Rev. Date 10/09•Part #158281•©1994–2005 FedEx•PRINTED IN U.S.A. SRY

---

**FedEx Kinko's**

Office and Print Center

1201 N DEARBORN ST
CHICAGO, IL 60610

Location:
Device ID:        GYWKS
Employee:         GYWKS-POS2
Transaction:      2030295
                  6903202T487

STANDARD OVERNIGHT
8681453939191    0.10 lb (S)    18.13

Shipment subtotal:    18.13

Total Due:    18.13

Cash:    18.15

Change Due:    0.02

M = Weight entered manually
S = Weight read from scale
T = Taxable item

Subject to additional charges. See FedEx Service Guide
at fedex.com for details. All merchandise sales final.

Visit us at: fedex.com
Or call 1.800.GoFedEx
1.800.463.3339

February 20, 2009 3:36:24 PM



## Detailed Results

Printable Version     Help

Enter tracking number

| Detailed Results | Notifications |
|---|---|

Tracking no.: 868145399191

E-mail notifications

### Delivered

Initiated     Picked up     In transit     Delivered

**Delivered**
Signed for by: L.MUSS

**Shipment Dates**

Ship date ⑦  Feb 20, 2009
Delivery date ⑦  Feb 23, 2009 9:15 AM

**Destination**

Signature Proof of Delivery ⑦

### Shipment Facts

Help

| Service type | Standard Envelope | Delivered to | Shipping/Receiving |
|---|---|---|---|

### Shipment Travel History

Help

Select time zone:  Select

Select time format: 12H | 24H

All shipment travel activity is displayed in local time for the location

| Date/Time | Activity | Location | Details |
|---|---|---|---|
| Feb 23, 2009 9:15 AM | Delivered | | |
| Feb 23, 2009 7:38 AM | On FedEx vehicle for delivery | LOUISVILLE, KY | |
| Feb 23, 2009 6:52 AM | At local FedEx facility | LOUISVILLE, KY | |
| Feb 23, 2009 12:31 AM | At dest sort facility | LOUISVILLE, KY | |
| Feb 22, 2009 4:20 PM | Departed FedEx location | MEMPHIS, TN | |
| Feb 21, 2009 11:14 AM | Arrived at FedEx location | MEMPHIS, TN | |
| Feb 20, 2009 10:28 PM | Left FedEx origin facility | CHICAGO, IL | |
| Feb 20, 2009 3:36 PM | Picked up | CHICAGO, IL | Tendered at FedEx Kinko's location |

The new FedEx Tracking is here.

Register for a chance to win big!

FedEx Tracking: Learn about the new features.

View demo »

Global Home | FedEx Mobile | Service Info | About FedEx | Investor Relations | Careers | fedex.com Terms of Use | Privacy Policy | Site Map |
This site is protected by copyright and trademark laws under US and International law. All rights reserved.© 1995- 2009 FedEx

FORM B10 (Official Form 10)

**UNITED STATES BANKRUPTCY COURT** **NORTHERN** DISTRICT OF ILLINOIS | **PROOF OF CLAIM**

| Name of Debtor | Case Number |
|---|---|
| Terence B Richards | 03-71403 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commence- ment of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property): | |
|---|---|
| CitiFinancial<br>Investment Recovery<br>P.O. BOX 913<br>Owingsmills, MD 21117 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☑ Check box if the address differs from the address on the envelope sent to you by the court. |
| Telephone Number: 1-800-401-9836 | This Space is for Court Use Only |

| Account or other number by which creditor identifies debtor: | Check here if this claim |
|---|---|
| 09550347912 | ☐ replaces |
| | a previously filed claim, dated: |
| SS# 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 | ☐ amends |

**1. Basis for Claim**
- ☐ Goods Sold
- ☐ Services Performed
- ☑ Money Loaned
- ☐ Personal Injury/Wrongful Death
- ☐ Taxes
- ☐ Other

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)

| 2. Date debt was incurred: | 3. If court judgment, date obtained: |
|---|---|

**4. Total Amount of Claim at Time Case Filed:** $ 5,129.00

☑ This claim is a General Unsecured Claim, unless otherwise indicated in section 5 or 6 below.

**5. Secured Claim.**

☐ Check this box if your claim is secured by collateral (including a right of setoff). Value of collateral

Brief Description of Collateral:

☐ Real Estate ☐ Motor Vehicle ☐

If plan proposes separate treatment for Proposition Arrearages, the amount of that arrearage is

Set forth how this arrearage was computed below:

| | |
|---|---|
| Back Payments | |
| Late Charges | |
| Attorney Fees | |
| Foreclosure | |
| Other (specify) | |

**6. Priority Unsecured Claim.**

☐ Check this box if you have an unsecured priority claim

Amount entitled to priority

Specify the priority of the claim:

- ☐ Wages, salaries or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,100* of deposit toward purchase, lease or rental of property or services for personal, family or household use - 11U.S.C. 507(a)(6).
- ☐ Alimony, maintenance or support owed to a spouse, former spouse or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)( ).

*Amounts are subject to adjustment on 04/01/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

**7. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:** Attach copies of supporting documents such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

This Space for Court Use Only

**FILED**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

**MAR 2 9 2004**

KENNETH S. GARDNER, CLERK
BY
DEPUTY CLERK

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) |
|---|---|
| March 23, 2004 | Eugene Thesier - Bankruptcy Representative |

Penalty for presenting fraudulent claim: Fine of up to $500,000.00 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



Keep this receipt as a record of your purchase.

FOR YOUR PROTECTION SAVE THIS COPY
**CASHIER'S CHECK**

**Customer Copy**

**8137312389**

02/20/2009

Illinois

**Remitter** TERENCE B. RICHARDS

$ **********2,051.60 ***

Pay To The
Order Of     CITIFINANCIAL

Drawer: JPMORGAN CHASE BANK, N.A.

**NON NEGOTIABLE**

**TERMS**
KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION.
PLEASE CONTACT CHASE TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THIS ITEM.

B10 (Official Form 10)
(Rev. 7/93)

| United States Bankruptcy Court Northern District of Illinois Western Division | PROOF OF CLAIM |
|---|---|

| In re (Name of Debtor) | Case Number |
|---|---|
| RICHARDS, TERRENCE B. | 03-71403 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to U.S.C. s 503.

**Name of Creditor**
(The person or other entity to whom the debtor owes money or property)
Harris Bank

**Name and Address Where Notices Should be Sent**
Harris Bank
3800 Golf Road Suite 300
Rolling Meadows, IL 60008

Telephone No.     847-434-2888

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if have never received any notices from the bankruptcy court in this case.

☑ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:
029-6100143573

Check box if this claim ☐ replaces     a previously filed claim, dated
☐ amends

**1. BASIS FOR CLAIM**
☐ Goods sold
☐ Service performed
☑ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☐ Other (describe briefly)

☐ Retiree benefits as defined in 11 U.S.C. s 1114 (a)
☐ Wages, salaries, and compensation (Fill out below)
Your Social Security Number
Unpaid compensation for services performed
from _____ to _____
(date)     (date)

**2. DATE DEBT WAS INCURRED**
11/18/2002

**3. IF COURT JUDGEMENT, DATE OBTAINED:**

**4. CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another.

CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☐ **SECURED CLAIM $**
Attach evidence of perfection of security interest
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle   ☐ Other  describe briefly
Amount of arrearage and other charges at time case filed included in secured secured claim above, if any  $

☑ **UNSECURED NONPRIORITY CLAIM     $1,508.62**
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ **UNSECURED PRIORITY CLAIM**
Specify the priority of the claim.

☐ Wages, salaries, or commissions   (up to $4000), * earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. s 507 (a) (3)
☐ Contributions to an   employee benefit plan - 11 U.S.C. s 507(a)(4)
☐ Up to   $1,800 *of deposits toward purchase, lease, or rental of property or services for personal, family, or household use-11 U.S.C. s(a)(6)
☐ Alimony,  maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. s 507 (a) (7)
☐ Taxes   or penalties of governmental units - 11 U.S.C. s507 (a) (8)
☐ Other –   Specify applicable paragraph of 11 U.S.C. s 507 (a)
*Amounts are subject to adjustment on 4/1/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| 5. TOTAL AMOUNT OF CLAIM AT THE TIME CASE FILED: | $1,508.62 (Unsecured) | (Secured) | (Priority) | $1,508.62 (TOTAL) |
|---|---|---|---|---|

☐ Check   this box if claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**6. CREDITS AND SETOFFS:**   The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this proof of claim, claimant has deducted all amounts that claimant owes to debtor.

**7. SUPPORTING DOCUMENTS:**   Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgements, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. TIME-STAMPED COPY:**   To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

Date
3/17/2004
Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)
Harris Bank by Steve Revell, Collector

*Steve Revell*

THIS SPACE IF FOR COURT USE ONLY

UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF ILLINOIS

FILED
MAR 2 6 2004
KENNETH S. GARDNER, CLERK
DEPUTY CLERK

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. ss 152 and 3571.



