IN THE NORTHERN DISTRICT COURT OF ILLINOIS
EASTERN DIVISION

FILED
MAR 11 2009
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Terence Bruce Richards )
    Plaintiff ) Case Number 08 CV 6810
 )
Vs. ) District Judge Coar
 ) Magistrate Judge Soat Brown
United States of America Et. Al. )

# MEMORANDUM OF POINTS AND AUTHORITIES
# RESPONSE TO FEDERAL DEFENDANTS'
# MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### Introduction

Honorable Judge Manuel Barbosa [herein after referred to as Defendant Barbosa] believes in gay mental health bashing, he should have gathered his Rockford friends and buddies, kidnapped plaintiff, Terence Bruce Richards [herein after referred to as Richards] into a Rockford cornfield, confine him to a fencepost, and *then* [emphasis added] as this case's element cause of action is about, pistol whip him, without due process of the law, and maliciously take a .45 caliber rifle, point it at plaintiff Richards forehead, and place a bullet in between plaintiff, Richards, two eyes, and sadistically watch the blood run down plaintiff Richards's cheeks and nose.

### Cause of Action

Under, the second subjective prong, of the *Bell Atlantic Corp. Vs. Twombly* 127 S.Ct. 1955(2007), federal defendant(s) Barbosa and Hanson, raise the subjective issue, of "plausibility" by quoting *Bell Atlantic Corp. Vs. Twombly* 127 S.Ct. 1955 (2007),"the Supreme Court added some bite to the traditional Rule

12(b)(6) pleading standards by holding that a plaintiff's complaint must render his "entitlement to relief plausible" 127 S.Ct. at 1973 n. 14.

Plausible is defined as an adjective, and defined as apparently reasonable or true.

Plaintiff, Richards, was date "raped", not in the sexual sense, but financially, emotionally, and spiritually, by his assailant, Donald James Harrington. Who went unscathed by the Lake County State's Attorney's office, orchestrated by defendant Assistant State Attorney Daniel Kleinhubert, and in turn was harassed with malicious prosecution, by Donald James Harrington's friend, defendant Detective Szuchnicki. The effects of a date "rape" can last for years, especially, when defendant Barbosa, and Bankruptcy Trustee, James E. Stevens add insult to injury. The word on the streets of the Chicago Gay community is that Plaintiff Richards's date "rapist" Donald James Harrington, to this day, is still out stalking other individuals, with his Gay Chicago Male Model/Escort advertisement:

> Sexy Surfer Boy 19 Straight from Cali. Tan and toned body, blue eyes, sandy blond hair, and well hung. I'm exciting and fun and I love to have a good time! Call me day or night 630-659-6674
> *Gay Chicago Magazine* February 5th, 2009

Plaintiff, Richards, contacted, another model/escort advertisement, whom plaintiff, Richards, went to this individual's house, to speak to this individual (no sexual contact occurred, because of plaintiff Richards's social phobia, from the result of the Harrington's date "rape") who informed, plaintiff, Richards, through double hearsay, that Donald James Harrington, is still using the

same "Pigeon Drop" confidence tactics in that he is a law student attending Carthage College in Kenosha, Wisconsin. The rapist father, James Harrington, not acting on any personal knowledge, is not condoning this behavior, and is only going on the impulsive behavior of joining the "bandwagon", as exemplified by his reply brief. Plaintiff, Richards, has been litigiousness, which the defendant never raised in his original "main" brief.

### Res Judicata

The general rule that a judgment is conclusive as to the matters that could have been litigated does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated. Am. Jur. 2d §475. The existence of newly discovered or crucial evidence is not available to the litigant at the first trial, and that appears to have a significant effect on the outcome, should not hinder a full and fair opportunity to be heard for the purposes of issue preclusion. *La Salle Bank National Ass'n Vs. Village of Bull Valley* 355 Ill. App. 3d. 629 (2nd Cir. 2005) *State Farm Mutual Auto Insurance Co. Vs. Duel* 324 U.S. 154 (1945) *Jaffee Vs. Wallace* 837 F.2d 1461.

