## IN THE NORTHERN DISTRICT COURT OF ILLINOIS
### EASTERN DIVISION

Terence Bruce Richards )
  Plaintiff )
 )  Case Number 08 CV 6810
Vs. )
 )  District Judge: David Coar
United States of America  Et. Al. )
  Defendant(s) )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT
## AGAINST DEFENDANT JAMES HARRINGTON,
## ON THE ISSUE OF LIABILITY,
## PURSUANT TO Fed. R. Civ. Proc. 56(d)(2)

### *Federal Rules of Civil Procedure 56(d)(2)*

Subdivisions of (a) and (b) of the Federal Rules of Civil Procedure 56,

authorizes, a motion for summary judgment "upon all or any part" of a claim by a

claimant or a defending party, in particular Rule 56(d) deals with the situation in

which the motion does not lead to a judgment in the entire case, but only terminates

further contest as to a portion of the litigation. *Moores Federal Practice* ¶56.20 (3-4).

Specifically, a partial summary judgment order in accordance with Rule 56(d)(2) is

not a final judgment, but is merely a pre-trial adjudication that certain issues are

established for trial of the case. Such an order, is interlocutory in nature, is subject

to revision, by the district court and has no res judicata effect. *Avondale Shipyards

Inc. Vs. Insured Lloyd's* 196 F.2d 1265, 1269-70 (5th Cir. 1986)(quoting 6 Part 2

*Moore's Federal Practice* ¶56.20 (3-4)) *Traveler's Idem. Co. Vs. Erickson's Inc.* 816

F.2d 134, 136 (5th Cir. 1968).

Prior to the the 2007, amendment to Rule 56(d), a judgment was entered under the authority of the last sentence of Rule 56(c)

> "A summary judgment, interlocutory in character, may be rendered in the issue of liability alone, although there is a genuine issue as to the amount of damages".

and an order establishing defendant's liability under the prior 2007, rule 56(d) are indistinguishable. The only purpose of the language in subdivision (c), serves is to remove any doubt as to the court's power to so act, in this particular context. Of course, if there is no liability without damages, and damages are in dispute, summary judgment should not be granted. The following quotation makes it apparent that when there is a genuine issue as to the damages, but not as to the ultimate liability of the non-moving party, an interlocutory summary judgment is appropriate and the procedure to be followed is that prescribed in Rule 56(d),

> It makes clear that although the question of recovery depends on the amount of damages, the summary judgment rule is applicable and summary judgment may be granted in a proper case. If the case is not fully adjudicated it may be dealt with as provided in subdivision (d) of Rule 56, and the right of summary recovery determined by a preliminary order, interlocutory in character, and the precise amount of recovery left for trial.

However, interlocutory summary judgment must be denied if there is a question of fact concerning liability, but if the court establishes the existence of liability under Rule 56(d)(2)(prior to 2007, the last sentence in Rule 56(c)). The case will then proceed for determination of the damage issue. This normally will be done in accordance with the usual trial procedures, applicable to the case.

Rule 56(d)(2)(prior to 2007, the last sentence of rule 56(c)), expressly states that a summary judgment solely on the issue of liability is an interlocutory order. Thus, there is no final judgment to be entered and no appeal lies from a rule 56 decision establishing or refusing to establish the liability of the non-moving party.

### *Biven's* Claim – Generally

The civil rights act (42 U.S.C. §1983) gives the right of action against a person, who under color of state law, custom, or usage, subjects another to deprivation of any rights, privileges, or immunities, secured by the federal constitution, has several purposes:

1.) It overrides certain kinds of state laws

2.) It provides a remedy, where state law is inadequate

3.) It provides federal remedy, where state remedy, though adequate in theory, is not available in practice

*Monroe Vs. Pape* 365 U.S. 167 (1961)

