MHN

# IN THE NORTHERN ILLINOIS DISTRICT COURT
## EASTERN DIVISION

Terence Bruce Richards )
        Plaintiff )
         )
         ) Case Number 08 CV 6810
Vs. )
         ) District Judge Coar
United States of America Et. Al. )
        Defendant(s) )

FILED
Oct 19, 2009
OCT 19 2009
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO VACATE, PURSUANT TO FED. R. CIV. PROC. 60(b)(4)

This case involves the corruption and underlying criminal manipulation of Bankruptcy Trustee James E. Stevens. This individual, undermining and fraudulently embezzled, in violation of Title 18 U.S.C. §153 [embezzlement against the estate], plaintiff Terence Bruce Richards, property, including a 40 year old Prudential Insurance variable annuity insurance policy, $16,300.00 from plaintiff, Terence Bruce Richards Vanguard Retirement account, and various other assets, totaling to a total of $36,000.00 dollars. Bankruptcy Trustee James E. Stevens knowingly and willfully made false and misleading statements, in that Terence Bruce Richards, passed his own property to third party Donald James Harrington this property, consisting of the adversary proceedings 03 A 7063 and 03 A 7083, under the umbrella bankruptcy case 03 B 71403. The specific statement, Bankruptcy Trustee James E. Stevens made to the Bankruptcy Court and Plaintiff Terence Bruce Richards, was on October 18th, 2004, in the Northern Illinois Bankruptcy Court – Western Division, of which the contents of that statement was "the collection of the property [in

adversary case 03 A 7063], was to too burdensome to keep going after someone, who was not cooperating with the courts". Plaintiff Terence Bruce Richards relied upon this statement to his detriment, and was severely and permanently in the loss of $36,000.00, plus accruing interest at 9% per annum rate, as of October 2009, this principal plus interest has amounted to a total damage of $55,390.46.

Bankruptcy Trustee James E. Stevens is not an honorable man, and could have and should have been disbarred from practicing law in the proud United States of America, as of October 18th, 2004. Who would conscientiously transfer assets belonging to another individual, to another individual? Doesn't this individual have a moral conscience? One would not have to look too far, when a person, is coerced into having to ask permission from the bankruptcy court, to obtain permission to bring this individual to justice. James E. Stevens maliciously, willfully, and criminally stole plaintiff Terence Bruce Richards, property, in violation of federal criminal statutes (i.e. 18 U.S.C. §153), and state statutes 720 ILCS 5/16-1(a)(4)(C). Even the Seventh Circuit, Court of Appeals, in October of 2008, has declared that based on plaintiff Terence Bruce Richards, evidence, that bankruptcy trustee James E. Stevens criminally embezzled plaintiff Terence Bruce Richards, property rights, to another individual, fraudulently, in their Opinion Order of Northern Illinois District Court case, 07CV3643:

> The only argument that Richards advances on appeal is that the District Court abused its discretion in denying the Rule 60(b) motion, Because, he contends, he came forward with evidence that the Bankruptcy Trustee made fraudulent misrepresentations to the

Bankruptcy Court. These misrepresentations, according to Richards, entitle him to another shot in the district court under Fed. R. Civ. Proc. 60(b)(3). But, Richards, misunderstands this rule, because the fraud he describes had nothing to do with the district court's decision to dismiss his complaint. A District Court may set aside a judgment on the basis of fraud or other misconduct if party can show "that it affected his ability to present his case". *Ty Inc. Vs. Softbelly's Inc.* 353 F.3d 528, 536 (7th Cir. 2003) See also *Bell Vs. Eastman Kodak Co.* 214 F.3d 798, 801 (7th Cir. 2000) Citing Rule 60(b)(3) allows a judgment to be set aside if it was "obtained by fraud that the losing party could not have discovered in time to have it rectified by the court of appeals on direct appeal). But Richards argues that the trustee misled the Bankruptcy Court during the course of the bankruptcy proceedings, not that the trustee engaged in fraud or misconduct which caused the district court to dismiss the complaint or otherwise affected Richards's ability to prosecute his case. Indeed, it would have been different for the trustee to mislead the court or Richards here because the court dismissed the action on pre-screening under 1915A. Before the trustee was even served with process.