Keep this receipt as a record of your purchase.

FOR YOUR PROTECTION SAVE THIS COPY
**CASHIER'S CHECK**

**Customer Copy**

**8137312388**

02/20/2009

Illinois

**Remitter** TERENCE B. RICHARDS

$ \*\*\*\*\*\*\*\*\*\*\*\*603.45   \*\*\*

**Pay To The Order Of**   HARRIS BANK

Drawer: **JPMORGAN CHASE BANK, N.A.**

**NON NEGOTIABLE**

**TERMS**
KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION.
PLEASE CONTACT CHASE TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THIS ITEM.

**FedEx** Express · **US Airbill**

Tracking Number: 8667 2902 4192

**Sender's Copy**

**From** *Please print and press hard.*

Date 2/20/2009

Sender's FedEx Account Number — SENDER'S FEDEX ACCOUNT NUMBER ONLY

Sender's Name TERENCE BRUCE RICHARDS Phone 773, 678 3174

Company

Address 721 WEST BELMONT AVE SUITE 311

City CHICAGO State IL ZIP 60657

**Your Internal Billing Reference** OPTIONAL
*First 24 characters will appear on invoice.*

**To**
Recipient's Name STEVE REVELL Phone (847) 434 2660

Company HARRIS BANK

Recipient's Address 3800 GOLF ROAD SUITE 300
*We cannot deliver to P.O. boxes or P.O. ZIP codes.*

Address
*To request a package be held at a specific FedEx location, print FedEx address here.*

City ROLLING MEADOWS State IL ZIP 60008

**4a Express Package Service** *Packages up to 150 lbs.*
- [ ] FedEx Priority Overnight
- [x] FedEx Standard Overnight
- [ ] FedEx First Overnight
- [ ] FedEx 2Day
- [ ] FedEx Express Saver

**4b Express Freight Service** *Packages over 150 lbs.*
- [ ] FedEx 1Day Freight
- [ ] FedEx 2Day Freight
- [ ] FedEx 3Day Freight

**5 Packaging**
- [x] FedEx Envelope
- [ ] FedEx Pak
- [ ] FedEx Box
- [ ] FedEx Tube
- [ ] Other

**6 Special Handling**
- [ ] SATURDAY Delivery
- [ ] HOLD Weekday at FedEx Location
- [ ] HOLD Saturday at FedEx Location

Does this shipment contain dangerous goods?
- [x] No
- [ ] Yes

**7 Payment** Bill to:
- [ ] Sender
- [ ] Recipient
- [ ] Third Party
- [ ] Credit Card
- [x] Cash/Check

Total Packages 5   Total Weight   Total Declared Value $100.00

**8 Residential Delivery Signature Options**
- [ ] No Signature Required
- [ ] Direct Signature
- [ ] Indirect Signature

520



## Detailed Results

Español | Customer Support | FedEx Locations   Search   **Go**

Package/Envelope   Freight   Expedited   Office/Print Services

Ship ▸   Track ▸   Manage ▸   Business Solutions ▸

Printable Version   Help

Enter tracking number

| Detailed Results | Notifications |

Tracking no.: 866729024192   E-mail notifications

### Delivered

Initiated   Picked up   In transit   Delivered

**Delivered**
Signed for by: S.KNIGHT

**Shipment Dates**
Ship date ⑦  Feb 20, 2009
Delivery date ⑦  Feb 23, 2009 10:07 AM

**Destination**
Signature Proof of Delivery ⑦

### Shipment Facts   Help

| Service type | Standard Envelope | Delivered to | Mailroom |
| Weight | 0.5 lbs/0.2 kg | | |

### Shipment Travel History   Help

Select time zone:  Select

Select time format: 12H | 24H

All shipment travel activity is displayed in local time for the location

| Date/Time | Activity | Location | Details |
|---|---|---|---|
| Feb 23, 2009 10:07 AM | Delivered | | |
| Feb 23, 2009 6:46 AM | On FedEx vehicle for delivery | SCHAUMBURG, IL | |
| Feb 23, 2009 6:15 AM | At local FedEx facility | SCHAUMBURG, IL | |
| Feb 20, 2009 10:28 PM | Left FedEx origin facility | CHICAGO, IL | |
| Feb 20, 2009 9:54 PM | At dest sort facility | CHICAGO, IL | |
| Feb 20, 2009 1:46 PM | Picked up | CHICAGO, IL | Tendered at FedEx Kinko's location |

The new FedEx Tracking is here.

Register for a chance to win big!   The wait is over!

FedEx Tracking: Learn about the new features.
View demo ▸

Global Home | FedEx Mobile | Service Info | About FedEx | Investor Relations | Careers | fedex.com Terms of Use | Privacy Policy | Site Map |
This site is protected by copyright and trademark laws under US and International law. All rights reserved.© 1995- 2009 FedEx

**FORM B10** (Official Form 10)(12/03)

| UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF ILLINOIS | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>Terence Bruce Richards | Case Number<br>03-71403<br><br>Judge Initials: MB | Trustee<br><br>File Claim Form With:<br>United States Bankruptcy Court<br>211 S. Court St<br>Rockford, Illinois 61101 |
|---|---|---|

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. §503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>FAST CASH IN A FLASH<br><br>Name and Address where notices should be sent:<br><br>FAST CASH IN A FLASH<br>54 N WESTERN AVE<br>CARPENTERSVILLE, IL 60110<br><br>Telephone Number: 847-717-6137 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|

Account or other number by which creditor identifies debtor:

5012

Check here if ☐ replaces ☐ amends a previously filed claim, dated: _____

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☒ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other

- ☐ Retiree benefits as defined in 11 U.S.C. §1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)     (date)

**2. Date debt was incurred:**
MARCH 7 2003

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $1,450.00

| (unsecured) | (secured) | (priority) | $1,450.00 (Total) |
|---|---|---|---|

☐ If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate ☐ Motor Vehicle
☐ Other _____

Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Nonpriority Claim** $1,450.00
☒ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim

Amount entitled to priority $_____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(4).
☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date<br>3/15/04 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>JESSE BRZELES   MANAGER |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

D/4117



Keep this receipt as a record of your purchase.

FOR YOUR PROTECTION SAVE THIS COPY
**CASHIER'S CHECK**

**Customer Copy**

**8137312387**

02/20/2009

Illinois

Remitter  **TERENCE B. RICHARDS**

Pay To The
Order Of  **FAST CASH IN A FLASH**

$ ***********580.00  ***

Drawer:  **JPMORGAN CHASE BANK, N.A.**

**NON NEGOTIABLE**

**TERMS**
KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION.
PLEASE CONTACT CHASE TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THIS ITEM.

**FedEx** Express | **US Airbill** | FedEx Tracking Number **8667 2902 4218** | **Sender's Copy**

**1 From** *Please print and press hard.*

Date **2/20/2009**

Sender's FedEx Account Number — SENDER'S FEDEX ACCOUNT NUMBER ONLY

Sender's Name **TERENCE BRUCE RICHARDS** Phone **(773) 678 3176**

Company

Address **721 WEST BELMONT AVE SUITE 311**

City **CHICAGO** State **IL** ZIP **60657**

**2 Your Internal Billing Reference** *First 24 characters will appear on invoice.* OPTIONAL

**3 To**

Recipient's Name **FAST CASH IN A FLASH** Phone **(847) 717 6137**

Company

Recipient's Address **962 N. MC CLEAN BLVD**
*We cannot deliver to P.O. Boxes or P.O. ZIP codes.*

Address

City **ELGIN** State **IL** ZIP **60123**

**4a Express Package Service** *Packages up to 150 lbs.*

- [ ] FedEx Priority Overnight
- [ ] FedEx Standard Overnight
- [ ] FedEx First Overnight
- [ ] FedEx 2Day
- [ ] FedEx Express Saver

**4b Express Freight Service** *Packages over 150 lbs.*

- [ ] FedEx 1Day Freight
- [ ] FedEx 2Day Freight
- [ ] FedEx 3Day Freight

**5 Packaging**

- [X] FedEx Envelope
- [ ] FedEx Pak
- [ ] FedEx Box
- [ ] FedEx Tube
- [ ] Other

**6 Special Handling** Include FedEx address in Section 3.

- [ ] SATURDAY Delivery
- [ ] HOLD Weekday at FedEx Location
- [ ] HOLD Saturday at FedEx Location

Does this shipment contain dangerous goods?