Plaintiff, Richards, offers crucial newly discovered facts and information from the fact, that he suffers from a hypopituitarism condition, which causes, low growth hormone, plaintiff, Richards, was taking external subcutaneous injections of a medication, called "Humatrope". "Humatrope" is a trademark for a brand of human synthetic growth hormone produced with recombinant deoxyribonucleic acid techniques. It is a polypeptide hormone with 191 amino

acids in the same sequence as somatotropin, the human growth hormone produced by the pituitary gland, it is also a secretagogue, and a secretagogue is a substance, which causes another substance to be secreted. Growth hormone secretagogues (GHSs) increase the activity of hypothalamic arcuate nucleus neurons (an aggregation of neurons in the mediobasal hypothalamus, an adjacent to the third ventricle and the median eminence. The arcuate nucleus includes several important populations of neurons, including neuroendocrine neurons (mainly in the ventrolateral part of the nucleus)) thought to be involved in controlling the release of the growth hormone (GH) from the pituitary gland, The GHS receptor is also found in hypothalamic regions not associated with the release of GH, suggesting that GHSs may influence other hypothalamic systems. A study done by Huffington Center on Aging, Baylor College of Medicine, Houston, Texas, USA utilized double-labeling immunocytochemical techniques to examine the hypothalamic actions of a novel non-peptide GHS, GHS-25. In common with other GHSs, GHS-25 induced significant amounts of Fos immunoreactivity in the arcuate nucleus of conscious male rats. However, unlike other GHSs, GHS-25 also induced Fos immunoreactivity in the supraoptic nucleus. Double labeling revealed that approx. 66% of the supraoptic nucleus cells that were Fos positive after the administration of GHS-25 were also immunioreactive for oxytocin. Thus, in addition to its actions on the GH axis, GHS-25 may influence the release of neurohypophyseal hormone, oxytocin.

Other studies, recently released, since the "date" rapist, Donald James Harrington viciously attacked plaintiff Richards, have begun to investigate oxytocin's role in various behaviors, including social recognition, bonding, anxiety, trust, and maternal behaviors. In a press release, date July 25th, 2008, from *The Journal of Neuroscience*, scientist at the Swedish medical university Karolinska Institutet and the Welcome Trust Functional Imaging Laboratory in London show that oxytocin has a more targeted effect than simply producing a general feeling of well being. The study concluded that oxytocin can reduce anxiety and increase the chances of social contact for people with certain types of psychiatric disorder (mood disorder, such as plaintiff, Terence Bruce Richards, has from a general medical condition, hypothyroidism). Robert Ring, a neuroscientist and oxytocin researcher at Wyeth Pharmaceuticals, was quoted, at December, 2005 Society for Neuroscience conference that "These results suggest that the development of oxytocin-like drugs may offer a novel way to treat anxiety disorders in humans". The studies he was referring to was a study performed by Meyer-Lindenberg and others reported in the *Neuroscience* that when young men snorted oxytocin, brain scans showed that fear centers became less responsive to threatening faces, Also, the journal *Nature* published a research article in 2005, that when subjects played a game that hinged on trust, those who snorted oxytocin were more likely to trust other players. Other warnings, are spurring other warnings. Some researchers note that it may have a potential as a date rape drug, since oxytocin is involved in both trust and sexual

arousal. Researchers are reporting the potential for abuse with confidence tricks. *Boston Globe* January 12th, 2006.

As stated, in the *Boston Globe*, January 12th, 2006, which came out after, plaintiff, Richards, filed his 2005 complaints, and was not accessible to him, in Ashland Federal Correctional Center, for his 2007 complaints, prevented him from raising this crucial evidence, before in the earlier suits. In addition, author Paul J. Zak, did not write his findings, until November 13th, 2008 at 5:15p.m. in the *Moral Molecule – How to Run a Con* (Confidence Game), preventing plaintiff, Richards from raising these issues earlier.

Further, if after the rendition of judgment subsequent events occur, operating a new legal situation or altering the legal rights or relations of the litigants, the judgment may thereby be precluded from operating as an estoppel. *Rhodes Vs. Van Steenberg* 225 F.Supp. 113 (D. Neb. 1963). As described under the subsection Judgment Bar *infra.*, there has not been any judgments on the merits, in any prior suit.