In the instant action, Plaintiff, Terence Bruce Richards, is bringing this *Biven's* case (analogous to a Title 42 U.S.C. §1983 claim) against several federal officials for the hate crime actions involving, plaintiff, Terence Bruce Richards. Defendant James Harrington, is one of the actors, who conspired with special agent Susan Hanson to deprive, plaintiff, Terence Bruce Richards, of his constitutional rights, (See defendant's Motion to Dismiss ¶ 1(a), (b), (c), (d), (e), and (f)), under the

state law of Hate crime (see defendant's Motion to dismiss ¶1(g)). Section 1983 basically seeks to (1) deter state action from using badge of their authority to deprive individuals of their federally guaranteed rights and (2) provide related relief. *Richardson Vs. McKnight* 521 U.S. 399, 42 U.S.C. §1983 was partly aimed at constitutional deprivations through abuse and nonuse of authority by state officials. *Miller Vs. Carlson* 563 F.2d 757. The United States Supreme Court found an implied damages remedy for violation of Constitutional rights by federal agents, like, Manuel Barbosa and FBI Special Agent Susan Hanson through the use of Biven's type action. In *Biven's Vs. Six Unknown Agents of the Federal Bureau of Narcotics* 405 U.S. 388 (1971). This is analogous to a Title 42 U.S.C. §1983 action against state actors, under color of state law.

### *Biven's* Claim Elements

Two elements are necessary for recovery under a *Biven's* action (Title 42 U.S.C. §1983); Plaintiff, Terence Bruce Richards must prove that defendant(s) has deprived him of rights secured by the "Constitution and laws" of the United States, and that defendant(s) deprived him of those constitutional rights "under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, this second element requires, that Plaintiff Terence Bruce Richards show that defendant(s) acted "under color of law" *Adickes Vs. S. H. Kress & Co.* 398 U.S. 144, see also *United States Vs. Price Et. Al.* 383 U.S. 787 (1966); which contains the following Title 18 U.S.C. §241 passage:

"If two or more persons conspire to injure, oppress, threaten, or intimidate, any citizen in the free exercise or enjoyment of any right or privilege secured to him by the United States Constitution or laws of the United States, or because of having so exercised the same; or, "if two or more persons go in disguise on the highway. or on the premise of another, with the intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured…"

One caveat, is 42 U.S.C. §1983, imposes liability for violations of rights protected by the Federal Constitution, not for violations of duties of care arising out of tort law, remedy, for the latter type of injury must be sought in state court under traditional tort law principles. *Baker Vs. Mc Cullan* 443 U.S. 137

Purpose of the Civil Rights statute (42 U.S.C. §1983, and it's federal counterpart Biven's action) authorizing actions at law, suit in equity, or other proper proceedings, for redress of deprivations under color of state law, or rights secured by federal constitution and federal laws, is to interpose federal courts between states and people, by guardians of people's federal rights, and thus to protect people from unconstitutional actions under color of state law, whether that action be executive, legislative, or judicial, in carrying out this purpose, Congress, has expressly authorizing suit in equity as one of the means of redress, and plainly authorized federal courts to issue injunctions, in 1983 actions. *Mitchum Vs. Foster* 407 U.S. 225 (1973).

Title 42 U.S.C. §1983 which authorizes redress for violations of constitutional and statutory rights, is not itself a source of substantive rights, but rather a method for violating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes. *Baker Vs. Mc Cullan* 443 U.S. 137

## Conspiracy

Under Title 42 U.S.C. §1983, conspiracy can furnish the conceptual spring for imputing liability from Susan Hanson to James Harrington, and *visa versa*. A conspiracy

between James Harrington and Susan Hanson can also be used to furnish the requisite state action...yet it remains necessary for Plaintiff Terence Bruce Richards, to prove an actual deprivation of his constitutional rights, a conspiracy to deprive, is insufficient. In the instant case, Defendant James Harrington mentioned in his Motion to Dismiss, on ¶1(c), Richards, alleges that Harrington together with other defendant, namely, Susan Hanson, Paul Flynn, James Stevens, and Manuel Barbosa, and District Judge Reinhard, denied Plaintiff, Terence Bruce Richards of his liberty from being treated with cruel and unusual disproportionate punishment which was outside the federal sentencing guidelines, without an opportunity for a notice and hearing (fair trial). See also, Complaint ¶318. In the instant case, contacting federal special agent Susan Hanson, without knowledge about, any plaintiff's personal, business, legal, or otherwise affairs, and not knowing any condition of the incident's arising to or coming about the surrounding environment, violates, plaintiff, Terence Bruce Richards, constitutional rights. Specifically, no specific intent to deprive a person of federal rights is necessary to create liability under Title 42 U.S.C. §1983, which gives right of action against a person who under color of state law, custom, usage, subjects another to deprivations of any rights, privileges, or immunities, secured by the federal Constitution. *Monroe Vs. Pape* 385 U.S. 167.