### Plaintiff Terence Bruce Richards Befriends the Male Prostitute, Donald James Harrington

On or about, April 2002, plaintiff Terence Bruce Richards contacts, a male prostitute, from the Gay Chicago Magazine, by the name of Donald James Harrington. Plaintiff Terence Bruce Richards meets with the male prostitute, Donald James Harrington, at the "Best Inn of America", located at the commonly known address of 31 North Green Bay Road, Waukegan, Illinois 60085. Plaintiff, Terence Bruce Richards, sits down and communicates with prostitute Donald James Harrington for about 40 minutes, then the last 20 minutes, engages in a sexual encounter with the prostitute. In July of 2002, plaintiff Terence Bruce Richards has another encounter with the male prostitute Donald James Harrington, and this engagement, involved, in attending a drama, at the Woodstock Opera House, and dinner in the

Jailhouse Restaurant on the majestic Woodstock Square. On September 22nd, 2002, plaintiff Terence Bruce Richards, contacts, prostitute, Donald James Harrington, and agrees to meet third party Donald James Harrington, at the "Days Inn Waukegan" at the commonly known address of 3633 North Lewis Ave., Waukegan, Illinois 60087. From this date, forward, plaintiff, Terence Bruce Richards, befriends, third party Donald James Harrington. Plaintiff, Terence Bruce Richards, starts going to the strip joints, starting with the "Sugar Shack" located at the commonly known address of N3429 County Road H Lake Geneva, Wisconsin, 53147. This was because, the club, was near, plaintiff Terence Bruce Richards's home, located the commonly known address of 2408 Aspen Drive Woodstock, Illinois 60098. During this time, plaintiff, Terence Bruce Richards, would meet with third party Donald James Harrington, at the Jewel Grocery Store parking lot, in McHenry, Illinois. During this time period, after attending the Gentleman's club, in Lake Geneva, Wisconsin, plaintiff Terence Bruce Richards, would be sitting in his or third party Donald James Harrington's automobile, for sometimes up to 2 and half hours, while third party Donald James Harrington attempts to coerce, threaten, and manipulate plaintiff Terence Bruce Richards, into transferring to third party Donald James Harrington, monetary funds, in $1,000.00 increments. One of the ladies, at the Gentleman's Club, "The Sugar Shack", by the stage name of Melissa, would inform plaintiff Terence Bruce Richards, that third party Donald James Harrington is up to "no good". This went on for two months, until December 2002.

By, February 2003, prostitute Donald James Harrington, purchased a mobile home at the commonly known address of 3326 Mobile Blvd. in the town of Park City, Illinois, for his wife Lourdes Harrington, and their children. Donald James Harrington's wife, Lourdes Harrington, just gave birth to their son, Tristan, on October 22nd, 2002, and the two of them, needed a place to live. So, Donald James Harrington, gave, plaintiff, Terence Bruce Richards, the impression, that the mobile home, was being refurbished, for the two of them, Plaintiff Terence Bruce Richards, and Donald James Harrington, could have a place to live. Since, Donald James Harrington, kept concealed, the information that he was married and had an infant, that was born on October 22nd, 2002. The prostitute, Donald James Harrington, was "playing" and duping, plaintiff Terence Bruce Richards, of his property. By, March 14th, 2003, plaintiff, Terence Bruce Richards, was forced into filing for Bankruptcy in the Northern Illinois Bankruptcy Court – Western Division, at the commonly known address of 211 South Court Street, Rockford, Illinois 61101, under case number 03B71403, after contacting the "Consumer Credit Counseling Service" at the commonly known address of 400 Russell Court, Woodstock, Illinois 60098.