- [X] No
- [ ] Yes (Shipper's Declaration not required)
- [ ] Yes (As per attached Shipper's Declaration)
- [ ] Dry Ice

**7 Payment** *Bill to:*

- [ ] Sender
- [ ] Recipient
- [ ] Third Party
- [ ] Credit Card
- [X] Cash/Check

Total Packages **1**   Total Weight **5**   Total Declared Value **$100.00**

**8 Residential Delivery Signature Options**

- [X] No Signature Required
- [ ] Direct Signature
- [ ] Indirect Signature

**520**



FedEx

Español | Customer Support | FedEx Locations  Search  **Go**

Package/Envelope    Freight    Expedited    Office/Print Services ✹

Ship ▸        Track ▸        Manage ▸        Business Solutions ▸

## Detailed Results

Printable Version        Help

Enter tracking number ▮

| Detailed Results | Notifications |

Tracking no.: 866729024218        ✉ E-mail notifications

**Delivered**

Initiated   Picked up   In transit   Delivered

**Delivered**
Signed for by: R.SANCHEZ

**Shipment Dates**                    **Destination**

Ship date ⓘ   Feb 20, 2009           Signature Proof of Delivery ⓘ
Delivery date ⓘ   Feb 23, 2009 1:15 PM

### Shipment Facts                                                    **Help**

| Service type | Standard Envelope | Delivered to | Receptionist/Front Desk |
| Weight | 0.5 lbs/0.2 kg | | |

### Shipment Travel History                                          **Help**

Select time zone:  Select                    Select time format: 12H | 24H

All shipment travel activity is displayed in local time for the location

| Date/Time | Activity | Location | Details |
| --- | --- | --- | --- |
| Feb 23, 2009 1:15 PM | Delivered | | |
| Feb 23, 2009 7:52 AM | On FedEx vehicle for delivery | SCHAUMBURG, IL | |
| Feb 23, 2009 6:12 AM | At local FedEx facility | SCHAUMBURG, IL | |
| Feb 20, 2009 10:28 PM | Left FedEx origin facility | CHICAGO, IL | |
| Feb 20, 2009 9:54 PM | At dest sort facility | CHICAGO, IL | |
| Feb 20, 2009 1:46 PM | Picked up | CHICAGO, IL | Tendered at FedEx Kinko's location |

The new FedEx Tracking is here

Register for a chance to win big!

The wait is over!

FedEx Tracking: Learn about the new features.

View demo ▸

Global Home | FedEx Mobile | Service Info | About FedEx | Investor Relations | Careers | fedex.com Terms of Use | Privacy Policy | Site Map |
This site is protected by copyright and trademark laws under US and International law. All rights reserved.© 1995- 2009 FedEx

FORM B10 (Official Form 10)(12/03)

| UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF ILLINOIS | PROOF OF CLAIM |
| --- | --- |

| Name of Debtor<br>Terrence Bruce Richards | Case Number<br>03-71403<br><br>Judge Initials: MB | Trustee<br><br>File Claim Form With:<br>United States Bankruptcy Court<br>211 S Court St<br>Rockford, Illinois 61101 |
| --- | --- | --- |

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. §503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>NORTHWEST HERALD | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| --- | --- |

Name and Address where notices should be sent:

NORTHWEST HERALD
7717 S RT 31
CRYSTAL LAKE, IL 60014

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Telephone Number:

Account or other number by which creditor identifies debtor:
**49763**

Check here if ☐ replaces ☐ amends     a previously filed claim, dated: _____ this claim

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☑ Other **Advertising**

- ☐ Retiree benefits as defined in 11 U.S.C. §1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
       (date)        (date)

**2. Date debt was incurred:** 2/03

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ 9382
(unsecured)      (secured)      (priority)      (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle
☐ Other _____

Value of Collateral:  $ _____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

**6. Unsecured Nonpriority Claim** $ _____
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim

Amount entitled to priority $ _____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(4).
☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

THIS SPACE IS FOR COURT USE ONLY

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

Date:  Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):

1/11/04   _signature_

FILED
JAN - 7 2004
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
R.S. GARDNER, CLERK

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



Keep this receipt as a record of your purchase.

FOR YOUR PROTECTION SAVE THIS COPY
**CASHIER'S CHECK**

**Customer Copy**

**8137312386**

02/20/2009

Illinois

Remitter **TERENCE B. RICHARDS**

Pay To The
Order Of    **NORTHWEST HERALD**

$ ************93.00 ***

Drawer: **JPMORGAN CHASE BANK, N.A.**
**NON NEGOTIABLE**

**TERMS**
**KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION.**
**PLEASE CONTACT CHASE TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THIS ITEM.**

# FedEx Express

## US Airbill

FedEx Tracking Number: 8667 2902 4207

**Sender's Copy**

**1 From** *Please print and press hard.*

Date 2/20/2009

Sender's FedEx Account Number — SENDER'S FEDEX ACCOUNT NUMBER ONLY

Sender's Name: TERENCE BRUCE RICHARDS  Phone (773) 678 3176

Company:

Address: 721 WEST BELMONT. AVE  SUITE 311

City: CHICAGO  State: IL  ZIP: 60657

**2 Your Internal Billing Reference**  OPTIONAL
First 24 characters will appear on invoice.

**3 To**

Recipient's Name:  Phone ( )

Company: NORTHWEST HERALD

Recipient's Address: 7717 SOUTH ROUTE 31

Address:

City: CRYSTAL LAKE  State: IL  ZIP: 60014

**4a Express Package Service**  *Packages up to 150 lbs.*

- [ ] FedEx Priority Overnight
- [X] FedEx Standard Overnight
- [ ] FedEx First Overnight
- [ ] FedEx 2Day
- [ ] FedEx Express Saver

**4b Express Freight Service**  *Packages over 150 lbs.*

- [ ] FedEx 1Day Freight
- [ ] FedEx 2Day Freight
- [ ] FedEx 3Day Freight

**5 Packaging**

- [X] FedEx Envelope
- [ ] FedEx Pak
- [ ] FedEx Box
- [ ] FedEx Tube
- [ ] Other

**6 Special Handling**

- [ ] SATURDAY Delivery
- [ ] HOLD Weekday at FedEx Location
- [ ] HOLD Saturday at FedEx Location

Does this shipment contain dangerous goods?

- [ ] No
- [ ] Yes
- [ ] Yes
- [ ] Dry Ice
- [ ] Cargo Aircraft Only

**7 Payment** *Bill to:*

- [ ] Sender
- [ ] Recipient
- [ ] Third Party
- [ ] Credit Card
- [X] Cash/Check

Total Packages: 1  Total Weight: 5  Total Declared Value $ 100.00

**8 Residential Delivery Signature Options**

- [X] No Signature Required
- [ ] Direct Signature
- [ ] Indirect Signature

520



FORM B10 (Official Form 10)(12/03)

| UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF ILLINOIS | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>Terence Bruce Richards | Case Number<br>03-71403<br><br>Judge Initials: MB | Trustee<br><br>File Claim Form With:<br>United States Bankruptcy Court<br>211 S. Court St<br>Rockford, Illinois 61101 |
|---|---|---|

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. §503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>T MOBILE<br><br>Name and Address where notices should be sent:<br><br>**T-MOBILE**<br>**P. O. BOX 37380**<br>**ALBUQUERQUE, NM 87176**<br><br>Telephone number: | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☒ Check box if the address differs from the address on the envelope sent to you by the court.<br><br>THIS SPACE IS FOR COURT USE ONLY |
|---|---|

| Account or other number by which creditor identifies debtor:<br>248378485 | Check here if ☐ replaces<br>this claim ☐ amends | a previously filed claim, dated:_____ |
|---|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☒ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other

- ☐ Retiree benefits as defined in 11 U.S.C. §1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)      (date)

**2. Date debt was incurred:** 9/20/02 - 3/4/06

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ 110.34 _____ _____ 110.34
(unsecured) (secured) (priority) (Total)

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate ☐ Motor Vehicle
☐ Other _____

Value of Collateral: $ _____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

**6. Unsecured Nonpriority Claim** $ 110.34
☒ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim

Amount entitled to priority $ _____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(4).
☐ Up to $ 2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date<br>5/10/04 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Donald Fisher |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

THIS SPACE IS FOR COURT USE ONLY<br>**FILED**<br>UNITED STATES BANKRUPTCY COURT<br>NORTHERN DISTRICT OF ILLINOIS<br><br>MAY 13 2004<br><br>KENNETH S. GARDNER, CLERK<br>BY _____<br><br>DEPUTY CLERK

021501



Keep this receipt as a record of your purchase.

FOR YOUR PROTECTION SAVE THIS COPY
**CASHIER'S CHECK**

**Customer Copy**

**8137312384**

02/20/2009

Illinois

Remitter **TERENCE B. RICHARDS**

Pay To The
Order Of          **T-MOBILE**

$ ***********110.84 ***

Drawer: **JPMORGAN CHASE BANK, N.A.**

**NON NEGOTIABLE**

**TERMS**
KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION.
PLEASE CONTACT CHASE TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THIS ITEM.