Moreover, a prior judgment is not *Res Judicata* where the second suit is on a different cause of action in absence of evidence to show that the question was actually presented to the court and decided in the earlier allegation. *State Farm Ins. Corp. Vs. Duel* 324 U.S. 154 at 162 (1945).

### Judgment Bar

As the court in *Hallock Vs. Bonner* 387 F.3d 147 (2nd Cir. 2004) (Distinguishing between FTCA actions dismissed on subject-matter jurisdiction grounds, as opposed to merit grounds, but implicitly accepting that §2676

reaches both judgments adverse to and in favor of the government). As this court see it, an action brought under the Federal Tort Claims Act (FTCA), and dismissed for lack of subject matter jurisdiction because it falls within an exception to the restricted waiver of sovereign immunity provided by the FTCA does not result in a "judgment in action under section 1346(b) [The Federal Tort Claims Act] 28 U.S.C. §2676. This is because the action was not properly brought under the Federal Tort Claims Act in the first place and is a nullity. The Second Circuit, hold that for the judgment bar to apply, the action must first be a proper one for consideration under the Federal Tort Claims Act. In other words, it must fit within the categories of cases for which sovereign immunity has been waived. If, it does not, then a judgment declaring a lack of subject matter jurisdiction denotes that sovereign immunity has not been waived and that the case is not justiciable in any event. *Hallock Vs. Bonner* 337 F.3d 147 (2nd Cir. 2004).

In the case at bar, plaintiff, Richards, asserts, that the defendant(s) attempt to create a judicial bar, using case a Northern Ill. Dist. Court case 05CV2632, which was never properly brought under the FTCA, since it was originally removed from a State of Illinois Court, specifically, the Lake County Courthouse, in Lake County, Illinois, which makes it a nullity, On, November 29th, 2005, Northern Illinois District Court Judge Kennelly grants the Motion to substitute the United States as the sole defendant, and then grants the motion to dismiss, for the purpose of lack of subject matter jurisdiction, because it fell within the an exception under Title 28 U.S.C. 2680(h) restricted waiver of sovereign immunity

provided by the FTCA and does not result in a judgment in action as provided under section Title 28 U.S.C. §1346(b)

### Statute of Limitations

Though the length of a limitations period applicable in a Biven's claim (analogues to a §1983 claim) is borrowed from a state law, federal courts use federal common law to determine when a period should begin to run, when the plaintiff knows or has reason to know of the injury giving rise to the cause of action. *Wilson Vs. Geisen* 956 F.2d 738, 740 (7th Cir. 1992). Civil Rights actions, therefore, accrue when the plaintiff knows or should have known of the constitutional violation. Id. For federal claims, the discovery rule is a supplemental accrual related doctrine not a tolling doctrine. *Cathedral of Joy Vs. Village of Hazel Crest* 72 F.3d 713 (7th Cir. 1994). *Cada Vs. Baxter Healthcare Corp.* 920 F.2d 446, 450-57. (7th Cir. 1990).

Borrowing a statute of limitations period does not cause federal limitations law in this area wholly to replicate state limitations law, while the length of a period is determined by reference to state law, when a period begins remains a distinct federal issue. *Cada* at 450-51 (7th Cir. 1990). Whether a federal cause of action has accrued is a question of fact. *Cathedral of Joy* 22 F.3d at 219; *Cada* 920 F.2d at 453.

The accrual process can be tolled under a hostile discriminatory condition. For example, in *National Railway Passenger Corp. Vs. Morgan* 536 U.S. 101; 122 S.Ct 2061; 153 L.Ed.2d 106 with respect to a hostile environment claims, the Supreme Court believe that Morgan demonstrates "[A] hostile work environment claim is comprised of a series of separate acts that collectively constitute one "unlawful employment practice" *Morgan* 122 S.Ct. at 2074. Consequently, "provided that an act contributing to the

claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purpose of discriminating liability". *Id.*