### Conspiracy Generally

A civil conspiracy, is a combination of two persons, like James Harrington, and Susan Hanson, having a cooperation (meeting of the minds) by some concerted action, to accomplish some criminal or unlawful purpose, like in the instant case, to commit either voluntary manslaughter, or involuntary manslaughter [See Dkt #133], or the lesser offense, of assault and battery, by a lawful means, of doing a search and seizure of plaintiff, Richards, under Fourth Amendment of the United States Constitution, under the Good

Samaritan doctrine [doing his civic and legal duty], but in a careless manner, because, James Harrington, believed, plaintiff, Terence Bruce Richards, was stalking his son, Donald James Harrington. Or, to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means, to the injury of another. *Davenport Vs. North Carolina Dept. of Transportation* 3 F.3d 89 (4th Cir. 1993)(citing North Carolina law). In the instant case, defendant James Harrington, states in Motion to Dismiss ¶2, James Harrington has never met any of the above named defendant(s) Susan Hanson, Paul Flynn, James Stevens, or Manuel Barbosa. With the exception of one phone call, on or about, March 30th, 2008 (between FBI agent Hansen and James Harrington) wherein Hanson, requested any information Harrington could provide to aid the FBI in locating Richards, and wherein James Harrington provided a phone number Richards called Harrington from, Harrington has never met defendant Hanson. In addition, defendant James Harrington states in his Motion to Dismiss in ¶1(g), Richards, alleges that Harrington, together, with other defendant(s) Susan Hanson, Paul Flynn, James Stevens, and Manuel Barbosa committed an act of Hate crime. See Complaint ¶347. To do the unlawful act of placing, Plaintiff, Terence Bruce Richards, in the apprehension of bodily harm, which for the purposes of significances, could have amount to voluntary, or involuntary manslaughter, because, defendant James Harrington, believed, that Plaintiff Richards, was stalking, his son, Donald James Harrington.

### **Conspiracy Elements**

A civil conspiracy requires an object to be accomplished, meeting of the minds on the object or course of action, one or more overt acts, and damages, as the proximate result, thereof. As stated in ¶2 of Defendant's Motion to Dismiss, defendant James Harrington had a meeting of the minds, with FBI special agent, Susan Hanson, specifically, "with the

exception, of one phone call, on or about, March 30th, 2006 (between FBI agent Hanson and

James Harrington), wherein Hanson requested any information Harrington could provide

to aid the FBI in locating Richards, and wherein Harrington provided a phone number

Richards called Harrington from, Harrington has never met defendant Hanson, and in ¶6.

Moreover, Richards, claims against James Harrington are bared[sic] since the allegations

Richards makes against James Harrington all stem from, Harrington's cooperation with

FBI Special Agent Hanson, during her phone call, on or about 30 March, 2005, while she

was acting in her official capacity as a law enforcement official, and while Harrington was

co-operating with law enforcement, which is his legal and civic obligation to do. The overt

act, was the deprivation of the constitutional rights of Plaintiff, Terence Bruce Richards,

¶1(c), Richards, alleges that James Harrington, together with other defendant(s) Susan

Hanson, Paul Flynn, James Stevens, and Manuel Barbosa, and District Judge Reinhard,

denied Richards of his liberty from being treated with cruel and unusual disproportionate

punishment which was outside the federal sentencing guidelines without an opportunity for

a notice or hearing (fair trial) See Complaint ¶318.


### Person's Liable

A civil conspiracy requires the combination of at least two persons, like James

Harrington and Susan Hanson, tort liability arising from the conspiracy presupposes that

the conspirator is legally capable of committing a tort, in that he or she owes a duty

recognized by law to the Plaintiff, and is potentially subject to liability for breach of that

duty. In the instant case, James Harrington, claims, that he had a legal and civic duty, to

cooperate, with Special Agent, Susan Hanson, under the Good Samaritan doctrine, in which

Plaintiff, Terence Bruce Richards, does not deny, but, James Harrington has a duty, to

perform that Good Samaritan duty, with caution and care. Susan Hanson, on the other

hand, also has a duty to provide the protection of property and person, on FBI grounds, as spelled out in Title 28 U.S.C. §540C(b)(2), in which United States of America, has an affirmative duty, to protect persons in their custody and control, from other inmates, that they know to be dangerous. In addition, as stated below, in the qualified immunity, section, (see infra.), he also has a legal obligation, to act with some credible and reliable information, when there is no arrest warrant pending for plaintiff Richards's arrest, which precludes any absolute immunity, that may be provided, to individuals, during the criminal proceedings phase, of a criminal prosecution.