## 2003 Bankruptcy

After filing for bankruptcy, on March 14th, 2003, plaintiff Terence Bruce Richards went to work, to obtain $45,662.13 dollars from his Vanguard Retirement Account, repay the creditors, whom he just filed bankruptcy upon. Plaintiff Terence Bruce Richards did not know, about the con-artist,

Bankruptcy Trustee James E. Stevens, who is a criminal himself, and must obtain living from abusing the legal system, for his own personal gain. By April 11th, 2003, the Regional Office of the Bankruptcy Trustee Panel, in Madison Wisconsin, contacted plaintiff, Terence Bruce Richards, believing, plaintiff Terence Bruce Richards, had sufficient funds, to possibly convert the case, to a Chapter 13 Bankruptcy Case. On April 22nd, 2002, plaintiff, Terence Bruce Richards obtained his 401K retirement account paperwork from Vanguard Funds, for the application of withdraw, the $45,662.13 dollars from his account. Plaintiff Terence Bruce Richards, submitted the paperwork to employer, at the time, Household International, to be processed by the employer, and returned back to the Vanguard Funds, to have the check mailed to plaintiff Terence Bruce Richards. By, April 29th, 2003, plaintiff Terence Bruce Richards obtained his retirement account check in the amount of $45,662.13 dollars, and was about to deposit the check into a new account at Harris Bank, Woodstock, Illinois 60098. When, plaintiff Terence Richards was impeded by the male prostitute, Donald James Harrington, to deposit the check into third party Donald James Harrington's savings account. On May 10th, 2003, Plaintiff Terence Bruce Richards, discovers, prostitute Donald James Harrington, had stolen this property, from plaintiff Terence Bruce Richards. On May 21st, 2003, plaintiff Terence Bruce Richards, files a motion to recover the stolen property from Donald James Harrington which was heard on May 28th, 2003.

Bankruptcy Trustee James E. Stevens affects
Plaintiff Richards's Ability to Present His Case

On June 11th, 2003, Bankruptcy Trustee James E. Stevens moves to rescind the "No Asset Report", filed in Bankruptcy Case 03 B 71403, and on June 13th, 2003, Bankruptcy Trustee James E. Stevens hires himself as an attorney. On July 28th, 2003, Bankruptcy Trustee James E. Stevens obtains a default judgment, against third party Donald James Harrington, for the property, in adversary hearing 03 A 7063, in the amount of $36,000 depriving, plaintiff Terence Bruce Richards, of an opportunity to present his case to the Bankruptcy Court. During the month of August 2003, prostitute Donald James Harrington, returns the property to the Bankruptcy Trustee James E. Stevens, who places the property into a storage locker, in Rockford, Illinois to be transferred to Miller Auction Service out of Popular Grove, Illinois. On July 28th, 2003, Bankruptcy Trustee files another adversary hearing against prostitute Donald James Harrington for the monetary funds that were stolen from plaintiff Terence Bruce Richards, in the amount of $42,000.00. On November 13th, 2003, Bankruptcy Trustee James E. Stevens obtains a default judgment for the $36,000.00 in adversary hearing 03 A 7083 depriving plaintiff Terence Bruce Richards of the opportunity to present his evidence to the Bankruptcy Court. By April 2004, third party Donald James Harrington is not cooperating with the Bankruptcy Court, Bankruptcy Judge Manuel Barbosa does not want to enforce the body attachment motion that was under advisement, on April 19th, 2004, depriving Plaintiff Terence Bruce Richards, of

an opportunity to present his evidence to the Bankruptcy Court. On May 3rd, 2004, Plaintiff, Terence Bruce Richards was harassed by third party Donald James Harrington, over the phone, and this harassment, went on for the next 15 days. When, plaintiff, Terence Bruce Richards, was arrested for the alleged phone harassment, on May 26th, 2004, plaintiff Terence Bruce Richards did not give any thought, to inform anyone, that this was purely harassment, on the part of the male prostitute Donald James Harrington. If plaintiff, Terence Bruce Richards knew, this was "pertinent" information, to provide to the Bankruptcy Court, plaintiff, Terence Bruce Richards, would have been the first one at the courthouse doorway, waiting for the doors to open. Instead, Bankruptcy Trustee James E Stevens makes false and misleading statements, claiming that it was too "burdensome to keep going after someone who is not cooperating with the courts". Since, this was a half true statement, plaintiff Terence Bruce Richards was unable to contest to the matters at hand, depriving plaintiff Terence Bruce Richards of his property, in violation of the United States Constitutional rights of the Fifth Amendment, and in violation of criminal statutes 18 U.S.C. §153, and Illinois criminal statute 720 ILCS 5/16-1(a)(4)(C). Since, the Bankruptcy Trustee James E. Stevens wanted to criminally abandon this property, under false and misleading pretenses, plaintiff Terence Bruce Richards was deprived of enforcing his rights in the second adversary hearing 03 A 7083, where there was no motion to abandon this property, making this more of a criminal abandonment, then the first adversary hearing.