**T-MOBILE - 8428**
**36 SOUTH STATE ST.**
**CHICAGO, IL 60603**

Register #6
Trans #31970
02-20-2009 14:19:30

**TERENCE RICHARDS**          Mobile #: 3125937966          Account No: 248378485          Sales Rep: 0093002

| Quantity | Unit | SKU | Description | Price | Extension |
|----------|------|-----|-------------|-------|-----------|
| 1 | EACH | AIRTIME | AIRTIME PAYMENT | 110.84 | 110.84 |
| | | | SALE AMOUNT | | 110.84 |
| | | | CHICAGO, IL, COOK | | 0.00 |
| | | | TOTAL | | 110.84 |
| | | | Check #12384 | | -110.84 |

- **Cancellation and Return Policy**

Device Only Returns (for Devices purchased or received in conjunction with an activation or upgrade extension) - To receive a refund of the purchase price of my Device (less rebates received and shipping costs), I must return it (with original packaging and all contents) within the Return Period in an undamaged condition and in good working order to the place of purchase, and I must provide the original receipt. I may be required to pay a $10.00 restocking fee. If I return an upgraded handset within **14 days of my upgrade date** (30 days in California; other states or jurisdictions may differ - ask your sales representative), my service agreement will revert to the original term prior to the upgrade. Limited Edition Devices are non-refundable.

Other Devices and Accessories (for Devices or accessories purchased without an activation) - If I purchased my Device without activating or making changes to my service, or I purchased accessories, I may return the Device or accessories within 30 days of purchase.

Prepaid airtime and e-coupons are non-refundable.

B10 (Official Form 10)
(Rev. 6/91)

| United States Bankruptcy Court<br>NORTHERN District of ILLINOIS | PROOF OF CLAIM<br>Chapter 7 |
|---|---|
| In re (Name of Debtor)<br>**Terence B. Richards** | Case Number<br>**03-71403** |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" of payment of an administrative expenses may be filed pursuant to 11 U.S.C. 503.

Name of Creditor
( The person or entity to whom the debtor owes money or property)

Name and Address Where Notice Should be Sent
**SMC - C/O - CARSON PIRIE SCOTT**
**P.O. Box 67**
**Chanhassen, MN. 55317**
Telephone No.     **952 - 922 - 6234**

☑ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☑ Check box if you have never received any notices from the bankruptcy court in this case.

☑ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:
**130-1158142791**

Check here if this claim ☑ replaces ☑ amends   a previous filed claim, dated _____

1. BASIS FOR CLAIM:
☑ Good Sold
☑ Services performed
☑ Money loaned
☑ Personal injury/wrongful death
☑ Taxes
☑ Other (Describe briefly)    **Unsecured merchandise**

☑ Retiree benefits as defined in 11 U.S.C. 1114(a)
☑ Wages, salaries, and compensations (Fill out below)
Your social security number _____
Unpaid compensations for services performed
from _____ to _____
     (date)          (date)

2. DATE DEBT WAS INCURRED:

3. IF COURT JUDGEMENT, DATE OBTAINED:

4. CLASSIFICATION OF CLAIM. Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority. (2) Unsecured Priority. (3) Secured. It is possible for part of a to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM.

☑ SECURED CLAIM $ _____
Attach evidence of perfection of security interest.
Brief Description of Collateral:
☑ Real Estate   ☑ Motor Vehicle   ☑ Other (Describe briefly)
Amount of arrearage and other charges included in secured claim above,
if any $ _____

☑ UNSECURED NONPRIORITY CLAIM $     **$695.77**
A claim is unsecured if there is no collateral or lien on the property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☑ UNSECURED PRIORITY CLAIM $ _____
Specify the priority of the claim.
☑ Wages, salaries, or commissions (up to $2000, earned not more than 90 days before filing of the bankruptcy petition of cessation of the debtor's business, whichever is earlier) - 11 U.S.C. 507(a)(3)
☑ Contributions to an employee benefit plan - 11 U.S.C. 507(a)(4)
☑ Up to $900 of deposits toward purchases, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. 507(a)(6)
☑ Taxes or penalties of government units - 11 U.S.C. 507(a)(7)
☑ Other - 11 U.S.C. 507(a)(3) - ( Describe briefly)

5. TOTAL AMOUNT OF CLAIM AT TIME CASE
$     **$695.77**
$ _____ (unsecured)     $ _____ (Secured)     $ _____ (Priority)     $     **$695.77**

☑ Check this box if claim includes prepetition in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

6. CREDITS AND SETOFFS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes debtor.

THIS SPACE IS FOR COURT USE ONLY

7. SUPPORTING DOCUMENTS: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgements, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach summary.

8. TIME-STAMPED COPY: To receive an acknowledgement of the filing of your claim, enclosed a stamped, self addressed envelope and copy of this proof of claim.

| Date<br>**4/24/2004** | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of poer of attorney, if any)<br>_Katherine V. Dreher_ (signature)<br>**Katherine V. Dreher (Mgr.)** |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. 152 and 3571.

FILED
APR 3 0 2004
KENNETH S. GARDNER, CLERK
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
BY _____ DEPUTY CLERK



Keep this receipt as a record of your purchase.

FOR YOUR PROTECTION SAVE THIS COPY
**CASHIER'S CHECK**

**Customer Copy**

**8137312383**

02/20/2009

Illinois

Remitter  TERENCE B. RICHARDS

Pay To The Order Of  **CARSON PIRIE SCOTT**

$ ************695.77  ***

Drawer:  JPMORGAN CHASE BANK, N.A.

**NON NEGOTIABLE**

**TERMS**
KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION.
PLEASE CONTACT CHASE TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THIS ITEM.

282111107 NEW 01/08 8610004306

⑈8137312383⑈ ⑆044000037⑆ 758661359⑈

# EXHIBIT "E"


# HSBC

**HSBC Holdings Plc**

**Comprehensive Crime Policy**



SR International Business
Insurance Company

**HSBC Insurance Brokers Limited**
Financial Institutions Division
Level 16, 8 Canada Square
London E14 5HQ

Tel: +44 (0) 20-7991 0598
Fax: +44 (0) 20-7991 4640



**EXHIBIT**

1

# COMPREHENSIVE CRIME POLICY

**WHEREAS THE ASSURED,** named in the Schedule, has made to Us, SR International Business Insurance Company Ltd. (hereinafter called the "Insurer") a written Proposal which it is agreed shall form the basis of this Insurance and has paid or promised to pay the premium specified in the Schedule, all provisions of the said Schedule and the Comprehensive Crime presentation being hereby incorporated in and forming part of this Policy.

**NOW WE THE INSURER** hereby undertake and agree, subject to the following terms, exclusions, limitations and conditions, to make good to the Assured, as stated in the Insuring Clauses, or in any amendatory endorsements attached thereto, in excess of the amounts of the deductibles stated to be applicable, such direct financial loss sustained by the Assured subsequent to the Retroactive Date (if any) and discovered by the Assured during the Policy Period and subject always to the Policy Limits as stated in the Schedule or in any amendatory endorsements attached thereto.

SR International Business
Insurance Company

The Assured is requested to read this Policy and, if it is incorrect, return it immediately for correction.

The attention of the Assured is particularly drawn to each of the Insuring Clauses, Definitions, Exclusions and General Conditions, and any amendatory endorsements of this Insurance.

In all communications the Policy Number appearing in line one of the Schedule should be quoted.

SR International Business
Insurance Company

# SCHEDULE

|  | Policy No: | 501/FH03AAC1(a) |
|---|---|---|

**Item 1:**     **Name of the Assured:**     **HSBC HOLDINGS PLC**
and subsidiary companies as may currently exist or be hereinafter created.

           **Principal Address:**     8 Canada Square,
London E14 5HQ.

**Item 2:**     **Policy Period:**

From:    30th November, 2003
To:       30th November 2004
Both days at Noon Local Standard Time.

**Item 3:**     **The Premium:**

20.000% (being the Insurer's proportion) of GBP 5,255,889.00 plus GBP 62,578.94 United Kingdom Insurance Premium Tax and other Taxes (including Canadian Retail Tax) totalling GBP 46,592,88.

**Item 4:**     **Comprehensive Crime presentation:**

The Comprehensive Crime presentation signed and dated 4th November 2003 shall be deemed to be the basis of this Insurance.

**Item 5:**     **Policy Limits:**

The Limit of Indemnity under this Policy subject to General Condition (11) hereof, shall be GBP 75,000,000 in the aggregate during the Policy Period for Insuring Clauses 1-6, 8, 9 combined and Insuring Clause 7 separately.

**Item 6:**     **Deductibles:**

The amount of the deductible applicable to the respective Insuring Clause each and every loss shall be GBP 50,000,000.

SR International Business
Insurance Company

**Item 7:**  **Loss Advice Threshold:**  GBP 10,000,000.

**Item 8:**  **Person(s) nominated to Accept Service of Process:**

  (i)  In respect of General Condition (4)(b)

  Barlow Lyde & Gilbert,
  Beaufort House,
  15, St. Botolph Street,
  London, EC3A 7NJ.

  (ii)  In respect of General Condition (4)(c)

  Sedgwick, Detert, Moran & Arnold,
  59, Maiden Lane,
  41st Floor,
  New York,
  New York 10038 - 4502,
  U.S.A.