In the present case, the last alleged hostile discriminatory act, occurred, after the filing of the present case. On January 26th, 2009, plaintiff, Richards, after waiting, 9 months for his social security administration benefit checks, from the Social Security Administration, a federal agency, withdrew $25,079.98 from his savings account to repay the creditor's in his bankruptcy case, 03 B 71403. He filed a motion to reopen the bankruptcy case, along with a motion to turnover property to the estate, along with depositing a check in the same, with the bankruptcy trustee, along with the appropriate filing fee. See Northern Illinois Bankruptcy case 03B71403 docket, for January 28th, 2009. Bankruptcy Trustee James E. Stevens maintain possession of the $25,079.98 check, knowing that plaintiff, Richards, will be submitting an appeal in the Seventh Circuit Court of Appeals, case number 08 – 4193, knowingly and willingly awaiting, plaintiff, Richards, to file an appellate brief, hoping, that plaintiff, Richards, would intimidate Bankruptcy Trustee James E. Stevens to return the $25,079.98 check, on February 5th, 2009. The hearing to turnover property, which is supposed to be brought by the bankruptcy trustee, and which could and should have been brought back on April, 2004, was hostilely and discriminatory dismissed, for alleged "want of prosecution", because, plaintiff, Richards, was not present, to enforce the compulsion of turning over property, against himself. This was filed with the intent of making documentation that on January 28th, 2009, plaintiff, Richards, attempted to repay his creditors, through the bankruptcy proceedings. Honorable Bankruptcy Judge, Manuel Barbosa, could have ordered, to reopen the bankruptcy estate, and re-appointed, Bankruptcy Trustee James E. Stevens, to administer the $25,079.98 to the creditors. But,

instead, in a hostile discriminatory discretionary act, he dismissed the motions, with failure to prosecute, hoping, plaintiff, Richards, would impulsively file an appeal, to intimidate himself to compel, the turnover of the assets to the court. Because, plaintiff Richards, such like Hildelbrandt alleges in *Morgan* several acts as part of her hostile work environment claim that arose after the alleged claim date of July 10th, 1997, she can reach beyond the limitations period to bring forth evidence of facts prior to that time that contributed to the hostile environment. The United States Supreme Court has held that consideration of the entire scope of a hostile environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to the hostile environment takes place within the statutory time period.

Thus, "[t]o prevail on a hostile environment claim, the plaintiff must show that the hostile environment was both subjectively and objectively hostile. See *Harris Vs. Forklift Systems Inc.* 510 U.S. 17. The requirement of subjectively is intended to ensure that the plaintiff did actually feel harassed, because "if the victim does not subjectively regard the environment as abusive, the conduct has not actually altered the victim, and there is accordingly no discriminatory violation. *Mc Kenzie* 92 F.3d at 479. (Citing *Harris* 510 U.S. at 20-22; 114 S.Ct. 367). Plaintiff, did feel harassed, because, Bankruptcy Judge Barbosa, and Bankruptcy Trustee James E. Stevens has opened bankruptcy estate 03 B 71395 (eight number lower than plaintiff Richards) which is still open, to administer assets. An objectively hostile environment is one that a reasonable person would find hostile or abusive. Considering the totality of the circumstances, of bankruptcy estate 03 B 71403, a reasonable person would find that there existed a hostile environment and that the

February 9th, 2009, as just one discrete act, in the complete hostile environment of the bankruptcy proceedings.

## Sovereign Immunity

The United States Supreme Court in *Carlson Vs. Green* 446 U.S. 14 (1980) found that the petitioners in that particular case pointed to nothing in the Federal Tort Claims Act (FTCA) or its legislative history to show that Congress meant to pre-empt a *Biven's* remedy or to create an equally effective remedy for constitutional violations. FTCA was enacted to long before *Biven's* was decided. But, Congress amended FTCA in 1974 to create a cause of action against the United States for intentional torts committed by Federal Law Enforcement Officers 28 U.S.C. 2680(h). The Congressional comments accompanying that amendment made it crystal clear that Congress views FTCA and *Bivens* as parallel complementary causes of action.

> "[A]fter the date of enactment of this measure, innocent individuals who are subjected to raids [like that in *Biven's*] will have a cause of action against the individual federal agents *and* the federal government. Furthermore, this provision should be viewed as a *counterpart* to the *Biven's* case and its progenty [sic]. In that it waives the defense of Sovereign immunity. So as to make the government independently liable in damages for the same type of conduct that is alleged to have occurred in *Biven's* (and for that case imposes liability upon the individual government officials involved)". S. Rep. No. 93-588 p. 3(1973)

In the absence of a contrary expression from Congress, §2680(h) thus contemplates that victim(s) like Richards of the kinds of intentional wrongdoing by Honorable Judge Manuel Barbosa, and others complained in the present complaint shall be able to maintain an action under FTCA against the United

States as well as a *Biven's* action against the individual officials alleged to have infringed the victim's Constitutional rights.