## Nature and Extent of Liability

A civil conspiracy claim operates to extend beyond the active wrongdoer, liability in tort extends to actors, who have merely assisted, encouraged, or planned the wrongdoer's acts. Each act done, in pursuance of the conspiracy by one or several conspirators is, in contemplation of the law, an act for which, each is jointly and severally liable. In James Harrington's Motion to Dismiss, ¶ 5, James Harrington states "Richards claims against Harrington lack credibility in that they fail to state any activity, action, or deed that Harrington, actually, committed or participated in that in any way were directed at or against Richards at any time whatsoever".

The joint and several liability of a conspiracy applies to damages accruing prior to his or her joining the conspiracy as well as damages thereafter, resulting from –regardless of whether he or she took a prominent or inconspicuous part in the execution of the conspiracy.

### Overt Act

Since damages, must be shown in a civil action, based on conspiracy, no cause of action, can exists in the absence of an overt act, tortuous, or unlawful act committed in the furtherance of the conspiracy. In the instant case, the overt act was the attempted voluntary manslaughter or involuntary manslaughter of Plaintiff, Terence Bruce Richards. As stated, in *Panella Vs. United States* 216 F.2d at 625, Judge (later Justice) Harlan, held that the assault and battery by non-government employees, is not barred by the exception in Title 28 U.S.C. §2680(h), especially, if that individual is in the custody and care of the government, being housed with other federal government officials, that knocked him unconscious, and could have resulted in involuntary manslaughter, because, of Special Agent Susan Hanson, and Manuel Barbosa failure to protect person and property on FBI grounds. Plaintiff Richards, case falls within the exemption of 28 U.S.C. §2680(h), barring claims "arising out assault" that exception applies only to assaults by government agents, not assaults by third parties, which the government negligently fails to prevent. *Panella vs. United States* 216 F.2d 522 (2nd Cir. 1954).

When an agency, like the Department of Justice, voluntary undertakes a task, it can be held to have accepted the duty of performing the task with due care, also known as affirmative duty. This area of voluntary assumption of duty by affirmative conduct runs through a variety of cases, just when the duty is undertaken, when it ends, and what conduct is required, are nowhere clearly defined, and perhaps cannot be. *Prossor, Torts* 554 at 340 (3rd Ed. 1964) See also, *38 Am. Jur. Negligence* §17 (1941); *Rogers Vs. United States* 397 F.2d 12

> Here, the very risk which constitutes the defendant's negligence in the probability of such action. It is clear, that when such action occurs, it should not insulate the defendant(s) negligence under the causation formula. In other words, it clearly unsound to afford immunity to a negligent defendant, because of intervening force, the very anticipation of which made his conduct

negligent, has brought about the expected harm. *Harper Vs. Kline*: The Duty to Control the Conduct of Another 43 Yale L. J. 886, 898 (1934).

In the instant case, the agency of Department of Justice, through its employees and agents, had a duty of care, as prescribed, by Title 28 U.S.C. §540C(b)(2), and 18 U.S.C. §4042, to protect the person or property on FBI grounds and for the safekeeping of the individual, kept in their control and custody. The application of section 2680(h), is inapplicable for two reasons: First, the attack(s) upon plaintiff Richards, by third parties, was a foreseeable consequence of the government's failure to exercise due care, *under the circumstances*, and therefore, *it is not such an intervening act as will sever the necessity casual relation between the negligence and the plaintiff's injuries.*

> One who takes charge of a third person who knows or who should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm. *Restatement of Torts*, 2nd, §19.

In addition, according to *Processor, Torts,* (2nd Ed. 1955), the General Duty which arises in many relationships for the safety of others "may include the obligation to exercise control over the conduct of third persons". *Processor*, Supra. At 188.