Rule 60(b)(4)

Rule 60(b)(4) is intended for cases where the district court issuing the underlying judgment lacked jurisdiction or acted in a manner inconsistent with Due Process of the Law *Marones Vs. Federal Reserve Bank of Chicago* 286 F.3d 1014, 1018 (7th Cir. 2002). *Robinson Eng'g Co. Pension Plan & Trust Vs. George* 223 F.3d 445, 448 (7th Cir. 2000). Specifically, the fourth subsection of Rule 60(b) authorizes a void judgment to be vacated. The refusal to vacate under Rule 60(b)(4) an unarguably void judgment is an abuse of discretion. *Robinson Engineering Co. Ltd. Pension Plan & Trust Vs. George* 223 F.3d 445, 448 (7th Cir. 2000); *Blaney Vs. West* 209 F.3d 1027, 1031 (7th Cir. 2000); *United States Vs. Indoor Cultivation Equipment From High Tech Indoor Garden Supply* 55 F.3d 1311, 1317 (7th Cir. 1995).

In this instant case, plaintiff, Terence Bruce Richards considers the final judgment, that plaintiff Terence Bruce Richards needs to obtain the permission of bankruptcy court is basically a bunch of malarkey. Although, ordinarily a district court judge has broad discretion in the application of Rule 60(b), *Connecticut National Mortgage Co. Vs. Brandstatter* 897 F.2d 882, 884 (7th Cir. 1990), this is not true with respect to motions brought under Rule 60(b)(4). Because void judgments are legal nullities, district courts have little leeway. *Bally Export Corp. Vs. Balicar Ltd.* 804 F.2d 398, 400 (7th Cir. 1986). According to Professors Wright and Miller, the time within which a Rule 60(b)(4) motion may be brought is not constrained by reasonableness. *Id.* At 197-198 (reasonable time limitation cannot be enforced with regard to this class of motion"). This is the express position

taken by the First, Fifth, Seventh, Tenth, and D.C. Circuits. See *Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.*, 953 F.2d 21, 23 (1st Cir.1992); Briley v. Hidalgo, 981 F.2d 246, 249 (5th Cir.1993); *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 (5th Cir.1988); Rodd v. Region Constr. Co., 783 F.2d 89, 91 (7th Cir.1986) ("[T]he reasonable time criterion of Rule 60(b) as it relates to void judgments means no time limit."); *V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224 (10th Cir.1979) (no time restrictions on a Rule 60(b)(4) motion); *Misco Leasing, Inc. v. Vaughn*, 450 F.2d 257 (10th Cir.1971) (same); *Austin v. Smith*, 312 F.2d 337, 343 (D.C.Cir.1962) (same). Our circuit has been less explicit, but has indicated acceptance of this position. *Battle v. Liberty Nat'l Life Ins. Co.*, 974 F.2d 1279 (11th Cir.1992) (per curiam), aff'g, 770 F.Supp. 1499, 1511-12 (M.D.Ala.1991) (reasonable time limitation inapplicable to a 60(b)(4) challenge), cert. denied, --- U.S. ----, 113 S.Ct. 2999, 125 L.Ed.2d 692 (1993).