**Item 9:**  **Losses to be notified to:**  HSBC Insurance Brokers Limited,
  Financial Institutions Division,
  Level 16,
  8 Canada Square,
  London E14 5HQ.

**Item 10:**  **Claims payable in:**  Pounds Sterling or in the currency of the loss at the election of the Assured.

**Item 11:**  **Endorsements:**  Endorsement Nos. 1- 19 inclusive, attached hereto (applicable at inception).

## SIGNED FOR AND ON BEHALF OF THE INSURER:

DATE: 17th June 2004

SR International Business
Insurance Company

# INSURING CLAUSES

### 1.  FIDELITY

Loss resulting directly from dishonest, fraudulent or malicious acts committed by an Employee acting alone or in collusion with others either to obtain an improper financial gain for themselves or a third party or to cause a loss to the Assured.

Notwithstanding the foregoing, with regards to Loans and Trading, this Insuring Clause covers only those dishonest or fraudulent acts committed by an Employee with the manifest intent to make and which results in improper financial gain for themselves.

"For the purposes hereof, improper" financial gain does not include any employee benefits, including salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or similar emoluments earned in the ordinary course of employment.

### 2.  PROPERTY LOSS

Loss resulting directly from the physical loss or damage of any Property however or by whomsoever caused, wherever situated and whether in transit or at rest.

### 3.  FORGERY OR ALTERATION

Loss resulting directly from Forgery or alteration of, or in any negotiable instrument or a cheque crossed Account Payee only, made or drawn upon the Assured, or made or drawn by one acting as agent of the Assured or from the Forgery of any written instruction directed to the Assured by a third party or from the Forgery of any internal instruction used by the Assured.

### 4.  SECURITIES

Loss resulting directly from the Assured having, in good faith and in the course of business, for its own account or for the account of others acquired, sold, delivered, given value, extended credit or assumed liability, on the faith of any Security or Similar Instrument which is a Counterfeit or which is lost, stolen, fraudulently altered, or bears a Forgery.

SR International Business
Insurance Company

-6-

### Condition Precedent

Actual continuous physical possession of the original or what purports to be the original Security or Similar Instrument or the original agreement in writing by the Assured or its correspondent bank or other authorised representative is a condition precedent to the Assured having acted upon such securities or instruments.

**5. COUNTERFEIT CURRENCY**

Loss resulting directly from the receipt by the Assured, in good faith, of any counterfeited or altered paper currency or coin.

**6. CARD ISSUER**

Loss representing the **Assured's** fraud losses as a card issuer arising from the presentation of lost, stolen or counterfeit credit cards, debit cards, cheque guarantee cards, ATM cards or from any such cards obtained by deception or losses arising from cardholder not present fraud.

Loss arising from the Assured acting as a merchant acquirer is not covered hereunder.

In respect of this Insuring Clause 6, the aggregate annual deductible shall be the sum of the Deductible listed in Item 6 of the Schedule plus an aggregate sum calculated as the losses arising from all of these cards in the previous year adjusted upwards in accordance with any increase in the average number of cards in circulation at the end of the previous year plus i) 25%; or ii) 133% of the previous year's losses – whichever is the greater.

### Special definition

"Year's losses" shall be deemed to mean the losses accumulating during the course of a full Calendar year.

**7. COMPUTER SYSTEMS**

Loss resulting directly from **Computer Manipulation** committed by any person other than an identified **Employee.**

**8. LEGAL FEES**

The Insurer shall indemnify the Assured for all such reasonable legal fees, costs and expenses incurred and paid by the Assured in the defence of any demand, claim, suit, or legal proceeding with respect to which the Assured establishes that the act or acts which were committed would entitle the Assured to recovery under this Policy if any loss resulted therefrom. Such indemnity shall be included in and not in addition to the Limit of Indemnity specified in Item 5 of the Schedule.

It is understood, however, that if such loss, claim or damage does not exceed any applicable deductible the Insurer is not liable for such legal fees, costs and expenses. However, if such loss, claim or damage should exceed the deductible then the Insurer is

liable for the amount by which said loss, claim or damage exceeds the deductible including legal fees, costs and expenses incidental thereto up to the Limit of Indemnity specified in Item 5 of the Schedule.

It is further understood that the Insurer shall not indemnify the Assured for fees, costs or other expenses (whether such fees, costs and expenses be for legal, accounting or other services) incurred by the Assured in establishing the existence of or amount of loss covered by this Policy.

The Insurer shall be entitled at any time to take over and conduct in the name of the Assured the defence of any such demand, claim, suit, or legal proceeding made against the Assured, it being understood, however, that the Assured shall not be required to contest any legal proceedings unless a Counsel (to be mutually agreed upon by the Assured and the Insurer) shall advise that such proceedings should be contested.

## 9. CYBER EXTORTION

Loss resulting directly by reason of the surrender of Property away from an office of the Assured as the result of a threat:

    (i)    to affect, alter, misappropriate, copy, corrupt, destroy, disrupt, delete or cause damage to **Electronic Data** stored within the **Assured's Computer System**, the **Assured's Electronic Computer Programs** or the **Assured's Electronic Data Processing Media** including a threat to intentionally introduce, implant or spread a **Computer Virus** into or from the **Assured's Computer System**; or

    (ii)    to carry out, whether directly or indirectly, **Computer Manipulation**; or

    (iii)    to disseminate, divulge, expose, publicise or utilise confidential **Electronic Data** stored within the **Assured's Computer System** or a **Service Bureau's Computer System** or to cause such **Electronic Data** to be inaccessible; or

    (iv)    to unlawfully take any property to the deprivation of the **Assured**, by fraudulent use of the **Assured's Computer System**;

PROVIDED, however, that prior to the surrender of such **Property**:

    (a)    the person receiving the threat has made a reasonable effort to report the extortionist's demand to an associate, and

    (b)    a reasonable effort has been made to report the extortionist's demand to the law enforcement authorities.

SR International Business Insurance Company

# DEFINITIONS

1. **"Assured"** means the Assured named and stated in the Schedule in this Policy or any entity under the management control of the Assured as stated in the Schedule

2. **"Assured's Computer System"** means:

   (a) those **Computer Systems** operated by, or used by the **Assured** as owner, lessee or authorised user,

   (b) the **Assured's Extranet**; and

   (c) those **Computer Systems**;

        i)      operated by a **Service Bureau** authorised by written agreement to perform data processing services on behalf of the **Assured**;

        ii)      operated by or on behalf of a sub-custodian;

        iii)      Operated by or on behalf of a central depository.

3. **" Assured's Extranet"** means an internal **Computer** network that has been selectively opened to the **Assured's** suppliers, customers or strategic allies via the Internet.

4. **"CitySmart"** means a stored value smart card issued by Hang Seng Bank from time to time which contains secured electronic integrated circuit activated to enable a transfer of electronic cash between a CitySmart and (as the case may be) (i) an eligible Hong Kong Dollar savings or current account opened and maintained by a CitySmart with Hang Seng Bank or (ii) a Merchant Terminal (for the purpose of the purchase of goods and/or services by a CitySmart cardholder from a merchant in exchange for electronic cash by use of CitySmart) and which bears, among other things, the names and logos of Hang Seng Bank and the City University of Hong Kong respectively and, where the context permits, includes a replacement CitySmart.

5. **"Computer"** means a device relating to technology with electrical, digital, magnetic, wireless, optical, electromagnetic, or similar capabilities that can perform substantial computations, including numerous arithmetic operations or logic operations, without human intervention during the computation or operation.

6. **"Computer Manipulation"** means one or a combination of the following:

        a)      the unauthorised input of
            i)      **Electronic Data**;
            ii)      **Computer Programs**;

   Within the **Assured's Computer System** or a **Customer Communication System**; or

        b)      the unauthorised modification or destruction of
            i)      **Electronic Data**;

SR International Business Insurance Company

-9-

ii)    **Computer Programs;**

within, or during dematerialised transmission to the **Assured's Computer System** or a **Customer Communication System;** or

c)    the unauthorised input, modification or destruction of dematerialised communications. or instructions within
   i)    the **Assured's Computer System;**
   ii)    an **Electronic Communication System;** or

d)    the loss, damage or destruction of **Electronic Data Processing Media;** or

e)    the introduction of a **Computer Virus** into the **Assured's Computer System;** or

f)    the transmission of voice instructions to the **Assured** by an unauthorised person via a telecommunications system capable of transmitting speech; or

g)    the implant or to otherwise introduce a **Computer Virus;** or any attempt to do so.

7.  **"Computer System"** means a **Computer** suitable for multi-use applications that is capable of directing hardware, software resources and **Electronic Computer Programs** formulated and introduced to the **Computer's** operating system by the user. All input, output, processing, storage and communication facilities including related communication or open systems networks which are physically connected to such a device, as well as the device's off-line media libraries, are deemed to be part of the **Computer System.** It does not include those **Computers** suitable solely for single use applications.