The FTCA vests in the district court exclusive jurisdiction over claims for money damages against the United States for

> Personal injury or death caused by the negligent or wrongful acts or omissions of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. §1346(b)

Defendant Hanson was (or still is) a special agent for the Federal Bureau of Investigations, as defined in Title 28 U.S.C. §531 of the United States Code, one of her duties as a FBI police officer, delegated by the Federal Bureau of Investigations Director, is to perform such duties prescribed in connection with the protection of persons or property within FBI buildings and grounds Title 28 U.S.C. §540C(b)(2).

Title 28 U.S.C. §540C(a)(2)(A)(i):
Federal Bureau of Investigations grounds:
    (a) Definitions – In this section:
        (2) FBI Buildings and Grounds
            (A) In General – The term "FBI buildings and grounds" mean –
                (i) the whole or any part of any building or structure which is occupied under a lease *or otherwise* by the Federal Bureau of Investigations and is subject to supervision and control by the Federal Bureau of Investigation [emphasis added]

Additionally, it is well settled that the FTCA is available is available to federal prisoners. *United States Vs. Muniz* 374 U.S. 150 (1963). In this particular, case, plaintiff Richards, pending trial was being housed in Olge County Jail in Oregon Illinois under the care of the United States Marshalls and the Federal Bureau of

Investigations, which is subject to the supervision and control by the Federal Bureau of Investigations, in that the Federal Bureau of Investigations or the United States Marshal's lease space, to quarter, their chargees, from the Olge County Sheriff's Office, in Oregon, Illinois. On May 2nd, 2006, it was Special Agent Hanson, along with the prosecuting team, who wanted to transfer quarters of plaintiff Richards, from the Metropolitan Correctional Center (MCC) in Chicago, Illinois to the Olge County Jail.

Congress has specifically provided that section 1346(b) shall apply to the intentional torts of federal law enforcement officers, including claims arising out of assault and battery 28 U.S.C. §2680(h). Thus, plaintiff's allegations of willful conduct by government actors should not in itself deprive the district court of jurisdiction whereas here, the claim arose out of an alleged battery. In addition, plaintiff Richards alleges that defendant Hanson, was acting within the scope of her office or employment, when the tortuous acts were committed occurred. 28 U.S.C. §1346(b).

Whether given acts are within the scope of employment is ultimately a legal question. See e.g. *Dornan Vs. United States* 460 F.2d 425, 427 (9th Cir. 1972)(whether particular act "within the scope of an employee's federal employment depends upon an analysis of the facts under the law of the place where the tort occurred"). Liability depends upon "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred". 28 U.S.C.

§1346(b). In this particular, case we must look to the laws of Illinois, Oklahoma, and Kentucky, and their corresponding respondeat superior and agency rules to determine whether defendant(s) were acting within the scope of their employment.

Intentional tort claims based upon acts of investigative or law enforcement officers fall within purview of discretionary function exception; in suit for [assault and battery] claimant must establish that government's acts were not within discretionary function and that individual defendant(s) were investigative or law enforcement officers. In this particular, case defendant Hanson was a law enforcement officer, as defined by the Federal Bureau of Investigations Title 28 U.S.C. §531. In addition, discretionary function exception to federal tort claims act (28 U.S.C. §2671 et. Seq.) will not apply when federal statute, regulation, or policy specifically prescribes course of action for employee to follow, and will not bar suit which charges federal agency with failing to act in accordance with such specific mandatory directive. *Berkovitz Vs. United States* 100 L.Ed.2d 531 (1988). The discretionary function exception does not apply in this instant action, being brought by plaintiff Richards, because federal statute Title 28 U.S.C. §540C(b)(2) specifically prescribes for the protection of persons or property within FBI buildings and grounds, that are being leased or *otherwise*.