## Qualified Immunity

In the case cited as *Butler Vs. Goldblatt Bros. Inc.* 589 F.2d 323 (7th Cir. 1978), law enforcement officers may not avoid liability under Title 42 U.S.C. §1983 for false arrest where they had no firsthand knowledge of any facts to support belief that arrestee's threatened security officer, but acted solely on information from informant with which they had no prior experience. *Butler Vs. Goldblatt Bros. Inc.* 589 F.2d 323 (7th Cir. 1978). In the case at bar, James Harrington claims in his motion to dismiss, in ¶ 5 James Harrington has never corresponded with, talked with, met, or in any other way had any contact with the

above named defendants of any kind or at any time (other than the above referenced single phone call with Hansen). James Harrington further has no personal knowledge of the case against Richards, its outcome, or the parties, events, activities, or legal proceedings, or the motives and the efforts of any person involved. James Harrington continues, into ¶4 James Harrington further has only limited knowledge of Plaintiff Richards through Plaintiff Richards relationship with Harrington's son. Harrington has no personal knowledge of Plaintiff Richards's personal affairs, business, legal, or any other activities, information, or dealings or any sort or type.

## Constitutional Violation(s)

The equal protection clause grants to all Americans "the right to be free from invidious discrimination in statutory classifications and other governmental activity". *Harris Vs. Mc Rae* 448 U.S. 297, 332 (1980). Plaintiff Richards, must demonstrate that James Harrington acted with a nefarious discriminatory purpose. Personnel Adm'r of Massachusetts Vs. Feeney 442 U.S. 256, 279 (1979), and discriminated against him based on his membership in a definable class. *Albright Vs. Oliver* 975 F.2d 345, 348(9th Cir. 1992) aff'd 510 U.S. 266(1994); *Falls Vs. Town of Dyer* 875 F.2d 146, 148 (7th Cir. 1989). In the instant case, James Harrington, discriminated against Plaintiff, Terence Bruce Richards, because of his sexual orientation, and more specifically, because of his alleged mental illness of bipolar, as defined in the DSM 296.40 Bipolar Disorder I, most recent episode manic, however, Plaintiff Richards, suffers from 293.83 Mood Disorder due to hypothyroidism. Defendant James Harrington, believed, the environmental factors, that, Plaintiff

Richards, was allegedly stalking his son, Donald James Harrington, giving him materialistic gifts, and then took him to court, so plaintiff Richards could continue his relationship, with his son, Donald James Harrington. Plaintiff, Richards, took his son, to court, to get his property rights back, but did not want to act impulsively, and send his son to prison, in which there could be a foreseeable consequence of assault and battery, with the potential of either voluntary or involuntary manslaughter, without, first having more knowledge, what prison life is about, in no one would ever, want to go to prison, in the first place. But, plaintiff, Terence Bruce Richards, so that as an impulsive behavior, without the firsthand knowledge, of what he was doing, (sounds weird, but, this could have been an impulsive behavior). The District Judges, even visit, the prison(s), and some district court(s), have specific judges, who are assigned to prisoner litigation cases, because of their knowledge base, of the specific prison.

In Schroeder Vs. Hamilton School District 282 F.3d 746 (7th Cir. 2002), the case states, in order to establish an equal protection violation, the Plaintiff, must show that Defendant James Harrington (1) treated him differently from others who were similarly situated, (2) intentionally treated him differently because of his membership in the class to which he belonged (i.e. homosexuals, with a mood disorder); (3) because homosexuals don't enjoy any heightened protection under the Constitution (see *Romer Vs. Evans* 517 U.S. 620, 634-35 (1996); *Bowers Vs. Hardwick* 478 U.S. 186, 196 (1986) that the discriminatory intent was not rationally related to a legitimate state interest. *Henrich Vs. Board of Regents of University of*

*Wisconsin System* 274 F.3d 1174, 1183 (7th Cir. 2001) *Nabozny Vs. Podesny* 92 F.3d 446, 453 (7th Cir. 1996). In the instant case, Defendant James Harrington, treated Plaintiff, Terence Bruce Richards, differently, because of his sexual orientation, with a mood disorder, because, he thought, plaintiff, Richards was stalking his son, Donald James Harrington, defendant James Harrington, would not have done this, with another individual, only because, of his sexual orientation, and having an alleged relationship, with his son, who was at the time, 23, and plaintiff, Terence Bruce Richards, was 40. (However, Plaintiff, Richards, had other relationship(s), at the time, with 3 other individual(s), one in Hoffman Estate, Frank Spada, who was age 35, Norm Diamond, from Deerfield, Illinois, who was 63, and Andreas Trefzger, who lived in Beitengen Germany, who was 28. Plaintiff, Terence Bruce Richards, had no need to buy, Defendant James Harrington(s), son materialistic gifts, to buy his son's love.