Both WRIGHT & MILLER and MOORE'S agree that the principle of laches does not operate as a bar to a Rule 60(b)(4) motion. 11 WRIGHT & MILLER Sec. 2862 at 197-98; 7 MOORE'S FEDERAL PRACTICE p 60.25 at 242. There is no case law to the contrary. *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 n. 6 (5th Cir.1988) (correctly observing that "no court has denied relief under Rule 60(b)(4) because of delay") (emphasis added); see, e.g., *Crosby v. Bradstreet Co.*, 312 F.2d 483 (2d Cir.) (vacating void judgment 30 years after entry), cert. denied, 373 U.S. 911, 83 S.Ct. 1300, 10 L.Ed.2d 412 (1963); *Kao Hwa Shipping Co. v. China Steel Corp.*, 816 F.Supp. 910, 913 (S.D.N.Y.1993) (laches does not apply); Taft v. Donellan Jerome, Inc., 407 F.2d 807, 808 (7th Cir.1969)

(entertaining challenge to jurisdiction 13 years after final judgment); *Pacurar v. Hernly*, 611 F.2d 179, 180-81 (7th Cir.1979) (permitting a challenge by a plaintiff 15 months after he became aware of a default judgment entered against him)[9]; *In re Center Wholesale*, 759 F.2d 1440, 1447 (9th Cir.1985) ("[A] void judgment cannot acquire validity because of laches."); *Austin v. Smith*, 312 F.2d 337, 343 (D.C.Cir.1962) (laches never applies, even if delay is five years); *Battle v. Liberty Nat'l Life Ins. Co.*, 974 F.2d 1279 (11th Cir.1992) (per curiam), aff'g, 770 F.Supp. 1499, 1511-12 (M.D.Ala.1991) (laches inapplicable to a 60(b)(4) challenge, even if made 13 years after judgment), cert. denied, --- U.S. ----, 113 S.Ct. 2999, 125 L.Ed.2d 692 (1993).

In the instant case, the Seventh Circuit Court of Appeals, stated that plaintiff Terence Bruce Richards, waited 14 months from when he originally filed this instant case, on April 4th, 2007, until he first attempted to vacate the judgment, under Federal Rules of Civil Procedure 60(b), in July 2008, in it's opinion order entered in July 2009. However, as stated above, there is not neither a time limitation nor laches applicable to the issue of void judgments.

## Breach of Fiduciary Duties
## Personal Liability

James E. Stevens, in performing his duties, must "exercise ordinary care and prudence, and ... deal faithfully and carefully with assets in his cases, as he would his own" 2 Clark on Receivers §378, at 633 (footnote omitted). Indeed,

"a receiver is a fiduciary and in the nature of trustee. . . [and]. . . the law receives a very high degree of care if a trustee handling other people's money" *Id.* (footnote omitted). As the court stated in *Fleet National Bank Vs. H. E. D. Entertainment Inc.* 926 F.Supp. 226, 240 (D. Mass. 1996) aff'd 96 F.3d 532 (1st Cir. 1996) cert. denied 520 U.S. 1155. "it is axiomatic that receivers are bound by fiduciary obligations to the court appointing them and to the estate they serve". (citation omitted) see also *Ebel Vs. Ebel* (In Re: Ebel) 144 B.R. 510, 516 (D. Colo. 1992)(Although the receiver acts as an officer of the court which appointed him, he is also a fiduciary of the party ultimately determined to have rights in the property").

James E. Stevens is protected from personal liability while acting within the scope of his authority of the appointing court. Nevertheless, "[A] receiver generally is chargeable with the value of the property which by reasonable diligence will have come into his hands and has been lost by his omissions and act..." 2 Clark on Receivers §389 at 650 (citing, inter alia, *Commonwealth Vs.Gould* 188 Mass. 300, 1875 WL 9175 (1875). Moreover, a receiver is chargeable with the value of the property which would have come into his hands but was lost due to his failure to act. *Id.* at §390 at 651 (footnote omitted).In the instant case, Bankruptcy Trustee James E. Stevens is chargeable for the loss of the property in adversary hearing 03 A 7063 and 03 A 7083, in the Northern Illinois Bankruptcy Court – Western Division, due to his failure to collect, act faithfully and carefully with plaintiff Richards's and interstate creditor(s) assets, that was in his hands, and was willfully

transferred to third party, Donald James Harrington, in violation of Title 18 U.S.C. §153.