8.  **"Computer Virus"** means a set of unauthorised instructions, programmatic or otherwise, that propagate themselves through the **Assured's Computer System** and/or networks which instructions were maliciously introduced by a person other than by an identifiable employee.

9.  **"Counterfeit"** means a reproduction of an authentic **Security** or **Similar Instrument** which is intended to deceive and to be taken for the authentic original instrument.

10.  **"CREST"** is more fully defined as "CRESTCO Limited".

11.  **"CREST Relevant System"** means the computer-based system and procedures (including electronic communication system facilities provided by the **Network Provider**) which enables the services described in the **CREST** manual to be provided and which allows dematerialised communications between the **Assured** and **CREST.**

12.  **"Customer Communication System"** means systems which operate automated teller machines or point of sale terminals including any shared networks or facilities for such systems in which The **Assured** participates, and/or communications systems which provide third parties with direct authorised (either explicit or implied) access to the **Assured's Computer Systems.**

13.  **"Electronic Communication System"** means;

SR International Business
Insurance Company

- 10 -

(i)     any system owned or used by any HSBC entity to receive, verify, process and execute inbound communications and/or to create, verify and dispatch any payment / funds transfer communications, including direct and indirect use by its customers;

(ii)    any inter-banking system to switch and on-route communications between, senders and receivers to include inter-banking clearing and automated settlement services; and

(iii)   telecommunication networks used to connect the senders, the message switches / clearing systems and the receiver, including **Tested** telex, **Tested TWX**, **Tested** telefacsimile and similar **Tested** communication systems and communication systems which provide the Assured with access to **Computer Systems** of central depositories or automated clearing houses; and

(iv)   a **Customer Communication System.**

14. **"Electronic Computer Programs"** means computer programs, i.e. facts or statements converted to a form usable in a **Computer System** to act upon **Electronic Data.**

15. **"Electronic Data"** means facts or information, including text, images, sounds or mask words converted to a form usable in a **Computer System** and which may be stored on **Electronic Data Processing Media** for use by computer programs. including but not limited to

(i)     charge, debit and credit card information;

(ii)    banking, financial and investment services account information including evidences of debt;

(iii)   proprietary business information and **Trade Secrets;**

(iv)   and any other valuable, private, or confidential information important to the business functions of the Assured.

16. **"Electronic Data Processing Media"** means tapes or discs or other bulk media, whether magnetic or optical, on which **Electronic Data** are recorded.

17. **"Employee"** means respectively:

(i)     one or more of the Assured's officers, clerks, servants and other employees while employed by the Assured and solicitors retained by the Assured and employees of such solicitors while either are performing legal services for the Assured;

(ii)    one or more persons provided by an employment contractor to perform employee duties for the Assured under the Assured's supervision;

(iii)   one or more of the Assured's retired officers or employees who have been retained by them as consultants, while acting in their capacities as such consultants;

SR International Business
Insurance Company   - 11 -

(iv)   one or more persons engaged by the Assured as consultants, while acting in their capacity as such;

(v)    a guest student pursuing studies or duties in any of the Assured's premises;

(vi)   one or more temporary or seconded employees who perform duties for the Assured under the Assured's supervision at the Assured's offices or premises covered hereunder;

(vii)  one or more employees of the CREST Network Provider used by the Assured and with whom the Assured has signed a written agreement solely in connection with their activities under such written agreement in relation to the CREST Relevant System.

18. **"Forgery"** means:

(a)    the signing or endorsing of the name of another, or a mechanically or electronically produced or reproduced copy of another person's signature, or fraudulent use by way of copy or otherwise of the signature of another without authority with intent to deceive; it does not include the signing of one's own name with or without authority, in any capacity, for any purpose; or

(b)    mechanically reproduced facsimile signatures shall be treated the same as hand-written signatures.

**Telefacsimile** transmissions by a person other than the person purporting to send such **Telefacsimile** shall be deemed to be a **Forgery**.

19. **"Internet"** means the Worldwide public networks of **Computers**, which are commonly referred to as "The Internet", or any other similar public **Computer** network developed hereafter.

20. **"Loan"** means:

(a)    any loan or transaction in the nature of or amounting to, a loan or a lease or extension of credit, made by or obtained from the Assured;

(b)    payment made or withdrawal from any customer's account involving item(s) which are not finally paid for any reason;

(c)    any note, account, agreement or other evidences of debt assigned or sold by or to, or discounted or otherwise acquired by the Assured

21. **"Mondex Cards"** means ISO (ID-1) integrated circuit cards issued or used by HSBC Bank Plc or any other member of the Group covered under this Policy as part of the Mondex Scheme duly loaded with computer software and data to perform processing and/or memory functions and which is intended for and capable of storing Mondex value or small (000-1) plastic cards embedded with a chip, used in card accepting devices (i.e. devices capable of interfacing with integrated circuit cards) as part of the Mondex Scheme.

All references to Mondex Cards in the Policy may be deemed to mean Mondex; Mondex Cards; Mondex Scheme or Multi-Application Cards as may be appropriate.

22. **"Mondex"** means the electronic cash open pre-payment system and any modifications and/or improvements to such system in which value representing currency and received from more than one source may be stored electronically in a medium utilising secure microcontroller integrated circuit technology and any part of the aggregate of that value may be transmitted electronically to, and received electronically by, parties unrelated other than by virtue of their participation in that system, which system HSBC Bank Plc and certain other members of the Group covered under this Policy are members of.

23. **"Mondex Scheme"** means the payment scheme operated by Mondex International Limited which regulates, administers and exploits **Mondex**.

24. **"Multi-Application Card"** means ISO (ID-1) integrated circuit cards issued or used by HSBC Bank Plc or any other member of the Group covered under this Policy which incorporate a secure multi-application operating system capable of holding a number of applications owned by HSBC Bank Plc or any other member of the Group on the one hand and one or more third parties on the other hand.

25. **"Network Provider"** means any entity which provides the **Assured** with electronic communication system connection to the **CREST Relevant System**.

26. **"Property"** means cash (i.e. currency, coins and bank notes), bullion, precious metals of all kinds and in whatsoever form and articles made therefrom, gems (including uncut gem stones), precious and semi-precious stones, works of art, certificates of stock, bonds, coupons and all other types of securities, bills of lading, warehouse receipts, cheques, bills of exchange, acceptances, drafts, certificates of deposit, letters of credit, promissory notes, money orders, orders upon public treasuries, stamps, insurance policies, title deeds, certificates of title and all other negotiable and non-negotiable instruments or contracts representing money or other property (real or personal) or interests therein, and other valuable papers, including books of accounts and other records, Electronic Information Assets, **Electronic Data Processing Media**, Hang Seng CitySmart Cards used by the **Assured** in the conduct of their business, in which the **Assured** has an interest, or which are held by the **Assured** for any purpose or in any capacity and whether so held gratuitously or otherwise and whether legally liable therefor or not.

27. **"Security or Similar Instrument"** means

    (a)    original (including original counterparts) negotiable or non-negotiable agreements in writing, having value which value is, in the ordinary course of business, transferable by delivery of such agreements with any necessary endorsement or assignment, or original corporate, partnership or personal guarantees;

    (b)    assignment, transfer, power of attorney, stock power, or guarantee presented in connection with the transfer, pledge or release from pledge of a non-physical form security and which transfers, pledges or releases from pledge or purports to transfer, pledge or release from pledge such non-physical form security.

28. **"Service Bureau"** means a natural person; partnership or corporation authorised by written agreement to perform data processing services using **Computer Systems**.

SR International Business
Insurance Company

29. **"Telefacsimile"** means a system for transmitting written documents by means of electronic signals over telephone lines to equipment maintained by the Assured within a specially secured area for the purpose of reproducing a copy of said document.

30. **"Terrorism"** means any act or acts of force or violence (whether threatened or actual) by any person or persons acting alone or on behalf of or in connection with any organisation, which is carried out for political, religious or ideological ends and is either directed towards the over-throwing or influencing of any Government *de jure* or *de facto* or to put the public or any part of the public in fear.

31. **"Tested"** means a method of authenticating the contents of a communication by affixing thereto a valid test key which has been exchanged between the Assured and a customer, Automated Clearing House, Central Depository, another financial institution or between offices of the Assured for the purpose of protecting the integrity of the communication in the ordinary course of business.

32. **"Trade Secret"** shall mean information, including a formula, compilation, pattern, program, device, method, process or technique that derives independent economic value, actual or potential, from not being generally known and not readily ascertainable through proper means by another person who can obtain economic advantage from its disclosure or use.

    **"Trade Secret"** however, does not include information, which is the subject of a patent, trademark, copyright, or service mark, or an application therefor.

33. **"Trading"** means trading or other dealings in securities (including over-the-counter securities with another financial institution), commodities, futures, options, foreign or federal funds, currencies, foreign exchange and any other instruments traded through an established securities or commodities exchange.