### Judicial Immunity
In *Brady vs. Fisher* 80 U.S. (13 Wall.) 335, the Court made a distinction between acts "in excess of jurisdiction" (Criminal court judge convicts a plaintiff

for nonexistent crime. Cf. *Turner Vs. Raynes* 611 F.2d 92, 95-97 (5th Cir. 1980)) and acts "in clear absence of all jurisdiction" (probate judge tries a criminal case), see *Brady vs. Fisher* supra. 80 U.S. (13. Wall) at 352. Immunity is lost to the judge only in latter class of jurisdictionally defective cases. *Harper Vs. Merkle* 638 F.2d 848 (1981) n. 16. In the present case, Honorable Bankruptcy Judge Manuel Barbosa, is analogous to a probate judge, in that both manage estates, the probate judge, manages the estate of deceased individuals, and a bankruptcy judge manages the estate of a bankrupt individual. However, his jurisdiction is limited to Title 11 of the federal statutes, as defined by 28 U.S.C. §157 or §1334. The present case, asserts, that Bankruptcy Judge Manuel Barbosa, acted in clear absence of his jurisdiction. For example, prison officials, and employees, duties are defined, by Title 18 U.S.C. §4042, specifically §4042 provides for the safekeeping of the inmates

> Title 18 U.S.C. §4042(a)(2)
> (a) In general – the Bureau of Prisons, under the direction of the Attorney General, shall –
> (2) provide suitable quarters and provide for the safekeeping, care, and substance of all persons charged with or convicted of offenses against the United States. . .

### Heck Vs. Humphrey

The "cruel and unusual punishments" clause "of the Eighth Amendment was designed to protect those convicted of crimes" *Ingraham Vs. Wright* 430 U.S. 651 (1977). The Eighth Amendment of the United States Constitution is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to

convicted persons in cases such as this one, where the deliberate use of force is challenged as excessive and unjustified. *Whitley Vs. Albers.* 475 U.S. 312 (1986). The conviction, plaintiff, Richards, received for was for making "threats", in violation of Title 18 U.S.C. §875(c) [See Northern Illinois District Court case # 06 CR 233] because, defendant Barbosa, and defendant Stevens acted arbitrary and capriciously. Just, like plaintiff, Richards, would get upset, and curse the inanimate computer; he was programming, for making an arbitrary judgment, and was in the process of diagnosing the cause. His anger at the computer has no bearing upon the instructions that are being processed in the computer's processing chip, or the cause of the arbitrary decision that caused its abnormal termination. In another simple example, say for example, your automobile breaks down, and you take your automobile to a mechanic, for repair. While the mechanic is diagnosing, the cause, he curses at the auto, because, he attempting to diagnosis a difficult situation, his anger, had no reflection, upon the automobile for failing to operate and perform, and his incarceration, for cursing at the auto, had no bearing, upon the problem with the auto's failure to operate and perform. Neither, is the incarceration of the mechanic is not going to resolve, the problem with the automobile, nor, is the resolution of the automobile, going to undermine, the conviction or the sentence of the mechanic, whether that resolution is the next day, or after the mechanics release from incarceration. They are two distinct problems, with two distinct resolutions.

### Declaratory Judgment

A declaratory judgment action brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and section 2201 of Title 28 of the United States code must meet all the substantive and procedural jurisdictional prerequisites of the usual civil action. The Federal Declaratory Judgment act is merely an added ground upon which litigants may enter the federal courts. One of the essential prerequisites of any civil in federal courts is that it state a "case and controversy" within Article III of the Constitution. [Alabama State; Federation of Labor, Local Union No #103, *United States Brotherhood of Carpenters and Joiners of America Vs. Mc Adury* 325 U.S. 450(1945) *Standard Accident Insurance Co. Vs. Alexander Inc.* 23 F.Supp. 807 (D. Tex. 1958). The two principle criteria guiding the policy in favor, of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, or controversary giving rise to the proceedings").

In the present case, plaintiff, Richards, is proceeding under the first prong, after the legal relationship(s), have been defined that defendant Barbosa and defendant Hanson, along with their friends and buddies, maliciously and sadistically attacked, plaintiff, Richards, with a mob-hate crime, the federal government, in greater power, than these two individuals, should take appropriate action under Title 5, Chapter 75 – Adverse Actions against federal government employees, offering, them an array of options. As well as, plaintiff Richards may have available recourses, under Title 28 U.S.C. §2202.