> The gravamen of equal protection lies not in the fact of deprivation of a right, but the invidious classification of persons aggrieved by the State's action. A Plaintiff, must demonstate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as violation or intent as awareness of consequences. It implies that a decision-maker signaled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group. Id. At 1104 (citation and internal quotations omitted).

A showing that Defendant James Harrington, were negligent will not suffice, Plaintiff Richards, must show that the defendant's acted either intentionally or with deliberate indifference. *Archie Vs. City of Racine* 847 F.2d 1211, 1219 (7th Cir. 1988) cert. denied 489 U.S. 1065, *Jackson Vs. City of Joliet* 715 F.2d 1200, 1203 (7th Cir.

1983) cert denied 465 U.S. 1049 (1984). The deliberate indifference can be

demonstrated by that Defendant James Harrington, acted, upon no knowledge

about, Plaintiff, Terence Bruce Richards, or knowledge about the situation, he was

involved in. (See his Motion to Dismiss).


## State Claims

The Illinois Hate Crime statute replaces the crime of ethnic intimidation (Ill.

Rev. Stat. 1991 ch. 38, pa. 12-7.1). The Illinois hate crime statute reads:

> "A person commits hate crime, when, by reason of actual or perceived race,
> color, creed, religion, ancestry, gender, sexual orientation, physical or
> mental disability, or natural origin of another individual or group of
> individuals, he commits assault, battery, aggravated assault, misdemeanor
> theft, criminal trespass to residence, misdemeanor criminal damage to
> property, criminal trespass to vehicle, criminal trespass to real property, mob
> action, or disorderly conduct as these crimes are defined in section 12-1, 12-2,
> 12-3, 16-1, 19-4, 21-1, 21-2, 21-3, 25-1, and 26-1 of this code, respectively or
> harassment by telephone as defined in section 1-1 of the Obscene Phone Call
> Act. 720 ILCS 5/12-7.1 (West 1994)"

Plaintiff, Richards, must show, that Defendant James Harrington, committed one of

the predicate offenses enumerated in the Statute 'by reason of actual or perceived

sexual orientation with a mood disorder of Plaintiff Richards 720 ILCS 5/12-

7.1(a)(West 1994). Plaintiff, Richards, believes there is a high perception of sexual

orientation discrimination in the underlying case, involving mob action, beginning

with the first underlying offense assault and battery. An allegation that the accused

committed one of the enumerated offenses is an essential element of a hate crime.

See *In Re: B.C.* 176 Ill.2d 536; 223 Ill.Dec. 919; 680 N.E.2d 1355 (1997).

In the instant case, Defendant James Harrington violated the Illinois hate crime statute, by violating the enumerated statute 720 ILCS 5/25-1. The Illinois Mob Action, statute Ill. Rev. Stat. ch 38 §25-1 which reads as follows:

(a) Mob Action consists of any of the following:
    (1) The use of force or violence disturbing the public by 2 or more persons acting together and without authority of the law; or;
    (2) The assembly of 2 or more persons to do an unlawful act; or,
    (3) The assembly of two or more persons, without authority of law, for the purpose of doing violence to the person or property of any one supposed to have been guilty of a violation of the law or for the purpose of exercising correctional power or regulative powers over any person by violence.

This statute, is a section of Illinois Criminal Code of 1961. It represents a compilation of the prior offenses of route, riot, affray, unlawful assembly, and mob action. This provision certainly goes beyond the narrowly drawn statute "concerning the time, place, duration, or manner of use of the streets for public assemblies". The statute has not been construed for the Illinois Courts, under these circumstances. The Illinois Courts, must place their own construction of the statute, giving the words their reasonable and natural meaning.

The Statute proscribes three separate categories of conduct as "mob action". Since, these provisions are not interdependent and the validity of the statute as a whole would not rest on any one of them. Plaintiff, Richards, alleges[i], that Defendant James Harrington committed subparagraph (a)(2) against the Plaintiff, Richards which states" The assembly of 2 or more persons to do an unlawful act. The phrase "unlawful act" in its normal meaning is not so limited to criminal illegality, it could include the common law tort of assault and battery.

---

[i] Plaintiff, Terence Bruce Richards, alleges that (3) of the Mob Action crime, could also apply.