The United States Supreme Court outlined the general rule with respect to the liability of receivers, like bankruptcy trustee, James E. Stevens:

> If actions brought against the receivership generally, or against, the corporation by name, "in the hands of" or "in the possession of" a receiver, without stating the name of the individual, it would be more accurately represent the character or states of the defendant. So long as, the property of the corporation remains in the custody of the court, and is administered through the agency of a receiver, such receivership, is continuous and uninterrupted until the court relinquishes its hold upon the property, though its personnel may be subject to repeated charges. Actions, against the receivership or the funds in the hands of the receiver or his contracts, misfeasance, negligence, and liabilities are official, and not personal, and judgments against him as receiver are payable only from the funds in his hands.

*Mc Nulta Vs. Lochridge* 141 U.S. 327 at 331-32(1891), see also *Kermit Construction Corp. Vs. Banco Credito Y Ahorro Ponceno* 547 F.2d 1,3 (1st Cir. 1976).

In *Russo Vs. Freeman* 30 F.2d 826, 828 (D. Mass. 1929), the United States Court of Appeals for the First Circuit, citing *McNulta vs. Lochridge*, observed that it was well settled "in the absence of any personal or individual misconduct on the part of the receiver, his liability is official, rather than personal". Nevertheless, it stated:

> There have been cases...where the courts have held that the defendant could not shield himself from liability on the ground that he was a receiver. *Kain Vs. Smith* 80 N. Y. 458 1880 WL 12410 (1880), *Lyman Vs. Central Vt. R.Co.*59 Vt. 167, 10 A. 346 (1887). In both of these cases, the receiver, duly appointed by a state court, was operating as lessee a railroad which did not constitute a part of the receivership property. In the New York case, the railroad was outside the jurisdiction of the Court appointing the receiver, and in the Vermont case, it was not. In

Both cases, the court held the defendants personally liable.

*Russo Vs. Freeman* 30 F.2d 826, 828 (D.Mass. 1929) See also *Shapiro Vs. Goldman* 253 Mass. 60, 148 N.E. 217 (1925).

In *Shapiro*, the Massachusetts Supreme Court ruled that a bankruptcy court receiver, who had wrongfully withheld a deposit from a sale which he subsequently abandoned, was presumably liable for transactions outside his authority, "even when the wrongful actions were in his capacity as an officer of the court without personal interest in his part". 253 Mass. At 63, 148 N.E. at 219.

As noted above, there are exceptions to the general rule that receivers are insulated from personal liability, particularly, when he acts beyond the scope of his receivership in those instances. "He...does not act as a receiver and the protection usually accorded receivers does not extend to such acts". 2 Clark on Recievers §392 at 654. In this instant case, Bankruptcy Trustee James E. Stevens, acted in clear absence of his authority, for no conscientiously United States District Court will extend authority, to criminally transfer property from one individual's possessory rights to another individual, in violation of Title 18 U.S.C. §153. Specifically, in this instant action, Bankruptcy Trustee made false and misleading statements to the Bankruptcy Judge Manuel Barbosa, in adversary hearing 03 A 7063, claiming that it is too burdensome, to keep going after someone, who is not cooperating with the courts.

For example, a receiver may be personally liable for property or funds in *custodial legis* which are transferred or paid without court authority. Id. §403

at 691, and he may be personally liable for damages "[i]f the property be lost or injured by negligence or dishonest execution of ... trust ... ". *Id.* §406(a) at 695. See also *Prescott Vs. Coppage* 266 Md. 562; 296 A.2d 150 (1972) *Vander Vorste Vs. Northwestern National Bank* 81 S.D. 566, 138 N.W.2d 411 (1965); *Murea Vs. Muratore* 214 N.Y.S.2d 491 (1961); *Morris Vs. Pierce* 188 Okla. 396, 110 P.2d 294 (1940); *Campbell Vs. Hargraves* 181 Akr. 492; 26 S.W.2d 876 (1930, see generally 75 C.J.S. Receivers §192 (2004). ("A receiver who acts outside his statutory authority or orders of the appointing court, or who is guilty of negligence or misconduct in the administration of the receivership is personally liable for any damages resulting there from). 65 Am.Jur. 2d Receivers §898 (Supp. 2004). ("A receiver is personally liable for improper distribution of assets).