34. **"Transportation Company"** means any organisation which provides its own or leased vehicles for transportation or which provides freight forwarding or air express services (including carriers for hire and couriers for hire) and specifically includes TNT carryings in relation to the CREST Courier and Sorting System.

## EXCLUSIONS

This Policy does not cover:

1.     Any loss or damage or legal liability which arises directly or indirectly by reason of or in connection with war, invasion, act of foreign enemy, hostilities or warlike operations (whether war has been declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportion of or amounting to a popular uprising, military or usurped power, martial law, riot or the act of any lawfully constituted Authority. IN ANY CLAIM, and in any action, suit or other proceeding to enforce a claim under this Insurance for loss or damage or legal liability, the BURDEN OF PROVING that such loss or damage or legal liability does not fall within this Exclusion shall be upon the Assured.

2.     Any loss of or damage to Property or legal liability arising directly or indirectly as a result of or in connection with Terrorism (including, without limitation, contemporaneous or ensuing loss or damage or legal liability caused by fire and/or looting and/or theft).

The BURDEN OF PROVING that such loss or damage or legal liability does not fall within this Exclusion shall be upon the **Assured**.

3.   Any loss or destruction of or damage to any property whatsoever or any loss or expense whatsoever resulting or arising therefrom or any consequential loss or any legal liability of whatsoever nature directly or indirectly caused by or contributed by or arising from:

   (i)   ionising radiation or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel; or

   (ii)   the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof.

4.   Any loss through the surrender of **Property** away from the premises of the **Assured** as the result of a threat:

   (i)   to do bodily harm to any person, except loss of **Property** in transit in the custody of any person acting as a messenger provided that when such transit was initiated there was no knowledge by the **Assured** of any such threat; or

   (ii)   to do damage to the premises or **Property** of the **Assured** or any other person;

   unless such loss is covered by Insuring Clause 9.

5.   Any loss of potential income not realised by the **Assured** or any indirect or consequential loss or damages for which the **Assured** is legally liable except for direct compensatory damages, except to the extent provided for in General Condition (5).

6   Any loss relating directly or indirectly from a dishonest, fraudulent or malicious act of an **Employee** unless such loss is covered by Insuring Clause 1.

7.   Any loss resulting directly or indirectly from **Forgery** or alteration unless such loss is covered by Insuring Clause 1, 3, 4 or 5.

8.   Any loss resulting from the complete or partial non-payment or default upon any loan whether procured in good faith or through trick or artifice, fraud or false pretences unless such loss is covered by Insuring Clause 1, 3, 4 or 7.

9.   Any loss resulting from payments made or withdrawals from any customer's account involving items which are not finally paid for any reason, including **Forgery** or fraud, unless such loss is covered by Insuring Clause 1, 3 or 4.

10.   Any loss by reason of the input of **Electronic Data** at an authorised electronic terminal of an **Electronic Communication System** by a customer or person who had authorised access to the customer's authentication mechanism except when such loss is covered under Insuring Clause 1.

It being agreed that Exclusion 10 above shall not apply to Account Aggregation activities operated by the **Assured** on behalf of a customer provided always that such activities relate solely to a system whereby the Aggregation Service Provider is only

able to facilitate the process at the specific request of the customer originating from the customer's own computer terminal and readily identifiable by such passwords or other agreed information which are stored in encrypted form on such computer terminal.

11. Any loss resulting from mechanical failure, faulty construction, error in design, latent defect, wear or tear, gradual deterioration, electrical disturbance, **Electronic Data Processing Media** failure or breakdown of any malfunction or error in programming or errors or omissions in processing.

12. Any loss resulting from fraudulent features contained in **Electronic Computer Programs** at the time of their acquisition from a vendor or consultant, where those **Electronic Computer Programs** were developed for sale to or are sold to multiple customers. Provided however that this Exclusion shall not apply where:

    (i) no other purchasers of said **Electronic Computer Programs** have discovered an insurable loss resulting from such fraudulent features during a period of ninety (90) days from the date of discovery of the loss by the **Assured**; or

    (ii) at the time of loss such fraudulent features are contained solely on the **Electronic Computer Programs** of the **Assured** and are not present on **Electronic Computer Programs** sold to other customers or which fraudulent features were inserted subsequent to the date of acquisition.

13. Any costs, fees and other expenses incurred by the **Assured** in establishing, or attempting to establish, the existence of an amount of loss covered by this Policy.

14. Any loss directly or indirectly by reason of: (i) the **Forgery**, counterfeiting or fraudulent alteration of any accounts receivable or assignments thereof, bills of lading, warehouse or trust receipts, or bills or receipts similar in nature or effect to any of the foregoing or serving a similar purpose; (ii) any of the instruments enumerated in the foregoing being lost or stolen, unless such loss is covered by Insuring Clause 1.

15. Any loss resulting directly or indirectly from one or more dishonest, fraudulent or malicious acts of an identifiable employee of a **Network Provider** to the extent that subrogation against such **Network Provider** enables the **Assured** to recover such loss.

16. Any fines or penalties for which the **Assured** is held to be legally liable.

17. Any loss or legal liability arising directly or indirectly as a result of the breach of any statutes, laws, rules or regulations enacted anywhere in the world.

SR International Business
Insurance Company

# GENERAL CONDITIONS

## (1) EXCLUSIVE POLICY BENEFIT

It is agreed that the Insurance granted hereunder shall be for the exclusive benefit only of the first named entity in Item 1 of the Schedule, and that in no event shall anyone other than said entity have any right of action under this Policy.

## (2) DISCOVERY

This Policy applies only to loss discovered by the Assured during the Policy Period. Discovery occurs in accordance with the provisions and guidance contained in the Assured's Group Standards Manual (GSM) 10.3 or when the Assured's Group Insurance Department becomes aware of facts which would cause a reasonable person to assume that a loss covered by this Policy has been or will be incurred, even though the exact amount or details of loss may not then be known.

Notice to the Assured of an actual or potential claim by a third party which alleges that the Assured is liable under circumstances which, if true, would create a loss under this Policy constitutes such discovery.

## (3) NOTIFICATION OF LOSS; PROOF OF LOSS; LEGAL PROCEEDINGS

As a condition precedent to their right to be indemnified under this Policy, the Assured shall, as soon as possible and in any event within forty five (45) days after discovery by the Assured of any loss hereunder, give written notice thereof to the Insurer.

Circumstances/losses likely to exceed the Loss Advice Threshold specified in Item 7 of the Schedule shall be advised to the Leading Insurer hereon and advised to insurers in accordance with the laid down market procedures.

The Assured shall also, within six (6) months after such discovery, furnish to the Insurer affirmative proof of loss in writing together with full particulars.

Legal proceedings for recovery of any loss hereunder shall not be brought after the expiration of two (2) years from the discovery of such loss, except that any action or proceeding to recover hereunder on account of any judgement against the Assured in any suit shall be commenced within two (2) years from the date upon which the judgement in such suit shall become final.

If the said two (2) years' limitations are prohibited by any law controlling the construction of this Policy, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

## (4) INTERPRETATION; SERVICE OF PROCESS; SERVICE OF SUIT

### (a) This General Condition 4(a) applies to all offices of the Assured

The construction, interpretation and meaning of the terms, exclusions, limitations and conditions of this Policy shall be determined in accordance with the law(s) of England and in accordance with the English text as it appears in this Policy.

SR International Business
Insurance Company                                     - 17 -

(b)   **This General Condition 4(b) applies only in respect of offices of the Assured located outside the United States of America**

In the event that the Insurer does not pay the amount claimed by the Assured to be due hereunder, the Insurer and the Assured shall bring suit in a Court of competent jurisdiction of England.   Service of Process in any such legal proceedings shall be made upon the Person(s) named in Item 8(i) of the Schedule who are duly authorised to accept Service of Process on behalf of the Insurer. In such legal proceedings the Insurer will abide by the final judgement of such Court or of any Appellate Court in the event of appeal.

(c)   **This General Condition 4(c) applies only in respect of offices of the Assured located within the United States of America**

It is agreed that in the event of the failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States.  Nothing in this Policy constitutes or should be understood to constitute a waiver of the Insurer's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.  It is further agreed that service of process in such suit may be made upon the Person(s) named in Item 8(ii) of the Schedule, and that in any suit instituted against them upon this Policy, the Insurer will abide by the final decision of such Court or of any Appellate Court in the event of an appeal. The above-named are authorised and directed to accept service of process on behalf of the Insurer in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon the Insurer's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Insurer hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his or her successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this Policy, and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

## (5)   BASIS OF VALUATION

(a)   <u>Securities and Subscription Rights and Precious Metals</u>

Lost Securities or Similar Instruments if lost Securities / Instruments or precious metals are replaceable then the Assured may, subject to General Condition (6) (Lost Instruments), replace them with the approval of the Insurer and the value shall be the actual cost of replacement plus any interest charges incurred in the replacement or reconstruction.