According to the Maryland Court §266 of the Restatement of the Law of Trusts 2d provides:

> §266 Liability for Payments or Conveyances made to persons other than the beneficiary:
>
>> If by the terms of the trust it is the duty of the trustee to pay or convey the trust property or any part thereof to a beneficiary, he is liable if he pays or conveys to a person who is neither the beneficiary nor one to whom the beneficiary or the court has authorized him to make such payments or conveyances.

The Court quoted comment B as follows:

> B) Mistake of law or fact
>
> The trustee is liable although he makes the payment or conveyance under a reasonable mistake of law or fact. If he is in doubt as to the proper person to whom a payment or

> conveyance should be made, he can apply to the court for instructions and will be protected by the order of the court against claims or all persons who were parties to the proceeding

The trustee is liable although he reasonably believes that the person to whom he pays or conveys is the beneficiary or that the payment or conveyance is authorized or directed by the beneficiary or by the termination of the trust. (italics supplied) *Prescott Vs. Coppage* 266 Md. 562 at 566-569, 296 A.2d 150 at 153 (1972).

The principles set forth in *Prescott Vs. Coppage* 266 Md. 562, 296 A.2d 150 (1972) are particularly applicable to this instant Northern Illinois District Court case. The *Prescott* case involved a suit by one receiver against another, and his counsel, individually, as well as, the surety, to recover a sum in excess of $40,000.00 claimed to have been a priority obligation of the defendant's receivership, but which was not paid as cash. The facts, as summarized, by the applicable court, are as follows:

> Coppage was receiver for Security Financial Insurance Corporation (Security); Medley was receiver for Maryland Thrift Savings and Loan Company (Maryland Thrift). Maryland Thrift was indebted to Security on two promissory notes in the face amount of $40,000 and $38,000 dated respectively January 9th, 1962 and January 11th, 2962. Although, receivership assets of Maryland Thrift were sufficient to pay the principle and interest on both notes in full, Medley, receiver, paid only $44,859.20 including interest. [i.e. thereafter, made distribution to depositors of Maryland Thrift after petition and order of the court. The rights of the Depositors to distributions were inferior to the rights of Security. The Distributions by Medley, receiver, depleted the assets below the amount required to pay the balance of the obligations due Security 266 Md. At 565-66; 296 A.2d at 152.

On appeal, Medley, argued, that as receiver, he was excused from personal liability, because he acted pursuant to a court order, Prescott, the attorney, agreed, adding that his "negligence, if any, was not the proximate cause of the loss to Security, and that contributory negligence of Medley bars recovery against him on the cross-claim 266 Md. At 566; 296 A.2d at 153. With respect to the receiver's personal liability, the court, stated the following:

> Medley and Aetna rely upon Clark on Receivers, as supporting their contention that the receiver is not reasonably liable, because he acted under an order of the court. Their reliance is misplaced it is true that Clark in general discussion in the Chapter "Liabilities of a receiver" states broadly, in §388 and 392. That it it is not conceivable that such receiver would be liable personally for an act done pursuant to the lawful order of the appointing court. However, in the instant case, the order was obtained ex parte on the basis of the very representation that are said to have been negligently made.

In the instant case, 07 CV 1907, in the Northern Illinois District Court, Bankruptcy Trustee James E. Stevens embezzled the property, in bankruptcy case 04 A 7063 and 04 A 7083, in violation of the Professional Code of Conduct Rule 3.4 and 3.5, on or before October 18th, 2004, but after, April 19th, 2004, with Bankruptcy Judge Manuel Barbosa, by ex parte communication, violating federal criminal statutes Title 18 U.S.C. §153 and Title 18 U.S.C. §1911, transferring, Plaintiff Terence Bruce Richards property, from him (Mr. Richards) to third party Donald James Harrington and himself (James Stevens), creating a predicate act, in a series of ongoing predicate acts, to criminally enrich those individuals, who had no personal claim, to the property, in adversary case 03 A 7063 and 03 A 7083.

*[signature]*