SR International Business
Insurance Company

- 18 -

Subject to the provisions of General Condition (6), the value of any Securities not replaced for the loss of which a claim shall be made hereunder shall be determined by the closing market value of such Securities on the business day of the discovery of such loss (or if discovered during a week-end or national holiday, on the next business day thereafter). The basis of valuation shall include any accrued interest (including coupons), dividends and /or privileges. In case of a loss of subscription, conversion, redemption or other similar privileges through the misplacement or loss of securities or instruments, the value of such loss shall be the market value of such privileges immediately preceding the expiration thereof. If no market price is ascertained for such Securities or for such privileges, the value shall be fixed by agreement between the parties or in accordance with the provisions of General Condition (4) (Interpretation; Service of Process; Service of Suit) taking into account the value of any accrued interest (including coupons), dividends and/ or privileges pertaining directly thereto.

If for any reason it is not possible to re-issue or replace Securities or Similar Instruments, then the Insurer agrees to pay face value.

The value of precious metals for the loss of which a claim is made by the assured shall be determined by their average market value on the business day of the discovery of such loss (or if discovered during a week-end or national holiday, on the next business day thereafter). If no market price is ascertained for such precious metals, the value shall be fixed by agreement between the parties or in accordance with the provisions of General Condition (4).

If this Policy is subject to a deductible amount and/or the aggregate Policy Limit remaining for the payment of any loss is not sufficient in amount to indemnify the Assured in full for the loss of Securities or precious metals for which claim is made hereunder, the liability of the Insurer under this Policy is limited to the payment for, or the duplication of, so much of such Securities or precious metals as has a value equal to the amount recoverable under the applicable Insuring Clause of this Policy.

The basis of valuation shall include external interest or interest charges necessarily incurred by the Assured or for which the Assured is legally liable as the direct result of a loss of Securities or precious metals covered hereunder.

(b)    <u>Unused Drafts and cheque guarantee cards</u>

In the case of loss of unused bankers Drafts, the basis of valuation shall be the direct financial loss to the Assured of any sums subsequently paid by the Assured following presentation of the Drafts.

In the event of the theft of one batch of cheque guarantee cards in one incident, all losses arising out of presentation of cheques using such cheque guarantee cards will be considered one loss for the purpose of this Policy.

(c)    <u>Electronic Data Processing Media</u>

In case of loss of, or damage to, Electronic Data Processing Media used by the Assured in its business, the Insurer shall be liable under this Policy only if

such items are actually reproduced by other **Electronic Data Processing Media** of the same kind or quality and then for not more than the cost of the blank media plus the cost of labour for the actual transcription or copying of data which shall have been furnished by the **Assured** in order to reproduce such **Electronic Data Processing Media**, subject, of course, to the applicable Limit of Indemnity.

(d) Electronic Data

In case of loss of **Electronic Data** the Insurer shall be liable under this Policy only if such data is actually reproduced by other **Electronic Data** of the same kind or quality and then for not more than the cost of labour for the actual transcription or copying of data which shall have been furnished by the **Assured** in order to reproduce such **Electronic Data** subject, of course, to the applicable Limit of Indemnity.

However, if such **Electronic Data** cannot be reproduced and said **Electronic Data** represents securities, or financial instruments having a value, including evidences of debt, then the loss will be valued as indicated in paragraph (a) of this Section.

(e) Books of Accounts and Records

In the case of loss of or damage to **Property** consisting of books of accounts or other records used by the **Assured** in the conduct of their business, the Insurer shall be liable under this Policy only if such books or records are actually reproduced and then for not more than the cost of blank books, blank pages or other materials plus the cost of labour and computer time for the actual transcription or copying of data which shall have been furnished by the **Assured** in order to reproduce such books and other records.

(f) Property other than Foreign Currencies, Securities or Records

In case of loss of, or damage to, any **Property** other than foreign currencies, securities, books of accounts or other records, the Insurer shall not be liable for more than the actual cash value of such **Property**, the Insurer may, at its election, pay the actual cash value of, replace or repair such **Property**.

(g) Mondex Cards

1) In case the of loss of or damage to a **Mondex Card** or **Multi-Application Card**, the cost of labour and raw materials used in the physical replacement of such a card;

2) In case of the loss of a **Mondex Card** or **Multi-Application Card** in or under the Bank's possession or control, the **Mondex** value standing on any such card at the date on which it was lost; and

3) In the case of damage being rendered to a **Mondex Card** or **Multi-Application Card** in or under the Bank's physical possession or control in a way which it renders it impossible to verify the amount of **Mondex** value standing on any such card at the date on which it was damaged, the

Mondex value last known to be standing on such a card prior to the date on which it was so damaged.

(h)    Hang Seng CitySmart Cards

In case of loss of or damage to a Hang Seng CitySmart Card, the Insurer shall be liable under this Policy for the cost of labour for the actual replacement of such Hang Seng CitySmart Card and in case of loss of a Hang Seng CitySmart Card for any outstanding Hang Seng CitySmart value which is held on such card at the time of loss subject, of course, to the applicable Limit of Indemnity.

(i)    Currency Valuation

In the event that a loss is suffered in a currency other than Euro, the rate of exchange applicable thereto for the purposes of determining the amount recoverable under this Policy and the application of the Deductible referred to in Item 6 of the Schedule shall be determined as follows:

1)    in respect of a settlement the rate of exchange agreed between the Assured and the Insurer; and

2)    in respect of a claim under this Policy determined by a court, the rate of exchange declared or directed by such court, or in the absence thereof, at the mid-spot rate on the business day of the award or determination.

## (6)    LOST INSTRUMENTS

In the event of a loss of any Securities or Similar Instruments, whether or not the total value as per General Condition (5) (Basis of Valuation) paragraph a) exceeds the aggregate Policy Limit set out in Item 5 of the Schedule hereto, it is agreed that if or to the extent that the Policy Limit is not utilised in the purchasing of replacement Securities and /or Similar Instruments, it may be used to pay the premium to purchase Lost Instrument Bonds or Letters of Indemnity for the replacement of duplicate Securities or Similar Instruments without reference to their total face value.

It is further agreed that the Insurer will indemnify the Assured for such sum or sums in excess of the Deductible set out in Item 6 of the Schedule hereto not exceeding the said aggregate Policy Limit, which the assured may be required to pay either during the Policy Period or any time thereafter by reason of any Letters of Indemnity or Lost Instrument Bonds issued or purchased by the Assured.

It is further agreed that the Assured shall bear for its own account the cost of obtaining such Letters of Indemnity or Lost Instrument Bond for that portion of the loss which falls within the said Deductible or which is in excess of the said aggregate Policy Limit remaining available for the payment of said loss.

The Insurer shall bear for its own account the cost of obtaining such Letters of Indemnity or Lost Instrument Bond for that loss which would be covered under this Policy and which exceeds said Deductible and is within said aggregate Policy Limit.

SR International Business
Insurance Company

- 21 -

(7) **SALVAGE AND RECOVERY**

In the case of recovery on account of any loss covered under this Policy the amount recovered, after deducting the actual cost of obtaining or making such recovery but excluding the Assured's own labour and/or establishment costs, shall be applied in the following order:

    (i)    To reimburse the Assured in full for the part, if any, of such loss which exceeds the amount of coverage provided by this Policy (disregarding the amount of any excess or deductible applicable).

    (ii)    The balance, if any, or the entire net recovery if no part of such loss exceeds the amount of coverage provided by this Policy, to the reduction of that part of such loss covered by this Policy, or if payment thereof shall have been made, to the reimbursement of the Insurer.

    (iii)    Finally, to that part of such loss sustained by the Assured by reason of any excess or deductible clause as specified in the Schedule and/or to that part of such loss covered by any policy(ies) of insurance of which this Policy is excess.

(8) **REWARDS**

Notwithstanding the foregoing, rewards and similar payments up to 10% (ten per cent) of the amount of any recovery may be paid at the discretion of the Assured subject to prior approval of the Insurer and the Insurer agrees to pay the proportion thereof that the amount covered under this Policy at the time of loss bears to the total amount of the loss, including the deductible.

(9) **CO-OPERATION**

At the Insurer's request and at reasonable times and places designated by the Insurer the Assured after giving notice of any loss shall:

    (1)    submit to examination by the Insurer and subscribe to the same under oath; and

    (2)    produce for the Insurer's examination all pertinent records; and

    (3)    co-operate with the Insurer in all matters pertaining to the loss; and

    (4)    cause all persons interested in the matter, so far as it is within the Assured's power, including employees, to submit to examination by the Insurer and subscribe to the same under oath.

The Assured shall execute all papers and render assistance to secure to the Insurer the rights and causes of action provided for herein. The Assured shall do nothing after discovery of loss to prejudice such rights or causes of action.

(10) **SUBROGATION**

It is agreed that the Insurer upon payment of any loss hereunder shall become subrogated to all rights and remedies of the Assured in respect of such loss. At the request of the Insurer the Assured shall execute such documents as are necessary to transfer the Assured's rights, title and interest as against any person or entity.

SR International Business
Insurance Company

-22-